**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GYM DOOR REPAIRS, INC. and SAFEPATH SYSTEMS LLC | ) ) | |
| Plaintiffs, v. | ) ) ) | Civil Action No. 15-CV-4244 (JGK) |
| YOUNG EQUIPMENT SALES, INC., YES SERVICE AND REPAIRS CORPORATION, RICHARD YOUNG, BRIAN BURKE, DENNIS SCHWANDTNER, GUARDIAN GYM EQUIPMENT, QAPALA ENTERPRISES, INC., JAMES PETRIELLO, TRI-STATE FOLDING PARTITIONS, INC.,  PETER MUCCIOLO, EDUCATIONAL DATA SERVICES, INC., TOTAL GYM REPAIRS, INC., NEW YORK STATE DEPARTMENT OF EDUCATION OFFICE OF FACILITIES PLANNING, NEW YORK STATE SCHOOL FACILITIES ASSOCIATION, SCHOOL FACILITIES MANAGEMENT INSTITUTE, EASTERN SUFFOLK BOCES, NASSAU COUNTY BOCES, BELLMORE PUBLIC SCHOOLS, NEW YORK CITY DEPARTMENT OF EDUCATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants , | ) ) | |

**FIRST AMENDED VERIFIED COMPLAINT**

## INTRODUCTION

Plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safe Path Systems LLC ("Safe Path") (collectively "Plaintiffs"), through their attorneys, BahnMulter LLP, bring this action against Defendants Young Equipment Sales, Inc., YES Service and Repairs Corporation,  Richard Young, Brian Burke, Dennis Schwandtner (collectively referred to herein as "YES"), Guardian Gym Equipment, Qapala Enterprises, Inc., James Petriello (collectively referred to herein as "Guardian"), Tri-State Folding Partitions, Inc., Peter Mucciolo (collectively referred to herein as "Tri-State"), Educational Data Services, Inc. ("EDS"), Total Gym Repairs, Inc. ("Total Gym Repairs"), New York State Department of Education Office of Facilities Planning ("NYSED"), New York State School Facilities Association ("NYS SFA"), School Facilities Management Institute ("SFMI"), Easter Suffolk BOCES ("ESBOCES"), Nassau BOCES, Bellmore Public Schools ("Bellmore"), New York City Department of Education ("NYCDOE") (collectively, "Defendants") to obtain permanent injunctive relief, actual damages, treble damages, attorneys' fees, and costs for Defendants' infringement of Plaintiff's asserted copyrights, patents and trademarks and tortious interference with business relationships.  The allegations are made upon actual knowledge with respect to Plaintiffs' own acts and information and belief as to all other matters.

## NATURE OF THIS ACTION

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.,* the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*., and the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and related state statutes and common law.  It is brought by Plaintiffs against Defendants for Defendants' infringement of U.S. Patent No. 5,244,030 (the "'030 Patent"), unauthorized use of the materials covered by U.S. Copyright Registration No. TXu 1-803-046 (the "Manufacturer Materials"), infringement of U.S. Trademark Registration Nos.

1935394, 3894751, 3894752, and 4055419 and actions that constitute unfair completion, deceptive practices and tortious interference with business relationships.

## THE PARTIES

2.      Plaintiff GDRI is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 3500 Sunrise Highway, Great River, New York  11739.

3.      Plaintiff Safe Path is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business at 3500 Sunrise Highway, Great River, New York  11739.

4.      Defendant Young Equipment Sales, Inc. is a domestic business corporation with a principal place of business at 325 Rabro Dr., Suite 1, Hauppauge, New York  11788.

5.      Defendant YES Service and Repairs Corporation is a domestic business corporation with a principal place of business at 145 Lodge Avenue, Huntington Station, New York 11476.

6.      Defendant Richard Young is an individual whose business address is 325 Rabro Dr. Suite 1, Hauppauge, New York 11788.  Mr. Young is Chief Executive Officer of Young Equipment Sales, Inc.

7.      Defendant Brian Burke is an individual whose business address is 325 Rabro Dr. Suite 1, Hauppauge, New York 11788.  Mr. Young is Chief Operating Officer and Chief Financial Officer of Young Equipment Sales, Inc.

8.      Defendant Dennis Schwandtner is an individual whose business address is 145 Lodge Avenue, Huntington Station, New York 11476.  Mr. Schwandtner is Chief Executive Officer of Defendant YES Service and Repairs Corporation.

9.      Defendant Guardian Gym Equipment is a wholly owned subsidary of Qapala

3

Enterprises, Inc. a domestic business corporation both companies have a principal place of business at 299 Christian Herald Road, Valley Cottage, New York 10989.

10.     Defendant James Petriello is an individual who has a business address at 299 Christian Herald Road, Valley Cottage, New York 10989.  Mr. Petriello is President of Guardian Gym Equipment and Qapala Enterprises.

11.     Defendant Tri-State Folding Partitions, Inc. is a domestic business corporation with a principal place of business at 608 Chestnut Ridge Road, Chestnut Ridge, New York 10977.

12.     Defendant Peter Mucciolo is an individual whose business address is 608 Chestnut Ridge Road, Chestnut Ridge, New York 10977.  Mr. Mucciolo is Chief Executive Officer of Tri-State Folding Partitions, Inc.

13.     Defendant Total Gym Repairs, Inc. is a domestic business corporation with a principal place of business address at 214 Glenmore Street, East Williston, New York 11596.

14.     Defendant New York State Education Department, Department of Facilities Planning is a New York State governmental department with a principal place of operations at Room 1060 Education Building Annex, Washington Avenue, Albany, New York 12234.

15.     Defendant the New York State School Facilities Association is a professional association of more than 600 directors of school facilities, facilities managers, head custodians and health and safety coordinators and other key school facilities personnel throughout New York State with a principal place of business at 136 Evert Road, Albany, New York 12205. It was formerly known as the New York State Superintendents of School Buildings and Grounds, Inc. ("NYS SBGA").

16.     Defendant School Facilities Management Institute ("SFMI") is a non-profit organization created in 2003 by the Board of Directors of NYS SBGA, the predecessor of

Defendant NYS SFA, for the purpose of providing education and training programs on school facilities management issues throughout New York State with a principal place of business at 136 Evert Road, Albany, New York 12205.

17.      Defendant Eastern Suffolk BOCES is a Board of Cooperative Educational Services that provides purchasing and other cooperative programs and services to 66 public school districts located in Suffolk County with principal place of operations at 201 Sunrise Highway, Patchogue, NY  11772.

18.      Defendant Nassau BOCES is a Board of Cooperative Educational Services that provides purchasing and other cooperative programs and services for 56 public school districts located in Nassau County with principal place of business at 71 Clinton Road, Garden City, New York 11550-9195.

19.      Defendant New York City Department of Education is a municipal government department with principal place of operations at, inter alia, Tweed Courthouse, 52 Chambers Street, New York, NY  10007.

20.      Bellmore Public Schools is a New York school district with offices at 580 Winthrop Avenue, Bellmore, New York 11710.

21.      Defendant Educational Data Services, Inc. is a New Jersey corporation with a principal place of address at 236 Midland Avenue, Saddle Brook, New Jersey 07663.  EDS conducts business regularly in the State of New York.

## <u>JURISDICTION AND VENUE</u>

22.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent, copyright and trademark laws of the United States, including 35 U.S.C. § 271 *et seq.* and 17 U.S.C. § 101 *et*

*seq.* and 15 U.S.C. §§ 1051 *et seq.* The Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a) and under principles of pendent jurisdiction.

23.     The Court has personal jurisdiction over Defendants because Defendants have transacted business in this judicial district and have committed acts of infringement in this judicial district.

24.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

## FACTUAL BACKGROUND

### A.     GDRI and the Safe Path System

25.      Plaintiff GDRI has been in the business of installing, servicing and repairing electric folding doors and partitions for use in school gymnasiums for over 39 years.

26.      Following the tragic death of a student who was crushed by a school gym partition in 1991, GDRI, through its president, Stephen Cole, designed the "Safe Path System" (the "Safe Path System"), a life safety detection system for electric folding doors and partitions, which set the standard for the industry.  A copy of the Safe Path System specifications is annexed hereto as **Exhibit 1**.  At all relevant times, the Safe Path System has been the premier life safety detection system in the market.  It has been architecturally specified and installed in approximately eighty percent (80%) of the schools with electrically operated partition doors throughout New York State. The design, function and specifications of the Safe Path System meet the standards required by Education Law § 409-f and Regulation § 155.25.

27.     On September 14, 1993, the United States Patent and Trademark Office issued United States Patent No. 5,244,030 (the '030 Patent) for "Electrically Operated Folding Operable Walls" and covering, among other things, mechanisms for (i) creating an infrared barrier curtain on opposite sides of an operating path of folding operable walls, (ii) shutting down the electrical

operating circuit of folding operable walls when a physical obstruction enters into the operating path, and (iii) restarting the operation circuit of the folding walls after the obstruction is removed. A copy of the '030 Patent is attached hereto as **Exhibit 2**.  Plaintiff GDRI owns all right, title and interest in and to the '030 Patent.  Although the '030 Patent expired on October 17, 2011, acts of infringement and induced infringement occurred prior to that date that still fall within the statutory period for compensation.

28.     On November 14, 1995, the United States Patent and Trademark Office issued Registration No. 1935394 for the mark, "THE SAFE PATH SYSTEM."  Plaintiff GDRI owns all right, title and interest in and to the SAFE PATH SYSTEM trademark.   A copy of the registration certificate is attached hereto as **Exhibit 3**.

29.     On December 21, 2010, the United States Patent and Trademark Office issued Registration Nos. 3894751 and 3894752 for the mark "SAFE PATH" for use in connection with electrically operated folding gym walls.  Plaintiff Safe Path owns all right, title and interest in and to the SAFE PATH trademarks.  Copies of the registration certificates are attached hereto as **Exhibit 4**.

30.     On November 15, 2011, the United State Patent and Trademark Office issued Registration No. 4055419 for the mark "SAFE PATH" for use in connection with installation, maintenance and repair services for electrically operated gym doors.  Plaintiff Safe Path owns all right, title and interest in and to this trademark. A copy of the registration certificate is attached hereto as **Exhibit 5**.

31.     At all times relevant herein, Plaintiffs possessed the <u>exclusive</u> authority, knowledge and expertise to ensure that each Safe Path System is manufactured, installed, serviced, repaired, and/or maintained properly. To that end, Plaintiffs developed and tested specific installation and maintenance guidelines and procedures to be performed on the Safe Path System, which are

necessary to ensure that they are installed and operated properly, and to achieve the highest level of safety with respect to the use and operation of electrically operated partition doors.

32.     Plaintiffs' specific maintenance guidelines and procedures for the Safe Path System, which provide that, *inter alia*, the installation, service, repair and/or and maintenance must be conducted by a Safe Path certified maintenance technician and/or contractor, and that service must be performed at least once a year.  A copy of the Safe Path System's Manufacturer's Instruction ("Safe Path System Instruction") is annexed hereto as **Exhibit 6**.

33.     At all times relevant herein, Plaintiffs further owned the training materials for operation of the Safe Path System.  Training is mandated by Regulation § 155.25, and is necessary and vital to ensure the safe and proper use and operation of the Safe Path System.  Only Plaintiffs or their authorized contractors, technicians and/or vendors can perform the necessary training for the Safe Path System.  In New York City, Plaintiffs are and at all times relevant have been the only entities authorized to perform training for the Safe Path System.

34.     On March 27, 2012, the United States Copyright Office issued Registration Number TXu 1-803-046 covering Safe Path's Manufacturer's Instructions, Staff Training Transcript, Flyer Specifications, Installation Manual, Performance Specifications, Owner's Manual, Wiring Diagrams, and Training Program (the "Manufacturer Materials").  GRDI is the owner of all right, title and interest in the Manufacturer Materials.  A copy of the Registration Certificate and deposit specimens are attached hereto as **Exhibit 7**.

35.     In May of 2004, Plaintiffs met with Gerald Couse, NYSED Compliance Officer, and Carl Thurnau, the Director of the NYSED Office of Facilities Planning, about the best way for districts to achieve compliance with Education Law § 409-f and Commissioners Regulation § 155.25 regarding Safe Path Systems.  Thurnau and Couse asked Plaintiffs to produce a DVD to train school staff how to operate the Safe Path Systems.  In response to this request, Plaintiffs

produced a DVD entitled "2005 Electric Partition Safe Path System Staff Training Procedure Materials" (the "Staff Training DVD") at a cost to GRDI of $50,000 and provided free copies to each district receiving maintenance services from Safe Path.  GRDI is the owner of all right, title and interest in the Staff Training DVD.  A copy of the Registration Certificate and a copy of the Staff Training DVD are attached hereto as **Exhibit 8**.

36.     Starting in 2004, Plaintiffs also made efforts to certify other companies, including YES, to perform maintenance and repair work on Safe Path Systems.  Plaintiffs abandoned these efforts when it learned that YES was disabling, bypassing and otherwise not following the manufacturer's protocols for the Safe Path Systems and then charging districts to replace them at grossly inflated prices.

37.     Plaintiffs have never demanded fees that are excessive or unreasonable, given the costs associated with and the nature, size and scope of work to be performed on or relating to the Safe Path System or otherwise abused the rights and privileges conferred upon them under the patent and copyright laws of the United States.  In fact, as further explained below, its list prices are in many cases,  four (4) or more times lower than what YES and the other corporate defendants have been charging school districts for maintenance, labor and parts for the Safe Path Systems.

**B.     Education Law § 409(f) and Regulation § 155.25**

38.     In or around August 2001, following the tragic death of two students in Schools located in New York State, Governor George Pataki signed Education Law § 409-f, which requires all public and private schools, located in the State to install and maintain safety devices on all electrically operated partition doors to stop the forward and stacking motion of the doors when a body or other object is present.   Education Law § 409-f was specifically enacted to prevent serious injuries or deaths resulting from electrically operated partition doors.

39.     Education Law § 409-f states in pertinent part:

[t]he board of education, trustees, principal or other persons in charge of every public or private school or educational institution within the State, wherein classrooms or other facilities used by the students are found to have electrically operated partitions, doors or room dividers, shall arrange for, and require that:

3.  <u>Every electrically operated partition or room divider shall be equipped with safety devices which, subject to standards established in rules and regulations promulgated by the commissioner,</u> stop the forward motion of the partition or room divider and stop the stacking motion of the partition or room divider when a body passes between the leading panel of such partition or divider and a wall, or when a body is present in the stacking area of such partition or divider.

Any person who disables or directs another person to disable any safety equipment required pursuant to this section shall be guilty of a violation punishable by not more than fifteen days imprisonment, or fine not to exceed one hundred dollars, or both such fine and imprisonment.

(Emphasis added.)

40.     In furtherance of and to enforce Education Law § 409-f, the New York State Education Department promulgated and implemented Commissioner's Regulation ("Regulation") § 155.25, Safety Requirements for Electrically Operated Partitions, which states as follows:

(c)  Minimum construction, maintenance and operation standards for electronically operated partitions. . . . the board of education, trustees, principal or other person in charge of every public or private school or educational institution within the State, wherein classrooms or other facilities used by students are found to have electrically operated partitions, shall ensure that:

(1) every electrically operated partition is equipped with two key operated, tamper-proof, constant pressure control stations that are wired in series, remotely located at opposite ends and opposite sides of, and in view of, the partition, and which are designed and constructed so as to require simultaneous activation of both control stations to operate the partition;

(2) the electric device controlling the operation of the

10

partition is capable of being reversed at any point in the extend or stack travel cycle; and

(3) device(s) are provided for all partitions that will stop the forward or backward motion of the partition and stop the stacking motion of the partition when a body or object passes between the leading panel of such partition and a wall or other termination point, or when a body or object is in the stacking area of such partition;

. . .

(d)  Safety requirements and operation guidelines for electrically operated partitions. The board of education, trustees, principal or other persons in charge of every public or private school or educational institution within the State shall insure that:

. . .

(4) safety features shall not be tampered with, overridden or by-passed.  <u>All equipment must be maintained in accordance with the manufacturer's instructions, including the manufacturer's recommended service interval</u>, and records of such maintenance shall be permanently retained at the district or private school. All equipment shall be installed in a fail-safe manner such that the failure of any safety device shall render the electrically operated partition inoperable until such device is repaired . . .

(Emphasis added.)

11

41.     Enforcement of and compliance with Education Law § 409-f and Regulation § 155.25 are critically important because electrically operated partition doors without safety systems in place or with safety systems that have been disabled or not properly maintained pose serious threats to the life and safety of students and/or any individuals who come in contact with them. Districts risk loss of their state aid if an annual fire and safety inspection reveals deficiencies, such as the use of non-compliant equipment or missing training and maintenance records, if the deficiencies are not rectified immediately.

42.     In furtherance of Education Law § 409-f and Regulation § 155.25, in or around 2001 and 2002, New York State initially passed a funded mandate, which appropriated approximately $37.5 million in State funds ("State Aid") for the installation of safety devices in each and every school within the State using electrically operated partition doors.

43.     Additional and further funding in excess of $100 million has since been appropriated by the State Legislature for ongoing compliance with Education Law § 409-f and Regulation § 155.25.  These funds are made available to NYSED to be used to reimburse school districts for the cost of compliance in the form of "State Aid."

44.     Every safety device used in New York State must be submitted to the NYSED Office of Facilities Planning for review and approval before installation to ensure compliance. Without NYSED approval, the school district will not be eligible to receive State Aid.  .

**C.     NYCSCA Specifications**

45.     NYCSCA is responsible for appropriating the funding (including, but not limited to, a portion of the $37.5 million in earmarked funds and other and additional funding) for the installation, service, repair, and/or maintenance of safety devices for each and every electrically operated partition door in New York City.

46.     One of NYCSCA's stated mission is to design and construct safe schools throughout the City.  In addition, the NYCSCA has the power and duty to, *inter alia*, carry out the following functions: (i) to design, construct, reconstruct, improve, rehabilitate, maintain, furnish, repair, equip and otherwise provide for educational facilities, as defined in section twenty-five hundred ninety-a of the education law; (ii) to make and execute contracts and all other instruments necessary or convenient for the exercise of its functions, powers and duties . . . ."  See Public Authorities Law § 1728.

47.     In or around 2003, the NYCSCA issued the New York City School Construction Authority Manual (the "Specifications").  The Specifications set forth details and instructions regarding the design, construction, and maintenance of electrically operated partitions in the City. A relevant excerpt from the Specifications is annexed hereto as Exhibit "3."

48.     Section 4(a) of the Specifications, entitled, "Infra-red Safety Detection System," indicates the minimum criteria for the capabilities of the partition safety system and subsection (b) mandates the following:

> The infra-red safety detection system shall be "Safe-Path" as manufactured by [GDRI], Huntington Station, NY – (631) 549-8745.

*See* Exhibit "3". (Emphasis added.)

49.     As set forth above, Education Law § 409-f requires the installation of safety systems such as the Safe Path System for all electrically operated partition doors in all schools in the City.

50.     Until February 2012, the NYC SCA Specifications designated the Safe Path System as the only safety system for use in all schools in the City.  Safe Path's name was removed from the Specifications in 2012, though the names of specific partition door manufacturers remain in the specifications.

51.     Further, Regulation § 155.25(d)(4) mandates that the safety equipment installed in connection with Education Law § 409-f be "maintained in accordance with the manufacturer's

13

instructions, including the manufacturer's recommended service intervals."

52.     Plaintiffs GDRI and Safe Path, as manufacturers of the Safe Path System, require that installation, inspection, service, repair and/or maintenance of the Safe Path System be performed only by certified maintenance technicians and/or contractors.

53.     Taken together, Education Law § 409-f, Regulation § 155.25 and the Specifications: (a) require that NYSED approved safety systems to be installed on every electrically operated partition door in every school located in New York State; (b) require that each and every safety system so installed be maintained in accordance with the manufacturer's instructions; (c) designate the Safe Path System as the only safety system to be installed in schools located in New York City, at least until 2012.  Because the equipment is complicated and because proper installation, inspection and maintenance is vital to the safety of children, Safe Path's manufacturer instructions require that its Safe Path Systems be installed, inspected and maintained by certified technicians specifically trained by Safe Path.

54.     It is a clear violation of Regulation § 155.25 for schools or vendors to tamper with, over-ride or bypass or use unauthorized vendors to install, service and maintain Safe Path equipment, yet, as more fully described below, Plaintiffs are informed and believe it is routinely happening in New York City, Suffolk and Nassau counties and in other places throughout New York State.

### D.  Defendants Conspired to Infringe Plaintiffs' Intellectual Property Rights and Drive Plaintiffs Out of Business in New York

55.     There are more than 1,400 schools in New York City and another 4,200 in the rest of New York State with electrically operated partitions.

56.    Safe Path Systems have been installed in approximately 4,700 (or roughly 80%) of the schools with electrically operated partitions.

57.    Plaintiffs have and at all relevant times had a reasonable expectation that all 4,700 Safe Path Systems would be annually inspected, serviced and maintained in accordance with its specifications.  Plaintiffs' current price list for annual maintenances services is $800.

58.    On a number of occasions between 2003 and 2009, Plaintiffs met with David Clapp, the NYSED Fire and Safety Inspector, and other officials in NYSED's Office of Facilities Planning to discuss Plaintiffs concerns that schools with Safe Path Systems were not inspecting and maintaining their systems annually as required by the manufacturer's specifications and staff training was not being performed.  In fact, Plaintiffs knew that some schools were not inspecting or maintaining them at all.  Moreover, in some cases, it was clear to Plaintiffs that the Safe Path Systems had been tampered with, over-ridden or by-passed in direct violation of Regulation § 155.25.  To address these problems, Plaintffs advocated for Fire Inspector review of each districts' records of maintenance and staff training (required since 2001).

59.    It took the NYSED Office of Facilities Planning, which oversees compliance on the annual fire safety reports, until the summer of 2009 to include the inspection of partition safety systems to the annual Fire Safety Inspection List.  This happened only after Plaintiffs reported their concerns about compliance to the Governor, the Attorney General and the Senate and Assembly sponsors of Education Law § 409-f in February of that year.

60.    In or about October 2009, Kathleen Cole of Safe Path spoke with Carl Thurnau, Director of NYSED Office of Facilities Planning, to discuss her ongoing concerns about Safe Path Systems inspection and maintenance and an alleged accident involving an electrical partition with a Safe Path System in New York City.  When he disagreed with her about the scope of the problem, Ms. Cole told Mr. Thurnau that she could name at least fifteen (15) schools in New York City alone

15

that were illegally operating with no safety device.  He told her to name them and she would have

the contracts for the Safe Path System installations.  When she refused his offer insisting instead

that he take concrete steps to address the problem throughout the State, a very angry Mr. Thurnau

told Kathleen Cole: ***"Compliance with the law is a financial decision on my part. . . . I am putting***

***you out of business.  You are done.  You are a rat.  I told you to stop poking your nose where it***

***does not belong."***

61.     Mr. Thurnau, Joseph Van De Loo, Fred Koebel and certain other officers and

members of SFMI and NYS SFA then used SFMI and NYS SFA meetings and newsletters to make

good on Mr. Thurnau's threat by encouraging superintendents and facilities directors across the

State to use vendors other than Safe Path to service and maintain Safe Path Systems and to cover up

systemic non-compliance.   They said that Regulation § 155.25 was not intended to mean what it

says and that "any competent person" could perform maintenance services on Safe Path Systems.

62.     The foregoing interpretation of Regulation §155.25 contradicts the manufacturer's

clear and unambiguous instructions.  It was delivered repeatedly -- in an August 2009 NYSED

newsletter, during a 2010 SFMI conference, at a 2011 SMFI Critical Issues Summit and during

SBGA monthly meetings – and it has induced numerous school districts on Long Island, including,

without limitation, Amityville, Bay Shore, Brentwood, Bellmore, Port Jefferson, West Hampton,

South Hampton, Shelter Island, William Floyd, Levittown, Westbury, Locust Valley, Patchogue,

North Shore, Roosevelt and Sayville, and many others across New York State, to violate the law

and Plaintiffs' intellectual property rights by awarding Safe Path maintenance contracts to

unauthorized vendors who were not authorized to practice Plaintiffs' patented technology or use its

copyrighted materials, have never received training from the manufacturer and are compromising

the integrity of the Safe Path Systems with inferior, non-complaint replacement parts.

63.     At the 2009 SMFI Annual Conference, Mr. Thurnau stood up in front of the conference, put his hands behind his back as if being handcuffed, and told the two-hundred plus facilities directors in attendance that a "downstate company went to the Senate sponsors of [Ed. Law 409-f] and now the districts are required to do annual maintenance."  Plaintiffs got several calls the week after the conference cancelling work that had already been scheduled and were told that it was because of the maintenance requirements that "they" created.

64.     Two years later, at a NYS SFA meeting held at the Riverview Restaurant in Oakdake in the spring of 2011, Fred Koelbel, Facilities Administrator for the Port Jefferson School District, Co-Chairman of Defendant SFMI, State Director for Defendant NYS SFA and the legislative liaison for both organizations, once again advised attendees "don't listen to what the Coles are saying" and that, notwithstanding the NYSED Regulations expressly requiring that inspection and maintenance be done in accordance with manufacturer specifications, they did not need to use Safe Path or its certified representatives to install, inspect or maintain Safe Path Systems.

65.     The confusion intentionally generated by the foregoing statements has decimated Plaintiffs' business.

### 1.  Eastern Suffolk BOCES

66.     Fred Koelbel and others acting through NYS SFA and SFMI also conspired with officials at ESBOCES to steer work away from Safe Path.  Specifically, Koelbel, together with Keith Anderson, President of NYS SFA and Facilities Director for ESBOCES and Jonathan Hark, VP of NYS SFA and Health and Safety Coordinator for ESBOCES, took actions that resulted in the diversion of the Safe Path Systems maintenance and repair work to Young Equipment Sales (YES) in all 66 ESBOCES districts through the improper use of ESBOCES catalog furniture bid.

67.     In October of 2011, after receiving copies of documents prepared by YES to do work on Safe Path Systems in Suffolk districts as part of the ESBOCES catalog furniture bid, Plaintiffs contacted ESBOCES to point out that maintenance and repair work on Safe Path Systems was not part of the catalog furniture bid.   Stephen Cole spoke and then met with John Connell of ESBOCES, Anderson and Hark to discuss the matter.  He also submitted to them a package of the manufacturer's requirements for Safe Path Systems maintenance, a copy of Ed. Law § 409-f and Commissioner's Regulation § 155.25 and the Safe Path training materials.  He told them that not only was YES misusing the furniture catalog bid number, but also that he believed that YES was using untrained technicians to service Safe Path Systems equipment and in many cases was simply bypassing these critical safety systems altogether.  Neither Mr. Connell nor anyone else from ESBOCES contacted Mr. Cole after that meeting.

68.     On April 16, 2012, Kathleen Cole met with Laurie Conley, Purchasing Agent for ESBOCES and Donna Ball her assistant.  Ms. Ball confirmed that the ESBOCES catalog furniture bid did not include Safe Path Systems repair and maintenance said that she had spoken with YES about its improper use of the catalog furniture bid to do work on Safe Path Systems in October of 2011.  Ms. Conley promised Ms. Cole that at an upcoming meeting she would let purchasing agents for the 66 member districts know that there was no bid for partition and Safe Path Systems work with ESBOCES. To Ms. Cole's knowledge, this was never done.

69.     A few weeks later, in apparent violation of its own competitive bidding policies and the Plaintiffs' utter astonishment, ESBOCES accepted fabricated documents from YES to perform the Safe Path Systems maintenance and repair work in all 66 ESBOCES component districts. Plaintiffs were never even given an opportunity to bid on the maintenance and repair work for their own systems.  The same thing happened again in 2013.

70.     Plaintiffs next alerted Gary Bixhorn, then Superintendent of ESBOCES, that YES was not certified to work on Safe Path Systems.  Kathleen Cole told Mr. Bixhorn that YES was doing Safe Path Systems maintenance work in Suffolk County districts without bidding and fraudulently using the ESBOCES catalog furniture bid to do so.  The documentation YES was submitting included copyright protected material copied from Plaintiffs' Manufacturer Materials with Safe Path's name and trademarks removed and replaced with indicia for YES.  Ms. Cole also pointed out other irregularities in YES's paperwork, such as bids that were well below prevailing wage.  Plaintiffs are informed and believe that Mr. Bixhorn did nothing to investigate or to address YES's misuse of ESBOCES furniture catalog other than to invite Ms. Cole to meet with Assistant Superintendent Barbara Sallato.

71.     The ESBOCES catalog bid was one of the primary vehicles YES employed to obtain Safe Path Systems maintenance work without having to bid against Plaintiffs.  Plaintiffs are informed and believe that the ESBOCES officials named herein knowingly enabled, if not facilitated, YES's deceptive scheme thereby allowing YES to capitalize on the ill-will against Safe Path being generated by Carl Thurnau and his colleagues at NYS SFA and SFMI.

72.     In August of 2012, Ms. Cole met with Barbara Sallato, Assistant Superintendent of ESBOCES, and Laurie Conley again about her concerns about YES.  It was clear to Ms. Cole that Conley had not informed Sallato of Ms. Cole's prior complaints.  During the meeting, Ms. Sallato said to Ms. Conley:  "What have you done about this?  This is very serious. We could be sued."  Ms. Conley assured Ms. Sallato that the problems with YES had been addressed.

73.     In the same August meeting, Barbara Sallato promised Ms. Cole that she would speak with Keith Anderson, Facilities Director for ESBOCES her concerns regarding Safe Path

Systems compliance in Suffolk County. Plaintiffs sent multiple follow up letters to Keith Anderson all of which were ignored.

74.     On April 25, 2013, Ms. Sallato sent a letter to all ESBOCES member Superintendents informing them:  "We have become aware that Kathleen Cole of Gym Door Repairs, Inc. is contacting a number of school districts with allegations regarding a competitor, Young Equipment sales, as well as Easter Suffolk BOCES.  The allegations include misuse of various bids, violations of prevailing wage requirements as well as criminal activity on the part of the competitor.  It is also alleged that Easter Suffolk BOCES has failed to prevent this inappropriate conduct on the part of the competitor.  By means of this correspondence we assure you that Eastern Suffolk BOCES has received the information presented by Ms. Cole on numerous occasions and has taken action which we believe to be appropriate under the circumstances.  Although an Easter Suffolk BOCES Cooperative Bidding Program bid number was reflected on certain invoices prepared by the competitor for services not contemplated by a particular bid, the incidents appear to be isolated and, to our knowledge, do not substantiate criminal intent."  The letter went on to say that "the school district should take all necessary steps to insure that the product or service being obtained is covered by the particular bid in question."  Subsequent correspondence from Ms. Sallato went further to accuse Ms. Cole of making false allegations.

75.     ESBOCES officials, including Connell, Bixhorn, Anderson, Hark, Conley, Ball and Sallato knew that Ms. Cole was not making false allegations and that YES's use of the ESBOCES furniture catalog bid to interfere with Safe Path's business relationships in ESBOCES member districts was far from isolated.

76.     Plaintiffs are informed and believe that YES has submitted paperwork on hundreds of jobs for maintenance and repair of Safe Path Systems in ESBOCES districts that falsely state or imply that YES is authorized to work on Safe Path Systems and that this work was part of the

ESBOCES furniture cooperative contract.  All of these jobs were awarded without bids and in most (if not all) cases YES charged the districts far more than Plaintiffs would have charged for the same work.  For example, Safe Path's price list for a new safety system reflects a cost of $1,468.  The price list YES fabricated using altered copies of Plaintiffs' Manufacturer Materials reflects a cost of $7,995 for the same system.

77.     Plaintiffs also have proof that YES engaged in a systematic practice of not paying its workers prevailing wage and, on at least one occasion in Plainview-Old Beth Page, used undocumented workers and engaged in other legal violations.  Several of these workers came to Plaintiffs and asked for a jobs, claiming that that they were being asked by YES to work on Safe Path Systems without the requisite training and for wages far below the prevailing rate.  Ms. Cole immediately reported this information to the New York Department of Labor, the Nassau and Suffolk District Attorneys and the New York State Attorney General's Office.

78.     Plaintiffs are informed and believe that the ESBOCES, NYS SFA and SFMI officials named herein knew of YES' malfeasance but either overlooked it or deliberately facilitated it in their effort to punish Plaintiffs for blowing the whistle on gym door safety system compliance deficiencies in New York State.   In doing so, they induced wholesale infringement of Plaintiffs intellectual property and unlawfully interfered with its existing and future business relationships throughout Suffolk County.

### 2.  Nassau BOCES

79.      In 2002, Safe Path won the bid with Nassau BOCES to install Safe Path Systems in every school within Nassau BOCES.  Safe Path Systems were thereafter installed in almost all of the 56 schools in Nassau County.

80.     Under Education Law § 409-f and Regulation § 155.25, all maintenance and repair work on Safe Path Systems was to be performed in accordance with Safe Path's specifications,

which in turn required that the systems be inspected annually by Safe Path certified and trained technicians and that any maintenance and repair work also be done by Safe Path certified trained technicians.

81.     In March of 2011, Plaintiffs approached Peter Laduca, Executive Manager and Health and Safety Coordinator for Nassau BOCES (who is also a faculty member on the SFMI) to ask for his assistance in gaining compliance with the law and to stop YES from diverting maintenance and repair work on the Safe Path Systems in Nassau BOCES districts.  After hearing their argument, Mr. Laduca responded:  ***"I don't care what the law says.  We are not going to twist the districts' arms and tell them what to do.  If the State wants to come and do that they can.  I am sure that districts are out of compliance on many levels."***

82.     As the Health and Safety Coordinator for all 56 Nassau school districts, it was Mr. Laduca's job to insure regulatory compliance and to make sure that Safe Path Systems were being installed, inspected and maintained in accordance with the manufacturer's specifications.  Mr. Laduca put the safety of thousands of children and school employees at risk in furtherance of the scheme, orchestrated through NYS SFA and SFMI, to punish Plaintiffs for reporting compliance problems and also for talking about it with a local Patch reporter.

83.     Kimberly Parahus is Facilities Director for Hewlett-Woodmere School District in Nassau County.  In 2009-10 she was Director of Facilities for Plainview-Old Beth Page.  She is also President of the Nassau Chapter of NYS SFA.  Ms. Parahus was the author of the first ~~Nassau BOCES~~ General Municipal Law Section 119-0 cooperative bid in 2009-2010 requiring qualifications for the maintenance of Safe Path Systems.  That bid was awarded to Plaintiff GDRI in June of 2009.  Three months later, without warning, the bid was "split" and awarded to Defendant YES for all participating~~56 Nassau~~ districts.  In 30 years, Plaintiffs had never seen this

happen before and are believe that Ms. Parahus's actions were a direct result of the orchestrated effort to drive Plaintiffs out of business.

84.     Joseph Hendrickson was Facilities Director for the Bellmore School District in Nassau County.  He was a member of the Nassau Chapter of NYS SFA and author of the 2010-2013 Nassau BOCES General Municipal Law Section 119-0 cooperative bids.  Plaintiffs are informed and believe that Mr. Hendrickson is responsible for removing the name "Safe Path" from the Nassau BOCES bid request for electrical partition safety equipment and putting "EOPSD" (for electrically operated partition safety device) in its place.  He also removed the Safe Path name and trademark from Plaintiffs' documentation for maintenance procedures and removed the staff training and legislative note from the bids.

85.     When asked about the changes, Mr. Hendrickson replied that he took them out because they were specific to that "damn system."  He told Steve Cole that he didn't care about Plaintiffs' patent or its other intellectual property rights:  ***"You are taking blood, man . . . I couldn't take you even if I wanted to.  When you send something up that triggers State Ed to send out to every freaking Superintendent . . . that caused Carl Thurnau up there to realize that he had a roaring forest fire here.  Then nobody's accreditation meant anything"***  The bid for electric partition safety system maintenance for all participating56 Nassau districts was awarded to YES even though all of them have Safe Path Systems and YES was not certified to work on Safe Path Systems.  As with ESBOCES, Plaintiffs were not even given an opportunity to bid on the maintenance and repair work for their own products.  Plaintiffs' concerns about prevailing wage violations, undocumented workers and fabricated and inflated price lists were discounted or simply ignored by Nassau BOCES and school district officials, just like they were in ESBOCES.

86.     When Kathleen Cole pleaded with Hendrickson to do something about YES and asked him if he thought that the tax payers would be outraged to know how much YES was

charging for Safe Path work, Hendrickson replied "not really, look how much the superintendents get paid." He also said that he could not wait to retire and put all this "shit" behind him.

87.     Joseph Falmuro is Superintendent of the Bellmore School District in Nassau County and was Joseph Hendrickson's boss at the time the above mentioned bid request was altered and awarded to YES. He was also the legislative liaison for all 56 Nassau County District Superintendents. Plaintiffs are informed and believe that Dr. Falmuro, having received the message originating from Carl Thurnau at the Office of Facilities Planning and conveyed largely through meetings and relationships formed at NYS SFA and SFMI not to use Safe Path, instructed Hendrickson to change the bid specifications and award the Safe Path System maintenance bid to YES. At the time they did this, both men were well aware that YES was not certified by Safe Path and that YES was overcharging member districts for the Safe Path Systems maintenance work and that serious concerns had been raised about the integrity of YES' bids and work.

88.     Not long thereafter, Hendrickson did retire and appears to be receiving retirement benefits from Bellmore approved by Falmuro for years that he was not a Bellmore employee.

89.     Plaintiffs are informed and believe that Falmuro and Hendrickson, like Laduca, were knowingly putting the health and safety of Nassau County children at risk as part of a coordinated effort to punish Safe Path for creating a "roaring forest fire" for Thurnau concerning his office's failure to enforce the law in Nassau and Suffolk counties. In the process, they induced YES's infringement of Plaintiffs' intellectual property rights and unlawfully interfered with its existing and prospective business relationships with 56 school districts throughout Nassau County.

### 3. **New York City**

90.     John Shea is Chief Executive Officer of the Division of School Facilities for the NYCDOE. Before that, he was Executive Director of Facilities for Nassau BOCES until 2008. Plaintiffs have copies of emails between Shea and Thurnau in which they discuss the propriety of

using unauthorized personnel to install and service Safe Path Systems in New York City schools. Having circumvented the law in Suffolk and Nassau counties regarding Safe Path System maintenance and repair, they now set out to circumvent the NYCSCA Specifications that expressly required the use of Safe Path Systems in New York City.

91.     Since 2004, the Plaintiffs have had numerous meetings and correspondence regarding Safe Path Systems maintenance and staff training in New York City.  In 2009 and again in March of 2011, Plaintiffs sent a letter to the NYCDOE advising that GDRI was at the time the only certified contractor to provide the installation, inspection, service, repair and maintenance service on the Safe Path Systems.  Plaintiffs also informed the NYCDOE about its ownership of the patents, copyrights and trademarks underlying the Safe Path Systems.  Despite having received these letters, NYCDOE employees have continued to wrongfully hire and employ uncertified contractors, including defendants Tri-State, Total Gym, Guardian, and technicians for inspection, service, repair and maintenance of the installed Safe Path Systems in clear violation of Plaintiffs' rights and New York State law.

92.     The most recent violation came to Plaintiffs' attention on April 14, 2015 when Plaintiffs received a telephone call from a company called United Steel Products wanting to purchase Safe Path Systems.  The representative from United Steel Products informed Plaintiffs that their company had just been awarded a five-year contract by the NYCDOE to install Safe Path Systems in schools throughout the five boroughs of New York City.  United Steel Products has never been certified or trained by Safe Path to install or maintain Safe Path Systems and admitted to Plaintiffs that it does not normally do this work.

93.     Prior to this, in or around 2001-2002, Volkert Braran, Director of Program Management for the NYCDOE and Capital Project Coordinator for the NYCSCA, chose Safe Path Systems, as required by the NYCSCA Specifications, for a large capital project in New York City.

At the time he selected Safe Path, Mr. Braran knew that it was a proprietary system. Plaintiffs are informed and believe that he and Defendant John Shea nevertheless told their borough managers to instruct the general contractors working on the project not to use Plaintiffs for installation and maintenance. Plaintiffs are informed and believe that such instructions were part of the coordinated retaliation aimed at Plaintiffs for their actions in blowing the whistle on Safe Path Systems compliance problems throughout New York City and State.

94.     Plaintiffs have copies of emails indicating that Borough Managers Chris Coyle, Thomas Fanezzi and Chris D'Alimonte indicating that they not only instructed the general contractors on the foregoing project not to use Plaintiffs, they also recommended that they use YES instead. Coyle even told one contractor that a Safe Path Systems representative recommended YES, which was a blatant lie.

95.     Similarly, in late 2010, Donald Dross, Brooklyn Borough Manager for the NYCDOE, requested specifications and instructions from Plaintiffs for the Safe Path System. When Plaintiffs later called Dross to follow up about his request, Dross told them that he would be using YES for all of the Safe Path work instead. Two days later, every existing request for proposal for Safe Path work in New York City was cancelled and all of the work was directed to YES. This was not a coincidence.

96.     Parmanand Ramphal is Bronx Borough Manager for the NYCDOE. In 2011-12, after Plaintiffs alerted Mayor Bloomberg and Governor Cuomo that 100 gym partitions in the Bronx were missing Safe Path Devices, orders for Safe Path equipment started to come in. Acting on Braran and Shea's orders, however, Ramphal instructed his general contractors not to use Safe Path to perform the installation and maintenance work. He also instructed the general contractors not to pay Safe Path for the systems that had already been installed and imposed unreasonable and expensive requirements on Plaintiffs in connection with jobs that had not been completed. As a

result, Plaintiffs are still owed more than $300,000 for Safe Path Systems they installed in the Bronx.  At x 970, two partitions were left for several months both with non-functioning safety devices and one falling off the tracks.  It was not until the principal at Bathgate demanded that the doors be fixed in an email entitled "Dangerous Situation at Bathgate" that Plaintiffs were finally contacted to do the work at x 970.  Ramphal told one of the general contractors that he believed he would be "put out of business" if he used Safe Path.

97.    Peter Mischler is Operations Manager for NYCDOE electricians.  Mr. Mischler ran a training session at the Boys and Girls High School in Brooklyn on or about March 31 and April 1 of 2010 and hired YES to train NYCDOE electricians attending the session how to by-pass the Safe Path Systems.  Tampering with and by-passing safety devices is illegal under Education Law §409-f.  Mr. Mischler's and YES' actions were unlawful.  This too was part of the scheme to drive Plaintiffs' out of business in retaliation for blowing the whistle about systemic partition safety compliance problems.

**98.**    Like their counterparts in ESBOCES and Nassau BOCES, the foregoing employees of NYCDOE participated in the scheme to drive Plaintiffs out of business in New York.  In the process, they induced infringement of Plaintiffs intellectual property rights by YES and others and unlawfully interfered with Plaintiffs' business relationship with schools located in New York City.

### 4.   Educational Data Services ("EDS")

99.    EDS is a private company that provides "cooperative procurement management" services to school districts throughout New York State.

100.    Although there is no EDS bid for electric partition safety systems, YES nevertheless been using EDS to illegally obtain work on Safe Path Systems throughout the State of New York.  In many cases, YES' bids delivered through the EDS system appear to be significantly below prevailing wage.

101.    Kathleen Cole brought Plaintiffs' concerns about YES's conduct to the attention John O'Connor, Vice President of EDS, in or about March of 2013.

102.    Plaintiffs are informed and believe that EDS continues to allow YES and the other defendants to use its procurement services to obtain Safe Path Systems work by manipulating the bidding process.  As a result, EDS has knowingly induced infringement of Plaintiffs' intellectual property rights and unlawfully interfered with Plaintiffs' business relationships with EDS participating districts.

### E.  Defendants Infringed and/or Induced Infringement of the '030 Patent

103.    Between October 17, 1991 and October 17, 2011, the term of the '030 Patent, GDRI Safe Path and their authorized licensees were the only entities that could lawfully follow the '030 Patent to install, inspect, service repair and maintain Safe Path Systems.

104.    During the term of the '030 Patent, any work that required maintenance under the '030 patent could not be put out for bid by any municipality, company or school district since only GDRI and Safe Path could perform the patented maintenance procedure without infringing or inducing infringement of the '030 patent.

105.    On numerous occasions between October 17, 1991 and October 17, 2011, Defendants put work out for bid and/or induced others to put out work for bid (or enabled them to circumvent the bidding process altogether) that invited unauthorized companies, including YES, Guardian, Tri-State and Total Gym Repairs, to perform patented maintenance and other services on Safe Path Systems.

106.    By putting the Safe Path Systems maintenance work out for bid and/or enabling bid circumvention during the term of the '030 Patent, the Defendants willfully and knowingly induced infringement of the '030 Patent.

28

107.    By accepting bids from entities other than Plaintiffs or their authorized service providers to perform patented maintenance procedures on the Safe Path Systems, the Defendants willfully and knowingly induced infringement of the '030 Patent.

108.    By submitting bids and performing patented installation, inspection, maintenance and repair services on Safe Path Systems during the term of the '030 Patent, Defendants YES, Tri-State, Total Gym Repairs and Guardian willfully and knowingly engaged in patent infringement in violation of federal law.

109.    Defendant Guardian Gym Equipment manufacturers and sells partition door safety devices, known as the "Guardian Personal Protection System".  These systems infringed the '030 and Guardian was sent cease and desist letters to that effect.  Nevertheless, Guardian Personal Protection Systems were installed in dozens of schools throughout New York State.  All of the Guardian Personal Protections Systems that were installed prior to October 17, 2011 infringe the '030 Patent.

110.    Guardian claims in its marketing literature that the Guardian Personal Protection Systems were approved by NYSED.  To the extent these claims are true, NYSED Office of Facilities Planning induced infringement by of the '030 Patent in all of the schools that installed the Guardian Personal Protection System prior to the expiration of the '030 Patent.

111.    On or about May 5, 2015, Peter Mucciolo of Tri-State contacted Stephen Cole looking to order Safe Path Systems equipment for use at various locations.  Mr. Cole declined to sell him the equipment because Tri-State is not certified to install or work on Safe Path Systems.  Plaintiffs are informed and believe that there have been many other occasions (both before and after expiration of the '030 patent) where Tri-State has performed maintenance and repair services on Safe Path Systems in school buildings without authorization from the manufacturer.  Like YES, it has also supplied the districts with false documentation taken from Plaintiffs' Manufacturer

Materials in an effort to document regulatory compliance.

**F.  Defendants Infringed Plaintiffs Copyrights in the Manufacturer Materials**

112.    Plaintiffs and their authorized licensees are the only entities that can lawfully reproduce, distribute and use the copyrighted Manufacturer Materials and use them to perform certified inspection and maintenance on Safe Path Systems.

113.    Plaintiffs are informed and believe that the Defendants made numerous unauthorized copies of all or substantial portions of the Manufacturer Materials in order to create bid and contract specifications and solicit bids from unauthorized entities to perform work on the Safe Path Systems and to document regulatory compliance.  In doing so, Defendants' willfully and knowingly infringed or induced the infringement of Plaintiffs' copyrights in the Manufacturer Materials.

114.    Plaintiffs are informed and believe that the Defendants made unauthorized copies of the Manufacturer Materials and used them to submit falsified bids and perform and document work on the Safe Path Systems for regulatory compliance purposes.  In doing so, the Defendants willfully and knowingly infringed Plaintiffs' copyrights.

115.    In many instances, the Defendants simply removed Plaintiffs' name from the Manufacturer Materials and either left blanks or substituted their own names in the place of Plaintiffs' name.

116.    Plaintiffs are informed and believe that Defendants have infringed and will continue to infringe Plaintiffs' copyrights by using unauthorized copies of its Manufacturer Materials to solicit bids and perform installation and maintenance services on Safe Path Systems unless enjoined by this Court.

**G.  Defendants Infringed Plaintiffs Trademarks and Engaged in Acts of Deception and Unfair Competition**

117.  Safe Path Systems are currently installed on approximately 4,700 of the electrically operated partition doors in schools throughout New York State.  Under Regulation 155.25, those systems must be maintained in accordance with the manufacturer's specifications. Safe Path's specifications require that inspections and maintenance be done at least <u>annually</u> and that all work be done by manufacturer <u>certified</u> and trained representatives.  See Exhibit 1 ("Manufacturer's Instructions").

118.  Defendants have engaged in trademark infringement, deceptive acts and practices by soliciting bids and awarding contracts to maintain Safe Path Systems to uncertified vendors in violation of Safe Path's Manufacturer's Instructions and New York State Education Law.

119.  Defendants YES, Tri-State, Total Gym Repairs and Guardian routinely have performed only the most cursory inspections of Safe Path Systems, installed substandard, non-OEM parts falsely claiming that these parts meet Safe Path Specification, and have made little or no effort to properly maintain them.  In many cases, they simply disabled, or instructed NYCDOE electricians how to disable the equipment or intentionally damaged the equipment in order to incur repair and replacement costs.

120.  Defendants have generated and maintained false records, sometime still bearing Plaintiffs name and registered trademarks, in connection with maintenance work that was either not done at all or performed badly by unauthorized technicians.

121.  Plaintiffs are informed and believe that Defendants have used Plaintiffs registered trademarks and documentation in other ways that are likely to cause confusion or mistake as to the source of services performed on Safe Path Systems.

122.  The forgoing false and deceptive acts and practices are extremely harmful to Plaintiffs' reputation and the good will it has established over the years as the premier manufacturer of electrically operated partition safety devices.  These false and deceptive acts and practices could

also expose Plaintiffs to legal liability.  They are likely to continue unless enjoined by this Court.

### H.  Plaintiffs' Efforts to Seek Relief

123.    Since 2007, Plaintiffs consistently have been making demands of Defendants to comply with the law so far to no avail.

124.    In February of 2009, Plaintiffs contacted their legislative representatives in Albany and reported the matter to the Suffolk County District Attorney's Office, the New York Department of Labor, the New York City Office of the Special Commission of Investigations and the office of the New York State Comptroller.  Since doing so, their once thriving business has been devastated beyond repair.

125.    Having exhausted all administrative remedies, Plaintiffs filed an Article 78 action in New York State Supreme Court in Manhattan on or about March 2, 2011.  That action was dismissed in April of 2012 for lack of standing.  The Court never reached the merits of Plaintiffs' claims.

126.    In October of 2012,  Plaintiffs filed a federal §1983 action against Defendants NYCDOE and NYSSCA, John Shea, Volkert Braren, Chris Coyle, Chris D'Alimonte and Thomas Fanizzi for retaliation.  That action is still pending.  It seeks relief for civil rights violations that are different from the relief sought herein.

127.    Counsel for the Defendants in the foregoing actions have made countless representations to Plaintiffs that their clients are in compliance with Education Law § 409-f and Regulation 155.25.  If this is indeed true statewide, it means that all of the 4,700 Safe Path Systems that have been installed throughout New York State are now being maintained or serviced annually without the involvement of Plaintiffs.  Since Safe Path's price for annual maintenance services is $800, Plaintiffs' damages are in excess of $3,760,000 per year.

## COUNT I

## INFRINGEMENT OF THE '030 PATENT

128.     Plaintiffs incorporate Paragraphs 1-128 of its Complaint as fully set forth herein.

129.     Plaintiffs at all relevant times has been the owner of the exclusive rights under the United States Patent Act of the '030 patent, which is the subject of valid Certificates of Registration issued by the U.S. Patent and Trademark Office.

130.     Among the exclusive rights granted to Plaintiffs under the Patent Act is the exclusive right to practice the invention and the right to prevent others from doing so during the term of the patent without proper authorization from Plaintiffs.  Plaintiffs are informed and believe that Defendants, without the permission or consent of Plaintiffs, have directly or indirectly infringed one or more of the claims of the '030 patent, either literally or under the doctrine of equivalents, in violation of by 35 U.S.C. § 271 by performing and/or inducing others to perform maintenance and other services on Safe Path Systems in schools throughout the City and State of New York.

131.     By putting the Safe Path Systems maintenance work out for bidding and accepting bids from entities not authorized by Plaintiffs to perform such work during the term of the '030 Patent, the School Defendants induced infringement of the '030 patent.

132.     By using specifications that require competing systems to use many of the patented features of the Safe Path System, Defendants induced infringement.

133.     By submitting bids and performing patented installation, inspection, maintenance and repair services on Safe Path Systems during the term of the '030 Patent, Defendants YES, Tri-State, Total Gym Repairs and Guardian infringed one or more of the claims of the '030 patent.

134.    By manufacturing and selling the Guardian Personal Safety System, Guardian and James Petriello infringed the '030 Patent.

135.    Plaintiffs are informed and believe that Defendants had actual notice of the existence of the '030 patent through their long-standing participation in the gym door safety products market and their longstanding relationship with Plaintiffs and through the notices that appear in the Manufacturer Materials.

136.    On information and belief, the School Defendants knew of or were willfully blind to the fact that their actions with respect to Safe Path Systems would induce or contribute to the direct infringement of the '030 patent.

137.    Without the ability to enforce its '030 Patent and its other intellectual property rights, Plaintiffs will not have the resources to sustain the extensive commitment to research and development that has enabled them to lead the way in creating gym door safety products that save lives.

138.    Plaintiffs have been damaged by Defendants' infringement of the '030 patent and are entitled to just compensation.

## COUNT II

## COPYRIGHT INFRINGEMENT

139.    Plaintiffs incorporate Paragraphs 1-138 of its Complaint as fully set forth herein.

140.    Plaintiffs are and at all relevant times have been the owner of the exclusive rights under the United States Copyright Act of the copyrighted Manufacturer Materials, which are the subject of valid Certificates of Registration issued by the Register of Copyrights.

141.    Among the exclusive rights granted to Plaintiffs under the Copyright Act is the exclusive right to use reproductions of all or portions of the Manufacturer Materials and use them to submit bids and perform maintenance services on the Safe Path System.  Plaintiffs are informed

34

and believe that Defendants, without the permission or consent of Plaintiffs, have made reproductions of all or significant portions of the Manufacturer Materials, emails and letters and used them to request and submit bids and perform maintenance services of Safe Path devices in schools throughout the City and State of New York.

142.   Plaintiffs are informed and believe that the foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiffs.

143.    As a result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorneys' fees and costs pursuant to 17 U.S.C. § 505.

144.   Defendants' conduct is causing and unless enjoined by this Court will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law and are entitled to injunctive relief pursuant to 17 U.S.C. §§ 502 and 503 prohibiting Defendants from further infringing Plaintiffs' copyrights  and ordering Defendants to destroy all copies of the Manufacturer Materials and any bidding materials made in violation of Plaintiffs exclusive copyrights.

## COUNT III

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

145.    Plaintiffs incorporate Paragraphs 1-144 of its Complaint as fully set forth herein.

146.   Plaintiffs are and at all relevant times have been the owner of the exclusive rights under the United States Trademark ("Lanham") Act of the SAFE PATH SYSTEMS and SAFE PATH trademarks, which are the subject of valid Certificates of Registration issued by the United States Patent and Trademark Office.

147.   Among the exclusive rights granted to Plaintiffs under the Lanham Act is the exclusive right to use the trademarks in commerce. Plaintiffs are informed and believe that

35

Defendants, without the permission or consent of Plaintiffs, used the trademarks to request and submit bids and perform maintenance services of Safe Path Systems in schools throughout the City and State of New York, thereby creating the false impression that the services were performed by appropriately trained personnel and in accordance with Safe Path's specifications as required by law.

148.     Defendants' actions as set forth above are likely to cause confusion, mistake or deception as to the Plaintiffs' sponsorship or endorsement of Defendants' goods and services and create the false impression that they originate from, are affiliated or connected with or are licensed, sponsored, authorized or approved by Plaintiffs.

149.     Defendants' activities constitute trademark infringement, false designation of origin, false representation, unfair competition and false advertising in violation of 15 U.S.C. § 1125(a), and deceptive acts and practices in violation of New York General Business Law Sections 133, 349 and 360-L.

150.     Plaintiffs are informed and believe that the foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiffs.

151.      As a result of Defendants' infringement of Plaintiffs' trademark rights, Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1117, punitive damages under New York General Business Law and attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

152.     Defendants' conduct is causing and unless enjoined by this Court will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief prohibiting Defendants from further infringing Plaintiffs' trademarks and ordering Defendants to destroy all copies of any materials that contain them.

**COUNT IV**

## TORTIOUS INTERERENCE WITH BUSINESS RELATIONSHIPS

153.     Plaintiffs incorporate Paragraphs 1-152 of its Complaint as fully set forth herein.

154.     Plaintiffs had existing business relationships with 4,700 school districts in which Safe Path Systems have been installed.  Plaintiffs had and continue to have a reasonable expectation that these relationships will result in ongoing maintenance and service work as required by Education Law § 409-f and Commissioner's Regulation § 155.25.

155.     In addition, there are still many schools throughout New York state that have electrically operated partitions that have not been outfitted with safety systems as required by Education Law § 409-f.  Plaintiffs had and continue to have a reasonable expectation that these relationships would and will result in Safe Path Systems installation, maintenance and service work as required by Education Law § 409-f and Commissioner's Regulation § 155.25.

156.     Defendants knew or should have known about the statutory and regulatory requirements regarding the installation, maintenance and servicing of safety systems for electrically operated partitions.

157.     Defendants have in fact caused business to be diverted from Plaintiffs and their actions were done knowingly and intentionally with malice in retaliation for Plaintiffs' actions in reporting deficiencies in compliance with Education Law Education Law § 409-f and Commissioner's Regulation § 155.25 to the New York State Attorney General and other state officials.

158.     Defendants conduct in failing to comply with the manufacturer's instruction concerning maintenance, as required by Regulation 155.25 was unlawful and amounted to a separate crime or independent tort in addition to causing injury to Plaintiff.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(a)      Declaring that Defendants have failed to comply with Educational Law § 409-f and Regulation § 155.25;

(b)      Declaring that Defendants have infringed, directly, contributorily, and/or by inducement, the '030 Patent;

(c)      Declaring that Defendants have infringed and continue to infringe, directly, contributorily and/or by inducement, Plaintiffs' copyright in the Manufacturer Materials;

(d)      Declaring that  Defendants  have infringed and continue to infringe, directly, contributorily and/or by inducement, Plaintiffs' Trademarks.

(e)      Permanently enjoining Defendants and their officers,  agents,  and

employees, and  those persons in active concert or participation with any of them, and their successors and assigns from infringement, inducement of infringement, and contributory infringement  of  the Manufacturer Materials and Trademarks,  including  but  not  limited  to  an injunction against making copies of the Manufacturer Materials and/or Trademarks and using them for the purpose of making or soliciting bids for maintenance work on any Safe Path Systems.

(f)      Awarding  Plaintiffs  damages  resulting f rom Defendants' infringement of the '030 Patent, the Manufacturer Materials and Trademarks in an amount no less than a reasonable royalty;

(g)      Ordering Defendants to comply with Education Law 409-f, Regulation 155.25 and the NYCSCA Specifications;

(h)      Awarding Plaintiffs damages resulting from Defendants' tortious interference with Plaintiffs' prospective business relationships, deceptive acts and practices and unfair competition in an amount to be proven at trial;

(i)      Declaring that  Defendants'  infringement  of  the '030 Patent, the Manufacturer

Materials and the Trademarks has  been  and continues to be willful, and awarding Plaintiffs

treble damages in light of Defendants' willful infringement;

(j)     Declaring that Plaintiffs be awarded pre-judgment and post-judgment interest at the

maximum rate allowed by law;

(k)     That this case be deemed exceptional and attorneys' fees be awarded

pursuant to 35 U.S.C. § 285, 17 U.S.C. § 505 and 15 U.S.C. § 1117 that Plaintiffs be awarded

its reasonable attorneys' fees, expenses, and costs incurred in connection with this action; and

(l)     That this Court order such other and further relief as the Court may deem just and

proper.

## JURY DEMAND

Plaintiffs hereby demands trial by jury in this action on all issues so triable.

Dated:  July 29ne 1, 2015

BAHNMULTER LLP

Katherine Daniel

_____
Katherine J. Daniels
555 Fifth Avenue, FL 14
New York, New York 10017
212-447-4700
kdaniels@bmgllp.com
*Attorneys for Plaintiffs*

Eric Su
FORDHARRISON LLP
100 Park Avenue, Suite 2500
New York, New York 10017
212-453-5900
esu@fordharrison.com
*Of Counsel*

39