**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GYM DOOR REPAIRS, INC. and SAFEPATH SYSTEMS LLC | ) ) ) |
| Plaintiffs, v. | ) Civil Action No. 15-CV-4244 (JGK) ) |
| YOUNG EQUIPMENT SALES, INC., YES SERVICE AND REPAIRS CORPORATION, RICHARD YOUNG, BRIAN BURKE, DENNIS SCHWANDTNER, GUARDIAN GYM EQUIPMENT, QAPALA ENTERPRISES, INC., JAMES PETRIELLO, TRI-STATE FOLDING PARTITIONS, INC.,  PETER MUCCIOLO, EDUCATIONAL DATA SERVICES, INC., TOTAL GYM REPAIRS, INC., CARL THURNAU individually and as DIRECTOR  of  NEW  YORK  STATE DEPARTMENT OF EDUCATION OFFICE OF FACILITIES PLANNING, NEW YORK STATE SCHOOL FACILITIES ASSOCIATION, SCHOOL FACILITIES MANAGEMENT INSTITUTE, EASTERN SUFFOLK BOCES, NASSAU COUNTY BOCES, BELLMORE PUBLIC SCHOOLS, NEW YORK CITY DEPARTMENT OF EDUCATION, | ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants , | ) ) |

**SECOND AMENDED VERIFIED COMPLAINT**

## INTRODUCTION

Plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safe Path Systems LLC ("Safe Path") (collectively "Plaintiffs"), through their attorneys, BahnMulter LLP, bring this action against Defendants Young Equipment Sales, Inc., YES Service and Repairs Corporation,  Richard Young, Brian Burke, Dennis Schwandtner (collectively referred to herein as "YES"), Guardian Gym Equipment, Qapala Enterprises, Inc., James Petriello (collectively referred to herein as "Guardian"), Tri-State Folding Partitions, Inc., Peter Mucciolo (collectively referred to herein as "Tri-State"), Educational Data Services, Inc. ("EDS"), Total Gym Repairs, Inc. ("Total Gym Repairs"), Carl Thurnau individually and as Director of the New York State Department of Education Office of Facilities Planning ("Thurnau"), New York State School Facilities Association ("NYS SFA"), School Facilities Management Institute ("SFMI"), Easter Suffolk BOCES ("ESBOCES"), Nassau BOCES, Bellmore Public Schools ("Bellmore"), New York City Department of Education ("NYCDOE") (collectively, "Defendants") to obtain permanent injunctive relief, actual damages, treble damages, attorneys' fees, and costs for Defendants' infringement of Plaintiff's asserted copyrights, patents and trademarks and tortious interference with business relationships.  The allegations are made upon actual knowledge with respect to Plaintiffs' own acts and information and belief as to all other matters.

## NATURE OF THIS ACTION

1.	This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.,* the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*., and the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and related state statutes and common law.  It is brought by Plaintiffs against Defendants for Defendants' infringement of U.S. Patent No. 5,244,030 (the "'030 Patent"), unauthorized use of the materials covered by U.S. Copyright Registration No. TXu 1-803-046 (the "Manufacturer Materials"), infringement of U.S. Trademark Registration Nos.

1935394, 3894751, 3894752, and 4055419 and actions that constitute unfair completion, deceptive practices and tortious interference with business relationships.

## THE PARTIES

2.      Plaintiff GDRI is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 3500 Sunrise Highway, Great River, New York 11739.

3.      Plaintiff Safe Path is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business at 3500 Sunrise Highway, Great River, New York 11739.

4.      Defendant Young Equipment Sales, Inc. is a domestic business corporation with a principal place of business at 325 Rabro Dr., Suite 1, Hauppauge, New York 11788.

5.      Defendant YES Service and Repairs Corporation is a domestic business corporation with a principal place of business at 145 Lodge Avenue, Huntington Station, New York 11476.

6.      Defendant Richard Young is an individual whose business address is 325 Rabro Dr. Suite 1, Hauppauge, New York 11788.  Mr. Young is Chief Executive Officer of Young Equipment Sales, Inc.

7.      Defendant Brian Burke is an individual whose business address is 325 Rabro Dr. Suite 1, Hauppauge, New York 11788.  Mr. Young is Chief Operating Officer and Chief Financial Officer of Young Equipment Sales, Inc.

8.      Defendant Dennis Schwandtner is an individual whose business address is 145 Lodge Avenue, Huntington Station, New York 11476.  Mr. Schwandtner is Chief Executive Officer of Defendant YES Service and Repairs Corporation.

3

9.      Defendant Guardian Gym Equipment is a wholly owned subsidiary of Qapala

Enterprises, Inc. a domestic business corporation both companies have a principal place of

business at 299 Christian Herald Road, Valley Cottage, New York 10989.

10.     Defendant James Petriello is an individual who has a business address at 299

Christian Herald Road, Valley Cottage, New York 10989.  Mr. Petriello is President of

Guardian Gym Equipment and Qapala Enterprises.

11.     Defendant Tri-State Folding Partitions, Inc. is a domestic business corporation

with a principal place of business at 608 Chestnut Ridge Road, Chestnut Ridge, New York

10977.

12.     Defendant Peter Mucciolo is an individual whose business address is 608

Chestnut Ridge Road, Chestnut Ridge, New York 10977.  Mr. Mucciolo is Chief Executive

Officer of Tri-State Folding Partitions, Inc.

13.     Defendant Total Gym Repairs, Inc. is a domestic business corporation with a

principal place of business address at 214 Glenmore Street, East Williston, New York 11596.

14.     Defendant Carl Thurnau is Director of the New York State Education

Department, Department of Facilities Planning is a New York State governmental department

with a principal place of operations at Room 1060 Education Building Annex, Washington

Avenue, Albany, New York 12234.

15.     Defendant the New York State School Facilities Association is a professional

association of more than 600 directors of school facilities, facilities managers, head custodians

and health and safety coordinators and other key school facilities personnel throughout New

York State with a principal place of business at 136 Evert Road, Albany, New York 12205. It

was formerly known as the New York State Superintendents of School Buildings and Grounds,

Inc. ("NYS SBGA").

4

16.     Defendant School Facilities Management Institute ("SFMI") is a non-profit organization created in 2003 by Defendant Carl Thurnau and the Board of Directors of NYS SBGA, the predecessor of Defendant NYS SFA, for the purpose of providing education and training programs on school facilities management issues throughout New York State with a principal place of business at 136 Evert Road, Albany, New York 12205

17.     Defendant Eastern Suffolk BOCES is a Board of Cooperative Educational Services that provides purchasing and other cooperative programs and services to 66 public school districts located in Suffolk County with principal place of operations at 201 Sunrise Highway, Patchogue, NY  11772.

18.     Defendant Nassau BOCES is a Board of Cooperative Educational Services that provides purchasing and other cooperative programs and services for 56 public school districts located in Nassau County with principal place of business at 71 Clinton Road, Garden City, New York 11550-9195.

19.     Defendant New York City Department of Education is a municipal government department with principal place of operations at, inter alia, Tweed Courthouse, 52 Chambers Street, New York, NY  10007.

20.     Bellmore Public Schools is a New York school district with offices at 580 Winthrop Avenue, Bellmore, New York 11710.

21.     Defendant Educational Data Services, Inc. is a New Jersey corporation with a principal place of address at 236 Midland Avenue, Saddle Brook, New Jersey 07663.  EDS conducts business regularly in the State of New York.

**JURISDICTION AND VENUE**

22.     This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331 and 1338 because this action arises under the patent, copyright and

trademark laws of the United States, including 35 U.S.C. § 271 *et seq.* and 17 U.S.C. § 101 *et*

S*eq*. and 15 U.S.C. §§ 1051 *et seq*. The Court has supplemental jurisdiction over all state law claims

under 28 U.S.C. § 1367(a) and under principles of pendent jurisdiction.

23.     The Court has personal jurisdiction over Defendants because Defendants have

transacted business in this judicial district and have committed acts of infringement in this

judicial district.

24.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

**FACTUAL BACKGROUND**

A.     **Education Law § 409(f) and Regulation § 155.25**

25.     In or around August 2001, following the tragic death of two students

in schools located in New York State, the legislature passed and Governor George Pataki signed

into law Education Law § 409-f, which requires all public and private schools, located in the

State to install and maintain safety devices on all electrically operated partition doors to stop the

forward and stacking motion of the doors when a body or other object is present.   Education

Law § 409-f and the regulations that the Commissioner of Education promulgated in response to

it, Commissioner's Regulation ("Regulation") § 155.25, Safety Requirements for Electrically

Operated Partitions, require school districts to post conspicuous notices in the immediate

vicinity of the operating mechanism as to their safe and proper operation and supervision and

must have established procedures concerning the notification and training of their employees

who regularly use the partition doors.   They must inform their employees of the penalties for

disabling the safety devices on the doors and they must maintain records indicating that the

safety devices have been maintained in accordance with the manufacturer's instructions.   Any

person who disables or directs another to disable a safety device is subject to a fine and up to 15 days in jail or both.

26.     Enforcement of and compliance with Education Law § 409-f and Regulation § 155.25 are critically important because electrically operated partition doors without safety systems in place or with safety systems that have been disabled or not properly maintained pose serious threats to the life and safety of students and/or any individuals who come in contact with them. Districts risk loss of their state aid if an annual fire and safety inspection reveals deficiencies, such as the use of non-compliant equipment or missing training and maintenance records, if the deficiencies are not rectified immediately.

27.     In furtherance of Education Law § 409-f and Regulation § 155.25, in or around 2001 and 2002, New York State initially appropriated approximately $26.5 million in State funds for the installation of safety devices in each and every school within the State using electrically operated partition doors.  According to the sponsors of the legislation, an additional funding in excess of $100 million was appropriated for ongoing compliance with Education Law § 409-f and Regulation § 155.25.  These funds were made available to NYSED to be used to reimburse school districts for the cost of compliance.

28.     Every safety device used in New York State must be submitted to the NYSED Office of Facilities Planning for review and approval before installation to ensure compliance.

29.     The Safe Path System was approved in or about 2001 and has been installed in over 4,700 schools throughout the State of New York.

C.     **New York City School Construction Authority Specifications**

30.     The New York City School Construction Authority ("NYCSCA") is responsible for

regulating school construction and maintenance in New York City. The NYCSCA has the power

and duty to, *inter alia*, carry out the following functions: (i) to design, construct, reconstruct,

improve, rehabilitate, maintain, furnish, repair, equip and otherwise provide for educational

facilities, as defined in section twenty-five hundred ninety-a of the education law; (ii) to make and

execute contracts and all other instruments necessary or convenient for the exercise of its functions,

powers and duties . . . ."  See Public Authorities Law § 1728.

31.     In or around 2003, the NYCSCA issued the New York City School Construction

Authority Manual (the "Specifications").  The Specifications set forth details and instructions

regarding the design, construction, and maintenance of electrically operated partitions in the

City.

A relevant excerpt from the Specifications is annexed hereto as Exhibit "3."

32.     Until 2012, Section 4(a) of the Specifications, entitled, "Infra-red Safety Detection

System," indicates the minimum criteria for the capabilities of the partition safety system and

subsection (b) mandates the following:

> The infra-red safety detection system shall be "Safe-Path" as manufactured by
> [GDRI], Huntington Station, NY – (631) 549-8745.

*See* Exhibit "3". (Emphasis added.)

33.     In 2012, the NYSCA removed Safe Path's name from the specifications.  The

timing demonstrates that Safe Path's name was removed from the specifications as part of the

retaliatory scheme described herein to punish Plaintiffs for reporting systemic non-compliance

with Ed. Law 409-f and Regulation § 155.25 and for filing an Article 78 proceeding – particularly

in light of the fact that the names of specific partition door manufacturers remain in the

Specifications.

**B.     The Safe Path System**

8

34.     Plaintiff GDRI has been in the business of installing, servicing and repairing electric folding doors and partitions for use in school gymnasiums for over 39 years.

35.     Following the tragic death of a student who was crushed by a school gym partition in 1991, GDRI, through its president, Stephen Cole, designed the "Safe Path System" (the "Safe Path System"), a life safety detection system for electric folding doors and partitions, which set the standard for the industry. At all relevant times, the Safe Path System has been the premier life safety detection system in the market.  It has been architecturally specified and installed in approximately eighty percent (80%) of the schools with electrically operated partition doors throughout New York State. The design, function and specifications of the Safe Path System meet the standards required by Education Law § 409-f and Regulation § 155.25 and have been approved by NYSED since 2001.

36.     On September 14, 1993, the United States Patent and Trademark Office issued United States Patent No. 5,244,030 (the '030 Patent) for "Electrically Operated Folding Operable Walls" and covering, among other things, mechanisms for (i) creating an infrared barrier curtain on opposite sides of an operating path of folding operable walls, (ii) shutting down the electrical operating circuit of folding operable walls when a physical obstruction enters into the operating path, and (iii) restarting the operation circuit of the folding walls after the obstruction is removed. A copy of the '030 Patent is attached hereto as **Exhibit 1**.  Plaintiff GDRI owns all right, title and interest in and to the '030 Patent.  Although the '030 Patent expired on October 17, 2011, acts of infringement and induced infringement that occurred prior to that date still fall within the statutory period for compensation.

37.     On November 14, 1995, the United States Patent and Trademark Office issued Registration No. 1935394 for the mark, "THE SAFE PATH SYSTEM."  Plaintiff GDRI owns all

9

right, title and interest in and to the SAFE PATH SYSTEM trademark.   A copy of the registration certificate is attached hereto as **Exhibit 2**.

38.     On December 21, 2010, the United States Patent and Trademark Office issued Registration Nos. 3894751 and 3894752 for the mark "SAFE PATH" for use in connection with electrically operated folding gym walls.  Plaintiff Safe Path owns all right, title and interest in and to the SAFE PATH trademarks.  Copies of the registration certificates are attached hereto as **Exhibit 3**.

39.     On November 15, 2011, the United State Patent and Trademark Office issued Registration No. 4055419 for the mark "SAFE PATH" for use in connection with installation, maintenance and repair services for electrically operated gym doors.  Plaintiff Safe Path owns all right, title and interest in and to this trademark. A copy of the registration certificate is attached hereto as **Exhibit 4**.

40.     At all times relevant herein, Plaintiffs have possessed the <u>exclusive</u> authority, knowledge and expertise to ensure that each Safe Path System is manufactured, installed, serviced, repaired, and maintained properly. To that end, Plaintiffs developed and tested specific installation and maintenance guidelines and procedures to be performed on the Safe Path System, which are necessary to ensure that they are installed and operated properly, and to achieve the highest level of safety with respect to the use and operation of electrically operated partition doors.  These guidelines and procedures have been approved by the NYSED Office of Facilities Planning.

41.     Plaintiffs' maintenance guidelines and procedures for the Safe Path System, provide, *inter alia*, that the installation, service, repair and/or and maintenance must be conducted by a Safe Path certified maintenance technician and/or contractor, and that service must be performed at least once a year.  A copy of the Safe Path System's Manufacturer's Instruction

("Safe Path System Instruction") is annexed hereto as part of **Exhibit 5**.

42.     In May of 2004, Plaintiffs met with Gerald Couse, NYSED Compliance Officer, and Defendant Thurnau about the best way for districts to achieve compliance with Education Law § 409-f and Commissioners Regulation § 155.25.  Thurnau and Couse asked Plaintiffs to produce a DVD to train school staff how to operate the Safe Path Systems.  In response to this request, Plaintiffs produced a DVD entitled "2005 Electric Partition Safe Path System Staff Training Procedure Materials" (the "Staff Training DVD") at a cost to GRDI of $50,000.  Plaintiff provided copies of the Staff Training DVD to each district receiving maintenance services from Safe Path. GRDI is the sole and exclusive owner of all right, title and interest in the Staff Training DVD, which is subject to copyright protection.   A photocopy of the Staff Training DVD is attached hereto as **Exhibit 6**. Only Plaintiffs and their duly licensed contractors, technicians and/or vendors can lawfully copy and use these materials to perform the necessary training for the Safe Path System.

43.     On March 27, 2012, the United States Copyright Office issued Registration Number TXu 1-803-046 covering Safe Path's Manufacturer's Instructions, Staff Training Transcript, Flyer Specifications, Installation Manual, Performance Specifications, Owner's Manual, Wiring Diagrams, and Training Program (the "Manufacturer Materials").  GRDI is the owner of all right, title and interest in the Manufacturer Materials.  A copy of the Registration Certificate and deposit specimens are attached hereto as **Exhibit 5.**

44.     Starting in 2004, at the urging of NY SED, Plaintiffs made efforts to certify other companies, including YES, to perform maintenance and repair work on Safe Path Systems.  Plaintiffs abandoned these efforts when it learned that YES was disabling, bypassing and otherwise not following the manufacturer's protocols for the Safe Path Systems and then charging districts to replace them at grossly inflated prices.

45.     There are currently more than 1,400 schools in New York City and another 4,200 in the rest of New York State with electrically operated partitions.  Safe Path Systems have been installed in approximately 4,700 (or roughly 80%) of the schools with electrically operated partitions statewide.

46.     Plaintiffs have and at all relevant times had a reasonable expectation that all 4,700 Safe Path Systems would be annually inspected, serviced and maintained in accordance with its specifications.  Plaintiffs' current price list for annual maintenances services is $800.

47.     Plaintiffs have never demanded fees that are excessive or unreasonable, given the costs associated with and the nature, size and scope of work to be performed on or relating to the Safe Path System or otherwise abused the rights and privileges conferred upon them under the patent, trademark and copyright laws of the United States.  In fact, as further explained below, Plaintiffs' list prices are in many cases, four (4) or more times lower than what YES has been charging school districts for maintenance, labor and parts for the Safe Path Systems.

C.     **The Defendants and Others Conspired to Infringe Plaintiffs' Intellectual Property Rights, Interfere With Plaintiffs' Business Relationships and Drive Plaintiffs Out of Business**

48.     On a number of occasions between 2003 and 2009, Plaintiffs met with David Clapp, the NYSED Fire and Safety Inspector, and other officials in NYSED's Office of Facilities Planning to discuss their concerns that schools with Safe Path Systems were not inspecting and maintaining their systems annually as required by the manufacturer's specifications and staff training was not being performed.  In fact, Plaintiffs knew that some schools were not inspecting or maintaining their systems at all.  Moreover, in some cases, it was clear to Plaintiffs that the Safe Path Systems had been tampered with, over-ridden or by-passed in direct violation of

12

Regulation §

155.25.

49.     To address these problems, Plaintiffs advocated for Fire Inspector review of each

districts' records of maintenance and staff training (required since 2001) as part of the annual fire

safety inspection that each district must conduct.

50.     It took the NYSED Office of Facilities Planning, which oversees compliance on

the annual fire safety reports, until the summer of 2009 to add the inspection of partition safety

systems to the annual Fire Safety Inspection List and this happened only after Plaintiffs reported

their concerns about compliance to the Governor, the Attorney General and the Senate and

Assembly sponsors of Education Law § 409-f in February of that year.

51.     The Attorney General's Office never investigated Plaintiffs' concerns regarding

non-compliance.  Instead it referred the matter to the Commissioner of Education who in turn

referred the matter to the Director of the NYSED Office of Facilities Planning for investigation.

52.     In or about October 2009, Kathleen Cole of Safe Path met with Defendant

Thurnau, Director of NYSED Office of Facilities Planning, to discuss her ongoing concerns about

Safe Path Systems inspection and maintenance and an alleged accident involving an electrical

partition with a Safe Path System in New York City.  When he disagreed with her about the scope

of the problem, Ms. Cole told Mr. Thurnau that she could name at least fifteen (15) schools in

New York City alone that were illegally operating with no safety device.  He told her to name

them and she would have the contracts for the Safe Path System installations.  When she refused

his offer insisting instead that he take concrete steps to address the problem throughout the State, a

very angry Mr. Thurnau told Kathleen Cole: ***"Compliance with the law is a financial decision on***

***my part. . . . I am putting you out of business.  You are done.  You are a rat.  I told you to stop***

***poking your nose where it does not belong."***  This is a chilling statement from the public official

ultimately responsible for insuring the safety of our schools.

53.    Defendant Thurnau (Director of the Office of Facilities Planning for NYSED and Co-Chairman and founder of SFMI), Joseph Van De Loo (the Executive Director of SBGA and SFMI), Fred Koelbel (Facilities Administrator for the Port Jefferson School District, Co-Chairman of Defendant SFMI, State Director for Defendant NYS SFA and the legislative liaison for both organizations) together with other NYS SFA and SFMI officers and members then agreed to use NYS SFA and SFMI conferences, meetings and newsletters to make good on Defendant Thurnau's threat to put Plaintiffs out of business as punishment for blowing the whistle on systemic non-compliance with § 409-f and Regulation 155.25.

54.  One of the first things they did was to change the official interpretation of Regulation § 155.25.  Whereas prior to October 2009, the Regulation was interpreted, consistent with its plain language, to require that work on safety devices had to be done by persons authorized and trained by the manufacturer to work on the systems, after October 2009 Thurnau and the other leaders of SFMI were interpreting it to mean that "any competent person" could perform maintenance services on the systems.  They set out to make sure that the member facilities directors and superintendents across the state were getting the message.

55.    The new interpretation is highly suspect in light of the importance of the systems in insuring public safety.  It was delivered repeatedly -- in an August 2009 NYSED newsletter, during a 2010 SFMI conference, at a 2011 SMFI Critical Issues Summit and during SBGA monthly meetings.  It has induced numerous school districts on Long Island, including, without limitation, Amityville, Bay Shore, Brentwood, Bellmore, Port Jefferson, West Hampton, South Hampton, Shelter Island, William Floyd, Levittown, Westbury, Locust Valley, Patchogue, North Shore, Roosevelt and Sayville, and many others across New York State, to violate the law and Plaintiffs' intellectual property rights by awarding Safe Path maintenance contracts to

unauthorized vendors who were not authorized to practice Plaintiffs' patented technology or use its copyrighted materials, have never received training from the manufacturer and are compromising the integrity of the Safe Path Systems with inferior, non-complaint replacement parts.

56.     At the 2009 SMFI Annual Conference, Mr. Thurnau stood up in front of the conference, put his hands behind his back as if being handcuffed, and told the two-hundred plus facilities directors in attendance that a "downstate company went to the Senate sponsors of [Education Law 409-f] and now the districts are required to do annual maintenance."  Plaintiffs got several calls the week after the conference cancelling work that had already been scheduled and were told that it was because of the maintenance problems that "they" created.

57.     Approximately five months after the 2009 SFMI Annual Conference, Defendant Richard Young and his son-in-law Dennis Schwandtner formed YES Service and Repair Corporation and immediately set out to take advantage of the lucrative opportunity afforded by the conspiracy to blackball Plaintiffs.  Either on its own or in concert with Thurnau, Van De Loo and Koelbel, YES came up with the idea of using the ESBOCES cooperative catalog furniture bid, the EDS folding partition repair service bid and municipal cooperative bids in Nassau County to surreptitiously obtain Safe Path Systems maintenance and repair work.  Not only did this plan enable YES to cut Plaintiffs' out of the picture, but it also enabled YES to insulate itself from the competitive bidding process altogether.  YES has not hesitated to use the opportunity to grossly overcharge school districts for the work.

58.     In 2009, Kathleen Cole started a new company called Fantastic Energy Solutions LLC for the purpose of selling energy saving fans for use in school gyms and auditoriums.  In 2010, the fans were selected by energy experts at NYSERDA to be one of ten products featured at the 2010 Sustainable School Environments School Facilities Management, Professional

Development Conference and Expo held on October 3-6 in Saratoga and sponsored by SFMI and

NYS SBGA (now NYS SFA).  Ms. Cole was thrilled, but also concerned that GRDI just been

blackballed by Thurnau and Koelbel at the 2009 SFMI Annual Conference, so she specifically

asked that Fantastic Energy Solutions LLC not be associated with GDRI in the conference

materials.  Much to her dismay, when she arrived in Saratoga she found that the vendor lists and

name tags identified the company as "Gym Door Repairs, Inc., dba Fantastic Energy Solutions

LLC".  Not only was this factually incorrect, it was done purposefully as part of the retaliation

scheme.

59.     A few months later, at a NYS SFA meeting held at the Riverview Restaurant in

Oakdake in the spring of 2011, Fred Koelbel and Defendant Thurnau advised attendees "don't listen

to what the Coles are saying" you do not need to use Safe Path or its certified representatives to

install, inspect or maintain Safe Path Systems.  Mr. Koelbel later told one of Plaintiffs' employees

that his district, Port Jefferson, would no longer be using Plaintiffs to service its Safe Path Systems

because Koelbel did not like Plaintiffs' "aggressive tactics" in telling the legislative sponsors of §

409-f about the systemic problems with § 409-f compliance.   In a January 27, 2014 email to a news

reporter, Mr. Koelbel defended his district's choice of YES by saying that "School districts have

been repeatedly told by NYSED (New York State Education Department) memoranda that any

qualified individual or firm can maintain the gym door partition apparatus."  He went on in that

email to explain to the reporter that contracts for Safe Path Systems maintenance and repair work

were "appropriately awarded to Young Equipment Sales thorough the Eastern Suffolk BOCES bid

in 2011 . . . and through the Educational Data Service Bidding Cooperative."  Mr. Koelbel knew at

the time he made these representations that neither of these bids included Safe Path Systems

maintenance and repair and that YES was using them surreptitiously to perform the work.

60.  SFMI has "chapters" throughout the State.  The President of the Nassau County

Chapter of SFMI is Kimberly Parahus, Director of School Facilities and Operations at Hewlett-Woodmere.  As is more fully explained below, Ms. Parahus wrote the first municipal cooperative bid that was inexplicably "split" and used by YES to hijack Safe Path Systems maintenance work and insulate it from the competitive bidding process in over 40 school districts in Nassau County.  In subsequent years, Joseph Hendrickson, Director of Facilities for Bellmore, was responsible for writing the municipal cooperative bids that were used by YES for the same purpose.  This was done with the knowledge and tacit approval of the Health and Safety Coordinator for Nassau BOCES.

61.  Laurie Conley, the Purchasing Agent for ESBOCES, and her assistant Donna Ball are both Regional Directors of the New York State Association of Municipal Purchasing Officials ("SAMPO"), which offers training about best practices in public purchasing.  As more fully detailed below, Conley and Ball are responsible for administering the ESBOCES catalog furniture cooperative bid that was used and continues to be used by YES to obtain Safe Path Systems maintenance and repair work and insulate it from the competitive bidding process in ESBOCES component districts.  Keith Anderson, Director of Facilities for ESBOCES, and Jonathan Hark, Health and Safety Coordinator for ESBOCES, who are respectively President and Vice President of NYS SFA, are well aware of the situation, as are Gary Bixhorn and Barbara Sallato, the Superintendent and Assistant Superintendent and yet the abuse continues unabated.

62.  Mr. Thurnau continues communicate his contempt for Plaintiffs to school personnel throughout the State.  For example, in the June 2015 issue of the "NYSED Office of Facilities Planning Newsletter" in an article entitled "All Students and staff Deserve Safe and Healthy School Facilities", Mr. Thurnau describes a sampling of the federal and state laws, rules and regulations dealing with health and safety.  His description of Ed. Law 409-f reads as follows:

> The board of education, trustees, principal or other person in charge of
> every public or private school or educational institution within the state,

> wherein classrooms or other facilities used by students are found to
> have electrically operated partitions, doors or room dividers, shall
> arrange for, and require that . . . ."

The ellipse is telling.  It omits entirely the legal substance of § 409-f, which requires all public and private schools in New York State to install safety devices on all electrically operated partition doors to stop the forward and stacking motion of the doors when a body or other object is present and maintain them in accordance with the manufacturer's instructions.  It would have been a very simple matter for Mr. Thurnau to complete the sentence and explain the substance of § 409-f, as he did with each of the other provisions reviewed in the newsletter.  There is no rational excuse for Thurnau's glaring omission other than to further the conspiracy by once again signaling his contempt for the Plaintiffs and this provision of the law.  A copy of the June 2015 Newsletter is attached hereto as **Exhibit 7**.

63.  In the August 2015 issue of the NYSED Office of Facilities Planning Newsletter Mr. Thurnau writes about potential problems with the pocket stacking area coverage for certain electrically operated partition safety systems that have not been correctly installed or maintained. The discussion highlights the importance of the requirement that these important safety devices be installed and maintained by qualified, trained technicians and in accordance with the manufacturer's instructions.   It was reckless for Mr. Thurnau and the other instructors at SFMI to represent that "any competent person" could do this work.  The safety systems are complex and the consequences of mistakes can be deadly.  To the extent that there are problems, Thurnau and his co-conspirators are largely to blame for failing to insure compliance from the start.

64.     The foregoing are examples of overt acts taken in furtherance of the agreement among Defendant Thurnau and the other individuals named above -- most of whom are affiliated through NYS SFA and SFMI -- to put Plaintiffs out of business.  As a result of these overt acts, Plaintiffs intellectual property rights are being routinely infringed by YES and Plaintiffs' other

18

competitors and Plaintiffs are being blocked from even competitively bidding on jobs to service and maintain their own safety systems.  As more fully detailed below, plaintiffs have gone from having excellent business relationships with virtually every school district in Nassau and Suffolk Counties to having almost no business in these counties at all.  In fact, they are now viewed as pariahs because they had the nerve to blow the whistle on non-compliance.  In New York City, requests for proposals and contracts have been cancelled and general contractors have been expressly instructed by NYCDOE employees not to use Plaintiffs to install and maintain Safe Path Systems.  The injury to Plaintiffs' business has been devastating.

### 1.  Eastern Suffolk BOCES

65.     Safe Path Systems are currently installed in virtually all ESBOCES component districts known by Plaintiffs to have electrically operated folding partitions.

66.     In October of 2011, after receiving copies of documents prepared by YES to do work on Safe Path Systems in Suffolk districts under the ESBOCES catalog furniture bid through Freedom of Information Law requests, Plaintiffs contacted ESBOCES.   Stephen Cole, President of Plaintiff GDRI and co-inventor of the Safe Path Systems, spoke and then met with John Connell, Keith Anderson, Director of Facilities for ESBOCES, and Jonathan Hark, Health and Safety Coordinator for ESBOCES.  At the time, Anderson and Hark were also President and Vice President respectively of Defendant NYS SFA.

67.     Mr. Cole gave Connell, Anderson and Hark copies of Ed. Law § 409-f and Commissioner's Regulation § 155.25 and the Safe Path maintenance and training materials.  He told them that YES was not only misusing the furniture catalog bid number to perform work on Safe Path Systems, but also that YES was using untrained technicians to service Safe Path Systems equipment and in many cases was simply bypassing these critical safety systems altogether.  Although they promised to do so, no one from ESBOCES ever contacted Mr. Cole

after that meeting to follow up. YES continued to use the furniture catalog bid number to perform work on Safe Path Systems in ESBOCES component districts and continues to do so to this day.

68.     On April 16, 2012, Kathleen Cole met with Laurie Conley, Purchasing Agent for ESBOCES and Donna Ball her assistant. She showed Conley and Ball a fabricated Safe Path materials list that YES was using under the auspices of the ESBOCE catalog furniture bid. Ms. Ball confirmed that the ESBOCES catalog furniture bid does not, and did not at the time, include Safe Path Systems repair and maintenance. She assured Ms. Cole that she had spoken with YES about its improper use of the ESBOCES catalog furniture bid. Ms. Conley promised Ms. Cole that at an upcoming meeting she would let purchasing agents for the 66 member districts know that there was no bid for partition and Safe Path Systems work with ESBOCES. To Ms. Cole's knowledge, this was never done.

69.     A few weeks later, to Ms. Cole's utter astonishment, ESBOCES awarded the 2012-13 catalog furniture bid to YES thereby enabling it to continue to use that bid number and the same fabricated materials list fraudulently to perform the Safe Path Systems maintenance and repair work in all 66 ESBOCES component districts for another year. It is unclear is how YES qualified for the bid in the first place since its Chief Financial Officer/Chief Operating Officer, Brian Burke, was indicted on criminal fraud charges in 2004 and plead guilty the following year. He has also been debarred by the Securities and Exchange Commission. Mr. Burke signed the ESBOCES catalog furniture bid on behalf of YES, a bid is that worth at least five to ten million dollars a year to YES.

70.     Plaintiffs next alerted Gary Bixhorn, then Superintendent of ESBOCES to the problem. Kathleen Cole told Mr. Bixhorn that YES was using the ESBOCES catalog furniture bid fraudulently to circumvent competitive bidding requirements for Safe Path Systems maintenance work in ESBOCES component districts. Ms. Cole told Mr. Bixhorn that the documentation YES was submitting to component districts in connection with their work on Safe

Path Systems included copyright protected material copied from Plaintiffs' Manufacturer

Materials with Safe Path's name and trademarks removed and replaced with indicia for YES.

Ms. Cole also pointed out other irregularities in YES's paperwork, including the fact that the

labor was being quoted at well below prevailing wage and that certified payrolls were not being

provided to the districts.  He told Ms. Cole to meet with his Assistant Superintendent.

71.    In August of 2012, Ms. Cole met with Barbara Sallato, Assistant

Superintendent of ESBOCES, and Laurie Conley about her ongoing concerns about YES' misuse

of the ESBOCES furniture catalog bid.  It was clear to Ms. Cole that Ms. Conley had not informed

Ms. Sallato of Ms. Cole's prior complaints.  During the meeting, Ms. Sallato said to Ms. Conley:

"What have you done about this?  This is very serious.  We could be sued."  Ms. Conley assured

Ms. Sallato that the problems with YES had been addressed.  A statement that Ms. Cole knew to

be untrue.

72.    In the same August meeting, Barbara Sallato promised Ms. Cole that she

would speak with Keith Anderson, Director of Facilities for ESBOCES about her concerns.

Ms. Cole sent multiple follow up letters to Keith Anderson all of which were ignored.

73.    ESBOCES awarded the catalog furniture bid to YES yet again in 2013-14.

74.    On April 25, 2013, Barbara Sallato sent a letter to all ESBOCES member

Superintendents informing them:

> "We have become aware that Kathleen Cole of Gym Door Repairs, Inc.
> is contacting a number of school districts with allegations regarding a
> competitor, Young Equipment Sales, as well as Eastern Suffolk BOCES.
> The allegations include misuse of various bids, violations of prevailing
> wage requirements as well as criminal activity on the part of the
> competitor.  It is also alleged that Eastern Suffolk BOCES has failed to
> prevent this inappropriate conduct on the part of the competitor.  By
> means of this correspondence we assure you that Eastern Suffolk
> BOCES has received the information presented by Ms. Cole on
> numerous occasions and has taken action which we believe to be
> appropriate under the circumstances.  Although an Eastern Suffolk
> BOCES Cooperative Bidding Program bid number was reflected on

21

certain invoices prepared by the competitor for services not
contemplated by a particular bid, the incidents appear to be isolated and,
to our knowledge, do not substantiate criminal intent."

The letter went on to say that "the school district should take all necessary steps to insure that the product or service being obtained is covered by the particular bid in question." Subsequent correspondence accused Ms. Cole of making false allegations. This message echoed the theme being perpetuated by Thurnau, Van De Loo and Koelbel through NYS SFA and SFMI, namely that Plaintiffs were "rats" and could not be trusted.

75.     ESBOCES officials, including Connell, Bixhorn, Anderson, Hark, Conley, Ball and Sallato knew that YES's fraudulent use of the ESBOCES furniture catalog bid to do Safe Path Systems work was far from isolated. In fact, the ESBOCES catalog bid is one of the primary vehicles YES has used to circumvent the competitive bidding requirements (and the labor laws) and to defraud the districts and their tax payers. ESBOCES officials named herein knowingly enabled and induced YES's deception by repeatedly awarding YES the furniture catalog bid thereby allowing YES to use that bid to do all of these things in furtherance of the conspiracy to destroy Plaintiffs' business.

76.     Plaintiffs are informed and believe that YES, using the ESBOCES furniture catalog bid, has submitted paperwork on hundreds of jobs for installation, maintenance and repair of Safe Path Systems in ESBOCES districts that infringe Plaintiffs' copyrights and trademarks and falsely state that YES is certified to work on Safe Path Systems when it is not. All of these jobs were awarded without bids and in most (if not all) cases YES charged the districts far more than Plaintiffs would have charged for the same work. For example, Safe Path's price list for a new safety system reflects a cost of $1,468. The price list YES fabricated using altered copies of Plaintiffs' Manufacturer Materials reflects a cost of $7,995 for the same system.

77.     Plaintiffs are informed and believe that ESBOCES has also engaged in direct copyright infringement by making unauthorized copies of Plaintiffs' staff training materials and using them to conduct Safe Path Systems training programs for the 66 ESBOCES component districts.  Component districts pay ESBOCES for this service.  Plaintiffs never authorized this commercial use of its training materials by ESBOCES.

78.     The foregoing paragraphs evidence numerous overt acts by ESBOCES employees in furtherance of the conspiracy to drive Plaintiffs out of business, infringe their intellectual property rights and interfere with their business relationships with individual ESBOCES component districts.  They also indicate that ESBOCES knowingly and intentionally participated in the furtherance of the scheme by providing it with the ESBOCES cooperative furniture catalog bid on of the main vehicles it has used to steal Plaintiffs' business.  Plaintiffs have suffered damage and continue to suffer damage in the form of lost business and destroyed business relationships with ESBOCES component districts.

### 2.   Nassau BOCES and Bellmore

79.      In 2002, Safe Path won the bid with Nassau BOCES to install Safe Path Systems in every school with electrically operated partition doors within Nassau BOCES.  Safe Path Systems were thereafter installed in all of those schools, but were not all being inspected annually or properly maintained.

80.     Kimberly Parahus is Facilities Director for Hewlett-Woodmere School District in Nassau County.  In 2009-10 she was Director of Facilities for Plainview-Old Beth Page.  She is also President of the Nassau Chapter of NYS SFA.  Ms. Parahus was the author of the first General Municipal Law Section 119-0 cooperative bid in 2009-2010 requiring qualifications for the maintenance of Safe Path Systems.  That bid was awarded to Plaintiff GDRI in June of 2009.

23

Three months later, without warning, the bid was "split" and awarded to Defendant YES for all participating districts, notwithstanding the fact that YES's bid was four to five times higher than GDRI's.  In 30 years, Plaintiffs had never seen anything like this happen before. The only logical conclusion is that Ms. Parahus's actions were part of the orchestrated effort to drive Plaintiffs out of business.

81.     Joseph Hendrickson was Facilities Director for the Bellmore School District in Nassau County.  He was a member of the Nassau Chapter of NYS SFA and author of the General Municipal Law Section 119-0 cooperative bids for 2010-11, 2011-12 and 2012-13.  Plaintiffs are informed and believe that Mr. Hendrickson is responsible for removing the name "Safe Path" from the bid requests for electrical partition safety equipment and putting "EOPSD" (for electrically operated partition safety device) in its place.  He also made unauthorized copies of Plaintiffs documentation for maintenance procedures, staff training materials and legislative note from which he removed the Safe Path name and trademarks and included them in the bid package.

82.     When asked about the changes to its materials, Mr. Hendrickson replied that he took the references to Safe Path out because they were specific to that "damn system."  He told Steve Cole that he didn't care about Plaintiffs' patent or its other intellectual property rights: ***"You are taking blood, man . . . I couldn't take you even if I wanted to.  When you send something up that triggers State Ed to send out to every freaking Superintendent . . . that caused Carl Thurnau up there to realize that he had a roaring forest fire here.  Then nobody's accreditation meant anything"***

83.     The bid for electric partition safety system maintenance for all participating districts was awarded by Bellmore to YES even though all of them have Safe Path Systems.  Plaintiffs were not even given an opportunity to bid on the maintenance and repair work for their own products.

84.     In addition to constituting copyright infringement, Hendrickson's actions constitute overt acts by Bellmore in furtherance of the conspiracy to induce infringement by Plaintiffs competitors and drive Plaintiffs out of business.  When Kathleen Cole pleaded with Hendrickson to do something about YES and asked him if he thought that the tax payers would be outraged to know how much more YES was charging the districts for Safe Path work, Hendrickson replied "not really, look how much the superintendents get paid."  He also said that he could not wait to retire and put all this "shit" behind him.  Plaintiffs are informed and believe that Hendrickson received retirement benefits that he was not entitled to as compensation for his role in the conspiracy to put Plaintiffs out of business and divert its business to YES.

85.     In March of 2011, Plaintiffs approached Peter Laduca, Executive Manager and Health and Safety Coordinator for Nassau BOCES (who is also a faculty member on the SFMI) and requested his help in getting Nassau BOCES component districts to comply with the maintenance requirement of Ed. Law § 409-f and Regulation 155.25 and stop using YES to repair and in many cases bypass Safe Path Systems.  After hearing their argument, Mr. Laduca responded:  ***"I don't care what the law says.  We are not going to twist the districts' arms and tell them what to do.  If the State wants to come and do that they can.  I am sure that districts are out of compliance on many levels."***

86.     As the Health and Safety Coordinator for all 56 Nassau school districts, it was Mr. Laduca's job to insure regulatory compliance and to make sure that Safe Path Systems were being installed, inspected and maintained in accordance with the manufacturer's specifications, as required by law.  His cavalier attitude toward non-compliance on an important public safety issue was typical among the individuals involved in the scheme to put Plaintiff out of business and his refusal to take action constitutes an overt act in furtherance of the conspiracy to infringe their intellectual property rights and interfere with their business relationships with individual

25

Nassau BOCES component districts.

87.     Nassau BOCES and Bellmore knowingly and intentionally participated in the conspiracy in all of the ways outlined above.  Plaintiffs have suffered damage and continue to suffer damage in the form of lost business and destroyed business relationships in school districts throughout Nassau County.  Plaintiffs were once the most respected vendor for electric partition door safety devices in the State if not the nation.  Now they are pariahs in the eyes of many facilities directors and superintendents.

### 3.  New York City

88.      In or around 2001-2002, Volkert Braran, Director of Program Management for the NYCDOE and Capital Project Coordinator for the NYCSCA, chose Safe Path Systems, as required by the NYCSCA Specifications at the time, for a large capital project in New York City. At the time he selected Safe Path, Mr. Braran knew that it was a proprietary system. As part of the program, Safe Path Systems were installed in over 500 New York City schools.

89.     John Shea is Chief Executive Officer of the Division of School Facilities for the NYCDOE.  Before that, he was Executive Director of Facilities for Nassau BOCES until 2008. Plaintiffs have copies of emails between Shea and Thurnau in which they discuss the propriety of using unauthorized personnel to install and service Safe Path Systems in New York City schools.  These emails indicate that Shea was involved in the conspiracy to put Plaintiffs out of business.

89.     Plaintiffs have had numerous meetings and correspondence with NYCDOE officials and employees regarding Safe Path Systems maintenance and staff training in New York City.  In 2009 and again in March of 2011, Plaintiffs sent a letter to the NYCDOE advising that GDRI was the only contractor authorized to provide the installation, inspection, service, repair and maintenance service on the Safe Path Systems.  Plaintiffs also informed the NYCDOE

26

about their ownership of the patents, copyrights and trademarks underlying the Safe Path Systems.  Despite having received these letters, NYCDOE employees continued to hire unauthorized contractors, including defendants YES, Tri-State, Total Gym, Guardian, to perform inspection, service, repair and maintenance of the installed Safe Path Systems.

90.     Plaintiffs are informed and believe that, as part of the conspiracy to destroy Plaintiffs' business, Braran and Shea told their borough managers to instruct the general contractors not to use Plaintiffs for installation and maintenance of Safe Path Systems in New York City.  These instructions are overt acts in furtherance of the coordinated retaliation aimed at Plaintiffs for their actions in blowing the whistle on Safe Path Systems compliance problems throughout New York City.

91.     Plaintiffs have copies of emails from Borough Managers Chris Coyle, Thomas Fanezzi and Chris D'Alimonte indicating that they not only instructed the general contractors not to use Plaintiffs, they also recommended that they use YES instead.  Coyle even told one contractor that Plaintiffs recommended YES, which was a blatant lie.

92.     In late 2010, Donald Dross, Brooklyn Borough Manager for the NYCDOE, requested specifications and instructions from Plaintiffs for the Safe Path System. When Plaintiffs later called Dross to follow up about his request, Dross told them that he would be using YES for all of the Safe Path work instead.  Two days later, every existing request for proposal for Safe Path work in New York City was cancelled and all of the work (worth in excess of $500,000) was directed to YES.   This was not a coincidence.  Rather, they were overt acts in furtherance of the coordinated effort to put Plaintiffs out of business and induce YES and others to infringe Plaintiffs' intellectual property rights and interfere with their existing and prospective business relationships.  It is unclear how YES was able to qualify for work in New York City since Brian Burke, its Chief Financial Officer/Chief Operating Officer, plead guilty to

27

fraud in 2005 and was disbarred by the S.E.C.

93.     Parmanand Ramphal is Bronx Borough Manager for the NYCDOE.  In 2011-12, after Plaintiffs alerted Mayor Bloomberg and Governor Cuomo that 100 gym partitions in the Bronx were missing Safe Path Devices, orders for Safe Path equipment started to come in. Acting on Braran and Shea's orders, however, Ramphal instructed his general contractors not to use Safe Path to perform the installation and maintenance work.  He also instructed the general contractors not to pay Safe Path for the systems that had already been installed and imposed unreasonable and expensive requirements on Plaintiffs in connection with jobs that had not been completed.  As a result, Plaintiffs are still owed more than $300,000 for Safe Path Systems they installed in the Bronx.

94.     At x 970, two partitions were left for several months both with non-functioning safety devices and one falling off the tracks.  It was not until the principal at Bathgate demanded that the doors be fixed in an email entitled "Dangerous Situation at Bathgate" that Plaintiffs were finally contacted to do the work at x 970.  Ramphal told one of the general contractors on that job that he believed he would be "put out of business" if he used Safe Path.

95.     Peter Mischler is Operations Manager for NYCDOE electricians.  Mr. Mischler ran a training session at the Boys and Girls High School in Brooklyn on or about March 31 and April 1 of 2010.  He hired YES to train NYCDOE electricians attending the session how to by-pass Safe Path Systems.  Tampering with and by-passing safety devices is illegal under Education Law §409- f.  Mr. Mischler's and YES' actions were unlawful.  The training session is yet another intentional and illegal overt act in furtherance of the scheme to drive Plaintiffs' out of business in retaliation for blowing the whistle about systemic partition safety compliance problems in New York City.

96.      In 2012, the NYCSCA revised its Specifications to no longer specify use of Safe

Path Systems.  The timing of the change is suspicious in light of the ongoing efforts to put Plaintiffs' out of business.  The change is also suspect in light of the seriousness of the public safety issues involved and the fact that similar changes were not made to the requirements for the use of a specific brand of partition doors.

97.      In April 14, 2015 Plaintiffs received a telephone call from a company called United Steel Products wanting to purchase Safe Path Systems.  The representative from United Steel Products informed Plaintiffs that their company had just been awarded a five-year contract by the NYCDOE to install Safe Path Systems in schools throughout the five boroughs of New York City.  United Steel Products has never been certified or trained by Safe Path to install or maintain Safe Path Systems and admitted to Plaintiffs that it does not normally do this work.  Plaintiffs were never even asked to bid on the contract.

98.      The forgoing paragraphs evidence a number overt acts by NYCDOE employees in furtherance of the conspiracy to drive Plaintiffs out of business, infringe their intellectual property rights and interfere with their business relationships in New York City schools.  They also indicate that NYC DOE employees knowingly and intentionally participated in the scheme in all of the ways outlined above.  Plaintiffs have suffered damage and continue to suffer damage in the form of lost business and destroyed business relationships in New York City.

### 4.   Educational Data Services ("EDS")

99.      EDS is a private company that provides "cooperative procurement management"

services to school districts throughout New York State.  It is also a financial supporter of NYS SFA and SFMI and participates in its conferences and other events.

100.      EDS makes the following promise to its school district clients on its website:

> You have enough on your plate maintaining the district's
> facilities.  Leave the hassles associated with bidding to us.  You will
> have access to 65 skilled trade and ancillary bids complete with awarded
> vendors and bid pricing, on a time and material or line-item basis.  ***Not
> only will you be rid of the bidding hassle, but also you can rest assured
> that you are legally compliant.***

Emphasis added.

101.    YES started to use the EDS System to infringe Plaintiffs patent in or about 2009.  That same year, Stephen Cole of Safe Path spoke with John O'Connor, Vice President of EDS to complain about YES and other vendors using the EDS service to infringe Plaintiffs' patents and unlawfully obtain Safe Path maintenance and repair work.  They spoke again in 2011.  Both times, O'Connor promised to set up a meeting to discuss Mr. Cole's concerns.  He never did.

102.  Years later, YES is still using the EDS folding partition repair services bid fraudulently to perform maintenance work on Safe Path Systems in school districts throughout New York State.  It is one of the primary vehicles used by YES to perform Safe Path Systems work without having to bid against Plaintiffs.

103.    EDS admitted in a letter filed in this action that the EDS folding partition repair services bid does NOT include a Safe Path System maintenance and repair work component, yet it is clear that YES has been using that bid number to illegally perform work on Safe Path Systems throughout the State of New York.  In many if not all cases, YES has overcharged the districts for these services and has failed to provide certified payrolls to support the work

104.    Kathleen Cole brought Plaintiffs' concerns about YES's use of the EDS folding partition repair services bid to the attention John O'Connor, Vice President of EDS again, in or about March of 2013.

105.    Plaintiffs are informed and believe that EDS continues to allow YES to use its

procurement services to obtain Safe Path Systems work by manipulating the bidding process. As a result, EDS has knowingly induced infringement of Plaintiffs' intellectual property rights and unlawfully interfered with Plaintiffs' business relationships with participating districts.

106.    The forgoing paragraphs demonstrate that EDS is part of the conspiracy to drive Plaintiffs out of business, infringe their intellectual property rights and interfere with their business relationships with participating districts.  They also indicate that at least one high level EDS employee knowingly and intentionally participated in the furtherance of the scheme by failing to take action against YES to stop its abuse of the folding partition repair services bid. Plaintiffs have suffered damage and continue to suffer damage because EDS is allowing its system to be manipulated to cut Plaintiffs out of the competitive bidding process for Safe Path installation, maintenance and repair work.

### 5.  Guardian, Tri-State and Total Gym Repairs

107.    Guardian, Tri-State and Total Gym Repairs have been adept at taking advantage of the conspiracy against Plaintiffs.

108.    The owners of these business are well aware of the '030 Patent and yet knowingly and willfully practiced the invention to perform services on Safe Path equipment prior to the expiration of the patent in October of 2011.

109.    Like YES, Guardian, Tri-State and Total Gym Repairs have also made false representations to school district officials about their authority to perform maintenance and repair services on Safe Path Equipment and they have made unauthorized copies of Safe Path's copyright protected materials and altered them in order to satisfy the statutory requirement for documentation that the work was performed in accordance with the manufacturer's instructions.

110.  Plaintiffs have photographs of a Safe Path System that was defaced by the application

of Guardian stickers after Guardian performed unauthorized maintenance services on it.  An

example is attached hereto as **Exhibit 7.**  This is a clear violation of 15 U.S.C. § 1125.

111.  On or about May 5, 2015, Peter Mucciolo of Tri-State contacted Stephen Cole

looking to order Safe Path Systems equipment for use at various locations.  Mr. Cole declined to

sell him the equipment because Tri-State is not certified to install or work on Safe Path Systems.

Plaintiffs are informed and believe that there have been many other occasions (both before and

after expiration of the '030 patent) where Tri-State has performed maintenance and repair

services on Safe Path Systems in school buildings without authorization from the manufacturer.

Like YES, it has also supplied the districts with documentation taken from Plaintiffs'

Manufacturer Materials in an effort falsely to document regulatory compliance.

112.  In July of 2013, Total Gym Repairs bid against Plaintiffs on a project in the Middle

Country Central School District in July of 2013.  Safe Path Systems were specified for the job.

Total Gym Repairs is not authorized to install or maintain Safe Path Systems yet falsely represented

to the district that it was.

113.  In 2015, Total Gym Repairs again bid against Plaintiffs on a project in Commack

Central School District that also specified Safe Path Systems.  Total Gym Repairs was not

authorized to do this work and made false representations to the contrary to Commack.

114.  Plaintiff has also received information indicating that one of its former employees,

Mario Ramatar, who now works for Total Gym Repairs called several of Plaintiffs customers,

including Columbia University, MOMA and New York University, in an effort to convince them to

use Total Gym Repairs instead of Plaintiffs to service their Safe Path Systems.  Mr. Ramatar made

false representations to these clients that Total Gym Repairs is authorized to perform. It is not.

115.  Defendant Guardian Gym Equipment manufacturers and sells partition door

safety devices, known as the "Guardian Personal Protection System".  These systems infringed

the '030 and Guardian was sent cease and desist letters to that effect.  Nevertheless, Guardian

Personal Protection Systems were installed in dozens of schools throughout New York State.

The Guardian Personal Protections Systems that were installed prior to October 17, 2011

infringe the '030 Patent and those installations that occurred between June 1, 2009 and October

17, 2011 are still within the statutory period for recovering damages.


### E.   Defendants Infringed and/or Induced Infringement of the '030 Patent

116.    Between October 17, 1991 and October 17, 2011, the term of the '030 Patent,

GDRI Safe Path and their authorized licensees were the only entities that could lawfully follow the

'030 Patent to install, inspect, service repair and maintain Safe Path Systems.

117.    During the term of the '030 Patent, any work that required maintenance under the

'030 patent could not be put out for bid by any municipality, company or school district since

only GDRI and Safe Path could perform the patented maintenance procedure without infringing

or inducing infringement of the '030 patent.

118.    On numerous occasions between October 17, 1991 and October 17, 2011,

Defendants ESBOCES, Nassau BOCES, NYCDOE, EDS and Bellmore induced infringement of

the '030 patent by YES by allowing YES to use the ESBOCES catalog furniture bid, municipal

cooperative bids and the EDS folding partition service repair bid to circumvent the bidding

process and work on Safe Path Systems unlawfully.

119.    By knowingly enabling YES to use the forgoing bids to perform work on Safe Path

Systems during the term of the '030 Patent, these Defendants willfully and knowingly induced

infringement of the '030 Patent.

120.    By performing patented installation, inspection, maintenance and repair services

on Safe Path Systems during the term of the '030 Patent, Defendants YES, Tri- State, Total Gym
Repairs and Guardian willfully and knowingly engaged in patent infringement in violation of
federal law.

121.    Guardian also willfully and knowingly engaged in patent infringement through the
use of its infringing system.

### F.  <u>Defendants Infringed Plaintiffs Copyrights in the Manufacturer Materials</u>

122.    Plaintiffs and their authorized licensees are the only entities that can lawfully
reproduce, distribute and use the copyrighted Manufacturer Materials and use them to
perform certified inspection and maintenance on Safe Path Systems.

123.    Defendants ESBOCES and Bellmore made unauthorized copies and induced YES,
Tri-State, Guardian and Total Gym Repairs to make numerous unauthorized copies of all or
substantial portions of the Manufacturer Materials in order to create bid and contract specifications
and solicit bids from unauthorized entities to perform work on the Safe Path Systems and to
document regulatory compliance.  In doing so, these Defendants willfully and knowingly
infringed or induced the infringement of Plaintiffs' copyrights in the Manufacturer Materials.

124.     Defendants YES, Tri-State, Guardian and Total Gym Repairs made unauthorized
copies of the Manufacturer Materials and used them to submit falsified bids and perform and falsely
document their work on the Safe Path Systems for regulatory compliance purposes.  In doing so,
these Defendants willfully and knowingly infringed Plaintiffs' copyrights.

125.    In many instances, Bellmore, YES and Guardian simply removed or obscured
Plaintiffs' name from the Manufacturer Materials and signage and either left blanks or
substituted or superimposed their own names, or in Bellmore's case generic terms, in the
place of Plaintiffs' name.

34

126.   Defendants Nassau BOCES induced infringement by knowingly refusing to stop YES from using the Nassau Cooperative bid to surreptitiously obtain Safe Path Systems maintenance and repair work and infringe Plaintiffs copyrights as described herein.

127.   Defendant NYCDOE induced copyright infringement by instructing its general contractors not to use Plaintiffs and to use YES and other vendors instead – vendors it knew were violating Plaintiffs' copyrights.

128.   The Defendants have infringed or induced infringement of Plaintiffs' copyrights and will continue to engage in the infringing activities described herein unless enjoined by this Court.

### G.   Defendants Infringed Plaintiffs Trademarks and Engaged in Acts of Deception and Unfair Competition

129.   Safe Path Systems are currently installed on approximately 4,700 of the electrically operated partition doors in schools throughout New York State.  Under Regulation 155.25, those systems must be maintained in accordance with the manufacturer's instructions.  Safe Path's instructions require that inspections and maintenance be done at least annually and that all work be done by manufacturer certified and trained representatives.  These instructions are critically important as the Safe Path Systems are complex and partition doors can be deadly if the safety devices are not properly inspected and maintained.

130.   Defendants ESBOCES and EDS have induced trademark infringement, unfair competition and other deceptive acts and practices by allowing YES to misuse their cooperative bids to illegally perform work on Safe Path Systems and otherwise engage in the other deceptive acts and practices described herein.

131.   Defendants Nassau BOCES and Bellmore have induced trademark infringement, unfair competition and other deceptive acts and practices by allowing YES to misuse municipal

35

cooperative bids to illegally perform work on Safe Path Systems and otherwise engage in other deceptive acts and practices as described herein.

132.  Defendant NYCDOE induced trademark infringement, unfair competition and other deceptive acts and practices by instructing its general contractors not to use Plaintiffs and to use YES, who they knew to be falsely representing themselves as Safe Path certified and otherwise engaging in trademark infringement and other false, deceptive and illegal activities, instead.  NYCDOE's decision to hire YES to train its electricians to bypass Safe Path Systems in violation of Ed. Law § 409-f was reckless and can only be understood in the context of the overall deceptive scheme to punish Plaintiffs.

133.  Defendants YES, Tri-State, Total Gym Repairs and Guardian have routinely held themselves out falsely as Safe Path certified.  They have performed only the most cursory inspections of Safe Path Systems and installed substandard, non- OEM parts falsely claiming that these parts meet Safe Path specifications.  They have made little or no effort to properly maintain the Safe Path Systems they have worked on and, in many cases, simply disabled or intentionally damaged the equipment in order to incur repair and replacement costs.

134.  Defendants Tri-State and Total Gym Repairs have falsely claimed that they are Safe Path certified and authorized.  They have generated and caused school district to generate and maintain false records, also bearing Plaintiffs name and registered trademarks, in connection with maintenance work that was either not performed at all or performed by unauthorized personnel.

135.  YES has engaged in numerous deceptive acts and practices, such as using the ESBOCES catalog furniture bid, the Nassau municipal cooperative bid and the EDS partition repair service bid to circumvent the competitive bidding process.  They have produced and disseminated promotional materials (including mailings, fliers, t-shirts and website pages) bearing

36

Plaintiffs' federally registered trademarks and routinely make false and deceptive representations to their customers about being Safe Path certified.  An example of one of the infringing mailings is attached hereto as **Exhibit 9.**  They have also been grossly overcharging school districts for Safe Path equipment while paying their workers less than prevailing wage.

136.  Guardian has engaged in false and deceptive practices by falsely representing that it is "certified" to work on Safe Path Systems and by superimposing its own trademarks and name over the Safe Path trademarks and names on Safe Path System equipment and signage.

137.   Plaintiffs are informed and believe that Defendants have used Plaintiffs registered trademarks and documentation in other ways that are likely to cause confusion or mistake as to the source of services being performed on Safe Path Systems.

138.   The forgoing false and deceptive acts and practices are extremely harmful to Plaintiffs' reputation and the good will it has established over the years as the leading manufacturer of electrically operated partition safety devices.  These false and deceptive acts and practices are extremely reckless in light of the public safety concerns at stake and could also expose Plaintiffs to legal liability.  They are likely to continue unless enjoined by this Court.

## H.  Plaintiffs' Efforts to Seek Relief

139.   Since 2007, Plaintiffs consistently have been making demands of Defendants to comply with Ed. Law 409-f and Regulation 155.25, so far to no avail.

140.   Plaintiffs contacted their legislative representatives in Albany and reported their concerns about compliance to the Attorney General, the New York State Comptroller and the New York City Mayor.  They reported their concerns about YES to the Suffolk County District Attorney's Office, the New York Department of Labor, the New York City Office of the Special Commission of Investigations and the offices of the New York State Comptroller and Attorney

General.  The Attorney General's Office never investigated the matter.  Instead, it referred the matter to the Commissioner of Education, who in turn referred it to Mr. Thurnau for investigation. It is not reasonable to expect Mr. Thurnau to effectively investigate the conduct of his own office. The referral highlights one of the core problems at work here – the absence of effective oversight and accountability.

141.    Having exhausted all administrative remedies, Plaintiffs filed an Article 78 action in New York State Supreme Court in Manhattan on or about March 2, 2011.  That action was dismissed in April of 2012 for lack of standing as Plaintiffs were determined to be outside the zone of protection afforded by Ed. Law 409-f.  The Court never reached the merits of Plaintiffs' claims regarding non-compliance.

142.    In October of 2012,  Plaintiffs filed a federal §1983 action against Defendants NYCDOE and NYSSCA, John Shea, Volkert Braren, Chris Coyle, Chris D'Alimonte and Thomas Fanizzi for retaliation.  That action is still pending.  It seeks injunctive relief for civil rights violations that are entirely different from the injuries for which relief is sought herein.

143.    Counsel for the defendants in the Article 78 and § 1983 actions have made repeated representations that their clients are in compliance with Ed. Law § 409-f and Regulation 155.25.  If this is indeed true statewide, it means that all of the 4,700 Safe Path Systems installed throughout New York State are now being maintained or serviced annually without the involvement of Plaintiffs.  Since Plaintiffs' base price for annual maintenance services is $800, Plaintiffs' damages are likely to be well in excess of $3,760,000 per year.

## COUNT I

## INFRINGEMENT OF THE '030 PATENT

(Asserted Against All Defendants)

144.     Plaintiffs incorporate Paragraphs 1-143 of its Complaint as fully set forth herein.

145.     Plaintiffs at all relevant times has been the owner of the exclusive rights under the United States Patent Act of the '030 patent, which is the subject of valid Certificates of Registration issued by the U.S. Patent and Trademark Office.

146.     Among the exclusive rights granted to Plaintiffs under the Patent Act is the exclusive right to practice the invention and the right to prevent others from doing so during the term of the patent without proper authorization from Plaintiffs.  Plaintiffs are informed and believe that Defendants, without the permission or consent of Plaintiffs, have directly or indirectly infringed one or more of the claims of the '030 patent, either literally or under the doctrine of equivalents, in violation of by 35 U.S.C. § 271 by performing and/or inducing others to perform maintenance and other services on Safe Path Systems in schools throughout the City and State of New York.

147.     Defendants **ESBOCES, Bellmore and EDS** induced infringement of the '030 patent by knowingly allowing YES and the other defendants fraudulently to perform maintenance and repair work on Safe Path Systems that infringed '030 patent under cooperative bids they administered.

148.     Defendant **Nassau BOCES** induced infringement of the '030 patent by expressly refusing to prevent its component districts from administering municipal cooperative bids that were used by YES and the other vendor defendants to gain access to Safe Path Systems maintenance and repair jobs and through those jobs to infringe the '030 patent.

39

149.  Defendant **Carl Thurnau** induced infringement of the '030 patent by conspiring with YES, Van de Loo, Koelbel, Parahus, Conley, Ball and other NYS SFA and SFMI officials to blackball Plaintiffs and divert Safe Path Systems maintenance work to YES thereby inducing infringement of the '030 patent by YES.  Only prospective injunctive relief is sought against Mr. Thurnau in his capacity as Director of Facilities Planning for NYSED.

150.  Defendants **NYS SFA and SFMI** induced infringement of the '030 patent by permitting Thurnau and their other officers, staff members and vendors to use these organizations to further the conspiracy to put Plaintiffs out of business and divert Safe Path Systems maintenance work to YES thereby inducing infringement of  the '030 patent by YES.

151.  Defendants **YES, YES Service and Repairs, Richard Young, Brian Burke and Dennis Schwandtner** infringed the '030 patent by performing maintenance and repair services that infringe one or more claims of the '030 patent.

152.  Defendants **Tri-State Folding Partitions, Inc., Peter Mucciolo and Total Gym Repairs** infringed the '030 patent by performing maintenance and repair services on Safe Path Systems that infringe one or more claims of the '030 patent.

153.  Defendants **Guardian Gym Equipment, Qapala Enterprises and James Petriello** infringed the '030 patent by manufacturing and selling the Guardian Personal Safety System, which infringes the '030 patent, and by performing infringing maintenance and repair services on Safe Path Systems.

154.  Defendant **NYCDOE** induced infringement by instructing its personnel and general contractors to use other vendors to install, service and repair Safe Path Systems who in turn infringed one or more claims of the '030 patent in the performance of those services.

155.    All of the Defendants had actual notice of the existence of the '030 patent through their long-standing participation in the gym door safety products market and their longstanding relationship with Plaintiffs, through the notices that appear in the Manufacturer Materials and from repeated warnings from Plaintiffs.

156.    Carl Thurnau and the officials from ESBOCES, Nassau BOCES, Bellmore and EDS identified in this complaint knew that their actions would induce or contribute to the direct infringement of the '030 patent.

157.    Without the ability to enforce its '030 Patent and its other intellectual property rights, Plaintiffs will not have the resources to sustain the extensive commitment to research and development that has enabled them to lead the way in creating gym door safety products that save lives.

158.    Plaintiffs have been damaged by Defendants' infringement of the '030 patent and are entitled to just compensation.

### COUNT II

### COPYRIGHT INFRINGEMENT

(Asserted Against All Defendants)

159.    Plaintiffs incorporate Paragraphs 1-158 of its Complaint as fully set forth herein.

160.    Plaintiffs are and at all relevant times have been the owner of the exclusive rights under the United States Copyright Act of the copyrighted Manufacturer Materials, which are the subject of valid Certificates of Registration issued by the Register of Copyrights.

161.    Among the exclusive rights granted to Plaintiffs under the Copyright Act is the exclusive right to use reproductions of all or portions of the Manufacturer Materials and use them to submit bids and perform maintenance services on the Safe Path System.

162.    Defendants **ESBOCES and Bellmore**, without the permission or consent of

Plaintiffs, have made reproductions of all or significant portions of the Manufacturer Materials and used them to request bids to perform maintenance services of Safe Path devices in schools throughout Long Island.

163.　Defendants **YES, YES Service and Repairs, Richard Young, Brian Burke, Dennis Schwandtner, Guardian Gym Equipment, Qapala Enterprises, James Petriello, Tri-State Folding Partitions, Peter Mucciolo and Total Gym Repairs**, without the permission or consent of Plaintiffs, have made reproductions of all or significant portions of the Manufacturer Materials, emails and letters and used them to perform and document the performance of maintenance services of Safe Path Systems in schools throughout New York State.

164.　Defendants **ESBOCES, Nassau BOCES and EDS** induced infringement by knowingly allowing YES to use cooperative bids to hijack Safe Path Systems maintenance and repair work.  These defendants had actual knowledge that YES was making unauthorized reproductions of all or significant portions of Plaintiffs Manufacturer Materials in order to perform and document the performance of those services in districts throughout the territories that they serve.  **ESBOCES** also engaged in direct infringement of Plaintiffs' staff training materials.

165.　Defendant **NYCDOE** induced infringement by instructing its personnel and general contractors to use other vendors to install, service and repair Safe Path Systems who in turn made or used unauthorized reproductions of all or significant portions of Plaintiffs Manufacturer Materials in order to perform and document the performance of those services.

166.　**NYCDOE** also engaged in direct infringement by making and using unauthorized copies of Plaintiff's Manufacturer Materials, in consort with YES, to train its electricians to by-pass Safe Path Systems.

167.　Defendants **Carl Thurnau,** induced infringement of Plaintiffs' copyrights by conspiring with Van de Loo, Koelbel, Parahus, Conley, Ball and other NYS SFA and SFMI

officials to blackball Plaintiffs and divert Safe Path Systems maintenance work to YES thereby inducing infringement of the '030 patent by YES.  Only prospective injunctive relief is sought against Mr. Thurnau in his capacity as Director of Facilities Planning for NYSED.

168.  Defendants **NYS SFA and SFMI** induced infringement by allowing their organization to be used to orchestrate the conspiracy to destroy Plaintiffs' business by, among other things, steering Safe Path Systems maintenance work to YES.

169.    The foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiffs.

170.     As a result of Defendants' willful infringement of Plaintiffs' exclusive rights under the Copyright Act, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorneys' fees and costs pursuant to 17 U.S.C. § 505.

171.   Defendants' conduct is causing and unless enjoined by this Court will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law and are entitled to injunctive relief pursuant to 17 U.S.C. §§ 502 and 503 prohibiting Defendants from further infringing Plaintiffs' copyrights  and ordering Defendants to destroy all copies of the Manufacturer Materials and any bidding materials made in violation of Plaintiffs exclusive copyrights.

## COUNT III

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

(Asserted Against All Defendants)

172.     Plaintiffs incorporate Paragraphs 1-171 of its Complaint as fully set forth herein.

173.    Plaintiffs are and at all relevant times have been the owner of the exclusive rights under the United States Trademark ("Lanham") Act of the SAFE PATH SYSTEMS and SAFE PATH trademarks, which are the subject of valid Certificates of Registration issued by the

United States Patent and Trademark Office.

174.    Among the exclusive rights granted to Plaintiffs under the Lanham Act is the exclusive right to use the trademarks in commerce.  The Lanham Act also prohibits false designation of origin, false representation, unfair competition and false advertising. 15 U.S.C. § 1125(a).

175.    **The YES Defendants have**:

a.  Engaged in unfair competition and deceptive acts and practices by using the ESBOCES furniture catalog bid, the Nassau Municipal Cooperative bids and the EDS bidding system as described herein to circumvent the competitive bidding process and block Plaintiffs from bidding on jobs to service and maintain Safe Path Systems;

b.  Made numerous false representations that they are authorized to work on Safe Path Systems and that they performed maintenance and repair services on Safe Path Systems in accordance with the manufacturer's instructions;

c.  Used Plaintiffs' trademarks, without permission, on fliers, t-shirts and webpages to promote their services and falsely claim that they are certified to perform maintenance and repair services on Safe Path Systems; and

d.    Removed Plaintiffs trademarks from Plaintiffs Manufacturers' Materials and inserted its own to create the false impression that the materials were created by YES when in fact they were copied from Plaintiffs' materials.

176.  **The Guardian Defendants** have;

a.    Made numerous false representations that they are authorized to work on Safe Path Systems;

b.    Made numerous false representations that they performed maintenance and repair services on Safe Path Systems in accordance with the

manufacturer's instructions;

      c.     Removed or obscured Plaintiffs' name and trademarks from signs and from the control panel for Safe Path Systems and inserted Guardian's name thereby creating the false and misleading impression that the Safe Path Systems are Guardian systems; and

      d.     Used Plaintiffs' trademarks, without permission, to bid on and perform maintenance and repair services on Safe Path Systems in schools throughout the State of New York.

      177.    **The Tri-State and Total Gym Repair Defendants**:

      a.     Made numerous false representations that they are authorized to work on Safe Path Systems;

      b.     Made false representations that they performed maintenance and repair services on Safe Path Systems in accordance with the manufacturer's instructions;

      c.     Used Plaintiffs' trademarks, without permission to bid on and perform maintenance and repair services on Safe Path Systems in schools throughout the State of New York.

      178.    Defendants' actions as set forth above are likely to cause confusion, mistake or deception as to the Plaintiffs' sponsorship or endorsement of Defendants' goods and services and create the false impression that they originate from, are affiliated or connected with or are licensed, sponsored, authorized or approved by Plaintiffs.

      179.    Defendants' activities constitute trademark infringement, false designation of origin, false representation, unfair competition and false advertising in violation of 15 U.S.C. § 1125(a), and deceptive acts and practices in violation of New York General Business Law Sections 133, 349 and 360-L.

180.    Defendants **Carl Thurnau, NYS SFA, SFMI, ESBOCES, Nassau BOCES, Bellmore and EDS** induced the foregoing violations of the Lanham Act and New York General Business Law by engaging in all of the unfair and deceptive acts described herein in furtherance of the conspiracy to drive Plaintiffs out of business.  Only prospective injunctive relief is sought against Mr. Thurnau in his official capacity.

181.    The foregoing acts of infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiffs.

182.     As a result of Defendants' infringement of Plaintiffs' trademark rights, Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1117, punitive damages under New York General Business Law and attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

183.    Defendants' conduct is causing and unless enjoined by this Court will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief prohibiting Defendants from engaging in the unfair and deceptive acts and practices described herein and from further infringing Plaintiffs' trademarks.

## COUNT IV

## TORTIOUS INTERERENCE WITH BUSINESS RELATIONSHIPS

(Asserted Against All Defendants)

184.     Plaintiffs incorporate Paragraphs 1-183 of its Complaint as fully set forth herein.

185.    Plaintiffs had existing business relationships with 4,700 school districts in which Safe Path Systems have been installed.  Plaintiffs had and continue to have a reasonable expectation that these relationships will result in ongoing maintenance and service work as required by Education Law § 409-f and Commissioner's Regulation § 155.25.

186.    In addition, there are still many schools throughout New York state that have

electrically operated partitions that have not been outfitted with safety systems as required by Ed. Law § 409-f.  Plaintiffs had and continue to have a reasonable expectation that these relationships would and will result in Safe Path Systems installation, maintenance and service work as required by Ed. Law § 409-f and Regulation § 155.25.

187.    Defendants were aware of these relationships.  By participating in the conspiracy to drive Plaintiffs out of business and by engaging in the conduct described herein above in furtherance of that conspiracy, the Defendants have tarnished Plaintiffs' good reputation and intentionally interfered with the forgoing existing and prospective business relationships.

188.    As described above, Defendants acted with the sole purpose of harming the Plaintiffs and have used dishonest, unfair or wrongful means to do so.

189.    By engaging in all of the acts described herein, Defendants caused millions of dollars of business to be diverted from Plaintiffs, without even giving Plaintiffs an opportunity to competitively bid on the jobs on a fair and even terms.

190.    Defendants' actions were done knowingly and intentionally with malice in retaliation for Plaintiffs' actions in reporting deficiencies in compliance with Education Law Education Law § 409-f and Commissioner's Regulation § 155.25 to the New York State Attorney General and other state officials and as part of a concerted effort to put Plaintiffs out of business.

191.    YES defrauded individual districts and tax payers by over-charging them for Safe Path Systems maintenance and repair work and violated New York labor laws on numerous occasions in connection with that work.  YES' conduct, which was and continues to be aided and abetted by Defendants Thurnau, NYS SFA and SFMI, ESBOCES, Nassau BOCES, Bellmore, NYCDOE and EDS, was unlawful and amounted to separate crimes or independent torts in addition to causing injury to Plaintiff.

192.    Only prospective injunctive relief is sought against Mr. Thurnau in his official

capacity as Director of the Office of Facilities Planning for NYSED.

**COUNT V**

**CIVIL CONSPIRACY**

193.   Plaintiffs incorporate Paragraphs 1-192 of its Complaint as fully set forth

herein.

194.   In or about October of 2009, Defendant Carl Thurnau and Joseph Van De

Loo, Fred Koebel and others at NYS SFA and SFMI agreed to put Plaintiffs out of business

in retaliation for reporting systemic non-compliance with Ed. Law § 409-f and Regulation

155.25.

195.   Richard Young and Dennis Schwandtner opened YES Service and Repair five

months later, in March of 2010.  That same month, NYCDOE hired YES to train its

electricians how to by-pass Safe Path Systems.  Under Ed. Law § 409-f, "any person who

disables or directs another person to disable any safety equipment required by this section

shall be guilty of a violation punishable by not more than fifteen days imprisonment, or fine

not to exceed one hundred dollars or both such fine and imprisonment."  The unlawful and

reckless decision to train NYCDOE electricians how to bypass Safe Path Systems can only

be understood in the context of the conspiracy to put Plaintiffs out of business.

196.   As more fully detailed in previous paragraphs, Thurnau, Van De Loo and

Koelbel used SFMI and NYS SFA meetings, newsletters and conferences to tell school

facilities directors and superintendents across the State that Plaintiffs were trying to hand-

cuff them and that Plaintiffs were causing them to have to expend time and resources to

comply with Ed. Law § 409-f and Regulation 155.25.  These allegations were both false and

unfair as facilities directors and superintendents across the state already had an obligation to

comply with the law.  Thurnau, Van De Loo and Koelbel also told facilities directors and

48

superintendents that they did not have to use Plaintiffs to maintain and repair their Safe Path Systems and that "any competent person" could do the work.  This newly minted interpretation of the law was delivered repeatedly at SMFI conferences and Critical Issues Summits and during monthly meetings between 2009 and 2014 and continues to be perpetuated to this day through these organizations an in newsletters published by the NYSED Office of Facilities Planning.  It is wholly inconsistent with the plain language of the law, which requires that the work be done in accordance with the manufacturer's instructions, which in turn require that the work be done by certified, trained technicians.  Conspicuously absent from the presentations is any explanation as to the availability or whereabouts of the $100 million in funding that was appropriated by the legislature for safety systems maintenance and repair.

197.  Kimberly Parahus, Joseph Falmuro, Joseph Hendrickson, Peter Laduca, John Shea, Keith Anderson, Jonathan Hark, Laurie Conley, Donna Ball and John O'Connor are also part of the conspiracy.  Each has made knowing and purposeful overt acts in furtherance of the plan to force Plaintiffs out of business.

198.    Ms. Parahus, then President of the Nassau Chapter of NYS SFI and Director of Facilities for Plainview-Old Beth Page, was the author of the first municipal cooperative bid in 2009-10 that was originally awarded to Plaintiffs and then inexplicably "split" and awarded to YES and then used by YES to hijack Safe Path Systems maintenance and repair work in more than 40 districts in Nassau County.  Mr. Hendrickson, who at the time was Facilities Director for Bellmore School District and a member of the Nassau Chapter of NYS SFA, was the author of the municipal cooperative bids in 2010-11, 2011-12 and 2012-13 that were used by YES to hijack Safe Path Systems and maintenance work in Nassau County districts.  At the behest of his boss, Joseph Falmuro, Mr. Hendrickson removed the Safe Path

name from the bid documents and replaced it with the generic term EOPSD.  On information

and belief, Hendrickson, who has since retired, was compensated for his role in the

conspiracy in the form of un-earned retirement benefits.  Plaintiffs' repeated efforts to get

Hendrickson, Falmuro and the Health and Safety Coordinator for Nassau BOCES, Peter

Laduca (who is also a paid member of the SFMI faculty), to do something about YES' abuse

of Bellmore's municipal cooperative bids went nowhere.

      199.    Laurie Conley and Donna Ball administer the ESBOCES cooperative catalog

furniture bid for ESBOCES.  With the knowledge and at the behest of their superiors, Keith

Anderson (Facilities Director for ESBOCES and President of NYS SFA) and Jonathan Hark

(Health and Safety Coordinator for ESBOCES and Vice President of NYS SFA), they have

repeatedly awarded the ESBOCES cooperative catalog furniture bid to YES even though it

YES has repeatedly falsified bid documents and should not be able to qualify in the first

place.  YES then used that bid number to hijack millions of dollars of Safe Path Systems

maintenance and repair work in ESBOCES member districts.  Having insulated itself from

the competitive bidding process, YES proceeded to use the ESBOCES catalog furniture bid

to defraud member districts and their tax payers by grossly overcharging for Safe Path

maintenance and repair work.  Through FOIL requests, Plaintiffs have compiled evidence

that YES also used the ESBOCES catalog furniture bid to violate the New York labor laws

by, among other things, failing to submit certified payrolls and pay its workers prevailing

wage.

      200.    Gary Bixhorn, the Superintendent of ESBOCES, and Barbara Sallato,

ESBOCES Assistant Superintendent, were aware of YES' abuse of the bid number but did

nothing to stop it.  In fact, Ms. Sallato made the situation worse by down-playing its

significance to ESBOCES member districts, describing it as an "isolated" event and accusing

the Plaintiffs of lying.  The abuse is far from "isolated."  They cannot credibly disclaim knowledge of that fact.

201.    John Shea, Chief Executive Office of the Division of School Facilities for the NYCDOE has played a central role in the conspiracy.  Plaintiffs have copies of emails between Shea and Thurnau in which they discuss the propriety of using unauthorized personnel to install and service Safe Path Systems in New York City schools.  Plaintiffs are informed and believe that Shea instructed his borough managers to instruct general contractors working on construction projects not to use Plaintiffs for installation and maintenance of safety systems.  Plaintiffs have copies of emails from the borough managers indicating that they not only instructed general contractors not to use Plaintiffs but also recommended that they use YES instead.  In 2010, Donald Dross, Brooklyn Borough Manager for NYCDOE requested specifications and instructions from Plaintiffs for the Safe Path System.  When Plaintiffs called Dross to follow up, he told them he would be using YES instead.  Two days later, every outstanding request for proposal for Safe Path Systems work in NYC was cancelled and all of the work was directed to YES.  That same year, as noted above, Peter Mischler, Operations Manager for NYCDOE electricians, ran a training session and hired YES to train the NYCDOE electricians in attendance how to bypass Safe Path Systems.  By-passing the systems is an express violation of § 409-f and the reckless decision to train NYCDOE electricians can only be understood in the context of the broader conspiracy to drive Plaintiffs out of business.

202.    John O'Connor is Vice President of EDS.  Mr. O'Connor has knowingly allowed YES to use the EDS bid number for folding partition repair services to hijack Safe Path Systems maintenance and repair work (which is not covered by that bid number) throughout the State.  EDS has admitted in a letter filed in this action that the EDS bid

number for folding partition repair services does not include Safe Path System repair.

203.    The conspiracy described above has been devastating to Plaintiffs.  Their once thriving business has been virtually destroyed.  Although Safe Path Systems are installed in virtually every school with electrically operated partition doors on Long Island, Plaintiffs currently have no maintenance and repair work there.  It has all gone to YES (a company should not be able to qualify for public contracts), with the exception a relatively small number of jobs that were awarded to Guardian, Tri-State, Total Gym repairs and other vendors.

204.    In New York City, where Safe Path Systems were required by NYCSCA specifications until 2012, the injury was been almost as devastating.  Plaintiffs have managed to hold on to a few jobs, but the vast majority of the work has gone to YES.  How YES was able to get around the VENDEX process is still unclear.  Plaintiffs have not even been asked to bid to work on their own equipment.  In the course of the Article 78 and § 1983 actions, the NYC DOE made repeated representations that its schools are in compliance with the inspection and maintenance requirements of Ed. Law § 409-f and Regulation § 155.25.  If this is in fact the case, then well over 500 Safe Path Systems are being maintained and repaired annually by YES and other vendors as a direct result of the conspiracy.  Plaintiffs are not even being given an opportunity to bid on the jobs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(a)    For a declaration that the Defendants have engaged in an unlawful conspiracy to put Plaintiffs out of business, infringe Plaintiffs' intellectual property rights and tortiously interfere with their existing and prospective business relationships;

(b)   For an injunction permanently enjoining all Defendants from, directly or indirectly by inducement, infringing Plaintiffs copyrights in the Manufacturer Materials."

(c)   For an injunction permanently enjoining all Defendants from, directly or indirectly by inducement, infringing Plaintiffs trademarks and otherwise engaging in unfair and false and deceptive practices in violation of the Lanham Act and New York State law.

(d)   For an injunction permanently enjoining all Defendants from interfering with Plaintiffs' ability to bid fairly on Safe Path Systems maintenance and repair work.

(e)   For an injunction permanently enjoining all Defendants from interfering with Plaintiffs' ability to bid fairly on partition door safety systems installation work.

(f)   For an injunction permanently enjoining all Defendants from taking any acts in furtherance of the conspiracy to put Plaintiffs out of business.

(g)   Awarding Plaintiffs damages in an amount to be proven at trial for each instance of direct infringement of the '030 Patent by YES, Guardian, Tri-State and Total Gym Repairs.

(h)   Awarding Plaintiffs damages in an amount to be proven at trial for each instance of induced infringement of the '030 Patent by ESBOCES, Nassau BOCES, Bellmore, NYCDOE, NYS SFA, SFMI and EDS.

(i)   Awarding Plaintiffs statutory damages or actual damages in an amount to be proven at trial for each instance of direct infringement of the Manufacturer Materials by ESBOCES, YES, Guardian, Tri-State and Total Gym Repairs.

(j)   Awarding Plaintiffs statutory damages or actual damages in an amount to be proven at trial for each instance of induced infringement of the Manufacturer Materials by ESBOCES, Nassau BOCES, Bellmore, NYCDOE, NYS SFA, SFMI and EDS.

(k)     Awarding Plaintiffs damages in an amount to be proven at trial for each instance of trademark infringement by YES, Guardian, Tri-State and Total Gym Repairs.

(l)     Awarding Plaintiffs damages in an amount to be proven at trial for each instance of induced trademark infringement by ESBOCES, Nassau BOCES, Bellmore, NYCDOE, NYS SFA, SFMI and EDS.

(m)    Awarding Plaintiffs damages resulting from the other deceptive acts and practices and unfair competition in an amount to be proven at trial.

(n)     Awarding Plaintiffs damages resulting from Defendants' tortious interference with Plaintiffs' existing and perspective business relationships.

(o)     Declaring that Defendants' infringement of the '030 Patent, the Manufacturer Materials and the Trademarks has been and continues to be willful, and awarding Plaintiffs treble damages.

(p)     Declaring that Plaintiffs be awarded pre-judgment and post-judgment interest at the maximum rate allowed by law.

(q)     That this case be deemed exceptional and attorneys' fees be awarded pursuant to 35 U.S.C. § 285, 17 U.S.C. § 505 and 15 U.S.C. § 1117 and that Plaintiffs be awarded its reasonable attorneys' fees, expenses, and costs incurred in connection with this action.

(r)     That this Court order such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demands trial by jury in this action on all issues so triable.

Dated:  October 15, 2015

BAHNMULTER LLP

/s/ *Katherine J. Daniels*
Katherine J. Daniels
555 Fifth Avenue, FL 14
New York, New York 10017
212-447-4700
kdaniels@bmgllp.com
*Attorneys for Plaintiffs*

Eric Su
FORDHARRISON LLP
100 Park Avenue, Suite 2500
New York, New York 10017
212-453-5900
esu@fordharrison.com
*Of Counsel*