UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GYM DOOR REPAIRS, INC. AND
SAFEPATH SYSTEMS LLC                                      :

                        Plaintiffs,                :

                  v.
YOUNG EQUIPMENT SALES, INC. YES           :
SERVICE AND REPAIRS CORPORATION,                          15-CV-4244 (JGK)
RICHARD YOUNG, BRIAN BURKE, DENNIS        :
SCHWANDTNER, GUARDIAN GYM
EQUIPMENT, QAPALA ENTERPRISES, INC.,      :
JAMES PETRIELLO, TRI-STATE FOLDING
PARTITIONS, INC., PETER MUCCIOLO,         :
EDUCATIONAL DATA SERVICES, INC.,
TOTAL GYM REPAIRS, INC., NEW YORK         :
STATE DEPARTMENT OF EDUCATION
OFFICE OF FACILITIES PLANNING, NEW        :
YORK STATE SCHOOL FACILITIES
ASSOCIATION, SCHOOL FACILITIES            :
MANAGEMENT INSTITUTE, EASTERN
SUFFOLK BOCES, NASSAU COUNTY              :
BOCES, BELLMORE PUBLIC SCHOOLS,
NEW YORK CITY DEPARTMENT OF               :
EDUCATION,
                                 :
                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY IN FURTHER SUPPORT OF MOTION OF DEFENDANTS
NEW YORK STATE SCHOOL FACILITIES ASSOCIATION AND
SCHOOL FACILITIES MANAGEMENT INSTITUTE
TO DISMISS THE SECOND AMENDED COMPLAINT OF
<u>PLAINTIFFS GYM DOOR REPAIRS, INC. AND SAFEPATH SYSTEMS LLC</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.................................................................................................................... 2

      POINT I.     COUNT I OF THE SECOND AMENDED
                     COMPLAINT FAILS TO STATE A CLAIM
                     FOR PATENT INFRINGEMENT ........................................................ 2

      POINT II.    COUNT II OF THE SECOND AMENDED
                     COMPLAINT FAILS TO STATE A CLAIM
                     FOR COPYRIGHT INFRINGEMENT .................................................. 4

      POINT III.   COUNT III OF THE SECOND AMENDED
                     COMPLAINT FAILS TO STATE A CLAIM
                     FOR TRADEMAKR INFRINGEMENT
                     AND UNFAIR COMPETITION ............................................................ 7

      POINT IV.   COUNT IV OF THE SECOND AMENDED
                     COMPLAINT FAILS TO STATE A CLAIM
                     FOR TORTIOUS INTERFERENCE WITH
                     BUSINESS RELATIONS....................................................................... 8

      POINT V.    COUNT V OF THE SECOND AMENDED
                       COMPLAINT FAILS TO STATE A CLAIM
                     FOR CIVIL CONSPIRACY ................................................................ 11

CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

Arista Records LLC v. Lime Grp. LLC,
715 F. Supp. 2d 481 (S.D.N.Y. 2010)................................................................5, 6

Bose v. Interclick,
No. 10-CV-9183, 2011 U.S. Dist. LEXIS 93663,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)........................................................10

Burkes v. N.Y. State Dental Ass'n,
No. 12 Civ. 2593 (GBD), 2013 U.S. Dist. LEXIS 102276,
2013 WL 3784143 (S.D.N.Y. July 18, 2013)....................................................9, 10

In re Aimster Copyright Litig,
334 F.3d 643 (7th Cir. 2003) ............................................................................5, 6

In re Elevator Antitrust Litig.,
2006 U.S. Dist. LEXIS 34517 (S.D.N.Y. May 26, 2006).......................................3

Metro. Bag & Paper Distribs. Asso. v. Fed. Trade Com.,
240 F.2d 341 (2d Cir. 1957).............................................................................3, 4

Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.,
545 U.S. 913 (2005)........................................................................................5, 6

Plasticware v. Flint Hills Res.,
852 F. Supp. 2d 398 (S.D.N.Y. 2012)...................................................................10

Sony Corp. v. Universal City Studios, Inc.,
464 U.S. 417 (1984) ........................................................................................5, 6

Tyler Fire Equip., LLC v. Oshkosk Corp.,
No. 14-CV-6513-CJS, 2015 U.S. Dist. LEXIS 77835
(W.D.N.Y. June 16, 2015)......................................................................................9

Voss v. Bank of Am., N.A.,
No. 5:15-cv-0232 (LEK/TWD), 2015 U.S. Dist.
LEXIS 173143 (N.D.N.Y. Dec. 30, 2015).............................................................9

Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.,
00-CV-5663, 2001 U.S. Dist. LEXIS 18831 (S.D.N.Y. November 19, 2001).....................3

**Statutes**

New York State Patent and Education Law § 409-f........................................................3, 6, 9

Defendants New York State School Facilities Association ("SFA") and School Facilities Management Institute ("SFMI") respectfully submit this Reply Memorandum of Law in further support of their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint ("SAC") of Plaintiffs Gym Door Repairs, Inc. and SafePath Systems LLC (together "Plaintiffs") as to all Counts for failure to state a claim.

## **Preliminary Statement**

Plaintiffs' Second Amended Complaint alleges a vast conspiracy among state educational officials and public school facilities personnel to infringe Plaintiffs' purported patents and put Plaintiffs out of business.  Many of those personnel are members of various trade associations, including SFA and SFMI.  Plaintiffs' allegations against SFA and SFMI are that SFA and SFMI are liable for the actions of their members in furtherance of the alleged conspiracy, even without allegation that those members were acting on behalf of, or at the direction of, the organizations.  In other words, that the people who allegedly carried out this alleged conspiracy were all "connected through" SFA or SFMI.  See Pl. Opp. at p. 3.  Such bare allegations are not sufficient to survive a motion to dismiss.  For the reasons herein and in SFA's and SFMI's Motion to Dismiss ("Mot. to Dismiss"), SFA and SFMI respectfully request the Court dismiss with prejudice all counts of the SAC as to SFA and SFMI.

**ARGUMENT**

**I.**

**Count I of the Second Amended Complaint
Fails to State a Claim for Patent Infringement**

SFA and SFMI are professional associations of school facilities, facilities managers and personnel, head custodians and health and safety coordinators. They are not – and the SAC does not allege that they are – a school, and they do not – and the SAC does not allege that they do – own, use, operate or maintain the gym door safety systems, or put out for bid any contract to do the foregoing. The SAC also does not allege that SFA or SFMI manufacture or install any competing product.

In their Motion to Dismiss, SFA and SFMI asserted that the SAC makes conclusory and tenuous allegations of patent infringement against all Defendants, that the repair and maintenance of the gym door safety systems by companies other than Plaintiffs – or the inducement of such – is an infringement of Plaintiffs' patents. But the only allegation against SFA and SFMI in connection with Count I of the SAC is that each "induced" the alleged patent infringement, by virtue of the fact that the alleged infringers were members of SFA and SFMI.

In their Opposition, Plaintiffs do not contradict the assertions made by SFA and SFMI in the Motion to Dismiss.  In fact, Plaintiffs' Opposition is nothing more than a rehash of the allegations in the SAC.  In their Opposition and in the SAC, Plaintiffs allege patent infringement by SFA and SFMI based on nothing more than allegations of patent infringement among *members* of each of SFA and SFMI.  There is no allegation of any direct action by SFA or SFMI or by anyone acting on behalf of, or at the instruction of, SFA and SFMI.  Rather, the allegations are solely that individuals who also happen to be

2

members of SFA and SFMI infringed a patent. For example, in their Opposition Plaintiffs assert that the SAC alleges affirmative steps taken by SFA and SFMI, but then just refer to allegations against individuals who were members of SFA and SFMI without any further allegations against the organizations themselves:

> **The SAC alleges affirmative steps on the part of Thurnau, SFA and SFMI** to purposefully cause Young, YES and the other Direct Infringers to infringe the '030 patent and it is clear from the face of the pleading that the inducement was not accidental or inadvertent. As the public official in charge of approving all safety devices for use in public and private schools, **Thurnau** was intimately familiar with the proprietary nature of Plaintiffs' product. **Thurnau** is alleged to have directly and explicitly threatened to put Plaintiffs out of business. SAC ¶ 52. He is alleged to have changed the official interpretation of Ed. Law § 409-f so that it is now out of alignment with the legislative intent. SAC ¶ 54-55. **He is alleged to have conspired with Joseph Van De Loo, Fred Koebel, Keith Anderson, Jonathan Hark, Kimberly Parahus, Joseph Hendrickson, Peter Laduca, John Shea, Volkert Braran and other members of SFA and SFMI** beginning in 2009 to villainize Plaintiffs' as greedy trouble makers and drive them out of business -- notwithstanding the fact that their then patented system is already installed in 4,700 school facilities across the State. SAC ¶¶ 53-64. Drawing on common sense, it does not require even a small leap to conclude that **Thurnau and his compatriots at SFA and SFMI** were well aware that they were encouraging infringement of the '030 patent prior to its expiration in 2011 by encouraging facilities directors and superintendents to use Young/YES and the other Direct Infringers to service these proprietary systems.

Pl. Opp. at 14 (emphasis added).

On a number of occasions this Court has clearly held that participation or membership in a trade association is not sufficient to infer participation in a conspiracy. See In re Elevator Antitrust Litig., 2006 U.S. Dist. LEXIS 34517 (S.D.N.Y. May 26, 2006); Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., 00-CV-5663, 2001 U.S. Dist.

LEXIS 18831 (S.D.N.Y. November 19, 2001); <u>Metro. Bag & Paper Distribs. Asso. v. Fed. Trade Com.</u>, 240 F.2d 341, 344 (2d Cir. 1957).

In any event, there are no specific allegations in the SAC of actions taken by either SFA or SFMI in violating or inducing the violation of any patent.  For those reasons Count I of the SAC should be dismissed.

**II.**

**Count II of the Second Amended Complaint**
**<u>Fails to State a Claim for Copyright Infringement</u>**

Count II of the SAC alleges copyright infringement against "All Defendants," although according to Plaintiffs the nature of the alleged infringement differed from Defendant to Defendant.  <u>See</u> SAC ¶¶ 159 – 171.  Some Defendants are alleged to have directly infringed Plaintiffs' copyrights in the "Manufacturer Materials" by copying those materials while other, such as SFA and SFMI, are alleged to have "*induced infringement* by allowing their organization to be used to orchestrate the conspiracy to destroy Plaintiffs' business by, among other things, steering Safe Path Systems maintenance work to YES." <u>See</u> SAC at ¶ 168 (emphasis added).

SFA and SFMI, in their Motion to Dismiss, asserted that (i) the SAC makes allegations of copyright infringement against 19 different entities and individuals without sufficient differentiation, (ii) that there is no cause of action for induced copyright infringement, and (iii) that Plaintiffs' copyright claims are time barred. Mot. to Dismiss at 12.

In their Opposition, Plaintiffs give short shrift to SFA and SFMI's arguments.  First, Plaintiffs assert that "even a speed reading of the SAC as a whole demonstrates that Plaintiffs' went to considerable lengths to distinguish among the

4

various defendants." That Plaintiffs separate out their conclusory allegations against the various Defendants is of no moment. The fact is that Count II of the SAC alleges copyright infringement against 19 different parties who are not alleged to have acted uniformly. The allegations against SFA and SFMI are not sufficient to survive a motion to dismiss. Next, Plaintiffs assert that SFA's and SFMI's "second argument is wrong as a matter of law because contributory infringement has long been recognized as a cause of action." Notice here the pivot from "induced infringement" alleged in the SAC to the "contributory infringement" asserted for the first time in the Opposition. In fact, there is no cause of action for induced copyright infringement. And although there is a cause of action for contributory copyright infringement, it applies in only a very narrow set of circumstances when there is a device that allows copyright infringement on a massive scale. The allegations against SFA and SFMI do not fall into that narrow set of circumstances.

In <u>Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd</u>., 545 U.S. 913 (2005), cited by Plaintiffs in their Opposition, the Supreme Court recognized a cause of action for contributory copyright infringement and held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." Plaintiffs also cite to an earlier Supreme Court case, <u>Sony Corp. v. Universal City Studios, Inc</u>., 464 U.S. 417 (1984). This case, known as the *Betamax* case, also applied to devices that could be used to violate copyright on a massive scale.

This Court has held that secondary copyright liability, such as is alleged against SFA and SFMI in the SAC, is limited to *devices* or other products that make possible direct infringement on a "massive scale" which makes it impossible or

impractical to enforce the copyright against all the direct infringers.  See Grokster at 930

(citing In re Aimster Copyright Litig, 334 F.3d 643, 645-646 (7th Cir. 2003));  Arista

Records LLC v. Lime Grp. LLC, 715 F. Supp. 2d 481, 506 (S.D.N.Y. 2010)

> Secondary liability for copyright infringement may be imposed on a party that has not directly infringed a copyright, but has played a significant role in direct infringement committed by others, [47] for example by providing direct infringers with a product that enables infringement. See Grokster, 545 U.S. at 929-30; Sony Corp. v. Universal City Studios, 464 U.S. 417, 434-35, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984). **The rationale for secondary liability is that a party who distributes infringement-enabling products or services may facilitate direct infringement on a massive scale, making it "impossible to enforce [copyright protection] effectively against all direct infringers." In such circumstances, "the only practical alternative is to go against the distributor of the copying device for secondary liability."** Id. at 930 (citing In re Aimster Copyright Litig, 334 F.3d 643, 645-646 (7th Cir. 2003))

Arista Records LLC v. Lime Grp. LLC, 715 F. Supp. 2d 481, 506 (S.D.N.Y. 2010) (emphasis

added).

There is no allegation in the SAC that either SFA or SFMI distributed an

infringement-enabling device that allowed for a massive scale copyright infringement.

For that reason, Count II of the SAC should be dismissed as to SFA and SFMI.

The third ground for dismissal of the copyright claim against Defendants

SFA and SFMI is that the cause of action is barred by the statute of limitations.  Plaintiffs'

only response is to assert that the SAC (in ¶¶ 128, 171, and 62-63) alleges that copyright

infringement is *ongoing* and that Defendant Carl Thurnau "continues to communicate

his disdain for Ed. Law 409-f and for Plaintiffs."  Setting aside whether Mr. Thurnau's

alleged disdain for Ed. Law 409-f and/or Plaintiffs is at all relevant to the copyright

infringement claim, Plaintiffs are disingenuous in their citation to the supposed

allegations of ongoing copyright infringement in the SAC.  In the paragraphs referred to

by Plaintiffs there is no such allegation of an ongoing copyright infringement:

> 128. The Defendants have infringed or induced infringement
> of Plaintiffs' copyrights and will continue to engage in the
> infringing activities described herein unless enjoined by this
> Court.
>
> 171. Defendants' conduct is causing and unless enjoined by
> this Court will continue to cause Plaintiffs irreparable injury
> that cannot be fully compensated or measured in money.
>
> 62. Mr. Thurnau continues communicate his contempt for
> Plaintiffs to school personnel throughout the State.
>
> 63. In the August 2015 issue of the NYSED Office of Facilities
> Planning Newsletter Mr. Thurnau writes about potential
> problems with the pocket stacking area coverage for certain
> electrically operated partition safety systems that have not
> been correctly installed or maintained.

Even assuming the truth of each of these allegations, there is no hint of an

allegation against SFA and SFMI for inducing or contributing to an ongoing copyright

infringement.

### III.

### Count III of the Second Amended Complaint Fails to State a Claim for Trademark Infringement and Unfair Competition

In the SAC, Plaintiffs allege that SFA and SFMI induced trademark

violations "by engaging in all of the unfair and deceptive acts allegedly described in the

Second Amended Complaint."

> 180. Defendants Carl Thurnau, SFA, SFMI, ESBOCES,
> Nassau BOCES, Bellmore and EDS induced the foregoing
> violations of the Lanham Act and New York General Business
> Law by engaging in all of the unfair and deceptive acts
> described herein in furtherance of the conspiracy to drive
> Plaintiffs out of business. Only prospective injunctive relief is
> sought against Mr. Thurnau in his official capacity.

2d Amend. Compl. at ¶ 180.

SFA and SFMI moved to dismiss Count III of the SAC for failure to state a claim, asserting that the SAC contains no description of any allegedly unfair and/or deceptive acts by either of SFA or SFMI.  SFA and SFMI also argued that in the absence of viable claims for direct trademark infringement there can be no viable cause of action against SFA and SFMI for induced trademark violations.  In their Opposition, Plaintiffs address only the second part of the argument made by SFA and SFMI, arguing that there *are* sufficient allegations of direct infringement in the SAC and pointing to Exhibit 9 to the SAC which purports to be a "copy of an infringing mailing." SAC at ¶ 135.  But other than a conclusory statement that "the allegations are more than adequate" [Opp. at p. 40], Plaintiffs do not point to any specific allegations in the SAC of induced infringement by SFA and SFMI, because there are none.

The Court should therefore dismiss Count III of the SAC as to SFA and SFMI for failure to state a claim on which relief can be granted.

## IV.

### Count IV of the Second Amended Complaint Fails to State a Claim for Tortious Interference with Business Relations

In the SAC, Plaintiffs allege that all Defendants tortiously interfered with Plaintiffs' existing and prospective business relationships with school districts in New York State and that Plaintiffs had a reasonable expectation of those business relationships continuing.

In their Motion to Dismiss, SFA and SFMI asserted that Count IV of the SAC fails to state a claim and is time barred due to the running of the statute of limitations. SFA and SFMI also assert that Plaintiffs are estopped from asserting any property rights

based on Education Law § 409-f, which states that property rights are necessary in order to assert the allegations in Count IV of the SAC.

Plaintiffs, in the Opp., assert that the SAC does state a claim against SFA and SFMI for tortious interference because the SAC alleges that "Plaintiffs allege that Thurnau interfered with it existing relationships with all 4,700 schools that have previously installed Safe Path Systems as well as to schools that still need safety systems." Opp. at p. 48. First, it must be noted that the allegation used by Plaintiffs to "rebut" SFA's and SFMI's argument that the SAC fails to state a claim is an allegation against Mr. Thurnau, not SFA or SFMI. Furthermore, Plaintiffs' response exhibits a lack of understanding of the cause of action for tortious interference. Tortious interference with contractual or business relationships requires *specificity* in its description of the contractual and/or business relationships that are alleged to have been interfered with. Plaintiffs' allegations of 4,700 schools, as well as an untold number of other schools that still need safety systems, does not come close to meeting the required specificity required by the law and this Court. See, e.g., Voss v. Bank of Am., N.A., No. 5:15-cv-0232 (LEK/TWD), 2015 U.S. Dist. LEXIS 173143, at *30 (N.D.N.Y. Dec. 30, 2015); Tyler Fire Equip., LLC v. Oshkosk Corp., No. 14-CV-6513-CJS, 2015 U.S. Dist. LEXIS 77835, at *29 (W.D.N.Y. June 16, 2015) ("Although the first amended complaint does allege the existence of "binding contracts" with the named fire companies and vendor, it does not identify or describe the provisions of the contracts with which Defendants allegedly tortiously interfered. For example, did the contracts bind the fire companies to purchase exclusively from Plaintiffs?"); Burkes v. N.Y. State Dental Ass'n, No. 12 Civ. 2593 (GBD), 2013 U.S. Dist. LEXIS 102276, 2013 WL 3784143, at *4 (S.D.N.Y. July 18, 2013) (finding the absence of a specific allegation that defendants interfered with a specific business

relationship fatal to the tortious interference claim); <u>Plasticware v. Flint Hills Res.</u>, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (dismissing claim for tortious interference with contract where plaintiff claimed generally that it had contracts with various parties, but did not provide details about the terms of the contracts or the specific parties involved); <u>Bose v. Interclick</u>, No. 10-CV-9183, 2011 U.S. Dist. LEXIS 93663, 2011 WL 4343517, at *10-11 (S.D.N.Y. Aug. 17, 2011) (same).

   Plaintiffs, however, only address the *specificity* argument in the Motion to Dismiss and ignore SFA's and SFMI's other arguments regarding the deficiencies in Count IV of the SAC, namely that there are no allegations that SFA and SFMI acted with the required level of malice, that is, with the sole intention of harming Plaintiffs.

   In addressing the assertion that the tortious interference cause of action in the SAC is time barred because the '030 Patent expire in October 2011, Plaintiffs pivot and assert that the patent-related allegations are not the only "conduct underlying Plaintiffs' tortious interference claims" and that "copyright infringement, trademark infringement, unfair competition, deceptive acts and practices, retaliation, defamation, fraud, wage and hour violations and governmental corruption are some of the other unlawful acts alleged to underlie the tortious interference claims." Pl. Opp. at p. 49

   However, there are no allegations in the SAC to support a cause of action against two unincorporated associations, without employees, for tortiously interfering with the unspecified business relationships of Plaintiffs.  For those reasons, Count IV of the SAC should be dismissed.

**V.**

### Count V of the Second Amended Complaint
### Fails to State a Claim for Civil Conspiracy

Plaintiffs have not made even the barest allegations that either SFA or SFMI were parties to any agreement, committed an overt act in furtherance of an agreement, or that the parties intentionally participated in the furtherance of a plan or purpose to cause damage to Plaintiffs. The only allegation in the SAC is that SFA and SFMI allowed their members to use those organizations in furtherance of the conspiracy, but those allegations are nothing more than bare conclusions without any factual support. As discussed, *supra*, membership in a trade association is not enough to infer participation in a conspiracy. The fact that the allegations in the SAC regard individuals who were also members of SFA and SFMI is not sufficient to infer the participation of SFA and SFMI in any conspiracy. For those reasons, Plaintiffs have failed to state a claim against SFA or SFMI for civil conspiracy.

### Conclusion

For the reasons set forth above, Defendants SFA and SFMI respectfully request that their motion to dismiss all Counts of the Second Amended Complaint be granted.

Dated:  New York, New York
       February 12, 2016

                                PADUANO & WEINTRAUB LLP


                                By: /s/Jason Snyder
                                      Meredith Cavallaro
                                      Jason Snyder
                                1251 Avenue of the Americas
                                Ninth Floor
                                New York, New York 10020
                                (212) 785-9100
                                mcavallaro@pwlawyers.com
                                jjs@pwlawyers.com

                                Attorneys for Defendants SFA and SFMI