**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
──────────────────────────────────────

**GYM DOOR REPAIRS, INC. ET AL.,**

              Plaintiffs,         15-cv-4244 (JGK)

    - against –             **MEMORANDUM OPINION AND**
                                                   **ORDER**
**YOUNG EQUIPMENT SALES, INC. ET AL.,**

              Defendants.

──────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiffs Gym Door Repairs, Inc. and Safe Path Systems LLC (collectively, the "plaintiffs") bring this action against numerous defendants for patent, copyright, and trademark infringement under federal law and for unfair competition, tortious interference with existing and prospective business relationships, and civil conspiracy in violation of New York State law.

    The plaintiffs move pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Copyright Act and the Lanham Act for a preliminary injunction: (a) enjoining the defendants Young Equipment Sales, Inc. and YES Service and Repairs Corp. (collectively, the "Young defendants"), Total Gym Repairs, Inc., Guardian Gym Equipment, and Tri-State Folding Partitions, Inc. (collectively, the "defendants") from using the 2016-17 Educational Data Services, Inc. ("EDS") Cooperative Bid No. 7593 (Folding Door Repair and Replacement-Package No. 17) and Bid No.

1

7611 (Scoreboard/Bleachers and Gymnasium Equipment Inspection and Repair-Package No. 18) (the "2016-17 State Contract") to perform installation, inspection, maintenance, staff training and repair work on Safe Path Systems; and (b) making and using unauthorized copies of Safe Path Manufacturer Materials and holding themselves out as certified Safe Path service providers.[1]

The Court held an evidentiary hearing on the motion for a preliminary injunction on August 1, 2016. Having assessed the credibility of the witnesses and reviewed the evidence, the Court makes the following Findings of Fact and reaches the following Conclusions of Law.

I.

The following facts are based on the parties' submissions in connection with the preliminary injunction, exhibits attached to the Second Amended Complaint ("SAC"), and the evidence elicited at the hearing before the Court.

The plaintiffs, based in New York, manufacture safety devices for electrically operated folding partition doors and

---

[1] The plaintiffs had earlier sought to require EDS to provide written notice to all members of the Purchasing Group for the 2016-17 State Contract that the 2016-17 State Contract does not cover the installation, inspection, maintenance, staff training or repair of Safe Path Systems or other folding door partition safety devices. However, the plaintiffs and EDS have entered into a settlement agreement that resolves the dispute between them and EDS has been dismissed as a defendant in this case. See ECF Dkt. Nos. 209-10. Therefore, the Court does not address the portion of the application for a preliminary injunction that seeks action against EDS.

curtains. While there is an unresolved dispute as to the validity of a patent assignment to the plaintiff Gym Door Repairs, Inc. ("GDRI"), GDRI presented evidence of ownership of a now expired patent---Patent No. 5,244,030 (the "'030 Patent")---covering the Safe Path System. See Stephen F. Cole Aff. in Support of Preliminary Injunction, ECF Dkt. No. 181 ("Cole Aff.") ¶ 3; SAC, Ex. 2. GDRI is the owner of federally registered copyrights covering staff training transcripts, flyer specifications, installation manuals, performance specifications, owner's manuals, wiring diagrams, training programs, manufacturer instructions and other documentation related to the Safe Path System (collectively, the "Manufacturer Materials"), Registration No. TXu 1-803-046. See Cole Aff. ¶ 3. GDRI also owns federal trademark Registration Number 1923394 (for the trademark "THE SAFE PATH SYSTEM") and the plaintiff Safe Path Systems LLC owns Registration Numbers 3894751 and 3894752 (for the mark "SAFE PATH"). Cole Aff. ¶ 3; see also SAC, Exs. 2-8 (copies of the patent, certificate of copyright registration, certificates of trademark registration and the assignments).

  Since 2001, the Safe Path Systems have been installed in more than 4,700 public schools across New York State. Cole Aff. ¶ 4; August 1, 2016 Hearing Transcript ("Tr.") at 46.

3

Stephen Cole, the President of GDRI and an inventor of the Safe Path System, testified that his company is inspecting, maintaining and repairing only a couple hundred of the thousands of Safe Path devices currently installed in New York public schools. Cole Aff. ¶ 7; Tr. at 36. When GDRI calls public school districts to offer its inspection and repair services, GDRI is routinely told that it is "not eligible" to bid on Safe Path inspection, maintenance, staff training, and repair work because it does not have the 2016-17 State Contract. Cole Aff. ¶ 7; see also Tr. 112-13.

The 2016-17 State Contract is a collection of bids awarded for the 2016-17 school year on behalf of a municipal cooperative purchasing group (the "Purchasing Group") created pursuant to N.Y. General Municipal Law Section 119-o and comprised of school districts throughout New York, New Jersey, and Connecticut. The so called "State Contract" for 2016-17 is administered by the Clarkstown Central School District as the lead agency. EDS is the administrative agent for the Purchasing Group. Cole Aff. ¶ 8.

It is disputed whether the 2016-17 State Contract covers the installation, inspection, staff training, maintenance, or repair of folding partition safety systems, like the Safe Path Systems. The plaintiffs claim that it does not. Cole Aff. ¶¶ 9-10.

The plaintiffs claim that, through freedom of information requests, they learned that the Young defendants have used the EDS Bid "repeatedly" since 2011-12 to perform work on the Safe Path Systems. Cole Aff. ¶ 10; see also Cole Aff., Ex. A. At the August 1, 2016 hearing, Cole testified that, as early as 2009, the plaintiffs started noticing what it considered "misuses" of the State Contract bids. Tr. at 93. They were concerned about lost business and potential wrongdoing on the part of the defendants and began writing letters to city and state agencies seeking their help. See Tr. at 82. In 2009, the plaintiffs were servicing about as many schools as they are servicing now. Tr. at 82.

Between 2009 and 2010, Young Equipment Sales and the plaintiffs entered into an agreement that authorized Young Equipment Sales to hold itself out as an authorized dealer representing Safe Path. Tr. at 60. That agreement ended in 2010. Tr. at 60-61. In 2010 or 2011, the plaintiffs sent a cease and desist letter to Young Equipment Sales, telling the company that it did not have permission to use materials that said that Young Equipment Sales was certified to work on Safe Path Systems. Tr. at 61-63.

On May 19, 2016, the plaintiffs received a copy of "Bid Detail Reports" for the 2016-17 State Contract. The reports indicate that Bid Packages Numbers 17 and 18 were awarded in all

5

participating New York counties to four vendors: Young Equipment Sales, Total Gym Repairs, Inc., Tri-State Folding Partitions, and Guardian Gym Equipment. These are the same companies that have since 2011-12 used prior State Contracts to work on Safe Path Systems, allegedly holding themselves out to school districts as authorized Safe Path service providers when they were not. See Cole Aff. ¶ 11, Exs. B-C. The plaintiffs did not submit a bid to do any work on the 2016-17 State Contract. Tr. at 66, 81.

The defendants' use of the 2016-17 State Contract to work on Safe Path devices---work that the plaintiffs claim is unlawful and unfairly interferes with the plaintiffs' ability to provide those services to its existing and prospective customers---prompted the plaintiffs to move for a preliminary injunction and temporary restraining order on July 20, 2016. The plaintiffs seek to enjoin the defendants from using the 2016-17 State Contract to perform maintenance on Safe Path devices or make unauthorized copies of the plaintiffs' copyrighted materials. Tr. at 92. The Court denied the temporary restraining order on the record, see ECF Dkt. No. 170, and held an evidentiary hearing on August 1, 2016.

## II.

The standards that govern the issuance of a preliminary injunction are well established. "A party seeking a preliminary

6

injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008). In addition, because the plaintiffs seek a mandatory injunction requiring the defendants to take affirmative action that will alter the status quo, the plaintiffs must show a clear likelihood of success on the merits.[2] See Tom Doherty Assocs., Inc., v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995); see also Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc., No. 08-cv-6572 (JGK), 2008 WL 4702458, at *6 (S.D.N.Y. Oct. 3, 2008).

The Lanham Act prohibits the use in commerce, without the consent of the registrant, of any "registered mark in connection with the sale, offering for sale, distribution, or advertising

---

[2] The plaintiffs argue that the preliminary injunction will not alter the status quo, but that is plainly not the case. The plaintiffs did not submit bids on the 2016-17 bid package. See Tr. at 66, 81; Cole Aff., Ex. B. If the Court enjoins the defendants from performing repairs and inspections, the defendants will not be able to perform the repairs; it is unclear that the plaintiffs will perform the repairs; and the Safe Path Systems may not be inspected. See S.E.C. v. Unifund SAL, 910 F.2d 1028, 1040 (2d Cir. 1990) (imposing "substantial showing of likelihood of success" standard because "[t]hough the order is prohibitory in form, rather than mandatory, it accomplishes significantly more than preservation of the status quo").

of any goods" in a way that is likely to cause confusion. 15 U.S.C. § 1114(1)(a). "The Act similarly prohibits the infringement of unregistered, common law trademarks." Time, Inc. v. Petersen Pub. Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999) (citing 15 U.S.C. § 1125(a)(1)).

To prevail on a trademark infringement claim "a plaintiff must demonstrate that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" Id. (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995)). "A mark is entitled to protection when it is inherently distinctive; [or] . . . if it has acquired secondary meaning, i.e., if it has become distinctive of the . . . goods in commerce." Id. (citations and internal quotation marks omitted). Once the possessor establishes a valid mark entitled to protection, "its possessor, in order to succeed on its infringement claim, must prove that 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'" Id. (quoting Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993)); see also VIDIVIXI, LLC v. Grattan, 155 F. Supp. 3d 476, 480 (S.D.N.Y. 2016).

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of


constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

The motion for a preliminary injunction fails because the plaintiffs have not shown a likelihood of irreparable harm in the absence of an injunction, and they have not shown that the balance of equities tips in favor of an injunction. See Salinger v. Colting, 607 F.3d 68, 76-77 (2d Cir. 2010) (holding that, in a copyright case, a plaintiff must show actual irreparable harm); New Look Party Ltd. v. Louise Paris Ltd., No. 11-cv-6433 (NRB), 2012 WL 251976, at *10 (S.D.N.Y. Jan. 11, 2012) ("Because we can no longer 'adopt a categorical or general rule or presume that the plaintiff will suffer irreparable harm' in copyright and trademark cases . . . plaintiff must make an independent showing of such harm.").

First, the significant delay in bringing the preliminary injunction motion counsels against a finding of irreparable injury. "[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (citation and internal quotation marks omitted); see also Brockmeyer v. The Hearst Corp., No. 01-cv-7746 (JGK), 2002 WL 1402320, at *4 (S.D.N.Y. June 27, 2002).

With respect to delay, the relevant period of delay begins when the plaintiff learned of the alleged infringement. Tough Traveler, 60 F.3d at 968; see also Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc., No. 16-CV-5079 (JGK), 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016). In this case, that is as early as 2009. See, e.g., Tr. at 93. The plaintiffs' reason for not filing a motion for a preliminary injunction sooner---that they were pursuing administrative remedies through the state and local governments, see Tr. at 35---does not excuse the delay in bringing a preliminary injunction motion. The delay of essentially seven years is unaccounted for and counsels against a finding of irreparable injury. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (sense of urgency undercut by the plaintiff waiting more than ten weeks after directly learning of the alleged infringer's plan and more than nine months after it received notice through the press); Fashion Week, 2016 WL 4367990, at *5 (denying preliminary injunction where the plaintiff delayed at least twelve months in seeking an injunction after becoming aware that the defendants were using the claimed marks); Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 458 (S.D.N.Y. 2014) (nine months constituted too long of a delay); New Look, 2012 WL 251976, at *11 (fourteen months counseled against a finding of irreparable injury).

In addition to waiting too long, the plaintiffs have not shown actual irreparable injury. "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." Tom Doherty Assocs., 60 F.3d at 37 (citation and internal quotation marks omitted). And irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." Gen. Mills, Inc. v. Chobani, LLC, 158 F. Supp. 3d 106, 2016 WL 356039, at *9 (N.D.N.Y. 2016) (citation omitted), *reconsideration denied*, No. 3:16-CV-58, 2016 WL 1639903 (N.D.N.Y. Apr. 25, 2016). The plaintiffs argue that unless the Court grants the injunction, they will lose the contracts with the schools that they seek. However, there is no evidence that the plaintiffs would get these contracts even if the Court granted the injunction. The plaintiffs did not actually bid on the contracts that have gone to the defendants. Stephen Cole testified that the plaintiffs did not make any bids for the folding door partition contracts in 2016-17 and have not made such bids for several years. Tr. at 81. The plaintiffs cannot plausibly claim that they will be harmed by a loss of business that they would not recover even if the Court grants the injunction. Accordingly, the Court is unable to find that plaintiffs will suffer irreparable injury in the absence of a preliminary injunction. New Look, 2012 WL 251976, at *10.

11

Second, the balance of hardships tips decidedly against the plaintiffs. Enjoining the maintenance and repair of the Safe Path Systems would cost the defendants business, see, e.g., Fashion Week, 2016 WL 4367990, at *9, and could interfere with needed repairs and maintenance on the partition doors, endangering the lives of children, which is an important public safety concern. See, e.g., United for Peace & Justice v. City of New York, 243 F. Supp. 2d 19, 29 (S.D.N.Y.), aff'd, 323 F.3d 175 (2d Cir. 2003) (denying motion for preliminary injunction to bar denial of a permit to march in a rally parade in part because of public safety concerns).

Because the plaintiffs have failed to show that they will suffer irreparable injury in the absence of a preliminary injunction and because the balance of hardships tips decidedly against the plaintiffs, their motion for a preliminary injunction is denied.[3]

## CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the

---

[3] Because the plaintiffs have not carried their burden on those grounds, it is unnecessary to address whether the plaintiffs have shown a likelihood of success on the merits or raised sufficiently serious questions going to the merits to make them a fair ground for litigation. See New Look, 2012 WL 251976, at *2 n.2. As explained in the accompanying Opinion and Order, many claims in the plaintiffs' sprawling Second Amended Complaint have failed to survive the motions to dismiss filed by the numerous defendants in this case.

arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. The plaintiffs' motion for a preliminary injunction is **denied**.

**SO ORDERED.**

**Dated:**   **New York, New York**
            **September 9, 2016**               _____/s/_____
                                                   **John G. Koeltl**
                                         **United States District Judge**