**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GYM DOOR REPAIRS, INC. ET AL.,**

                **Plaintiffs,**          **15-cv-4244 (JGK)**

      **- against –**             **OPINION AND ORDER**

**YOUNG EQUIPMENT SALES, INC. ET AL.,**

                **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

The plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safepath Systems LLC ("SPS") (collectively, the "plaintiffs") bring this suit against nineteen defendants to obtain permanent injunctive relief, damages, and attorneys' fees and costs for the defendants' alleged infringement of the plaintiffs' patent, copyrights, and trademarks, and---under New York State law---for unfair competition, tortious interference with business relationships, and civil conspiracy. The plaintiffs assert that the defendants have illegally inspected, maintained or repaired safety systems for electrically operated folding partitions, called the "Safe Path System," that the plaintiffs sold to New York State schools.

The defendants are Young Equipment Sales, Inc., YES Service and Repairs Corporation, Richard Young, Brian Burke, Dennis Schwandtner (collectively, "YES" or the "Young defendants"); Guardian Gym Equipment, Qapala Enterprises, Inc., James

Petriello (collectively, the "Guardian defendants"); Tri-State
Folding Partitions, Inc., Peter Mucciolo (collectively, the
"Tri-State defendants"); Educational Data Services, Inc.
("EDS"); Total Gym Repairs, Inc. ("Total Gym"); Carl Thurnau
("Thurnau"), who is sued both individually and as the Director
of the New York State Department of Education Office of
Facilities Planning; the New York State School Facilities
Association ("SFA"); the School Facilities Management Institute
("SFMI"); Eastern Suffolk Board of Cooperative Educational
Services, or BOCES ("ESBOCES"); Nassau BOCES; Bellmore Public
Schools ("Bellmore"); and the New York City Department of
Education ("NYCDOE") (collectively, "the defendants"). The
defendants filed nine motions to dismiss the Second Amended
Verified Complaint (the "SAC").[1]

For the reasons that follow, these motions are **granted in
part and denied in part**.

### I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

---

[1] The plaintiffs and EDS have entered into a settlement agreement
and the claims against EDS have been dismissed. ECF Dkt. Nos.
209-10. Accordingly, EDS's motion to dismiss is denied without
prejudice.

2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153

3

(2d Cir. 2002); see Springer, 2015 WL 9462083, at *1; see also
Mercator Corp. v. Windhorst, No. 15-CV-02970 (JGK), 2016 WL
519645, at *1 (S.D.N.Y. Feb. 10, 2016).[2]

II.

The following facts alleged in the SAC are accepted as true
for purposes of the defendants' motion to dismiss.

In 2001, the New York State legislature passed, and the
governor signed into law, N.Y. Educ. Law § 409-f, which requires
all public and private schools in New York State to install and
maintain safety devices on all electrically operated partition
doors to stop the forward and stacking motion of the doors when
a body or other object is present. N.Y. Educ. Law § 409-f and
the regulations that the New York Commissioner of Education
promulgated in response to it require school districts to post
conspicuous notices in the immediate vicinity of the equipment
regarding its proper use and supervision and establish
procedures concerning the training of employees who regularly

---

[2] The Guardian and Tri-State defendants moved to dismiss pursuant
to Rule 12(b)(6) and Rule 12(d). Rule 12(d) allows the Court to
treat a Rule 12(b) motion as one for summary judgment when all
parties are "given a reasonable opportunity to present all the
material [outside the pleadings] that is pertinent to the
motion." Fed R. Civ. P. 12(d). The plaintiffs did not receive
notice about converting this motion to dismiss into a motion for
summary judgment and there has been no discovery. The motion
should be decided on the basis of the sufficiency of the SAC.
Under the circumstances of this case, converting this Rule
12(b)(6) motion to dismiss into a Rule 56 motion for summary
judgment, pursuant to Rule 12(d), is unwarranted.

use the equipment. <u>See</u> New York State Education Department Commissioner's Regulation § 155.25. Pursuant to the law and the regulation, districts must inform their employees of the penalties for disabling the safety devices on the doors and maintain records indicating that training has been done and that the safety devices have been maintained in accordance with the manufacturer's instructions. The plaintiffs allege that this legislation was adopted in 1991 after the tragic death of two New York school children. SAC ¶¶ 25-29

The plaintiffs are the manufacturer of the Safe Path System, a safety device used on electrically operated doors in New York State. The plaintiffs' device was patented until the patent expired on October 17, 2011. SAC ¶¶ 34-36 (citing Patent No. 5,244,030 (the "'030 Patent") for "Electrically Operated Folding Operable Walls"). According to the SAC, between 2003 and 2012, the Safe Path System was the only device approved for use in New York City public schools. SAC ¶ 32. According to the SAC, Safe Path Systems are currently installed in more than 4,700 schools throughout the State. SAC ¶ 45.

Although they had been urging compliance with N.Y. Educ. Law § 409-f and Regulation § 155.25 since 2003, the plaintiffs began in earnest in 2009 to voice their concerns that some schools in New York State were still out of compliance because they had electrically operated partitions without safety

systems. SAC ¶ 48. The plaintiffs assert that they knew in 2009 that the Safe Path Systems that had been installed were not being properly inspected and maintained by the schools that had them. Id.

The plaintiffs allegedly raised their concerns with the New York State Department of Education ("NYSED"). SAC ¶ 52. In February, 2009, when circumstances had not improved, the plaintiffs took their complaints to the offices of New York's Governor and Attorney General, to the office of the Mayor of New York City, and to the Senate and Assembly sponsors of N.Y. Educ. Law 409-f. SAC ¶ 50. The plaintiffs' concerns were referred to Carl Thurnau, the Director of the Office of Facilities Planning for the NYSED. SAC ¶ 51.

The plaintiffs allege that Thurnau was very angry and said: "Compliance with the law is a financial decision on my part . . . . . I am putting you out of business. You are done. You are a rat. I told you to stop poking your nose where it does not belong." SAC ¶ 52.

The plaintiffs allege that Thurnau then conspired with Joseph Van De Loo, the Executive Director of the SFMI, a non-profit organization founded by Thurnau and Van De Loo, to disseminate information and educate school officials about facilities matters, and with others to use the meetings and newsletters of that organization to harm the plaintiffs'

business. SAC ¶ 53. The plaintiffs allege that many other state and local officials joined Thurnau and Van De Loo in conspiring to harm the plaintiffs. SAC ¶ 53.

The plaintiffs allege that, in August 2009, Thurnau changed the official NYSED interpretation of N.Y. Educ. Law § 409-f and Regulation 155.25, allowing "any competent person" to work on Safe Path Systems instead of solely the manufacturer's authorized and trained technicians. SAC ¶¶ 54-55. The plaintiffs also allege that Thurnau and his alleged coconspirators blackballed the plaintiffs with facilities directors and superintendents across New York State. SAC ¶¶ 56-59.

The plaintiffs allege that within months of Thurnau's threat, defendants Richard Young and Dennis Schwandtner incorporated YES Service and Repairs Corporation and started to perform maintenance and repair work on Safe Path Systems. SAC ¶ 57. The plaintiffs allege that YES and the other Young defendants rigged bids in New York State school districts and hijacked cooperative bids administered by defendants ESBOCES and Bellmore as well as bids administered by EDS. SAC ¶¶ 60-61, 65-78, 79-87, 99-106; K. Cole Aff. ¶¶ 4, 6, 8-9. These schemes allegedly enabled YES and the other Young defendants to circumvent the competitive bidding process and block the plaintiffs from bidding on jobs to service the Safe Path Systems. SAC ¶ 75. The SAC also alleges that the Young

7

defendants defrauded individual school districts by charging rates four to seven times higher than the plaintiffs would have charged for the same work. SAC ¶ 76.

The plaintiffs allege that the Young defendants bypassed or disabled the Safe Path Systems in violation of the law. SAC ¶ 95. The plaintiffs allege that, in New York City, the NYCDOE hired the Young defendants to train their electricians how to bypass and disable Safe Path Systems. SAC ¶ 95.

The plaintiffs allege that, because school districts are obligated to comply with the reporting requirements of § 409-f and § 155.25, YES and the other Young defendants made and used unauthorized copies of Safe Path's price lists, product specifications, compliance certificates, and other copyrighted materials, altered them by replacing the plaintiffs' name with their own name, raised the prices, and submitted them to the districts while holding themselves out, falsely, as being certified to repair Safe Path Systems. SAC ¶¶ 133, 135. The plaintiffs allege that Guardian, Tri-State, and Total Gym made similar copies and misrepresentations. See SAC ¶ 176-77.

The plaintiffs allegedly notified officials from ESBOCES, Nassau BOCES, Bellmore, and EDS about the allegedly wrongful acts committed by the Young defendants. SAC ¶¶ 65-78, 79-87, 99-106. The plaintiffs allege that ESBOCES and EDS acknowledged that their bids were being misused by the Young defendants but

continued to award the bids to them for three more years anyway.
As a result, the Young defendants continued to use the bids to
perform maintenance and repair work on Safe Path Systems and
perpetrate the alleged fraud against New York school districts.
SAC ¶¶ 65-78, 103.

The plaintiffs allege that they met with officials from the
NYCDOE on numerous occasions to discuss their concerns. SAC ¶
89. The plaintiffs allege that in 2009, not long after Thurnau
allegedly threatened the plaintiffs, NYCDOE began using other
vendors to install, maintain, and repair Safe Path Systems in
New York City. SAC ¶ 89. The SAC alleges that the NYCDOE
canceled contracts and requests for proposals for the
plaintiffs' services, and instructed NYCDOE general contractors
not to use the plaintiffs' services. SAC ¶¶ 64, 88-98; see also
SAC ¶¶ 65, 90-92 (alleging that in 2010 the NYCDOE Brooklyn
Borough Manager abruptly switched from plans to use SPS for
repair work to YES). The plaintiffs allege that these actions
caused significant harm to their reputation and business
interests. See, e.g., SAC ¶¶ 138, 143.

In March 2011, the plaintiffs brought an Article 78
proceeding, a New York State administrative appeal, against the
NYCDOE in which they alleged that N.Y. Educ. Law § 409-f and
Reg. § 155.25 require Safe Path System safety devices to be
maintained in accordance with the manufacturer's instructions

9

by, and only by, an SPS certified maintenance technician. SAC at
¶ 141; see also Glotzer Decl. ¶ 5, Ex. B. The plaintiffs' claims
were dismissed for want of standing and the Appellate Division
of the New York State Supreme Court affirmed the judgment of
dismissal, holding that GRDI and SPS failed to demonstrate an
injury in fact that fell within the zone of interests protected
by N.Y. Educ. Law § 409-f and Reg. § 155.25. Gym Door Repairs,
Inc. v. New York City Dep't of Educ., 977 N.Y.S.2d 478, 480
(App. Div. 2013).

    In 2012, the plaintiffs filed a 42 U.S.C § 1983 civil
rights action against the NYCDOE and others based on the theory
that N.Y. Educ. Law § 409-f and Reg. § 155.25 require the
exclusive use of the plaintiffs' services for repairs of Safe
Path devices and that the NYCDOE was violating the plaintiffs'
Substantive and Procedural Due Process rights by using
contractors other than and in addition to the plaintiffs or
those certified by the plaintiffs. The plaintiffs also alleged
that the NYCDOE violated the plaintiffs' First Amendment rights
by directing the NYCDOE's general contractors not to subcontract
for the plaintiffs' services in retaliation to the plaintiffs'
complaints. SAC at ¶ 142. The district court held, and the Court
of Appeals for the Second Circuit affirmed, that the statute and
regulation did not create a property right or require the
appointment of the plaintiffs as a sole source provider of

maintenance services for Safe Path devices. <u>Gym Door Repairs,</u>
<u>Inc. v. New York City Dep't of Educ.</u>, No. 12-cv-7387, 2013 WL
4934868, at *4-5 (S.D.N.Y. Sept. 10, 2013), *aff'd in part,*
*vacated in part, remanded sub nom.*, <u>Safepath Sys. LLC v. New</u>
<u>York City Dep't of Educ.</u>, 563 F. App'x 851, 854-56 (2d Cir.
2014) (summary order). The district court also dismissed the
plaintiffs' First Amendment retaliation claim. The Court of
Appeals remanded on that issue, holding that the plaintiffs
adequately alleged adverse action for complaining of, and making
public, the defendants' alleged failure to comply with
regulatory mandates. <u>Safepath</u>, 563 F. App'x at 856. The Court of
Appeals held that factual questions as to whether the city
agencies acted with retaliatory intent could not be determined
on a motion to dismiss. <u>Id.</u> at 857-58. The Court of Appeals
vacated the district court's dismissal of the First Amendment
claim and remanded the case to the district court. Discovery in
that case is ongoing.

On June 2, 2015, the plaintiffs filed the present action.
On July 29, 2015, the plaintiffs filed an amended complaint. On
October 15, 2015, the plaintiffs filed the SAC. The plaintiffs
assert five causes of action against all of the defendants: 1)
direct and induced patent infringement in violation of 35 U.S.C.
§ 271; 2) direct and contributory copyright infringement in
violation of 17 U.S.C. § 501(b); 3) direct and contributory

trademark infringement in violation of 15 U.S.C. § 1125(a) and deceptive acts and practices in violation of New York General Business Law §§ 133, 349, and 360-l; 4) tortious interference with existing and prospective business relationships under New York common law; and 5) civil conspiracy under New York common law. The defendants filed nine motions to dismiss.[3]

### III.

**A. Patent Infringement**

According to the SAC, the Coles, the founders of GDRI, held the '030 patent to the Safe Path System, a method patent, which expired on October 17, 2011. Given the six-year statute of limitations, the plaintiffs allege that the defendants infringed the patent from June 1, 2009 to October 17, 2011. They allege that the Young defendants, Total Gym, and the Guardian and Tri-State defendants directly infringed the patent, SAC ¶¶ 151-53, and that the other defendants induced infringement of the patent, see SAC ¶¶ 118-19, in violation of 35 U.S.C. § 271(b), which provides that, "[w]hoever actively induces infringement of a patent shall be liable as an infringer."

---

[3] On July 8, 2016, the plaintiffs filed a letter stating their intent to move for an order to show cause for a preliminary injunction and temporary restraining order. The Court denied the application for a temporary restraining order. The Court held an evidentiary hearing on the plaintiffs' motion for a preliminary injunction, which the Court addresses in a separate Memorandum Opinion and Order.

In order to sue for patent infringement, "the plaintiff must have held legal title to the patent during the time of infringement." Leighton Techs. LLC v. Oberthur Card Sys., S.A., 531 F. Supp. 2d 591, 593 (S.D.N.Y. 2008) (quoting Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991)). The defendants argue that the SAC is defective because the plaintiffs did not attach to the SAC written documentation of the transfer of the patent to the plaintiffs, GDRI or SPS. Stephen Cole, the President of GDRI, allegedly invented the Safe Path System with his father Fred Cole. He allegedly purchased his father's interest in the patent from his father's estate and thereafter assigned the patent to GDRI.

At this stage of the litigation, GDRI has made a sufficient showing that it has standing to sue for patent infringement. Stephen Cole submitted an affidavit and attached a "Patent Assignment" seemingly assigning the '030 patent from Cole to GDRI on August 1, 2008. See S. Cole Aff. ¶¶ 3-5, ECF Dkt. No. 128-1; see also SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010) ("The recording of an assignment . . . with the PTO is not a determination as to the validity of the assignment . . . . [but] it creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment."); Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l., 957 F. Supp. 2d 1189,

1195 (S.D. Cal. 2013) (relying on party's declaration of plaintiff's corporate structure to support claim of patent assignment in denying Rule 12(b)(1) motion).

However, regardless of standing, the plaintiffs have failed to state a claim for either direct patent infringement or induced patent infringement.

The plaintiffs allege that the Young defendants, Total Gym, and the Guardian and Tri-State defendants directly infringed their patent by repairing the patented Safe Path Systems. However, under the doctrine of permissible repair, repairs and maintenance performed on a patented item (short of reconstruction of a new product) do not constitute infringement. See Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094, 1101-02 (Fed. Cir. 2001). The doctrine "allows one to repair and replace a spent, disposable unpatented component of a patented product." Canon Inc. v. GCC Int'l Ltd., 450 F. Supp. 2d 243, 247 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008).

The repair doctrine is an affirmative defense, see Jazz Photo, 264 F.3d at 1101-02, and the plaintiffs contend that it is improper for the Court to reach the issue on a motion to dismiss. However, a complaint is subject to dismissal for failure to state a claim when an affirmative defense clearly appears on the face of the complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal

for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief."). Here, the allegations---taken as true---plead an affirmative defense of repair. See, e.g., SAC ¶¶ 65, 79, 108, 147-48, 151-55.

The plaintiffs' claims are also insufficient because the doctrine of patent exhaustion bars the claim of direct infringement. The "longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." Quanta Computer, Inc. v. LG Elecs., Inc., 553 U.S. 617, 625 (2008). "The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent." Ergowerx Int'l, LLC v. Maxell Corp. of Am., 18 F. Supp. 3d 430, 447-48 (S.D.N.Y. 2014) (quoting Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)). Here, the SAC alleges that schools contacted or serviced by various defendants purchased the Safe Path Systems, see, e.g., SAC ¶¶ 65, 69, 88, and that those products were then repaired by the alleged direct infringers at the behest of the alleged inducing infringers, see, e.g., SAC ¶¶ 147-48. Such allegations do not state a claim. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 346 (1961).

The plaintiffs argue in their opposition papers that, in patent cases filed prior to December 1, 2015, the applicable

pleading standard is found in former Official Form 18 in the
Appendix of Forms to the Federal Rules of Civil Procedure ("Form
18"). Form 18 required only (i) an allegation of jurisdiction;
(ii) a statement that the plaintiff owns the patent; (iii) a
statement that the defendant has been infringing the patent by
making, selling, and using the device embodying the patent; (iv)
a statement that the plaintiff has given the defendant notice of
its infringement; and (v) a demand for an injunction and
damages. The plaintiffs argue that, pursuant to case law from
the Court of Appeals for the Federal Circuit, the Court should
hold that former Form 18 controls the pleading standard in
patent cases---like this one---filed before December 1, 2015 and
that the SAC is sufficient to state a claim under this forgiving
standard. See K-Tech Telecomms, Inc. v. Time Warner Cable, Inc.,
714 F.3d 1277, 1283 (Fed. Cir. 2013).

The Court of Appeals for the Second Circuit has not weighed
in on the proper relationship between former Form 18 and the
more demanding Iqbal/Twombly requirements for pleading patent
infringement cases, and the district courts in this district are
divided on their interpretation of Second Circuit and Federal
Circuit precedent. Compare Regeneron Pharm., Inc. v. Merus B.V.,
No. 14-cv-1650 (KBF), 2014 WL 2795461, at *2 (S.D.N.Y. June 19,
2014) (holding there is "no basis in Second Circuit precedent to
treat patent cases differently from other cases in which forms

16

exist and to which <u>Twombly</u> applies"), <u>with</u> <u>3D Sys., Inc. v.</u>
<u>Formlabs, Inc.</u>, No. 13-cv-7973, 2014 WL 1904365, at *6 (S.D.N.Y.
May 12, 2014) (applying Federal Circuit case law on using Form
18, even though the "Form 18 requirements are lean").

In any event, former Form 18 should not be the standard in
this case. Former Form 18 was appended to the Federal Rules of
Civil Procedure by Rule 84, which was abrogated by the
Amendments to the Federal Rules of Civil Procedure that became
effective on December 1, 2015. The Amendments are to be applied
to cases filed after that date and all pending proceedings
"insofar as just and practicable." Fed. R. Civ. P. Refs & Annos
(Order of April 29, 2015). It is just and practicable to apply
the standard pleading requirements to this patent case rather
than the bare-bone former Form 18. If the plaintiffs cannot
plead sufficient facts to state a plausible claim for patent
infringement, they should not be allowed to proceed with a
patent infringement claim simply because they could check the
boxes on former Form 18. The plaintiffs should have been aware
of the imminent demise of former Form 18 when they filed the SAC
on October 15, 2015.

Moreover, the SAC is insufficient to state a claim for
direct or indirect patent infringement even under former Form
18. Former Form 18 required a statement that the defendant had
been infringing the patent by making, selling, and using the

17

device embodying the patent. See K-Tech, 714 F.3d at 1283. As noted, the only relevant allegation in the SAC is that various defendants repaired the patented systems and that other defendants induced those repairs. That action does not constitute infringement.

Finally, the SAC fails to state a claim against Total Gym for the additional reason that Total Gym was only incorporated in May 2013, two years after the '030 patent had expired. The plaintiffs argue in their responsive papers that Total Gym infringed the '030 patent through its purported predecessor, Gym Equipment Repairs, Inc. However, Gym Equipment Repairs is not a party to this lawsuit, and the SAC does not allege that Total Gym is liable for the acts of its predecessor. Accordingly, the SAC fails to state a claim against the proper party. See, e.g., Mercator, 2016 WL 519645, at *5 (dismissing claim raised against improper party).

In short, the plaintiffs' allegations do not state a claim for direct infringement of the '030 patent by the Young defendants, Total Gym, and the Guardian and Tri-State defendants.

"In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage

18

another's infringement." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quoting Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)). Because the plaintiffs have not alleged a plausible claim of direct infringement, the claim for induced infringement also fails. See Desenberg v. Google, Inc., No. 09-cv-10121 (GBD)(AJP), 2009 WL 2337122, at *8 (S.D.N.Y. July 30, 2009) ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." (citation and internal quotation marks omitted)), *report and recommendation adopted*, No. 08-cv-10121 (GBD)(AJP), 2010 WL 100841 (S.D.N.Y. Jan. 11, 2010), *aff'd*, 392 F. App'x 868 (Fed. Cir. 2010).

Because there can be no induced infringement without direct infringement, and because the SAC has failed to allege a plausible claim of direct infringement, the plaintiffs' claims of patent infringement against all of the defendants are **dismissed without prejudice**.[4]

---

[4] The Guardian and Tri-State defendants make the additional argument that the plaintiffs' claim of patent infringement is barred by the defense of laches. Because the Court dismisses the plaintiffs' patent infringement claims without prejudice on other grounds, that argument is moot.

**B. Copyright Infringement**

Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

In substance, the plaintiffs allege that the Young defendants, Total Gym, Bellmore, ESBOCES, and the Guardian/Tri-State defendants engaged in direct copyright infringement by using the plaintiffs' "Manufacturer Materials" to either prepare bid materials or conduct repairs on the Safe Path Systems. SAC ¶¶ 162-64, 166. The plaintiffs allege that the other defendants knowingly induced infringement by, in substance, allowing the Young defendants to "hijack" cooperative bids to service Safe Path Systems and make or use unauthorized reproductions of the plaintiffs' materials. See, e.g., SAC ¶ 165.

**1. Standing**

As a threshold matter, Thurnau contends that the plaintiffs lack standing to sue for copyright infringement because the plaintiffs do not allege that GDRI owned the copyright at the time of the alleged infringement. Only copyright owners and exclusive licensees may sue for infringement under the Copyright

20

Act. See Urbont v. Sony Music Entm't, No. 15-1778-CV, 2016 WL
4056395, at *5 n.6 (2d Cir. July 29, 2016). And "[c]opyright
registration is a jurisdictional prerequisite to an infringement
suit. Therefore, to the extent that the complaint fails to
allege proper statutory registration of the copyrights in
question, this Court lacks jurisdiction over the infringement
action." Kelly v. L.L. Cool J., 145 F.R.D. 32, 37 n.6 (S.D.N.Y.
1992) (citations omitted), *aff'd sub nom.*, Kelly v. L.L. Cool J,
23 F.3d 398 (2d Cir. 1994).

"To withstand a motion to dismiss, a complaint based on
copyright infringement must allege: (1) which original works are
the subject of the copyright claim; (2) that the plaintiff owns
the copyrights in those works; (3) that the copyrights have been
registered in accordance with the statute; and (4) 'by what acts
during what time' the defendant infringed the copyright." Carell
v. Shubert Org., Inc., 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000)
(quoting Kelly, 145 F.R.D. at 35).

Contrary to Thurnau's assertion, the SAC clearly alleges
that the "Plaintiffs are and at all relevant times have been the
owner of the exclusive rights under the United States Copyright
Act of the copyrighted Manufacturer Materials, which are the
subject of valid Certificates of Registration issued by the
Register of Copyrights." SAC ¶ 160; see also SAC ¶¶ 43, 122.
Additional documents before the Court are unclear as to the

21

extent of the assignment. An exhibit included with the SAC shows that the copyright to the "Manufacturer's Instructions" was registered by the U.S. Copyright Office on March 27, 2012 to Stephen Cole (Registration Number TXu 1-803-046), who is a non-party. See SAC, Ex. 5. Stephen Cole filed an affidavit in opposition to the motions to dismiss, in which he swore: "On Aug. 1, 2008, I assigned all of my right, title and interest in the Safe Path Materials, including all registrations and applications related thereto that I possess, including, without limitation, Registration No. TXu 1-803-046 to Gym Door Repairs, Inc." S. Cole Aff. ¶ 7, ECF Dkt. No. 128-1. But it appears from the face of the registration that the copyrighted manufacturer instructions were not registered until March 2012, long after Cole says he assigned that registered material to GDRI.

Despite these ambiguities, the plaintiffs' allegations suffice to establish a prima facie showing of jurisdiction. See Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt., No. 99-cv-10656 (JGK), 2000 WL 1006257, at *4 (S.D.N.Y. July 19, 2000) ("The defendants raise various objections to the validity of the purported assignment . . . [that] involve issues of fact that cannot be resolved on this motion" to dismiss.); Carell, 104 F. Supp. 2d at 250-51. "On a motion to dismiss, the court must refrain from engaging in fact-finding, and plaintiffs must be given a fair chance to contest defendants' evidentiary

assertions. Moreover, '[c]omplaints [for copyright infringement] simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, have been held to be sufficient under the rules.'" U2 Home Entm't, Inc. v. Kylin TV, Inc., No. 06-cv-02770 (DLI) (RLM), 2007 WL 2028108, at *7 (E.D.N.Y. July 11, 2007) (citation omitted) (quoting Mid America Title Co. v. Kirk, 991 F.2d 417, 421 n.8 (7th Cir. 1993)).

Courts tend to grant motions to dismiss for lack of standing when the "plaintiff does not allege that she is either an owner or an exclusive licensee of the" copyrighted work. Plunket v. Doyle, No. 99-cv-11006 (KMW), 2001 WL 175252, at *5 (S.D.N.Y. Feb. 22, 2001); see also Kelly, 145 F.R.D. at 40 (granting motion for a more definite statement under Rule 12(e) "because of plaintiff's failure to allege present ownership and proper statutory registration of one of the copyrights at issue"). Indeed, the case that Thurnau cites to support his argument, Palatkevich v. Choupak, No. 12-cv-1681 (CM), 2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014), dismissed the complaint--- which the court characterized as a "mess" replete with "disorganized and scattershot statements masquerading as a pleading," id. at *1---because it "failed to adequately *allege* that [the plaintiffs] owned and registered copyrights in the three programs" at issue. Id. at *6 (emphasis added). The SAC

does not suffer from such deficiencies. It plainly alleges that the plaintiffs held the copyright at the relevant time.

"To the extent defendants argue that plaintiff failed to allege an unbroken chain of title to the rights at issue, it is unnecessary for the complaint to include such detailed factual recitation." U2 Home Entm't, 2007 WL 2028108, at *7. Accordingly, the Court **denies** Thurnau's motion to dismiss for want of standing without prejudice for its renewal after discovery. See id.

### 2. Direct Copyright Infringement

The Court next considers the sufficiency of the claims for direct copyright infringement.

#### a) Young Defendants

The plaintiffs allege that the Young defendants engaged in direct copyright infringement by using the plaintiffs' Manufacturer Materials either to prepare bid materials or conduct repairs on the Safe Path Systems. The Young defendants argue that the plaintiffs' claim of copyright infringement should be dismissed because they are time-barred and barred by the nominative fair use doctrine.

Civil actions under the Copyright Act must be brought "within three years after the claim has accrued." 17 U.S.C. § 507(b). The Young defendants argue that the plaintiffs do not allege that any infringement occurred on or after June 2, 2012.

24

However, the Young defendants misread the SAC; it alleges that the infringing activities are still occurring, <u>see</u> SAC ¶¶ 128, 171, and "each infringing act starts a new limitations period." <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. 1962, 1969 (2014). Accordingly, the plaintiffs' copyright infringement claims are not time-barred.

Next, the Young defendants---along with Thurnau, ESBOCES, the NYCDOE, and Bellmore---argue that the Court should dismiss the copyright claim because the defendants' use of the protected material constitutes "fair use" as a matter of law pursuant to 17 U.S.C. § 107. But "[f]air use [in the copyright context] is a mixed question of law and fact." <u>Harper & Row Publishers v. Nation Enters.</u>, 471 U.S. 539, 560 (1985). "The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work." <u>Id.</u> at 560-561; <u>see also</u> 17 U.S.C. § 107. The Court of Appeals for the Second Circuit has cautioned that due to the "fact-driven nature of the fair use determination," courts should be cautious in finding fair use as a matter of law even on a motion for summary judgment. <u>See</u> <u>Wright v. Warner Books, Inc.</u>, 953 F.2d 731, 735

(2d Cir. 1991); see also Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006) (the determination of fair use is "an open-ended and context-sensitive inquiry"); M. Shanken Commc'ns, Inc. v. Cigar500.com, No. 07-cv-7371 (JGK), 2008 WL 2696168, at *10 (S.D.N.Y. July 7, 2008).

As for the third prong of the fair use inquiry---the amount and substantiality of the portion used---the SAC alleges that the defendants "without the permission or consent of Plaintiffs, have made reproductions of *all* or *significant portions* of the Manufacturer Materials, emails and letters and used them to perform and document the performance of maintenance services of Safe Path Systems in schools throughout New York State." SAC ¶ 163 (emphasis added). This factor weighs heavily against a finding of fair use. See Harper & Row Publishers, Inc., 471 U.S. at 565 (reproducing portions of copyrighted work verbatim is evidence of the qualitative value of the copied material and weighs against a finding of fair use); M. Shanken Commc'ns, 2008 WL 2696168, at *10 (denying motion to dismiss where the protected work was allegedly "copied verbatim").

In addition to factual issues as to the extent, if any, of the reproductions, there are issues of material fact as to the allegedly adverse impact of the defendants' use of the copyrighted works on the market for the plaintiffs' materials. See SAC ¶¶ 143, 203-04. For these reasons, the claim of fair use

by the Young defendants, and others, cannot be decided on a motion to dismiss. See, e.g., M. Shanken Commc'ns, 2008 WL 2696168, at *10.

Thus, the Young defendants' motion to dismiss the claims of direct copyright infringement is **denied**.

### b) Total Gym

The plaintiffs allege that Total Gym also "made unauthorized copies of the Manufacturer Materials and used them to submit falsified bids and perform and falsely document their work on the Safe Path Systems for regulatory compliance purposes," SAC ¶ 124, and "without the permission or consent of Plaintiffs, have made reproductions of all or significant portions of the Manufacturer Materials, emails and letters and used them to perform and document the performance of maintenance services of Safe Path Systems in schools throughout New York State," SAC ¶ 163.

These allegations are insufficient to state a claim. The Rule 8 pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The SAC's bare allegations, devoid of allegations of specific conduct, are merely conclusory, and "[c]onclusory allegations are insufficient to survive a motion to dismiss." Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC, 888 F. Supp. 2d 508, 514-15 (S.D.N.Y. 2012) (citing Iqbal, 556 U.S. at 676); see also MLSMK Inv. Co. v. JP Morgan Chase & Co., 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010) ("Allegations may be made on information and belief when the facts are peculiarly within the knowledge of the defendants, but it is axiomatic that the complaint must allege facts demonstrating the basis for the information and belief." (citation and internal quotation marks omitted)), aff'd in part, 431 F. App'x 17 (2d Cir. 2011), and aff'd, 651 F.3d 268 (2d Cir. 2011).

Accordingly, Total Gym's motion to dismiss the claims against it for copyright infringement is **granted**.

### c) Bellmore

The plaintiffs allege that Bellmore directly infringed their copyright. The SAC alleges that ESBOCES and Bellmore "without the permission or consent of Plaintiffs, have made reproductions of all or significant portions of the Manufacturer Materials and used them to request bids to perform maintenance services of Safe Path devices in schools throughout Long Island." SAC ¶ 162. The SAC alleges that Joseph Hendrickson, the Director of Facilities for Bellmore, "made unauthorized copies

28

of Plaintiffs['] documentation for maintenance procedures, staff
training materials and legislative note from which he removed
the Safe Path name and trademarks and included them in the bid
package" for the General Municipal Law § 119-0 cooperative bids
for the 2010-11, 2011-12, and 2012-13 school years. SAC ¶ 81;
see also SAC ¶ 82 (alleging Hendrickson told Stephen Cole "he
didn't care about Plaintiffs' patent or its other intellectual
property rights").

Bellmore argues that the SAC should be dismissed because
the copied materials were not sufficiently original, because the
SAC allegedly failed to provide the time of the alleged
infringement, and because Hendrickson prepared the bids on
behalf of a different organization, and, therefore, the alleged
copying should not be imputed to Bellmore.

Bellmore's arguments are not persuasive. The requirements
for originality are "modest." Weissmann v. Freeman, 868 F.2d
1313, 1321 (2d Cir. 1989). "Original, as the term is used in
copyright, means only that the work was independently created by
the author (as opposed to copied from other works), and that it
possesses at least some minimal degree of creativity." Feist,
499 U.S. at 345 (citation omitted). "[T]he requisite level of
creativity is extremely low" and "[t]he vast majority of works
make the grade quite easily, as they possess some creative
spark, no matter how crude, humble or obvious it might be." Id.

29

(internal quotation marks omitted). Bellmore's argument that the materials are not original raises factual issues that cannot be decided on this motion to dismiss.

Furthermore, the SAC clearly alleges the time of the alleged infringement, see SAC ¶¶ 81-82, and there is no indication---beyond a fleeting statement in Bellmore's Reply Brief---that Hendrickson was not acting in the course of his employment for Bellmore when he allegedly directly infringed the copyright. If Hendrickson were acting within the scope of his employment, Bellmore could be liable under the doctrine of *respondeat superior*. See <u>Shapiro, Bernstein & Co. v. H. L. Green Co.</u>, 316 F.2d 304, 307 (2d Cir. 1963) ("[T]he normal agency rule of respondeat superior applies to copyright infringement by a servant within the scope of his employment."). That is an issue of fact that cannot be decided at this stage. Accordingly, Bellmore's motion to dismiss the claim of direct copyright infringement is **denied**.

### d) ESBOCES

The SAC alleges that ESBOCES engaged in direct infringement by making unauthorized copies of the plaintiffs' copyrighted staff training materials and using them to provide Safe Path training to its component districts, which paid ESBOCES for this service. SAC ¶ 77.

ESBOCES moves to dismiss arguing that the claims are opaque and that any reproduction was protected by the fair use doctrine. First, the allegations are not opaque. They satisfy the pleading standard for copyright infringement claims articulated in Kelly, 145 F.R.D. at 35, including the fourth prong, which requires the complaint to state by what acts and during what time the defendant infringed the copyright. See also ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 546)).

Second, as discussed above, the claim of fair use cannot be decided on this motion to dismiss. See, e.g., M. Shanken Commc'ns, 2008 WL 2696168, at *10. The case ESBOCES relies on to argue that fair use excuses the copying of copyrighted material was decided on summary judgment, an entirely different standard. See Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc., 428 F. Supp. 2d 1369, 1382 (S.D. Ga. 2006). Accordingly, the motion by ESBOCES to dismiss the claim of direct copyright infringement is **denied**.

### e) Guardian/Tri-State Defendants

The Guardian and Tri-State defendants move to dismiss the copyright infringement claims and join the arguments made by the

31

other parties. The Guardian and Tri-State defendants argue that they did not make unauthorized copies of all of, or substantial portions of, the plaintiffs' materials to create bid and contract specifications and to solicit bids for work on the Safe Path Systems. However, the SAC plainly makes those allegations against both the Guardian and Tri-State defendants, see, e.g., ¶¶ 111, 124, 163, with sufficient specificity "to raise a right to relief above the speculative level" and survive a motion to dismiss, Twombly, 550 U.S. at 546. Accordingly, the Guardian and Tri-State defendants' motion to dismiss the claims of direct copyright infringement is **denied**.

### 3. Contributory Infringement

Although the Copyright Act expressly creates liability only for direct copyright infringers, third parties can be held liable for the infringing activities of another. There are two doctrines that establish third party liability in copyright law: contributory infringement and vicarious liability. See Ez-Tixz, Inc. v. Hit-Tix, Inc., 919 F. Supp. 728, 732 (S.D.N.Y. 1996).

"[I]f the defendant was implicated in the acts constituting the direct infringement, it may be held liable for contributory infringement. '[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a "contributory" infringer.'" Id. at 732 (quoting Gershwin Pub.

32

Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d
Cir. 1971)). Vicarious liability---which is not alleged here---
"may exist '[w]hen the right and ability to supervise coalesce
with an obvious and direct financial interest in the
exploitation of copyrighted materials . . . even in the absence
of actual knowledge that the copyright monopoly is being
impaired.'" Id. at 732-33 (quoting Shapiro, Bernstein & Co. v.
H. L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

"A plaintiff must allege that the defendant knew of, and
substantially participated in, the alleged direct infringement,
for a claim of contributory infringement to stand." Brought to
Life Music, Inc. v. MCA Records, Inc., No. 02-cv-1164 (RWS),
2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003).

"Participation sufficient to establish a claim of
contributory infringement may not consist of merely providing
the 'means to accomplish an infringing activity.'" Livnat v.
Lavi, No. 96 CIV. 4967 (RWS), 1998 WL 43221, at *3 (S.D.N.Y.
Feb. 2, 1998) (citation omitted). Rather, "participation in the
infringement must be 'substantial' and the 'authorization or
assistance must bear a direct relationship to the infringing
acts, and the contributory infringer must have acted in concert
with the direct infringer.'" Brought to Life Music, 2003 WL
296561, at *2 (quoting Livnat, 1998 WL 43221, at *3).

33

"In addition to the requirement of substantial participation, knowledge of the infringing activity is also critical to sustaining a claim for contributory infringement." Id. "Moreover, while knowledge of the infringing activity may be actual or constructive, 'one who furnishes a copyrighted work to another but is innocent of any knowledge of the other party's intended illegitimate use will not be liable.'" Id. (quoting Livnat, 1998 WL 43221, at *3).

The plaintiffs allege that the remaining defendants induced infringement by allowing the direct infringers to service the Safe Path Systems and hijack bids to service the Safe Path Systems.

### a) Thurnau

The SAC alleges that Thurnau knew of and approved the Safe Path Systems original training manuals, SAC ¶ 42, and changed the interpretation of N.Y. Educ. Law § 409-f to allow anyone to perform maintenance procedures, SAC ¶ 54. These claims do not allege that Thurnau had the requisite knowledge or involvement in the direct infringement to state a claim for contributory infringement. There is nothing about the alleged actions that "bear[s] a direct relationship to the infringing acts" of allegedly copying the plaintiffs' materials, and there is no factual allegation that Thurnau "acted in concert" with a direct infringer. Brought to Life Music, 2003 WL 296561, at *2.

34

Accordingly, Thurnau's motion to dismiss the claim of contributory copyright infringement is **granted**.

### b) SFA/SFMI

The plaintiffs allege that the SFA/SFMI "induced infringement by allowing their organization to be used to orchestrate the conspiracy to destroy Plaintiffs['] business by, among other things, steering Safe Path Systems maintenance work to YES." SAC ¶ 168.

These allegations are plainly insufficient to state a claim for induced copyright infringement. Courts have repeatedly held that a defendant cannot be liable for "merely providing the means to accomplish an infringing activity." Livnat, 1998 WL 43221, at *3 (quoting Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 435 n.17 (1984)). All that the plaintiffs allege is that the SFA/SFMI allowed the defendants to use their conferences, meetings, and newsletters to further their conspiracy, and "[a] mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct" is not "enough to survive a motion to dismiss." Quiroga v. Fall River Music, Inc., 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998). Accordingly, the SFA/SFMI's motion to dismiss the claim of contributory copyright infringement is **granted**.

### c) NYCDOE

The plaintiffs allege that the NYCDOE induced infringement by instructing its personnel and general contractors to use other vendors to install, service, and repair Safe Path Systems and those vendors, in turn, made or used unauthorized reproductions of the plaintiffs' Manufacturer Materials. SAC ¶ 165.

The plaintiffs' theory is that the NYCDOE and its employees knowingly and intentionally took affirmative steps to steer Safe Path Systems work to the Young defendants, steps that had the effect of inducing or causing the direct infringement. See SAC ¶¶ 88-98, 154. These allegations are too attenuated to state a claim for contributory copyright infringement. To state a claim, a complaint must allege "substantial" assistance that "bear[s] a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." Brought to Life Music, 2003 WL 296561, at *2 (citation omitted). These claims do not suffice to allege that the NYCDOE took "active steps . . . to encourage direct infringement . . . such as advertising an infringing use or instructing how to engage in an infringing use," nor do they "show an affirmative intent that the product be used to infringe, and . . . that infringement was encouraged." Metro-

36

Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936
(2005) (citations and internal quotation marks omitted).

Accordingly, the NYCDOE's motion to dismiss the claim of
contributory copyright infringement is **granted**.

### d) ESBOCES and Nassau BOCES

The SAC alleges that ESBOCES "induced infringement by
knowingly allowing YES to use cooperative bids to hijack Safe
Path System maintenance repair work" and that it "had actual
knowledge that YES was making unauthorized reproductions of all
or significant portions of Plaintiffs' Manufacturer Materials."
SAC ¶ 164.

These claims are more plausible than the other claims of
contributory infringement because, as noted above, the SAC
states a claim for ESBOCES's direct infringement. However, the
allegations that ESBOCES assisted the Young defendants in *their*
alleged direct infringement are thin. At their root, the
plaintiffs' allegations against ESBOCES for contributory
infringement state only that ESBOCES knowingly awarded the
catalog furniture bid to the Young defendants, enabling the
Young defendants to infringe the plaintiffs' copyright. But
"[a]n allegation that a defendant merely provided the means to
accomplish an infringing activity is insufficient to establish a
claim for contributory infringement." BWP Media USA Inc. v.
Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 356-57 (S.D.N.Y.

2014) (citation omitted). Even if ESBOCES itself directly infringed the plaintiffs' copyrights, the allegations of its contributory infringement do not "bear a direct relationship to the [allegedly] infringing acts" of the Young defendants. Brought to Life Music, 2003 WL 296561, at *2 (citation omitted).

The SAC also alleges that Nassau BOCES and its employees induced the infringement of the plaintiffs' copyrights by the Young defendants and by Hendrickson of Bellmore. The plaintiffs argue that it is the job of the health and safety coordinator of Nassau BOCES, Peter Laduca, to make sure that Nassau BOCES's component districts are complying with the applicable health and safety laws. The SAC alleges that Laduca had knowledge that the Young defendants were infringing the plaintiffs' copyrights and refused to take action, suggesting that he was part of the alleged conspiracy to infringe the plaintiffs' copyrights. SAC ¶ 85-86. However, mere inaction cannot state a claim for contributory copyright infringement. See Livnat, 1998 WL 43221, at *3; see also Metro-Goldwyn-Mayer Studios, 545 U.S. at 936 ("active steps" required to show contributory copyright infringement).

Accordingly, the motion by ESBOCES and Nassau BOCES to dismiss the claim of contributory copyright infringement is **granted**.

**C. Trademark Infringement and Unfair Competition**

The Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" "without the consent of the registrant." 15 U.S.C. § 1114(a).[5]

"[T]he elements of a trademark infringement claim under the Lanham Act are: (1) that the plaintiff holds a valid mark entitled to protection; (2) that the defendant used the mark; (3) in commerce; (4) in connection with the sale or advertising of goods or services; (5) without plaintiff's consent; and (6)

---

[5] The SAC also alleges trademark infringement pursuant to 15 U.S.C. § 1125(a), which bars, in substance, the use in commerce of a term, name, symbol or the like that "is likely to cause confusion" or "misrepresents the nature" of a plaintiff's or "another person's goods . . . in commercial advertising or promotion . . . ." 15 U.S.C. § 1125(a)(1)(A-B). That section applies to both registered and unregistered trademarks. The plaintiffs allege that they have registered trademarks for "SAFE PATH" and "SAFE PATH SYSTEMS." The allegations here are more appropriately considered a claim for trademark infringement pursuant to 15 U.S.C. § 1114(a). The parties seem to agree; most of the cases both the plaintiffs and defendants cite are § 1114(a) cases. For the present purposes, the distinction between the cases cited for § 1114 or § 1125 is without a difference. "Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law." Van Praagh v. Gratton, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014).

that the defendant's use of a similar mark is likely to cause confusion." Gelicity UK Ltd. v. Jell-E-Bath, Inc., No. 10-cv-5677 (ILG) (RLM), 2013 WL 3315398, at *3 (E.D.N.Y. July 1, 2013) (citing 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2005)). "Demonstrating use in commerce is a threshold burden because no activity is actionable under the Lanham Act absent the use of a trademark." Id. (alterations, citations, and internal quotation marks omitted).

As with the copyright infringement claims, the plaintiffs raise claims of direct trademark infringement and contributory infringement. "Contributory trademark infringement is a judicially created doctrine derived from the common law of torts that typically applies to manufacturers and distributors of goods." Elastic Wonder, Inc. v. Posey, No. 13-cv-5603, 2015 WL 273691, at *4 (S.D.N.Y. Jan. 22, 2015) (citation omitted), reconsideration denied, 2015 WL 1344436 (S.D.N.Y. Mar. 23, 2015). "Contributory liability for trademark infringement can arise when 'a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows is engaging in trademark infringement.'" Sly Magazine, LLC v. Weider Publications L.L.C., 241 F.R.D. 527, 530 (S.D.N.Y. 2007) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 (1982)). "Thus, 'a defendant is liable for infringement of plaintiff's registered

40

mark if defendant knowingly "supplied the ammunition" that allowed the wrongful user to complete the infringement.'" Id. at 530-31 (quoting Power Test Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp., 556 F. Supp. 392, 394 (E.D.N.Y. 1982)).

The plaintiffs also allege unfair competition and deceptive acts and practices pursuant to New York common law and N.Y. Gen. Bus. Law §§ 133, 349 and 360-l.[6]

"The essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of one person, 'a benefit or "property" right belonging to another [person].'" Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (quoting Volmar Distribs. v. New York Post Co., 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) (alteration in original)). "It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law 'mirror the Lanham Act

_____

[6] N.Y. Gen. Bus. Law § 133 prohibits, in substance, using names or symbols "which may deceive or mislead the public." Section 349(a) generally prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Section 360-l provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

claims.'" Id. (quoting Malletier v. Dooney & Bourke, Inc., 340 F. Supp. 2d 415, 436-37 (S.D.N.Y. 2004)). "However, unlike its federal counterpart, a viable common law claim for unfair competition requires an additional showing of bad faith." Id. Therefore, to prevail on a claim for unfair competition under New York common law, the plaintiffs must combine their "evidence supporting liability under the Lanham Act with additional evidence demonstrating that defendants acted in bad faith." Id. But, under New York law, the use of a counterfeit mark establishes a presumption of bad faith. Id.

### 1. Direct Infringement

The SAC alleges that the Young defendants, the Guardian and Tri-State defendants, and Total Gym directly infringed the plaintiffs' trademarks by representing falsely to their customers that they were authorized by Safe Path to install and repair the Safe Path System. They allege that such actions constitute an unauthorized use of a trade name that is likely to cause confusion as to their authorization. See SAC ¶¶ 133-37, 178.

### a) Young Defendants

The Young defendants argue that the SAC fails to state a claim for trademark infringement or unfair competition because the claims are barred by the nominative fair use doctrine, the plaintiffs have not alleged a likelihood of confusion with

42

sufficient particularity, and the plaintiffs have failed to allege that the Young defendants had an intent to deceive or mislead. These arguments are unpersuasive.

The doctrine of "nominative fair use" allows a defendant to use a plaintiff's trademark to identify the defendant's goods so long as there is no likelihood of confusion. "In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013) (citing 15 U.S.C. § 1115(b)(4)). "Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." Id. Where the facts necessary to establish the defense are evident on the face of the complaint, the fair use affirmative defenses may be adjudicated at the pleading stage. Id. But that is not the case here.

The SAC specifically alleges that "YES has engaged in numerous deceptive acts and practices, such as using the ESBOCES catalog furniture bid, the Nassau municipal cooperative bid and the EDS partition repair service bid to circumvent the competitive bidding process." SAC ¶ 135. The SAC also alleges that the Young defendants "produced and disseminated promotional materials (including mailings, fliers, t-shirts and website

43

pages) bearing Plaintiffs' federally registered trademarks and routinely make false and deceptive representations to their customers about being Safe Path certified." Id. The SAC attaches an exhibit as an example of one of the allegedly infringing mailings. See SAC, Ex. 9.

These allegations, taken as true, suffice to state a claim for trademark infringement. As an initial matter, the facts necessary to establish the defense of nominative fair use are not evident on the face of the SAC. It is far from clear that the Young defendants' alleged use was made other than as a mark, in a descriptive sense, and in good faith, as required by the fair use defense. See Kelly-Brown v. Winfrey, 717 F.3d at 308. Accordingly, "the invocation of the fair use doctrine necessarily raises questions of fact that cannot be resolved on a motion to dismiss." A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 210 (S.D.N.Y. 2015).

The allegations in the SAC are also sufficiently particular. The SAC alleges that the plaintiffs own the trademarks to SAFE PATH and SAFE PATH SYSTEMS and that the Young defendants had no rights to them, yet used them to secure business by falsely holding themselves out as being certified by SPS. See SAC ¶¶ 133, 135, 137. "On a motion to dismiss, these allegations are sufficient to raise an entitlement to relief

above the speculative level." <u>A.V.E.L.A.</u>, 131 F. Supp. 3d at 210.

With respect to the state law claims, the SAC sufficiently alleges pursuant to N.Y. Gen. Bus. Law § 133 an intent to deceive or mislead because the SAC alleges that the Young defendants produced and disseminated materials bearing the plaintiffs' trademark names in full. Similarly, the deceptive use of the plaintiffs' trademarks is sufficient to allege violations of N.Y. Gen. Bus. Law §§ 349(a) and 360-l, as well as the violation of the New York common law prohibition against unfair competition. Accordingly, the SAC properly alleges claims of direct trademark infringement and unfair competition against the Young defendants, and the Young defendants' motion to dismiss this claim is **denied**.

### b) Total Gym

As an initial matter, Total Gym argues that the SAC fails to place it on notice of any trademark infringement, pursuant to Fed. R. Civ. P. 8(a), because Total Gym is named next to Tri-State in one of the SAC's allegations. <u>See</u> SAC ¶ 134 (alleging "[d]efendants Tri-State and Total Gym Repairs have falsely claimed that they are Safe Path certified and authorized"). That argument ignores the many allegations that name Total Gym specifically and that provide examples of particular, allegedly infringing conduct by Total Gym. <u>See, e.g.</u>, SAC ¶¶ 112-14.

45

For example, the SAC alleges that in July 2013, Total Gym bid against the plaintiffs on a project in the Middle Country Central School District. The Safe Path Systems were specified for the job, and, allegedly, "Total Gym Repairs is not authorized to install or maintain Safe Path Systems yet falsely represented to the district that it was." SAC ¶ 112.

The SAC also alleges that, in 2015, Total Gym again bid against the plaintiffs on a project in the Commack Central School District that specified Safe Path Systems. See SAC ¶ 113 ("Total Gym Repairs was not authorized to do this work and made false representations to the contrary to Commack.").

Finally, the SAC alleges that a former employee of the plaintiffs, Mario Ramatar, who now works for Total Gym, telephoned several of the plaintiffs' customers, including Columbia University, the Museum of Modern Art, and New York University, to try to convince them to hire Total Gym instead of the plaintiffs to service their Safe Path Systems. Allegedly, "Mr. Ramatar made false representations to these clients that Total Gym Repairs is authorized to perform" maintenance on the Safe Path Systems even though "[i]t is not." SAC ¶ 114. These allegations suffice to state a claim for relief under Rule 8(a). See, e.g., ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp. 2d 219, 225 (S.D.N.Y. 2008).

Second, Total Gym contends that, even if the claims are sufficient, Total Gym is not liable because the owners of the Safe Path Systems were only repairing systems and "a repair for an owner's personal use would not fall within the scope of the Lanham Act because such repairs do not trade upon the goodwill of a trademark holder." Cartier, a Div. of Richemont N. Am., Inc. v. Symbolix, Inc., 454 F. Supp. 2d 175, 184 (S.D.N.Y. 2006) (citations omitted). Total Gym misstates the plaintiffs' claims; the plaintiffs claim that Total Gym represented falsely to their customers that they were authorized by Safe Path to install and repair the Safe Path System. The SAC alleges that Total Gym falsely used the plaintiffs' trademarks to obtain repair work. The SAC does not allege that the third parties---be they Commack Central School District, Columbia University, or others--- infringed the plaintiffs' trademarks by repairing the systems that the customers ordered.

Total Gym also argues that the plaintiffs fail to allege properly claims pursuant to 15 U.S.C. § 1125(a), but, as noted above, the standards for pleading a § 1125 claim and a § 1114 claim are substantially similar, see Van Praagh, 993 F. Supp. 2d at 301, and the SAC adequately pleads a § 1114 claim. See, e.g., A.V.E.L.A., 131 F. Supp. 3d at 210.

Finally, Total Gym argues that the plaintiffs' state law claims of unfair competition fail because they are too general

and provide no specific facts. But the SAC identifies those consumers who were allegedly deceived by Totally Gym's supposedly deceptive business practices---including Middle Country Central School District, the Commack Central School District, and Columbia University, among others---and alleges that the plaintiffs suffered harm by, among other things, associating the plaintiffs' name with cursory safety inspections and improper maintenance. See SAC ¶ 133; see also George Nelson Found. v. Modernica, Inc., 12 F. Supp. 3d 635, 651 (S.D.N.Y. 2014) (holding claims that an alleged infringer sold products bearing the name of the plaintiff's renowned products sufficiently stated a claim under N.Y. Gen. Bus. Law § 360-l); Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., 981 F. Supp. 2d 153, 162 (E.D.N.Y. 2013) (holding allegations that trade practices were misleading in a material way and that the plaintiff had been injured as a result satisfied N.Y. Gen. Bus. Law § 349).

Accordingly, Total Gym's motion to dismiss the claims of direct trademark infringement and unfair competition is **denied.**

### c) Guardian/Tri-State Defendants

The SAC alleges that, along with the Young Defendants and Total Gym, the Guardian and Tri-State defendants "routinely held themselves out falsely as Safe Path certified." SAC ¶ 133. The SAC also alleges that Guardian "engaged in false and deceptive

practices by falsely representing that it [was] 'certified' to
work on Safe Path Systems and by superimposing its own
trademarks and name over the Safe Path trademarks and names on
Safe Path System equipment and signage." SAC ¶ 136. It also
alleges that the Tri-State defendants, with Total Gym,
"generated and caused school district[s] to generate and
maintain false records, also bearing Plaintiffs['] name and
registered trademarks, in connection with maintenance work that
was either not performed at all or performed by unauthorized
personnel." SAC ¶ 134.

The Guardian and Tri-State defendants deny such wrongdoing
but make no argument as to why the allegations contained in the
SAC are insufficient to state a claim at this stage. The
Guardian and Tri-State defendants' only argument is that the
patent claims are barred by the defense of laches. That argument
is not relevant to the claim of direct trademark infringement
and unfair competition, which are alleged to be continuing and
allegedly continue to injure the plaintiffs. Therefore, the
motion by the Guardian Gym and Tri-State defendants to dismiss
the claims of direct trademark infringement and unfair
competition is **denied.**

### 2.  Contributory Infringement

The SAC alleges that the remaining defendants---Thurnau,
the SFA/SFMI, the NYCDOE, ESBOCES, Nassau BOCES, and Bellmore---

contributorily infringed the plaintiffs' trademarks by intentionally inducing and providing the means that enabled the alleged direct infringers to infringe the plaintiffs' trademarks. The plaintiffs' allegations against all of the alleged contributory infringers fail to state a claim.

### a) Thurnau

The SAC alleges that the direct infringers used the plaintiffs' marks without permission to bid on contracts, SAC ¶¶ 175-77, and that Thurnau "induced" the alleged "violations of the Lanham Act and New York General Business Law by engaging in . . . unfair and deceptive acts . . . in furtherance of the conspiracy to drive Plaintiffs out of business." SAC ¶ 180. The SAC alleges that Thurnau launched a conspiracy to harm the plaintiffs by having the direct infringers use the ESBOCES catalog furniture bid and the Bellmore cooperative bid, among other bids, to obtain Safe Path Systems maintenance work that they were not authorized to perform. SAC ¶¶ 52-64.

To state a claim for contributory trademark infringement, the plaintiffs must allege facts that plausibly suggest that a defendant intentionally induced others to engage in infringing activities, or continued to supply services to those the contributory infringer has reason to know are engaging in such activities. See Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 854 (1982). Intentional inducement requires

specific acts undertaken with knowledge of infringing behavior and with intent to cause infringement. Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 107 (2d Cir. 2010) (holding eBay's generalized knowledge of infringement of the plaintiff's trademark was not sufficient to impose on eBay an affirmative duty to remedy the problem and therefore eBay was not liable for contributory trademark infringement). The plaintiffs do not allege that Thurnau knew that the alleged direct infringers were infringing on the plaintiffs' trademarks or that he took any action to encourage trademark infringement. Under these circumstances, the plaintiffs have failed to state an inducement claim. See Kelly-Brown, 717 F.3d at 314.

Thurnau also moves to dismiss the allegations brought under New York common law and the New York General Business Law. The plaintiffs do not respond to these arguments. These claims are thus deemed abandoned. See, e.g., Intellivision v. Microsoft Corp., No. 07-cv-4079 (JGK), 2008 WL 3884382, at *7 (S.D.N.Y. Aug. 20, 2008).

Accordingly, Thurnau's motion to dismiss the claims of trademark infringement and unfair competition is **granted**.

### b) SFA/SFMI

The SAC alleges that the SFA/SFMI induced infringement by allowing Thurnau and his alleged co-conspirators to use the SFA/SFMI's meetings, conferences, newsletters, and so forth to

blacklist the plaintiffs and steer Safe Path inspection and repair services to the alleged direct infringers. SAC ¶ 180.

Beyond such conclusory allegations, the SAC contains no description of any affirmative steps taken by either the SFA or the SFMI to foster the alleged infringement. These bare-bone allegations are insufficient to state a claim for contributory trademark infringement. See Tiffany, 600 F.3d at 106-07; see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 807 (9th Cir. 2007) (holding credit card companies did not induce websites to infringe trademarks because the defendants did not take affirmative steps to foster infringement).

The SFA/SFMI also move to dismiss the allegations brought under New York common law and the New York General Business Law. The plaintiffs do not respond to these arguments. These claims are thus deemed abandoned. See, e.g., Intellivision, 2008 WL 3884382, at *7.

Accordingly, the SFA/SFMI's motion to dismiss the plaintiffs' trademark infringement and unfair competition claims is **granted**.

### c) NYCDOE

The SAC alleges that the plaintiffs told the NYCDOE about the plaintiffs' ownership of the patent, copyrights and trademarks underlying the Safe Path Systems, but that two Borough Managers of the NYCDOE instructed general contractors to

use YES, not the plaintiffs, to repair the Safe Path Systems. SAC ¶¶ 89, 91. The plaintiffs also allege that the NYCDOE hired the Young defendants to train its electricians to bypass the Safe Path Systems rather than repair them. SAC ¶ 95.

These allegations do not state a claim for contributory trademark infringement. The plaintiffs make no allegations that the NYCDOE used the plaintiffs' trademarks to sell goods or services, only that the NYCDOE allowed its general contractors to subcontract with vendors other than the plaintiffs, particularly the Young defendants, whom the plaintiffs allege falsely claimed to be Safe Path certified. SAC ¶ 132. That allegation, alone, is insufficient to state a claim. See Gelicity UK, 2013 WL 3315398, at *3.

Furthermore, the likelihood of consumer confusion is an essential element of a claim for trademark infringement. Nike, Inc. v. Top Brand Co., No. 00-cv-8179 (KMW)(RLE), 2005 WL 1654859, at *5-6 (S.D.N.Y. July 13, 2005). The plaintiffs make no plausible allegation that the NYCDOE's actions led to a likelihood of consumer confusion. The plaintiffs do not allege that the NYCDOE attempted to use the plaintiffs' trademarks to manufacture, sell, or pass off a device similar to that of the plaintiffs' or that the NYCDOE took any action that led anyone to be confused. The plaintiffs simply allege that the NYCDOE has allowed its general contractors to subcontract with third

parties to service and repair Safe Path Systems that the NYCDOE
had already purchased. See SAC ¶ 137. There is no plausible
allegation as to how NYCDOE's actions led it---the ultimate
consumer---to be confused in any way. The conclusory allegations
concerning the mere possibility of confusion do not suffice to
state a claim under either federal or state law. Streetwise
Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998)
("To support a finding of infringement, a probability of
confusion, not a mere possibility, must exist."); SLY Magazine,
529 F. Supp. 2d at 443 ("Because plaintiff's claims fail under
the Lanham Act, these claims necessarily also fail under New
York common law.").

Accordingly, the NYCDOE's motion to dismiss the plaintiffs'
trademark infringement and unfair competition claims is **granted**.

### d) ESBOCES and Nassau BOCES

The SAC alleges that ESBOCES knowingly allowed the Young
defendants to use its furniture catalog bid to engage in
deceptive acts, including infringement. SAC ¶ 75. The SAC also
alleges broadly that the BOCES defendants "engag[ed] in all of
the unfair and deceptive acts described herein in furtherance of
the conspiracy to drive Plaintiffs out of business." SAC ¶ 180.

These allegations do not suffice to state a claim. While
"[a] distributor who intentionally induces another to infringe a
trademark, or continues to supply its product to one whom it

knows or has reason to know is engaging in trademark infringement, is contributorily liable for any injury," Tiffany 600 F.3d at 105, the SAC contains no allegation that either BOCES defendant distributed or supplied products that infringed upon the plaintiffs' trademarks. The plaintiffs argue that the BOCES defendants only provided the means by which the direct infringers could infringe the trademarks and had reason to suspect that users of its bid were infringing on the plaintiffs' protected marks. These circumstances do not give rise to liability. The Court of Appeals for the Second Circuit pointedly rejected the argument that a defendant is liable for contributory trademark infringement if it has mere "general knowledge or reason to know that its service is being used to sell counterfeit goods." Id. at 107; see also Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd., No. 07-cv-6959 (DAB), 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010). The allegations against the BOCES defendants for contributory trademark infringement and unfair competition thus fail to state a claim. See, e.g., SLY Magazine, 529 F. Supp. 2d at 443.

Accordingly, the motion by the BOCES defendants to dismiss the plaintiffs' allegations of trademark infringement and unfair competition is **granted**.

### e) Bellmore

The SAC alleges that Bellmore induced violations of the Lanham Act, New York General Business Law and New York common law by engaging in unfair and deceptive acts in furtherance of a conspiracy to drive the plaintiffs out of business. The plaintiffs claim that by preparing the municipal cooperative bid, Bellmore allowed defendant YES to "hijack Safe Path Systems and maintenance work" in Nassau County districts. SAC ¶ 197. The plaintiffs' trademark infringement and unfair competition claims fail because the plaintiffs have not alleged an act of inducement by Bellmore.

To establish such a claim, a plaintiff must allege "a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." Tiffany, 600 F.3d at 104. It is plain that Bellmore is not a manufacturer, distributor or supplier of any good or service that violated the plaintiffs' trademarks and there is no factual allegation as to how Bellmore induced anyone else to infringe the plaintiffs' trademarks. The allegations against Bellmore for contributory trademark infringement and unfair competition thus fail to state a claim. See, e.g., SLY Magazine, 529 F. Supp. 2d at 443

Accordingly, Bellmore's motion to dismiss the plaintiffs'
claims of trademark infringement and unfair competition is
**granted**.

### D. Tortious Interference with Prospective Economic Advantage

The SAC alleges that the defendants tortiously interfered
with the plaintiffs' prospective economic advantage. The
plaintiffs allege, in substance, that they had business
relationships with school districts throughout New York State
that had purchased Safe Path Systems for 4,700 public and
private schools in the State. The plaintiffs allege that they
could reasonably expect to enter into maintenance contracts for
those Safe Path Systems. Some parties construe this allegation
to mean that the plaintiffs allege that they had *contracts* with
those districts to perform maintenance on the Safe Path Systems.
But such an allegation would give rise to a claim for tortious
interference with contract if the plaintiffs claimed that the
defendants interfered with those contracts. That is not the
plaintiffs' claim.[7]

---

[7] While Judge Sweet held, and the Court of Appeals affirmed, that
the statute and regulation at issue here did not create a
property right or require the appointment of the plaintiffs as a
sole source provider of maintenance services for Safe Path
devices, Gym Door, 2013 WL 4934868, at *4-5, *aff'd in part,
vacated in part, remanded sub nom.*, Safepath, 563 F. App'x at
854-56, that conclusion is not dispositive here. The argument by
some of the defendants that Judge Sweet rejected the plaintiffs'
tortious interference with prospective economic advantage claim
is thus incorrect.

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir. 2006) (quoting <u>Carvel Corp. v. Noonan</u>, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 818 N.E.2d 1100 (N.Y. 2004)). In addition, the defendant's interference must be direct. The defendant must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff. <u>Fonar Corp. v. Magnetic Resonance Plus, Inc.</u>, 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

As the Second Circuit Court of Appeals has observed, "[t]he tort of intentional interference with prospective economic relations is relatively simple to understand in theory—but notoriously complicated in practice." <u>Carvel</u>, 350 F.3d at 18. Consider the issue in the abstract:

> The idea behind the tort is that A claims that C interfered with A's prospective economic relationship with B. Often, C is a market competitor of A, and thus C's actions are aimed at luring B away from A, so that C, itself, can enter into an economic relationship

58

> with B. But sometimes C is simply an interloper in the
> affairs of A and B, acting with the primary purpose of
> injuring A. Thus, the central tension in such cases is
> in drawing the line between permissible market
> behavior and impermissible predatory behavior.

Id.

As the New York Court of Appeals clarified in Carvel, 818
N.E.2d at 1100, the third element---which requires that a
defendant act with a wrongful purpose or use wrongful means---
distinguishes tortious interference with prospective economic
advantage from tortious interference with contract. Id. at 1103.
In the case of tortious interference with contract, a plaintiff
may recover if the plaintiff can demonstrate that the
"defendant's deliberate interference result[ed] in a breach of
[the] contract." Id. (citation omitted). In the case of tortious
interference with prospective economic advantage, however, the
"plaintiff must show more culpable conduct on the part of the
defendant." Id. (citation omitted). "[A]s a general rule," in
order to satisfy the third element of tortious interference with
business relations, "the defendant's conduct must amount to a
crime or an independent tort." Id. "Conduct that is not criminal
or tortious will generally be 'lawful' and thus insufficiently
'culpable' to create liability for interference with prospective
contracts or other nonbinding economic relations." Id.

There is at least one exception to the general rule that
the defendant's conduct must be criminal or independently

59

tortious: If the plaintiff can demonstrate that the "defendant engage[d] in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs,'" then the wrongful means element of the test is satisfied. Id. (citation omitted). "While the Carvel court noted the possibility that other exceptions existed, it did not recognize any additional exceptions." Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC, 455 F. App'x 102, 106 (2d Cir. 2012) (summary order) (citing Carvel, 818 N.E.2d at 1103-04).

### 1. NYCDOE

The SAC alleges that John Shea, the Chief Executive Officer of the Division of School Facilities of the NYCDOE, "was involved in the conspiracy to put Plaintiffs out of business," SAC ¶ 89, and told borough managers to instruct their general contractors not to use the plaintiffs to install or maintain the Safe Path Systems in New York City, SAC ¶ 90; see also SAC ¶¶ 201, 204. The plaintiffs' claim for tortious interference with prospective economic advantage against the NYCDOE is dismissed for several reasons.

First, under N.Y. Educ. Law § 3813(2), "no action or special proceeding founded upon tort may be prosecuted or maintained" against NYCDOE unless (1) the plaintiff serves within ninety days after the claim arose a notice of claim "made and served in compliance with" N.Y. Gen. Mun. Law 50-e and (2)

the action is "commenced pursuant to the provisions of" N.Y.
Gen. Mun. Law § 50-i, which requires, among other things, that
the complaint allege compliance with N.Y. Gen. Mun. Law § 50-e.
"[T]he failure to serve the proper public body with a notice of
claim 'is a fatal defect mandating dismissal of th[e] action.'"
Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp.
2d 386, 411 (S.D.N.Y. 2013) (quoting Parochial Bus Sys., Inc. v.
Bd. of Educ. of City of New York, 458 N.E.2d 1241, 1245 (N.Y.
1983)) (second alteration in original), *aff'd*, 586 F. App'x 739
(2d Cir. 2014) (summary order).

The plaintiffs did not plead that a notice of claim was
filed. While the plaintiffs argue in their responsive papers
that one was served, that is insufficient under the law, which
requires that it must "appear by and as an allegation *in the
complaint* . . . that at least thirty days have elapsed since the
service of such notice . . . ." N.Y. Gen. Mun. § 50(i)(1)
(emphasis added); see also Varsity Transit, Inc. v. Bd. of Educ.
of City of New York, 840 N.E.2d 569, 571 (N.Y. 2005) (noting New
York courts have repeatedly rejected "proposals to compromise
the strict statutory notice of claim requirement, because to do
so would lead to uncertainty and vexatious disputes"").
Accordingly, the plaintiffs' state law claim against the NYCDOE

for tortious interference with business relations must be dismissed.[8]

On the merits, the plaintiffs have also failed to plead adequately tortious interference with prospective economic advantage against the NYCDOE because the NYCDOE's alleged actions do not constitute an independent crime or tort, as required under New York law. See Kirch, 449 F.3d at 400. The plaintiffs claim that the NYCDOE participated in a conspiracy to harm them, but at root, the plaintiffs' claim is that the NYCDOE contracted with various parties to maintain and repair Safe Path Systems that had been purchased for New York City schools. See, e.g., SAC ¶ 201. That action does not constitute a tort and does not give rise to an exception to the requirement that the defendant's conduct must amount to a crime or an independent tort to be actionable as a claim for tortious interference with prospective economic relations. See, e.g., Carvel, 818 N.E.2d at 1105-06. The plaintiffs fail to explain why New York City did not have the right to choose whomever it wished to repair the systems that it had purchased from the plaintiffs.

---

[8] To the extent that the plaintiffs argue in their papers that they provided notice, citing Daniels Decl. Ex. 4, the purported notice is facially invalid because it lacks required information regarding the time, place, and manner in which the claim arose, as well as the damages sought. Gen. Mun. Law § 50-e(2). The plaintiffs also failed to plead compliance with Gen. Mun. Law § 50-e, as required by Gen. Mun. Law § 50-i(1). See Parent v. New York, 485 F. App'x. 500, 504 (2d Cir. 2012) (summary order).

Accordingly, the NYCDOE's motion to dismiss the plaintiffs' claim for tortious interference with prospective economic advantage is **granted.**

### 2. BOCES Defendants and Bellmore

The BOCES defendants and Bellmore argue that the plaintiffs' tortious interference claim is barred by the statute of limitations.

The statute of limitations for tortious interference with business relationships is generally three years. See Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 183 (S.D.N.Y. 2000) (citing N.Y. C.P.L.R. § 214(4)). But the Education Law provides that tort claims against school districts and BOCES must "be commenced pursuant to the provisions of section fifty-i of the general municipal law." N.Y. Educ. L. § 3813(2). Gen. Mun. Law § 50-i requires that claims must "be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . ." N.Y. Gen. Mun. L.§ 50-i(1). The year-and-ninety-day statute of limitations thus governs the plaintiffs' tortious interference claims against the BOCES defendants and Bellmore.

A tortious interference with prospective economic advantage "claim begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference. It does not commence anew each time the plaintiff is unable to enter into a

63

contract, unless the defendant takes some further step." Thome v. Alexander & Louisa Calder Found., 890 N.Y.S.2d 16, 30 (App. Div. 2009). "Even where . . . the claim is based entirely on the assertion that the defendants' action (or inaction) had a negative effect on contractual relationships that plaintiff might later have had, the subsequent injuries alleged do not affect the timeliness issue." Id.

In this case, the plaintiffs' claims against the BOCES defendants and Bellmore revolve around the alleged failures of their personnel to intervene in other municipal bidding processes in March 2011. SAC ¶ 85. The plaintiffs first alerted ESBOCES of YES's use of the furniture catalog bid to obtain work on Safe Path Systems in October 2011. SAC ¶¶ 66-67. ESBOCES allegedly failed to intervene and prevent YES from obtaining more Safe Path maintenance work going forward. See, e.g., SAC ¶ 130. And the only allegations against Bellmore---that its Facilities Director authored cooperative bids for 2010-11, 2011-12, and 2012-13 that removed the name "Safe Path" from bid requests and made unauthorized copies of the plaintiffs' Manufacturer Materials---occurred between 2010 and 2013. See SAC ¶ 81. Accordingly, the tortious interference claims against the BOCES defendants accrued in March and October 2011 and those against Bellmore accrued between 2010 and 2013. These claims "do not commence anew" each time the plaintiffs allege that they

64

could not enter into a Safe Path maintenance repair contract due
to the actions or inactions of the BOCES defendants or Bellmore.
See Thome, 890 N.Y.S.2d at 30. The statute of limitations ran
out for the BOCES defendants no later than January 2013 and for
Bellmore no later than March 2014. Because the plaintiffs did
not sue until June 2, 2015, the tortious interference claims
against the BOCES defendants and Bellmore are time-barred.
Accordingly, the motions to dismiss the tortious interference
with prospective economic advantage claims against the BOCES
defendants and Bellmore are **granted**.

### 3. SFA/SFMI

The SAC alleges that all of the defendants, including the
SFA/SFMI, committed tortious interference with the plaintiffs'
prospective business relationships with school districts in New
York State. As with their earlier claims, however, the
plaintiffs' allegations against the SFA/SFMI are insufficient.

As an initial matter, to the extent that the plaintiffs
identify any specific wrongdoing by the SFA/SFMI, it relates to
the SFMI Annual Conference in 2009, where Thurnau allegedly made
statements that caused the plaintiffs to lose business. See SAC
¶ 56. These allegations fall outside the three-year statute of
limitations for tortious interference with prospective economic
advantage. Comcast, 100 F.Supp.2d at 183.

Moreover, that allegation would not suffice to state a claim. Claims for tortious interference with prospective business relationships must allege, among other things, that the defendant knew of the business relationship and intentionally interfered with it. See Kirch, 449 F.3d at 400. Here, the plaintiffs simply do not allege that the SFA or the SFMI knew of, and interfered with, a specific business opportunity. The best claim the plaintiffs make is that the SFA/SFMI "were aware of these relationships." SAC ¶ 187. That is a conclusory allegation insufficient to overcome a Rule 12(b)(6) motion. See, e.g., Lions Gate Entm't Corp. v. Icahn, No. 10-cv-8169 (HB), 2011 WL 1217245, at *2 (S.D.N.Y. March 30, 2011). Moreover, the plaintiffs have failed to allege sufficient facts to state a plausible claim that the SFA/SFMI committed an independent tort or crime or acted with the sole purpose of inflicting harm on the plaintiffs. Conclusory allegations are insufficient to survive a motion to dismiss. Accordingly, the SFA/SFMI's motion to dismiss the plaintiffs' tortious interference claim is **granted**.

### 4. Thurnau

The SAC alleges that Thurnau, knowing of the plaintiffs' business relationships with schools in New York and angered by the plaintiffs' attempts to have Safe Path Systems installed in schools across the State, orchestrated a conspiracy to harm the

66

plaintiffs' business relationships with those schools, and succeeded in doing so. See, e.g., SAC ¶¶ 52-59, 64, 88-98. These allegations suffice to state a claim for tortious interference with prospective economic advantage against Thurnau in his personal capacity.

Thurnau first argues that Judge Sweet rejected the plaintiffs' claim for tortious interference with prospective economic advantage. Judge Sweet made no such determination. See note 7, supra.

Next, Thurnau argues that the SAC does not allege any specific relationship with which he allegedly interfered. That is not the case. The SAC alleges that Thurnau interfered with the plaintiffs' existing relationships with all the schools that had previously installed the Safe Path Systems and schools with which the plaintiffs sought to do business. See, e.g., SAC ¶¶ 52-53, 185-86. Thurnau allegedly sent directions not to use the plaintiffs "to every freaking Superintendent" in the State. SAC ¶ 82 (quoting alleged statement by Joseph Hendrickson).

Thurnau also argues that the plaintiffs only allege conduct directed at themselves, not at customers. But the plaintiffs allege that Thurnau's efforts to dissuade school districts from conducting business with the plaintiffs suffice to plead direct interference with prospective business relationships. See Leadsinger, Inc. v. Cole, No. 05-cv-5606 (HBP), 2006 WL 2320544,

at *13 (S.D.N.Y. Aug. 10, 2006) (Pittman, M.J.) (allegations sufficient to state a claim for tortious interference with prospective economic advantage where the plaintiff allegedly had business relations with customers, the defendant had knowledge of these relationships, and the defendant sent an email trying to sow doubt about the quality of the plaintiff's products, resulting in lost contracts); Tasso v. Platinum Guild Int'l, 94-cv-8288 (LAP), 1997 WL 16066, at *4-5 (S.D.N.Y. Jan. 16, 1997) (denying a motion to dismiss where the plaintiff alleged that the defendant made defamatory statements and threats of lost business that induced a third party not to become the plaintiff's client).

Finally, Thurnau argues that the SAC has not alleged that Thurnau committed a crime or an independent tort to satisfy the third prong of the test for tortious interference with prospective business relations, and even if the plaintiffs did, the statute of limitations has run out. However, as discussed above, there is at least one exception to the general rule that the defendant's conduct must be criminal or independently tortious---if the defendant engaged in conduct for the sole purpose of inflicting intentional harm on the plaintiffs. See Valley Lane, 455 F. App'x at 106 (citing Carvel, 818 N.E.2d at 1103-04). The SAC alleges such an intentional infliction of harm. It alleges that Thurnau, after learning that the Coles had

68

tried to go around him to raise their concerns with other government officials, sought, in a fit of pique, to exact revenge by running the plaintiffs out of business. See SAC ¶¶ 52-53; see also Tasso, 1997 WL 16066, at *5 (holding third prong satisfied where defendant "clearly exercised a degree of economic pressure that went far beyond mere persuasion" when trying to stop plaintiff from landing a client). Such allegations suffice to state a claim.

Accordingly, Thurnau's motion to dismiss the plaintiffs' claim for tortious interference with prospective economic advantage against Thurnau in his personal capacity is **denied.**

### 5. Young Defendants

The Young defendants argue that the claims of tortious interference against them should fail because the SAC does not allege that the plaintiffs have any business relationships with the schools that installed Safe Path Systems after the Safe Path Systems were installed. The argument ignores the allegations in the SAC. The SAC plausibly alleges that the "Plaintiffs had existing business relationships with 4,700 school districts in which Safe Path Systems have been installed [and] Plaintiffs had and continue to have a reasonable expectation that these relationships will result in ongoing maintenance and service work . . . ." SAC ¶ 185. This is a sufficient allegation at this stage of the proceedings. See, e.g., Leadsinger, 2006 WL

69

2320544, at *13 (denying motion to dismiss where the plaintiff identified at least one specific business relationship).

The Young defendants also argue that Judge Sweet rejected the plaintiffs' claim for tortious interference with prospective economic advantage. As noted above, Judge Sweet made no such determination.

The allegations against the Young defendants suffice to state a claim for tortious interference with prospective economic advantage. The plaintiffs allege that they had business relationships with third parties (the schools), see, e.g., SAC ¶ 185, that the Young defendants were aware of these relationships, see, e.g., SAC ¶ 187, and that the Young defendants used unfair and improper means to interfere with the plaintiffs' business relationships by, among other things, infringing the plaintiffs' copyrights and trademarks, which harmed the plaintiffs, see, e.g., SAC ¶ 189. These allegations suffice to state a claim. See Tasso, 1997 WL 16066 at *5; see also Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 317 F. Supp. 2d 301, 335 (S.D.N.Y. 2003) (holding it was unreasonable on a motion to dismiss to require the plaintiff to identify a specific contract that it would have received but for the defendant's wrongful act).

Accordingly, the Young defendants' motion to dismiss the plaintiffs' claim for tortious interference with prospective economic advantage is **denied.**

### 6. Total Gym

Total Gym argues that the SAC fails to allege that Total Gym interfered with the plaintiffs' prospective business relations solely to harm the plaintiff instead of merely advancing its own interests in the marketplace. However, the SAC alleges far more than that. The SAC alleges that Total Gym falsely represented that it was authorized to install and maintain the Safe Path Systems, that it altered copyrighted materials to further this alleged ruse, that it disabled Safe Path equipment, and that it and the school districts generated false records, among other acts. See, e.g., SAC ¶¶ 109, 112-14, 133-34. The SAC also alleges with sufficient specificity the alleged acts---for example, naming particular bids in which Total Gym allegedly misrepresented its authorizations. See, e.g., SAC ¶¶ 112-14; see also Reading Int'l, 317 F. Supp. 2d at 335.

Evidence may show that Total Gym did not use dishonest, unfair, or improper means, but the SAC's allegations suffice at this stage to state a claim. See, e.g., Leadsinger, 2006 WL 2320544, at *13.

71

Accordingly, Total Gym's motion to dismiss the plaintiffs' claim for tortious interference with prospective economic advantage is **denied.**

### 7. Guardian/Tri-State Defendants

The Guardian and Tri-State defendants move to dismiss the plaintiffs' tortious interference with prospective economic advantage claim. However, aside from simply disputing the facts of the allegations, the Guardian and Tri-State defendants do not advance any argument why the SAC fails to state a clam. The SAC alleges that the Guardian and Tri-State defendants interfered with the plaintiffs' prospective economic advantage by, among other things, making false representations to school districts and infringing the plaintiffs' trademarks, resulting in economic harm to the plaintiffs. See SAC ¶¶ 109-110, 123-24, 185-89. Having not advanced arguments that these allegations are insufficient, the Guardian and Tri-State defendants' motion to dismiss the plaintiffs' claim for tortious interference with prospective economic advantage is **denied.**

### E. Civil Conspiracy

"It is textbook law that New York does not recognize an independent tort of conspiracy. If an underlying, actionable tort is established, however, [the] plaintiff may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme." Sepenuk v.

72

Marshall, No. 98-cv-1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y.
Dec. 8, 2000) (citation omitted). To establish a claim of civil
conspiracy, the plaintiffs "must demonstrate the primary tort,
plus the following four elements: (1) an agreement between two
or more parties; (2) an overt act in furtherance of the
agreement; (3) the parties' intentional participation in the
furtherance of a plan or purpose; and (4) resulting damage or
injury." World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F.
Supp. 2d 514, 532 (S.D.N.Y. 2001). Under New York law, in order
to be liable for acting in concert with a primary tortfeasor
under a theory of either conspiracy or aiding and abetting, the
defendant must know of the wrongful nature of the primary
actor's conduct. Pittman by Pittman v. Grayson, 149 F.3d 111,
123 (2d Cir. 1998). "It is essential that each defendant charged
with acting in concert have acted tortiously and that one of the
defendants committed an act in pursuance of the agreement which
constitutes a tort." Rastelli v. Goodyear Tire & Rubber Co., 591
N.E.2d 222, 224 (N.Y. 1992).

### 1. NYCDOE and SFA/SFMI

For the reasons discussed above, the SAC does not state
claims for the underlying torts against the NYCDOE and the
SFA/SFMI. The SAC also fails to allege sufficient facts to show
plausibly that the NYCDOE or the SFA/SFMI entered into an
agreement with others to commit any of the remaining torts that

73

have survived the motions to dismiss of the other defendants.
The plaintiffs' allegations against these defendants are wholly
conclusory and insufficient to withstand the motions to dismiss.
Accordingly, the motions to dismiss the claims for civil
conspiracy against the NYCDOE and the SFA/SFMI are **granted**.

### 2. Thurnau

The plaintiffs seek injunctive relief against Thurnau in
his official capacity as Director of Facilities Planning for
NYSED and damages from Thurnau in his personal capacity.

First, Thurnau correctly argues that the Eleventh Amendment
bars an order of injunctive relief against him in his official
capacity. The Eleventh Amendment applies to actions against
state officials, like here, "where the relief granted would bind
the state or where the state is the real party in interest."
Russell v. Dunston, 896 F.2d 664, 667 (2d Cir. 1990) (citing
Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101
(1984)); see also White v. Dep't of Corr. Servs., No. 08 CIV
0993 (JGK), 2009 WL 860354, at *6 (S.D.N.Y. Mar. 30, 2009).
While the Eleventh Amendment does not bar suits seeking
prospective injunctive or declaratory relief against state
officials acting in violation of federal law, see Ex Parte
Young, 209 U.S. 123, 159–60 (1908), the Court has dismissed all
of the federal claims against Thurnau and lacks jurisdiction to
grant injunctive relief on the basis of state law claims absent

consent to be sued in federal court, which it is undisputed has not been given. See Pennhurst State Sch. & Hosp., 465 U.S. 89, 103 (1984). To the extent the plaintiffs are seeking damages from Thurnau in his official capacity, those claims are also precluded by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 677 (1974).

Second, Thurnau argues that the SAC does not state a claim for civil conspiracy against him in his personal capacity because the allegations are conclusory and because the SAC does not allege that Thurnau communicated with anyone to commit the underlying torts.

These arguments are unpersuasive. The SAC alleges that Thurnau personally threatened to put the plaintiffs out of business. SAC ¶ 52. It alleges that he conspired with others to cause the plaintiffs economic harm by committing specific torts and provides detailed factual allegations about his participation in a conspiracy. SAC ¶¶ 196-204. The SAC also alleges that the plaintiffs suffered harm. SAC ¶ 203. As discussed above, the SAC contains sufficient allegations that Thurnau committed tortious interference with prospective economic advantage and alleges that he conspired with others to do so. The claims are sufficient to state a claim for civil conspiracy. See, e.g., World Wrestling Fed'n Entm't, 142 F. Supp. 2d at 532 (holding underlying claim for tortious

interference with prospective business relations constituted an underlying tort for civil conspiracy).

Finally, Thurnau contends that qualified immunity bars claims for damages against him personally. State law governs a state official's entitlement to qualified immunity from state law claims. See Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 363-64 (2d Cir. 2004). Similar to its federal counterpart, "New York courts recognize the defense of qualified immunity to shield the government official from liability unless that action is taken in bad faith or without a reasonable basis." Id. at 364 (citing Arteaga v. State, 527 N.E.2d 1194, 1196 (N.Y. 1988); Friedman v. State, 493 N.E.2d 893, 898-99 (N.Y. 1986)); see also Biswas v. City of New York, 973 F. Supp. 2d 504, 520-21 (S.D.N.Y. 2013). Qualified immunity is an affirmative defense and a motion to dismiss based on the assertion of qualified immunity must be denied where the complaint plausibly alleges that the government official's actions were taken in bad faith or without a reasonable basis. See, e.g., Kirchner v. Cty. of Niagara, 969 N.Y.S.2d 277, 283 (App. Div. 2013); Drake v. City of Rochester, 408 N.Y.S.2d 847, 858 (Sup. Ct. 1978), aff'd, 429 N.Y.S.2d 394 (App. Div. 1980).

Thurnau is not entitled to qualified immunity at this stage of the case. The SAC claims that Thurnau sought to harm the plaintiffs' businesses out of spite and provides examples of

statements that Thurnau allegedly made that plausibly support the conclusion that he took actions against the plaintiffs in bad faith. See SAC ¶ 52 (alleging that Thurnau stated, "Compliance with the law is a financial decision on my part . . . . . I am putting you out of business. You are done. You are a rat. I told you to stop poking your nose where it does not belong"); see also SAC ¶ 53. The allegations are sufficient to defeat the assertion of qualified immunity at this early stage.

Accordingly, Thurnau's motion to dismiss all claims against him in his official capacity is **granted** and his motion to dismiss the plaintiffs' claim of civil conspiracy against him in his personal capacity is **denied**.

### 3. Young Defendants

The Young defendants argue that the SAC fails to allege that they entered into an agreement with the other defendants to participate in an unlawful act, that they performed any overt act in furtherance of the scheme, or that the plaintiffs were injured by any overt act.

The SAC alleges that YES was formed specifically for the purpose of furthering the conspiracy. SAC ¶ 57. The SAC alleges that the Young Defendants falsified records in furtherance of the conspiracy, SAC ¶¶ 75-76, 103, that the Young Defendants hijacked cooperative bids and intentionally circumvented the competitive bidding requirements in furtherance of the alleged

conspiracy, SAC ¶ 202, and that the plaintiffs have suffered damages, SAC ¶ 203. As discussed above, the SAC states a claim against the Young defendants for tortious interference with prospective economic advantage, which constitutes the underlying tort, and the SAC sufficiently alleges that the Young defendants conspired with others to commit that tort. See, e.g., World Wrestling Fed'n Entm't, 142 F. Supp. 2d at 532. Accordingly, the Young defendants' motion to dismiss the plaintiffs' claim of civil conspiracy is **denied**

### 4. Total Gym

Total Gym argues, first, that the plaintiffs' civil conspiracy claim against it must fail because the plaintiffs have failed to plead a plausible cause of action against it. As noted above, the SAC states a claim against Total Gym for tortious interference with prospective economic advantage. See Part III.D.6, supra.

Next, Total Gym argues more convincingly that, even if the plaintiffs specified an underlying tort, the civil conspiracy claim fails because the plaintiffs have failed to plead sufficient facts to infer that Total Gym agreed with others to commit the tort against the plaintiffs.

Total Gym's argument is persuasive. The SAC fails to provide specific facts identifying Total Gym or any Total Gym representative as acting as part of a conspiracy against the

plaintiffs. The dates of the alleged conspiracy against the plaintiffs predate Total Gym's May 21, 2013 incorporation date. The plaintiffs claim that the conspiracy against them began sometime in October of 2009, almost four years before Total Gym even existed. While a conspirator can join a conspiracy after its formation, the only mention of Total Gym in the SAC's civil conspiracy claim is that Total Gym obtained "a relatively small number of jobs" on Long Island along with Guardian, Tri-State, and other vendors. SAC ¶ 203. The SAC does not plead any facts to show that Total Gym entered into an agreement with others to commit a tort against the plaintiffs. The SAC fails to allege sufficient facts that Total Gym took overt steps to further the alleged conspiracy and fails to allege sufficient facts that Total Gym intentionally participated in the furtherance of that alleged conspiracy. See, e.g., Meisel v. Grunberg, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009) (dismissing civil conspiracy claim "because the complaint does not contain facts from which it can be inferred there was an agreement to engage in a common scheme or plan to defraud [the] plaintiff"); Treppel v. Biovail Corp., No. 03-cv-3002 (PKL), 2005 WL 2086339, at *6 (S.D.N.Y. Aug. 30, 2005) (dismissing a civil conspiracy claim where there was "no showing" that the defendants "agreed to participate in a conspiracy or committed an overt act in furtherance of the conspiracy").

Accordingly, Total Gym's motion to dismiss the plaintiffs' claim for civil conspiracy is **granted**.

### 5. Bellmore and BOCES Defendants

Bellmore and the BOCES defendants raise a number of arguments for the dismissal of the plaintiffs' claim of civil conspiracy. The only surviving substantive claim against Bellmore and BOCES is the claim for copyright infringement against Bellmore and against ESBOCES. A claim for conspiracy to commit copyright infringement is not viable because "claims for conspiracy to violate the Copyright Act are preempted by federal copyright law." Irwin v. ZDF Enterprises GmbH, No. 04-cv-8027 (RWS), 2006 WL 374960, at *4 (S.D.N.Y. Feb. 16, 2006) (collecting cases).

The plaintiffs have failed to plead sufficient facts to show plausibly that Belmore or the BOCES defendants conspired with others to commit another tort, such as interference with prospective economic relations. The plaintiffs' allegations are conclusory and speculative and therefore insufficient to withstand a motion to dismiss. Moreover, the claim is barred by the statute of limitations. See N.Y. Educ. Law § 3813(2); N.Y. Gen. Mun. Law § 50-i(1); see also Part III.D.2, supra. Accordingly, the motions by Bellmore and the BOCES defendants to dismiss the plaintiffs' civil conspiracy claim are **granted**.

80

### 6. Guardian/Tri-State Defendants

The Guardian and Tri-State defendants move to dismiss the civil conspiracy claim. While the SAC states a claim for tortious interference with prospective economic advantage against the Guardian and Tri-State defendants, the civil conspiracy claim fails because the SAC does not plead facts that allege that the Guardian and Tri-State defendants entered into an agreement with one or more other parties, fails to allege sufficient facts that they took overt steps to further the alleged conspiracy, and fails to allege sufficient facts that they intentionally participated in the furtherance of the alleged conspiracy. See, e.g., Meisel, 651 F. Supp. 2d at 121; Treppel, 2005 WL 2086339, at *6 (S.D.N.Y. Aug. 30, 2005).

Accordingly, the Guardian and Tri-State defendants' motion to dismiss the plaintiffs' civil conspiracy claim is **granted.**

### IV.

The defendants advance several additional arguments in their respective motions to dismiss. To the extent that these issues are not addressed above, the Court addresses them here.

ESBOCES, Nassau BOCES, and the NYCDOE argue that the plaintiffs' claims should be dismissed because they are duplicative of the claims at issue in the action pending before Judge Sweet. They assert that the claims arise out of the same basic facts and could have been asserted in that action. The

NYCDOE argues, in the alternative, that the actions should be severed as to them and transferred to Judge Sweet. ESBOCES and Nassau BOCES ask that their claims be severed pursuant to Fed. R. Civ. P. 21 and transferred to the United States District Court for the Eastern District of New York. The SFA/SFMI argue that the claims are barred by *res judicata*. And Thurnau argues that collateral estoppel bars some of the plaintiffs' claims.

"Under the doctrine of *res judicata*, or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (quoting Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). A claim is precluded under this doctrine if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284–85 (2d Cir. 2000) (citation omitted). "The doctrine of collateral estoppel ('or issue preclusion') bars relitigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a]

82

full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (citation and internal quotation marks omitted); see also Rullan v. New York City Sanitation Dep't, No. 13-cv-5154 (JGK), 2013 WL 4001636, at *2 (S.D.N.Y. Aug. 6, 2013).

The fact that some of the allegations in this case overlap with those before Judge Sweet does not require, on the basis of res judicata, any relief at this time. If a judgment were entered by Judge Sweet, only then would there be a question of res judicata. On the issue of collateral estoppel, the claims in this case and in the case before Judge Sweet are not the same. Judge Sweet addressed only the claims of the denial of Procedural and Substantive Due Process under § 1983 and whether the plaintiffs stated a First Amendment claim for retaliation. See Gym Door, 2013 WL 4934868, at *4-5, aff'd in part, vacated in part, remanded sub nom., Safepath, 563 F. App'x at 854-56. Here, the claims are plainly different, and collateral estoppel does not apply.

With respect to NYCDOE's argument to transfer the case to Judge Sweet, Judge Sweet has already rejected this case as related to the case before him. Moreover, NYCDOE is being dismissed as a defendant in this case.

There is no basis for severing the claims against the BOCES defendants. "The trial court has broad discretion in determining whether to sever claims under Fed. R. Civ. P. Rule 21." Oram v. SoulCycle LLC, 979 F. Supp. 2d 498, 502 (S.D.N.Y. 2013). "Courts in this Circuit consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." Id. at 502-03. In this case, discovery has not even begun, and it appears that the claims arise out of the same occurrences and present the same questions of law. It also would be inefficient to send part of this case to the United States District Court for the Eastern District of New York when much of it remains here. See id. at 505 (denying pre-discovery motion to sever).

The BOCES defendants' motion to transfer this case to the United States District Court for the Eastern District of New York is denied for similar reasons. While 28 U.S.C. § 1404(a) gives the district courts the power to transfer any civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a),

"[t]he decision to transfer venue is within the discretionary authority of the court based on an individualized, case-by-case consideration of convenience and fairness. The moving party carries the burden of making out a strong case for transfer." Tulepan v. Roberts, No. 14-cv-8716 (KBF), 2014 WL 6808313, at *1 (S.D.N.Y. Dec. 3, 2014) (citations and internal quotation marks omitted). The BOCES defendants have not made a clear and convincing showing that the balance of convenience weighs heavily in favor of rejecting the plaintiffs' choice of forum and transferring the case to the United States District Court for the Eastern District of New York. See Sheikh v. Starr Transit Co., No. 05-cv-0673 (PKL)(FM), 2006 WL 235003, at *2 (S.D.N.Y. Jan. 30, 2006) (Maas, M.J.).

Finally, the Young defendants move to dismiss all the claims against the individual Young defendants---Richard Young, Brian Burke, and Dennis Schwandtner---because the SAC does not make sufficient factual allegations against the individual defendants to support the plaintiffs' claims. This motion is well founded.

The SAC makes some allegations against these individuals, but those allegations are not relevant to any claim for relief, and they do not establish that any of the individual Young defendants infringed the plaintiffs' rights. The plaintiffs allege that: (1) Burke was once debarred from the SEC and has a

85

criminal history, SAC ¶ 69; (2) Young and Schwandtner opened YES Service and Repair Corporation in 2010, SAC ¶ 195; and (3) Burke signed the ESBOCES cooperative bid in his corporate capacity, SAC ¶ 69. While some of the plaintiffs' allegations are well-pleaded against the Young defendants corporately, and as a group, they do not state claims against the Young defendants individually. It is impossible to discern from the SAC what each of the individual Young defendants did to incur liability based upon the allegations against each. Therefore, the SAC does not contain sufficient allegations to require any of them to defend against this action personally.

"The plaintiffs' complaint thus fails the basic pleading requirement that where a complaint names multiple defendants, Rule 8(a) requires that the plaintiffs 'indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants.'" Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd., No. 08-cv-42 (JG)(VVP), 2011 WL 7053807, at *14 (E.D.N.Y. Jan. 4, 2011) (citation omitted), *report and recommendation adopted*, No. 08-CV-00042 (JG)(VVP), 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012); see also Twombly, 550 U.S. at 570.

Accordingly, the Young defendants' motion to dismiss the individual Young defendants---Young, Burke, and Schwandtner---is **granted**.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. For the reasons explained above, the motions to dismiss are **granted in part and denied in part**. In sum,

- The plaintiffs' patent infringement claims are **dismissed** against all of the defendants.

- The motions to dismiss the claims of copyright infringement against Thurnau, Total Gym, the SFA/SFMI, the NYCDOE, and the Nassau BOCES defendants are **granted**. The motions to dismiss the claims of copyright infringement brought by the other defendants are **denied**.

- The motions to dismiss the claims of trademark infringement and unfair competition brought by Thurnau, the SFA/SFMI, the NYCDOE, the BOCES defendants, and Bellmore are **granted**. The motions to dismiss the claims of trademark infringement and unfair competition brought by the other defendants are **denied**.

- The motions to dismiss the claims of tortious interference with prospective economic advantage brought by the NYCDOE, the BOCES defendants, Bellmore, and the SFA/SFMI are **granted**. The motions to dismiss the claims of tortious interference with prospective economic advantage brought by the other defendants are **denied**.

- The motion to dismiss all claims against Thurnau in his official capacity is **granted**. The motions to dismiss the claims of civil conspiracy brought by the NYCDOE, the SFA/SFMI, Total Gym, Bellmore, the BOCES defendants, and the Guardian/Tri-State defendants are **granted**. The motions to dismiss the claims of civil conspiracy brought by the other defendants are **denied**.

The motions to sever or transfer the case are **denied**. The motion to dismiss the claims against the individual Young defendants---Richard Young, Brian Burke, and Dennis Schwandtner---is **granted**. Accordingly, Young, Burke, Schwandtner, the SFA/SFMI, and the NYCDOE defendants are **dismissed** from the case. The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:   New York, New York**
**          September 9, 2016**

                                    John G. Koeltl
                            United States District Judge