UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

GYM DOOR REPAIRS, INC. ET AL.

                    Plaintiffs,              15-cv-4244 (JGK)

        - against –                          MEMORANDUM OPINION AND
                                             ORDER
YOUNG EQUIPMENT SALES, INC. ET AL.,

                    Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

    The pending motion to dismiss by the defendant, the Eastern
Suffolk Board of Cooperative Educational Services (the
"ESBOCES"), seeks to dismiss the First Supplemental and Third
Amended Complaint Against ESBOCES (the "TAC") filed by the
plaintiffs, Gym Door Repairs, Inc. ("GDRI"), and Safepath
Systems LLC.

    In an Amended Opinion and Order dated September 9, 2016,
this Court granted in part and denied in part the ESBOCES'
motion to dismiss the plaintiffs' Second Amended Complaint (the
"SAC"). Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No.
15-CV-4244 (JGK), 2016 WL 4747281 (S.D.N.Y. Sept. 12, 2016) (Gym
Door I); see also Gym Door Repairs, Inc. v. Young Equip. Sales,
Inc., No. 15-CV-4244 (JGK), 2016 WL 4742317, at *5 (S.D.N.Y.
Sept. 12, 2016) (Gym Door II) (denying the plaintiffs' motion
for a preliminary injunction). Specifically, this Court in Gym
Door I granted the motion to dismiss with respect to the claims

1

for patent infringement, trademark infringement and unfair
competition, and civil conspiracy, but denied the motion with
respect to the claim for copyright infringement. Id. at *31.

In a Memorandum Opinion and Order dated November 10, 2016,
this Court denied the plaintiffs' motion for reconsideration of
the grant of the dismissal of their claims against the ESBOCES
for tortious interference with business relationships and civil
conspiracy, but granted the plaintiffs' motion to amend (or
supplement) the SAC to add new allegations that, the plaintiffs
argued, would suffice to state those claims against the ESBOCES.
Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No. 15-CV-
4244 (JGK), 2016 WL 6652733, at *1 (S.D.N.Y. Nov. 10, 2016) (Gym
Door III). This Court held that amendment (or supplementation)
was warranted under the liberal standards of Federal Rule of
Civil Procedure 15 because it could not be said that the
addition of new allegations directed against the ESBOCES would
be futile. Id. at *4.

The TAC followed. For the following reasons, the motion to
dismiss the TAC is **granted in part and denied in part.**

## I.

The allegations in the TAC are accepted as true for
purposes of this motion to dismiss. For the purposes of this
motion, the parties' familiarity with the standard of review to
be applied on a motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, the facts, procedural history, and underlying claims is presumed. See Gym Door I, 2016 WL 4747281, at *1-4.

The TAC is designed to defeat the ESBOCES' statute of limitations defense. To state a claim, the allegations must point to tortious acts that occurred on or after March 4, 2014. See Gym Door I, 2016 WL 4747281, at *22.

At its heart, the TAC includes three new allegations. First, the TAC alleges that, on May 23, 2014, Gregory Gucerio of the law firm Gucerio & Gucerio LLP wrote a letter on behalf of the ESBOCES (the "Gucerio Letter") to several state agencies that was (only superficially) designed to update the agencies about the plaintiffs' allegations of fraud, but that had "the effect of quelling the investigations" by those agencies because the Letter neglected to mention the ESBOCES' participation in the fraud or that the fraud remained ongoing. TAC ¶¶ 78-79; see also Kleinberg Decl., Ex. D (The Gucerio Letter).

Second, the TAC alleges that, in the summer of 2015, the ESBOCES issued a bid request for inspection, maintenance and repair of basketball backstops and bleachers (the "2015-2016 Bid Request"). TAC ¶ 80. GDRI and two competitors --- the Nickerson Corporation ("Nickerson") and the defendant Young Equipment Sales, Inc. --- were allegedly the only companies to respond to the 2015-2016 Bid Request. TAC ¶ 80. The TAC alleges that GDRI

3

should have won the bid because GDRI had the lowest bid, and because "Young [Equipment Sales, Inc.] and Nickerson were under investigation for the misuse of subcontractors" by the New York Department of Labor. TAC ¶ 81. Rather than award the bid to GDRI, the TAC alleges that on November 19, 2015, the ESBOCES withdrew the 2015-2016 Bid Request, "an action smacking of retaliation." TAC ¶ 82.

Finally, the TAC alleges that the ESBOCES has aided the Young defendants' scheme to poach the plaintiffs' business with school districts since 2011 by "repeatedly accepting falsified documents" as part of the Young defendants' bid packages, and nevertheless awarding the bids to the Young defendants even though the ESBOCES had "full knowledge of Young's malfeasance." TAC ¶¶ 76, 94, 108. The TAC alleges that the fraudulent documents included "fake listings for partition door and safety system components and labor." TAC ¶¶ 35-36. The TAC alleges that the Young defendants used the bids awarded by the ESBOCES to win the plaintiffs' business from school districts. See TAC ¶¶ 40, 75, 89, 110.

The TAC includes allegations (mostly related to conduct that occurred before May 2014) to show that the ESBOCES knew that the documents were falsified, and that the ESBOCES has been actively conspiring with the Young defendants. For example, the TAC alleges that the fraudulent nature of the documents would be

4

obvious to ESBOCES employees due to clerical errors and other
inconsistencies in the documents. See ¶¶ TAC 51-53, 76-77. The
TAC also alleges that, since 2011, the plaintiffs have
repeatedly alerted the ESBOCES to the Young defendants'
misconduct, including by explicitly warning the ESBOCES in
August 2012 that the bid documents were falsified. TAC ¶¶ 43,
53-54, 65-66, 70. The TAC alleges that the ESBOCES has
inexplicably ignored the plaintiffs' warnings. See, e.g., TAC ¶¶
54, 57, 66.

## II.

### (i)

In support of the tortious interference claim, the TAC
identifies two acts by the ESBOCES that occurred after March 4,
2014: the mailing of the Guercio letter, and the withdrawal of
the 2015-2016 Bid Request. Neither act is sufficient to state a
claim.

"Under New York law, to state a claim for tortious
interference with prospective economic advantage, the plaintiff
must allege that '(1) it had a business relationship with a
third party; (2) the defendant knew of that relationship and
intentionally interfered with it; (3) the defendant acted solely
out of malice, or used dishonest, unfair, or improper means; and
(4) the defendant's interference caused injury to the
relationship.'" Gym Door I, 2016 WL 4747281, at *21 (citations

5

omitted). "A tortious interference with prospective economic advantage 'claim begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference. It does not commence anew each time the plaintiff is unable to enter into a contract, unless the defendant takes some further step. Even where . . . the claim is based entirely on the assertion that the defendants' action (or inaction) had a negative effect on contractual relationships that plaintiff might later have had, the subsequent injuries alleged do not affect the timeliness issue.'" Id. at *23 (quoting Thome v. Alexander & Louisa Calder Found., 890 N.Y.S.2d 16, 30 (App. Div. 2009)).[1]

There is no plausible explanation for how the Guercio Letter interfered with the plaintiffs' business relations with any third-party. The Letter was not addressed to potential customers, nor was it directed toward any business relations. See Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1104 (N.Y. 2004) ("[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."). The Letter merely provided

---

[1] The plaintiffs argue that the date of accrual should be measured from the date that the plaintiffs felt the injury by being hindered from entering into business relationships, and not the date of the allegedly tortious act. This argument was already rejected in Gym Door I, 2016 WL 4747281, at *22-23.

an update to state agencies regarding the plaintiffs'
allegations of fraud. The plaintiffs allege that the Guercio
Letter interfered with state regulatory investigations; they do
not plausibly allege that it interfered with any business
relationships.

The plaintiffs cannot rely on the withdrawal of the 2015-
2016 Bid Request on November 19, 2015, to state a claim. As
explained in Gym Door I, "[U]nder N.Y. Educ. Law § 3813(2), 'no
action or special proceeding founded upon tort may be prosecuted
or maintained' against NYCDOE unless (1) the plaintiff serves
within ninety days after the claim arose a notice of claim 'made
and served in compliance with' N.Y. Gen. Mun. Law 50-e and (2)
the action is 'commenced pursuant to the provisions of' N.Y.
Gen. Mun. Law § 50-i, which requires, among other things, that
the complaint allege compliance with N.Y. Gen. Mun. Law § 50-e.
The failure to serve the proper public body with a notice of
claim 'is a fatal defect mandating dismissal of th[e] action.'"
Gym Door I, 2016 WL 4747281, at *22 (first alteration, citations
and some internal quotation marks omitted).

It is common ground that the plaintiffs filed a
procedurally compliant notice of claim on May 1, 2015, that
covered the plaintiffs' tortious interference and conspiracy
claims that accrued before that date. However, the alleged
withdrawal of the 2015-2016 Bid Request occurred after May 1,

2015. The plaintiffs do not argue that a previously filed notice
of claim permits a plaintiff to assert any conceivably related
claim that accrues after the filing, nor do the plaintiffs argue
that they have sought to amend the May 1, 2015 notice of claim
to cover any subsequent tortious acts. See Solow v. Liebman, 609
N.Y.S.2d 58, 59 (App. Div. 1994) (a plaintiff cannot circumvent
the notice of claim requirement by labeling wrongs as
"ongoing"); cf. Nassau Cty. v. Inc. Vill. of Roslyn, 582
N.Y.S.2d 276, 278 (App. Div. 1992).

Instead, the plaintiffs indicate that, on October 11, 2016,
they sent a second notice of claim to the ESBOCES that covered
the withdrawal. See Daniels Decl., Ex. 7. As the EBOCSES
correctly argues, N.Y. Gen. Mun. Law 50-e required the
plaintiffs to serve the notice of claim by February 17, 2016,
meaning that the second notice of claim was untimely.[2] The
plaintiffs have failed to comply with N.Y. Gen. Mun. Law 50-e
and thus cannot base their claims on the withdrawal of the 2015-
2016 Bid Request. See Gym Door I, 2016 WL 4747281, at *22.

In any event, the withdrawal of the 2015-2016 Bid Request
does not plausibly state a claim for tortious interference with
business relations. The withdrawal was plainly directed at the

[2] The plaintiffs have not asked this Court for permission to file
a late notice of claim. Accordingly, it is unnecessary to reach
the ESBOCES' argument that federal courts lack jurisdiction to
grant parties leave to file late notices of claim.

plaintiffs, and not any third-parties. Carvel, 818 N.E.2d at
1104; see also Gross v. Empire Healthchoice Assur., Inc., 819
N.Y.S.2d 210, 2006 WL 1358474 at *7 (Sup. Ct. 2006) ("[T]he
complaint does not allege that defendants directly interfered
with plaintiffs' patients; instead, it alleges that defendants'
actions were directly at plaintiffs themselves rather than their
patients."). There is again no explanation as to how the
withdrawal plausibly interfered with the plaintiffs' business
relationships with third-parties.

The remaining allegations in the TAC discuss events that
are time-barred. Accordingly, the claim for tortious
interference is **dismissed with prejudice** because the TAC has
failed to identify any tortious acts within the narrow window
permitted by the relevant statute of limitations.

**(ii)**

The ESBOCES argues that they cannot be liable for civil
conspiracy because the tortious interference claim against them
has been dismissed, but the conclusion that the ESBOCES cannot
be liable as a primary tortfeasor does not end the inquiry. The
plaintiffs also claim that the ESBOCES agreed to aid the Young
defendants in committing the tort. As explained in Gym Door I,

> "It is textbook law that New York does not recognize
> an independent tort of conspiracy. If an underlying,
> actionable tort is established, however, [the]
> plaintiff may plead the existence of a conspiracy in
> order to demonstrate that each defendant's conduct was

part of a common scheme." Sepenuk v. Marshall, No. 98-cv-1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citation omitted). To establish a claim of civil conspiracy, the plaintiffs "must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). Under New York law, in order to be liable for acting in concert with a primary tortfeasor under a theory of either conspiracy or aiding and abetting, the defendant must know of the wrongful nature of the primary actor's conduct. Pittman by Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998). "It is essential that each defendant charged with acting in concert have acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort." Rastelli v. Goodyear Tire & Rubber Co., 591 N.E.2d 222, 224 (N.Y. 1992). Gym Door I, 2016 WL 4747281, at *26.

In Gym Door I, this Court held that the plaintiffs had plausibly stated a claim for tortious interference with business relationships against several defendants, including the Young defendants. See id. at *25. This Court also held that the plaintiffs' allegations of civil conspiracy against the ESBOCES were "conclusory and speculative" and therefore insufficient to withstand a motion to dismiss, and moreover time-barred because the plaintiffs could not identify any act in furtherance of any conspiracy that occurred before the expiration of the statute of limitations. Id. at *29. The TAC has cured these pleading defects with respect to the ESBOCES. The TAC plausibly alleges that the ESBOCES conspired with the Young defendants to

10

tortiously interfere with the plaintiffs' business relationships.

Contrary to the ESBOCES' arguments, the TAC does not merely allege that the ESBOCES acted as a passive bystander by receiving fraudulent documents from the Young defendants or by failing to police its component school districts when confronted with allegations of misconduct. Instead, the TAC alleges that the ESBOCES actively aided the Young defendants by knowingly accepting fraudulent documents and nevertheless awarding the bids to the Young defendants. The TAC includes plausible allegations that the ESBOCES was aware that the conduct of the Young defendants was wrongful, including the allegation that the fabrications in the documents would be obvious to ESBOCES employees charged with reviewing those documents, and the allegation that the plaintiffs explicitly informed the ESBOCES that the documents contained misrepresentations. It is plausible that the ESBOCES' bidding process was designed to give an outward veneer of fairness to bidders, when it was in reality rigged against the plaintiffs and in favor of the Young defendants. The TAC plausibly alleges that the ESBOCES violated the law by knowingly accepting fabricated documents. The Young defendants in turn allegedly used the winning bids to poach the plaintiffs' business from school districts.

11

While the ESBOCES argues that its conduct was merely negligent, and independent of the Young defendants, it is plausible that that the ESBOCES agreed to help the Young defendants win business from school districts to the detriment of the plaintiffs. It is a reasonable inference that the ESBOCES knew that the alleged scheme was directed against the plaintiffs, which were allegedly harmed by the interference with their business relations. While it is unclear when exactly the ESBOCES joined the alleged conspiracy, the TAC includes plausible allegations that it had done so by late 2011.

The ESBOCES argues that the civil conspiracy claim is nonetheless time-barred. "The statute of limitations for civil conspiracy is the same as that for the underlying tort." Deans v. Bank of Am., No. 10 CIV. 9582 (RJH), 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) (alteration omitted) (quoting Brady v. Lynes, No. 05 Civ. 6540 (DAB), 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008)); see also Schlotthauer v. Sanders, 545 N.Y.S.2d 197, 199 (App. Div. 1989) (a claim for civil conspiracy "is time-barred when the substantive tort underlying it is time-barred"). "In a civil conspiracy action, . . . the Statute of Limitations . . . commences to run with respect to each act when it occurs . . . . Repeated wrongs are treated as separate rights of action and the Statute of Limitations begins to run as to each . . . upon its commission." Korry v. Int'l Tel. & Tel.

Corp., 444 F. Supp. 193, 195-96 (S.D.N.Y. 1978) (citations and internal quotations marks omitted); see also Fuji Photo Film U.S.A., Inc. v. McNulty, 640 F. Supp. 2d 300, 322 (S.D.N.Y. 2009); Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 671 (S.D.N.Y. 2007).

The ESBOCES cannot be liable for tortious acts in furtherance of the conspiracy that occurred before March 4, 2014. As addressed above, the TAC does not identify any tortious acts that the ESBOCES itself took after that date. However, the plaintiffs have now plausibly alleged that the ESBOCES conspired with the Young defendants for purposes of the civil conspiracy claim. The plaintiffs allege that the Young defendants continued committing overt tortious acts in furtherance of their scheme through at least June 2014 by "divert[ing] . . . inspection, maintenance, and repair work from" the plaintiffs. See TAC ¶ 75. The time-bar accordingly is not a barrier to the plaintiffs' claim against the ESBOCES to the extent that the Young defendants committed acts of tortious interference with the plaintiffs' business relationships after March 4, 2014.

Accordingly, the motion to dismiss the civil conspiracy claim is **denied**

### III.

The plaintiffs have asked for sanctions to compensate the legal fees that they incurred while opposing the motion to

13

dismiss. The request is without merit. The ESBOCES plainly had a good faith basis for bringing the motion, which has successfully resulted in the dismissal of the first claim, and the substantial narrowing of the second claim.[3]

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted in part and denied in part**. The plaintiffs' request for sanctions is **denied**. The Clerk is directed to close Dkt. 290.

**SO ORDERED.**

Dated:    New York, New York
          March 8, 2017            _____/s/_____
                                        John G. Koeltl
                                   United States District Judge

---

[3] While the Court expressed doubts at the pre-motion conference as to whether the motion to dismiss would be successful, full briefing demonstrated that the motion did indeed have merit. In any event, the motion was plainly made in good faith with a substantial basis.

14