UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
GYM DOOR REPAIRS, INC. and SAFEPATH SYSTEMS, LLC,    15 CIV 4244 (JGK)
        (OTW)

                    Plaintiffs,

      -against

YOUNG EQUIPMENT SALES, INC., YES SERVICE AND
REPAIRS CORPORATION, GUARDIAN GYM
EQUIPMENT, QAPALA ENTERPRISES, INC., JAMES
PETRIELLO, TRI-STATE FOLDING PARTITIONS, INC.,
PETER MUCCIOLO, TOTAL GYM REPAIRS, INC., NEW
YORK STATE DEPARTMENT OF EDUCATION OFFICE OF
FACILITIES PLANNING, NEW YORK STATE SCHOOL
FACILITIES ASSOCIATION, EASTERN SUFFOLK BOCES,
BELLMORE PUBLIC SCHOOLS, and CARL THURNAU,

                    Defendants.
--------------------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR COSTS EXPENSES AND ATTORNEYS FEES
ON BEHALF OF DEFENDANTS
TRI-STATE FOLDING PARTITIONS, INC., PETER MUCCIOLO, GUARDIAN GYM
EQUIPMENT, QAPLA ENTERPRISES, INC., AND JAMES PETRIELLO

By: Philip Furgang

FURGANG & ADWAR, L.L.P.
515 Madison Avenue
Suite 6W
New York, New York 10022
Tel. 212-725-1818
Fax. 212-941-9711
*philip@furgang.com*

<u>TABLE OF CONTENTS</u>

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

      A.    Plaintiffs Commenced and Prosecuted this Action with No
           Evidence that the Tri-State or Guardian Parties Had Committed
           Copyright Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

      B.    Plaintiffs Commenced and Prosecuted this Action with No Evidence That the
           Tri-state or Guardian Parties Had Committed Trademark Infringement and
           Unfair Competition Under the Lanham Act . . . . . . . . . . . . . . . . . . . . . . -7-

      C.    Plaintiffs Commenced and Prosecuted this Action Against the Tri-State and
           Guardian Parties with No Intent to Secure Any Recovery . . . . . . . . . . . . -9-

      D.    This Action was Knowingly Commenced Plaintiffs and their Counsels in Bad
           Faith Against the Tri-State and Guardian Parties and the Tri-State and Guardian
           Parties Must be Awarded Attorneys' Fees Against Plaintiffs' Counsels And
           Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

      POINT I:    The Tri-state and Guardian Parties Are Entitled to the Award of Damages
               As the Successful Parties in Plaintiff's Copyright, Trademark, and Patent
               Actions Due to the Exceptional Circumstances of this Action . . . . . -15-

      POINT II:   Plaintiffs' Counsels Conduct of this Action violates New York Rules of
               Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

      POINT III.  The Tri-state and Guardian Parties Are Entitled to the Award of
               Costs, Expenses, and Attorneys' Fees under 28 U.S.C. § 1927 and the
               Inherent Powers of the Court . . . . . . . . . . . . . . . . . . . . . . -21-

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 CIV. 224 (PAE),
        2018 WL 3574864 (S.D.N.Y. July 25, 2018)  . . . . . . . . . . . . . . . . . . . . . . . -18-

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) . . .  -21-

<u>Federal Statutes</u>

15 U.S.C. §1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5, 21-

17 U.S.C. § 505  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5, 21-

28 U.S.C. § 1927  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18, 19, 21-

35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5, 21-
, 21

<u>State Statutes</u>

New York State Education Law § 409-f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

<u>State Regulations</u>

New York Rules of Professional Conduct
        Rule 3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
        Rule 3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
Regulations of the Commissioner of Education . . . . . . . . . . . . . . . . . . . . . . . . . -1-

# I. INTRODUCTION

Under a New York State statute and regulation moving gymnasium doors must be equipped with motion sensors that will automatically halt the movement of these doors should someone or some thing enter the doors' moving path.

Plaintiffs are Gym Door Repairs, Inc. ("GDRI") and Safe Path Systems LLC ("SPS").[1] GDRI and SPS are each owned by Stephen Cole and his wife, Kathleen Cole. SPS was set up by Stephen and Kathleen Cole to be the owners of the trademarks which were the subject of this action. Plaintiffs' attorneys are Katherine Daniels, Esq., and FordHarrison LLP.

During the 1990s, Plaintiffs held a dominant position in the marketplace as one who sold, maintained, and repaired the door sensing control device were identified and sold by GDRI and its distributors under the trademark SAFE PATH. The dominance was obtained through the issuance to it of a United States Patent in 1991 and which expired in 2011.

The New York statute (New York State Education Law § 409-f) and regulation (§ 155.25) which required that mechanism for controlling moving doors also required that such mechanisms must be maintained and repaired in accordance with the manufacturer's instructions.

Plaintiffs schemed to secure a monopoly by writing into the GDRI instructions that only GDRI could decide who could maintain and repair the mechanism. State and federal courts rejected this specious scheme.

Having lost before the courts, Plaintiffs and their lawyers decided to use the courts in another way: they fabricated claims asserting that there were violations of GDRI's and SPS'

---

[1] Plaintiff Safe Path LLC's name is misspelled in the caption. See Dkt. 537 *Memorandum of Law in Support of Motion for Summary Judgment* at p 1 and Dkt. 536-1.

-1-

intellectual property rights (i.e., copyright, trademark and unfair competition, and patent) all in support of their false claims to a monopoly, no matter that previous courts expressly rejected this obviously false and illegal scheme. The different approaches attempted in this action were to compel its competitors, who are all small businesses, to spend large sums in their own defense or go out of business entirely.

Plaintiffs initially commenced this action against fifteen defendants, including five of Plaintiffs' corporate competitors and also the presidents of two those competitors. This motion is made by four of those defendants: two of Plaintiffs' competitors and the president of each of the Defendants.

One of the corporate Defendants is Tri-State Folding Partitions, Inc. ("Tri-State"). The named officer is Peter Mucciolo ("Mr. Mucciolo"). (Defendants Tri-State and Mr. Mucciolo are referred to jointly as the "Tri-State Parties".)

The other competitor is Qpala Enterprises, Inc.[2] The corporate officer is James Petriello ("Mr. Petriello"). Qpala Enterprises, Inc., uses the trade name and service mark GUARDIAN GYM EQUIPMENT by which it is identified in its marketplace and by all parties and the Court in this litigation. Therefore, throughout this brief we refer to Defendant Qpala Enterprises, Inc., as "Guardian".[3]  (Guardian and Mr. Petriello parties are jointly referred to as the "Guardian Parties")

---

[2] Qpala is misspelled in the complaint as "Qapala."

[3] Plaintiffs also named a party as "Guardian Gym Equipment." The Answer by Defendants Guardian and Mr. Petriello (Dkt. 256 at ¶ 19) states that "Guardian Gym Equipment is a wholly owned subsidiary of Qapala Enterprises, Inc." Plaintiffs have declined to amend the caption. In an affirmation by Defendant Mr. Petriello of July 22, 2016, he affirms on behalf of himself and his corporation that Guardian Gym Equipment is the trade name of Defendant Qpala (Qapala) (see Dkt. 174-3).

-2-

Plaintiffs commenced their action by the filing of a Complaint on June 2, 2015.  On July 29, 2015, Plaintiffs filed an Amended Complaint.  Then, on October 26, 2015, Plaintiffs filed a Second Amended Complaint (Dkt. 91) (the "SAC") naming nineteen defendants.  Motions to dismiss were made by all defendants save one who entered into settlement agreement.  This Court's  decision and order on defendants' motions to dismiss resulted in over half of the original defendants being dismissed.  The remaining named defendants include five competitors and the two corporate presidents, two school districts, an agency of New York State, and an employee of that agency.[5]

Well over three years after Plaintiffs commenced this action, and with extensive and costly discovery and motion practice, all allegations by Plaintiffs and against the Tri-State and Guardian Parties have been dismissed.

This brief is submitted in support of the Tri-State and Guardian Parties' motion which, as more specifically set forth and argued below, seeks an order holding that they are entitled to the

---

[5] In addition to Defendants Tri-State/Mr. Mucciolo and Guardian/Mr. Petriello, the other three defendants/competitors of Plaintiff Gym Door are:
>    YES Service and Repairs Corporation;
>    Young Equipment Sales, Inc.; and
>    Total Gym Repairs, Inc.

The school districts are:
>    Eastern Suffolk Boces and
>    Bellmore Public Schools.

The New York State agency and personnel are:
>    New York State Department of Education Office of Facilities Planning and
>    Carl Thurnau (individually and as Director of New York State Department of Education Office of Facilities Planning).

The trade organization is: New York State School Facilities Association.

award of costs and attorneys' fees: (a) against Plaintiffs under provisions of the Copyright, Trademark, and Patent Acts as the successful parties; (b) against Plaintiffs and Plaintiffs' attorneys in accordance with the inherent powers of this Court to award all attorneys's because this action was commenced and maintained bad faith; and (c)  against Plaintiffs' attorneys in accordance with the Judiciary and Judicial Procedure Act for Plaintiffs' attorneys' unreasonable and vexatious multiplication of the proceedings in this action.  Upon the granting of these motions the Tri-State and Guardian Parties move to have this matter set down for an accounting of the costs, expense, and attorneys' fees owed to them as a consequence of this bad faith and meritless action.

Submitted in support of these motions are exhibits which are referred to and annexed to the affirmation of Philip Furgang.  The Tri-State and Guardian Parties also adopt and incorporate herein by reference the brief by Defendant Total Gym Repairs, Inc., ("Total Gym") in support of its motion for costs, expense, and attorneys' fees (Dkt. 778).

## II. PRELIMINARY STATEMENT

As we will show, Plaintiffs had attempted in prior lawsuits they brought in state and federal courts to secure for themselves a monopoly form providing maintenance and repair services on the safety devices  GDRI had manufactured and sold so that only GDRI and those it certified were entitled to perform maintenance and repair services in schools throughout New York State.

Plaintiffs' commenced this lawsuit on June 2, 2015, by the filing of a complaint. Plaintiffs' Second Amended Complaint ("SAC") (**Exhibit A**, Dkt. 91) alleges that Tri-State and Guardian Parties committed acts of patent infringement (Count I), copyright infringement (Count II), trademark infringement and unfair competition (Count III), tortious interference with businesses relationships (Count IV), and civil conspiracy (Count V).

The Court granted the Tri-State and Guardian Parties' motion to dismiss Counts I and V for patent infringement and civil conspiracy, respectively (**Exhibit B**, Dkt. 224, Amended Decision and Order). At that point, Plaintiffs asserted against Tri-State and Guardian Parties copyright and trademark infringement and unfair competition, and interference with business relationships (Count II through IV).

The parties then engaged in extensive and expensive discovery which included 24 party and nonparty witnesses depositions and numerous discovery motions brought before Magistrate Judge Peck and, in some instances, Judge Koeltl.

By Order, dated September 19, 2018 (**Exhibit C**, Dkt. 685), this Court granted *all* of the defendants' separate motions for summary judgment dismissing *all* of Plaintiffs' counts.[6]

This brief is in support of Tri-State and Guardian Parties, submitted is this memorandum of law in support of their motions that the Court hold that:

(a)     Tri-State and Guardian Parties are entitled to the award of costs and attorneys' fees against Plaintiffs pursuant to 17 U.S.C. § 505, 15 U.S.C. §1117, and 35 U.S.C. § 285; and

(b)     Plaintiffs and Plaintiffs' attorneys have acted in bad faith by the commencement and maintenance of this suit; and

(c)     that in view of the Court's holding of bad faith that Tri-State and Guardian Parties are entitled to the award of attorneys' fees, costs, and expenses against Plaintiffs and their attorneys in accordance with the inherent power of this Court; and

---

[6] The joint defendants Young Equipment Sales, Inc., and Yes Service and Repairs Corporation (the "YES" Parties) chose not to seek summary judgment with respect to Plaintiffs count against them for Copyright Infringement. As a consequence, the Court held that Plaintiffs could recover against the YES Parties only statutory damages, if proven. These parties have since settled.

-5-

(d)     Tri-State and Guardian Parties are entitled to the award of costs, expense, and attorneys' fees against Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927; and

(e)     this matter is to be set down for an accounting of costs, expense, and attorneys' fees due the Tri-State and Guardian Parties.

Plaintiffs entire action was brought in bad faith by Plaintiffs' false allegations as knowingly effectuate by Plaintiffs' counsel.  Taken as a whole, this Court is warranted in awarding Tri-State and Guardian Parties all of their costs, expenses, and attorneys' fees.

## III. STATEMENT OF FACTS

It is a matter of fact and the law of this case that Plaintiffs' lawsuit is comprised of completely meritless claims against the Tri-State and Guardian Parties.  Plaintiffs' SAC (**Exhibit A** Dkt. 91) alleges "facts" that were then sworn to under oath by Plaintiffs. As a consequence of this type of pleading, the parties were compelled to go the expensive and extensive discovery of these facts, facts which did not exist and which Plaintiffs knew did not exist,

**A.**     **Plaintiffs Commenced and Prosecuted this Action with No Evidence that the Tri-State or Guardian Parties Had Committed Copyright Infringement**

In their SAC (**Exhibit A)** Plaintiffs alleged as sworn-to fact that:

(a)     the Tri-State and Guardian Parties made "unauthorized copies" of Plaintiffs' copyrighted "materials" and then altered these materials. (**Exhibit A,** SAC at ¶ 109);

(b)     the Tri-State and Guardian Parties made "numerous unauthorized copies of all or substantial portions of the Manufacturer Materials" and "willfully and knowingly infringed or induced the infringement of Plaintiffs' copyrights in the Manufacturer Materials" and that "they

willfully and knowingly infringed or induced the infringement of Plaintiffs' copyrights in the Manufacturer Materials."(*Id.*, ¶¶ 123, 124);

    (c)    the Tri-State and Guardian Parties induced others to infringe (*Id.,* at ¶ 128);

    (d)    the Tri-State and Guardian Parties"made reproductions of all or significant portions of the [Plaintiffs'] Manufacturer Materials, emails and letters.... (*Id.,* at ¶ 163)

    (e)    the Tri-State and Guardian Parties' "infringement have been willful and intentional, with disregard and indifference to the rights of Plaintiff...." (*Id.,* at ¶ 169); and

    (f)    Plaintiff is "entitled to damages … and attorneys' fees and costs" because of the Tri-State and Guardian Parties willful infringement (*Id.,* at ¶ 170).

    This Court, in granting the Tri-State and Guardian Parties motion for summary judgment, (**Exhibit C,** September 19, 2018, Opinion and Order ("Order") at 53) held that:

> [M]ere access by the Tri-State and Guardian Defendants is insufficient to demonstrate that those parties infringed the plaintiffs' copyrighted materials. ***The plaintiffs also need to show that the Tri-State and Guardian Defendants infringed the materials in some way. They have not done so.*** (emphasis added)

In other words, Plaintiffs had *no* evidence and all of their allegations pleaded as fact were totally false. Plaintiffs and their counsels knew when they made these allegations that they were either totally false or they made them in total reckless disregard of the truth with the result that the Tri-State and Guardian Parties had to either capitulate by going out of business or to go through costly discovery – these being the only alternatives.

**B.**    **Plaintiffs Commenced and Prosecuted this Action with No Evidence That the Tri-state or Guardian Parties Had Committed Trademark Infringement and Unfair Competition Under the Lanham Act**

    Plaintiffs alleged and swore under oath as these "fact" in their SAC that:

-7-

(a)   It is a violation of the federal and trademark law that the Guardian Parties put their label on equipment indicating that they had repaired that equipment, and where the equipment was owned by a school district (**Exhibit A**, at ¶¶ 110, 136, 179); and

(b)   The Tri-State and Guardian Parties falsely used Plaintiffs' trademarks to pass themselves off as certified by Plaintiffs; did poor work; "installed substandard, non-OEM parts"; and falsely claimed that the installed parts meet Plaintiffs' specifications; did not maintain the installed equipment; disabled or intentionally damaged the equipment in order to incur repair and replacement costs (*Id.,* at ¶ 133); and

(c)      The Tri-State Parties:

generated and caused school district to generate and maintain false records, also bearing Plaintiffs name and registered trademarks, in connection with maintenance work that was either not performed at all or performed by unauthorized personnel. (*Id.,* at ¶134); and

(d)      The Guardian Parties have:

engaged in false and deceptive practices by falsely representing that [they are] "certified" to work on Safe Path Systems and by superimposing [their] own trademarks[*sic*] and name over the Safe Path trademarks and names on Safe Path System equipment and signage. (*Id.,* at ¶ 136); and

(d)      The above acts by the Tri-State and Guardian Parties have been "harmful to Plaintiffs' reputation and the good will" and are extremely reckless in light of the public safety concerns at stake" (*Id.,* ¶ 138);

(e)      The Tri-State and Guardian parties "[m]ade numerous false representations that they are authorized to work on Safe Path Systems" (*Id.,* ¶¶ 176a, 177a ); and

(f)     The Tri-State and Guardian parties "[m]ade false representations that they performed maintenance and repair services on Safe Path Systems in accordance with the manufacturer's instructions." (*Id., ¶¶* 176b, 177b); and

(g)     The Tri-State and Guardian parties "[u]sed Plaintiffs' trademarks, without permission to bid on and perform maintenance and repair services on Safe Path Systems in schools throughout the State of New York." (*Id.. ¶¶* 176c, 177c).

This Court, in granting the Tri-State and Guardian Parties' motions for summary judgment held that there was absolutely no evidence of trademark infringement and unfair competition (**Exhibit C**).  Specifically, the Court held that "affixing a sticker on the Safe Path System does not create confusion with respect to the origin of the Safe Path System." (*Id., at* 55). Further, Plaintiffs have no trademark rights whatsoever because "they engaged in naked licensing." (*Id.* at 56).  The Court held with respect to each of Plaintiffs' counts that they had no evidence to support the obviously falsely sworn allegations of fact.  It was all made up out of the imaginations of Plaintiffs and/or their counsels.(*Id.,* 53-57)

## C.   Plaintiffs Commenced and Prosecuted this Action Against the Tri-State and Guardian Parties with No Intent to Secure Any Recovery

Plaintiffs' SAC charged the Tri-State and Guardian Parties with infringement of an expired patent (Patent No. 5,244,030 "'030 Patent") (**Exhibit A**, at ¶ 1). The '030 Patent expired on October 10, 2011.  Under the Patent Act, an owner of a patent may sue for damages for a period of no more than six years before the action was commenced. 35 U.S.C. § 286.   This means Plaintiffs charge that the Tri-State and Guardian Parties infringed the '030 Patent infringement was

for the period beginning June 2, 2009, and ending on the patent's expiration: October 10, 2011, or just 2 years, 4 months, and 9 days out of the 20 year patent life.

The Tri-State and Guardian Parties concluded that Plaintiffs had no rights in the patent because of laches and vigorously argued this in their motion, providing the Court with irrefutable evidence. This Court dismissed Plaintiffs' count (**Exhibit B**) without prejudice to resubmitting a properly drafted complaint and declined to decide the issue of laches as not ripe. Plaintiffs had more than a year left to claim but did not replead. In other words, the pleading was entirely frivolous.

The Tri-State and Guardian Parties were compelled, prior to their motions to dismiss, to extensively study the application that was issued as the '030 Patent to determine the extent of the rights Plaintiffs alleged at extensive cost.

**D.    This Action was Knowingly Commenced Plaintiffs and their Counsels in Bad Faith Against the Tri-State and Guardian Parties and the Tri-State and Guardian Parties Must be Awarded Attorneys' Fees Against Plaintiffs' Counsels And Plaintiffs**

Plaintiffs alleged throughout this action that they had a monopoly on providing maintenance and repair services so that only they and those that they certified were entitled to perform these services on their equipment installed in schools throughout New York State. Like their claims of copyright infringement, trademark infringement and unfair competition, and patent infringement, this claim that they had a right to a monopoly was a clear fabrication by Plaintiffs and their counsels. In this respect, we respectfully refer the Court to Defendant Total Gym's Brief (**Exhibit D**, Dkt. 778, at 7-8) in support of its co-pending motion for attorneys' fees. Its brief accurately sets forth the prior litigation history by Plaintiffs and the principle purpose of Plaintiffs in bringing

-10-

this lawsuit, which was to eliminate legitimate competition, a position which has been uniformly rejected by state and federal courts.

This Court cited Plaintiffs' prior litigation where it found that:

In March 2011, the plaintiffs brought an Article 78 proceeding, a New York State administrative appeal, against the NYCDOE in which they alleged that N.Y. Educ. Law § 409-f and Reg. § 155.25 require Safe Path System safety devices to be maintained in accordance with the manufacturer's instructions by, and only by, an SPS certified maintenance technician.… The plaintiffs' claims were dismissed for want of standing and the Appellate Division of the New York State Supreme Court affirmed the judgment of dismissal, holding that GDRI and SPS failed to demonstrate an injury in fact that fell within the zone of interests protected by N.Y. Educ. Law § 409-f and Reg. § 155.25.

In 2012, the plaintiffs filed a 42 U.S.C § 1983 civil rights action against the NYCDOE and others based on the theory that N.Y. Educ. Law § 409-f and Reg. § 155.25 require the exclusive use of the plaintiffs' services for repairs of Safe Path devices and that the NYCDOE was violating the plaintiffs' Substantive and Procedural Due Process rights by using contractors other than and in addition to the plaintiffs or those certified by the plaintiffs. The plaintiffs also alleged that the NYCDOE violated the plaintiffs' First Amendment rights by directing the NYCDOE's general contractors not to subcontract for the plaintiffs' services in retaliation to the plaintiffs' complaints.… ***The district court held, and the Court of Appeals for the Second Circuit affirmed, that the statute and regulation did not create a property right or require the appointment of the plaintiffs as a sole source provider of maintenance services for Safe Path devices.*** (emphasis added) (Internal citation to documents omitted) *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F.Supp.3d 869, 888-89 (S.D.N.Y. 2016), *recons. denied*, No. 15-CV-4244 (JGK), 2016 WL 6652733 (S.D.N.Y. Nov. 10, 2016)

This Court also held in granting summary judgement to all defendants that:

This Court is bound by Judge Sweet's interpretation of Regulation 155.25. Judge Sweet was considering the identical issue in the prior action, namely whether Regulation 155.25 established that the plaintiffs "had a right to be awarded a public contract or to subcontract on a public contract." Id. at *2. The issue was fully and fairly litigated on a motion to dismiss in the case before Judge Sweet. Relying on his interpretation of Regulation 155.25, Judge Sweet ***granted the defendants' motion, resulting in the dismissal of the plaintiffs' due process claims. The Second Circuit Court of Appeals upheld Judge Sweet's decision dismissing the procedural due process claims on the ground that the plaintiffs had not demonstrated that they***

-11-

*held any property interest.* (emphasis added, internal citations omitted) (Exhibit **C**, Order at 14-15)

Further, repair services used a bidding service to assisting them in preparing and submitting bids. The service in this case the service was EDS. Plaintiffs' falsely claimed that its competitors, including the Tri-State/Guardian Parties, illegally used EDS Bid 17, The Court's Opinion specifically held in this regard:

> [P]laintiffs … allege that the … Tri-State … and … Guardian Defendants illegally used EDS Bid No. 17, but they do not explain in any way how Tri-State's or Guardian's use of the EDS Bid No. 17 was illegal. ***They do not explain what the bid was for, nor how Tri-State's and Guardian's use of that bid was illegal. The plaintiffs' bald assertions that the use of this bid was "illegal" cannot create a genuine dispute of material fact in the face of assertions by Tri-State and Guardian that they have never made false representations*** to any school districts about their authority to maintain or repair Safe Path Systems. (**Exhibit C** Order at 38, n. 10).

Thus, Plaintiffs commenced their actions against the Tri-State/Guardian Parties in bad faith.

Plaintiffs false causes and bad faith litigation could not have happened but for the complicity of their counsels before this Court. We respectfully refer the Court to the Total Gym Brief (**Exhibit D**) and incorporate by reference specifically the Brief at 9-18 (ending with Section I):

The Appendix to the Tri-State and Guardian Parties' Reply Memorandum in support of their motion for summary judgment (**Exhibit E,** Dkt. 653, **at** 32-35) provides additional details of Plaintiffs and their counsels bad faith conduct before this Court.

As yet another of Plaintiffs making useless motions, while defendants' motions to dismiss were pending, on July 8, 2016 Plaintiffs made a motion against its competitors the YES, Tri-State, Guardian, and Total Gym Parties (Dkt. 163) for the Court to issue a temporary restraining order

and a preliminary injunction.  This motion was made by Plaintiffs' counsels more than a year after Plaintiffs commenced this law suit.

The Court held an oral hearing on July 14, 2016, and then issued an Order on July 18, 2016, denying the application for a temporary restraining (Dkt. 170).

Plaintiffs then moved for a preliminary injunction and the motion was fully briefed by Plaintiffs and Defendants. (It goes almost without saying, that federal district courts do not issue temporary restraining orders or preliminary injunctions on facts in existence when the action was commenced and the action is more than a year old.) Not surprisingly, on September 12, 2016, the Court denied Plaintiffs' frivolous motion.   This further establishes Plaintiffs and their counsels bad faith by their unreasonable and vexatious multiplication of proceedings.

As further evidence of Plaintiffs and their counsels bad faith and multiplication of proceedings, see the Order granting all defendants summary judgement where the Court denied Plaintiffs and their counsels attempt to slip into the motion audiovisual recordings expressly precluded by order of Magistrate-Judge Peck. (**Exhibit C**, at 62-63)

In addition, the Court expressly found that Plaintiffs and their counsels blatantly violated two of the Court's orders. (*Id.,* at 63-65).  Each order directed the parties to not submit additional papers for consideration concerning the motion for summary judgment.

Thus, the Court held:

> *The letter was plainly improper*. It was submitted after the conclusion of briefing and argument and was submitted without permission. See *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 369 (S.D.N.Y. 1997). (emphasis added) (*Id.,* at 64)

This Court also held:

-13-

Moreover, in an order issued March 12, 2018, the Court ordered that no further papers were to be filed in connection with the motions for summary judgment. ***The plaintiffs ignored that order*** and filed an application to file a cross-motion which sought, among other things, to strike various portions of [Defendant] Thurnau's motion for summary judgment. In an order dated March 15, 2018, the Court denied that application, which was in clear violation of the March 12 order. Docket No. 639. The Court reiterated that no further papers were to be filed in connection with the pending motions for summary judgment, and that the Court might allow the plaintiffs to submit further papers after the argument. Id. The Court never gave the plaintiffs such permission, either at or after oral argument. The ***plaintiffs therefore violated this Court's prior order*** by filing the supplemental letter. The letter and its attachments are stricken. (emphasis added) (*Id.,* at 63-64).

In another instance, one of many, Plaintiffs moved reconsideration of a decision by Judge Peck.  This was after a hearing of August 23, 2017.  Plaintiffs moved for reconsideration.  In that motion they falsely represented Judge Peck's rulings of July 6, 2017,  and August 23, 2017 (Dkt. 372).  On August 28, Judge Peck ruled against Plaintiffs because ***"Plaintiff's counsel plays fast and loose with the facts"*** (emphasis added) (Dkts. 373).

Thus, as set forth above, Plaintiffs and their counsels, were obviously aware because of the holdings against them in prior lawsuits, that they were not entitled to a monopoly in their services, nevertheless decided to try again, this time against five of their direct competitors.  They fabricated events, misrepresented orders of this Court, and played "fast and loose" with the facts and, as pointed out in the Total Gym Brief (**Exhibit D** at 2-18) lied repeatedly to the Court.

Plaintiffs counsels behavior was, as will be further argued below, in direct violation of the New York (and American Bar Association) Rules for Professional Conduct.

As a consequence, it is submitted that the Court must make a finding of bad faith by Plaintiffs and their Counsels, and that the Court hold that the Tri-State and Guardian Parties must be awarded their full costs, expenses and attorneys' fees.

-14-

# IV. ARGUMENT

**POINT I:**   **The Tri-state and Guardian Parties Are Entitled to the Award of Damages**
**As the Successful Parties in Plaintiff's Copyright, Trademark, and Patent Actions**
**Due to the Exceptional Circumstances of this Action**

The Facts, above and the Total Gym Brief (**Exhibit D**) set forth Plaintiffs' and their

Counsels' bad faith in bringing this action.  Among other considerations are the multiple related

suits brought by Plaintiffs prior to this lawsuit, lawsuits which they lost and which had a direct

bearing on the decisions in this case.  In Plaintiffs' copyright infringement claim, Plaintiffs falsely

plead the allegations in the their Second Amended Complaint where they alleged as fact that the

Tri-State and Guardian Parties made copies of their works for fraudulent purposes ("SAC" at ¶¶

123-124 [ECF 83]).  This Court rejected the claim of copyright infringement observed that

Plaintiffs "*made the remarkable claim* that making a single copy of a business document for their

records supports a claim for copyright infringement against Defendant Tri-State." (emphasis

added) (**Exhibit C, Order** at 52)**.**

Plaintiffs' also made false allegation that the Guardian Parties had committed copyright

infringement. The Court found that Plaintiffs presented *no* evidence of copyright infringement but

made only "mere conjecture based on circumstances that they deemed suspicious" which doesn't

even prove access let alone copyright infringement.  (*Id.,* at 53)

The Tri-State Parties made a single copy of 1 page of a manual which was provided by a

school for bidding purposes. This Court rejected the claim of copyright infringement.  It observed

that Plaintiffs "*made the remarkable claim that making a single copy of a business document for*

*their records supports a claim for copyright infringement against Defendant Tri-State*." (*Id.,* at 52).  With respect to Plaintiffs' allegation that the Guardian Parties had committed copyright infringement, the Court found that *Plaintiffs presented no evidence* of copyright infringement but made only "mere conjecture based on circumstances that they deemed suspicious" which doesn't even prove access let alone copyright infringement. (*Id.,* at 53)

With respect to the trademark infringement and unfair competition claim, this Court held that Plaintiffs made a baseless claim and bald assertion that Defendants made false representations about their, Plaintiffs', authority to maintain or repair the Safe Path Systems, which does not create a genuine dispute of material fact. (*Id.,* at 38). It was only Plaintiffs and their counsels that made false representations throughout this case.

With respect to Plaintiffs' tortious interference claim, the Court held that the tortious interference claim in this action is without merit (*Id.,* at 38) and was predicated on "Plaintiffs' same flawed interpretation of Regulation 155.25" (*Id.,* at 16) of which Plaintiffs had prior notice due to the previous courts' rejection of the same argument (*Id.*, at 10-12).

Furthermore, as discussed in the Facts, with respect to Plaintiffs' claim that Defendants illegally used EDS Bid 17, The Court's Opinion, as referred to above, specifically held

> *They do not explain what the bid was for, nor how Tri-State's and Guardian's use of that bid was illegal. The plaintiffs' bald assertions that the use of this bid was "illegal" cannot create a genuine dispute of material fact in the face of assertions by Tri-State and Guardian that they have never made false representations* to any school districts about their authority to maintain or repair Safe Path Systems. (emphasis added) (**Exhibit C,** Order at 38, n. 10)

During this lawsuit this Court has held that Plaintiffs' counsel "*….lied to the Court.*" (emphasis added) (Exhibit E), Appendix at 35, 36) and that *"Plaintiff's counsel plays fast and*

*loose with the facts*" (emphasis added) (*Id.*, at 36). This Court affirmed the sanctions imposed by Magistrate Judge Peck for Plaintiffs' numerous discovery failures and abuses (**Exhibit E**, at 17, 24) holding that Plaintiffs' conduct was "**egregious**" (*Id.*, at 25).

Also, as discussed in the Facts, Plaintiffs made a baseless claim and bald assertion that Tri-State and Guardian Parties made false representations about their authority to maintain or repair the Safe Path Systems, which does not create a genuine dispute of material fact. (*Id.*, at 38).

With respect to the Plaintiffs' cause of action of trademark infringement against the Tri-State and Guardian Parties, this Court held that, just as with all of other allegations, Plaintiffs have provided no evidence to support their trademark claim that the Guardian Parties' affixing of their maintenance stickers was infringement.  This Court held this was merely nothing more than advertising of Defendants' maintenance business. (*Id.*, at 55).

With respect to Plaintiffs' tortious interference claim, the Court held that the tortious interference claim in this action is without merit (*Id.*, at 38) and was predicated on "Plaintiffs' same flawed interpretation of Regulation 155.25" (*Id.*, at 16) of which Plaintiffs had prior notice due to the previous courts' rejection of the same argument (*Id.*, at 10-12). In support of this ruling, this Court cited: *Gym Door Repairs, Inc. V. NYC Dept. of Educ.*, 977 N.Y.S.2d 478, 479-80 (App. Div. 2013) and *Gym Door Repairs, Inc. V. N.Y.C. Dept. Of Educ.*, No. 12-cv-7387, 2013 WL 4934868, at *2 (S.D.N.Y. Sept. 10, 2013) (*aff'd Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App'x 851 (2d Cir. 2014).

The Facts set forth above and in this Argument present meet the standard for an exceptional case.  The claim of patent infringement was likewise frivolous.  When Plaintiffs' claim was dismissed for improper drafting they did not refile.

The court held in *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 CIV. 224 (PAE),

2018 WL 3574864, at \*11-12 (S.D.N.Y. July 25, 2018):

> The Supreme Court recently construed the term "exceptional case" in the identically-worded fee-shifting provision of the Patent Act, 35 U.S.C. § 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Court held: "An 'exceptional' case, then, is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* Relevant factors, the Court stated, include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) ). Under this standard, a district court is to determine the exceptional nature of a case on a case-by-case basis, "considering the totality of the circumstances." Id. at 1756."
>
> Since *Octane*, numerous judges in this District have so held, applying the *Octane* standard in fees applications under the Lanham Act. *See, e.g., Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 15 CIV. 6820 (JSR), 2016 WL 8379326, at \*1 (S.D.N.Y. Mar. 25, 2016); *VIDIVIXI, LLC v. Grattan*, No. 15 Civ. 7364 (JGK), 2016 WL 4367972 (S.D.N.Y. Aug. 13, 2016); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-0442 (DLC), 2016 WL 1328936, at \*2 (S.D.N.Y. Apr. 5, 2016), *aff'd*, 679 Fed.Appx. 33 (2d Cir. 2017); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 14-CV-3419 (JMF), 2018 WL 317850, at \*1 (S.D.N.Y. Jan. 8, 2018); *Spin Master Ltd. v. Alan Yuan's Store*, No. 17-CV-7422 (DLC), 2018 WL 3212460, at \*9 (S.D.N.Y. June 29, 2018); *see also Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16-CV-2379 (DLC), 2018 WL 1779346, at \*16 (S.D.N.Y. Apr. 13, 2018) (applying *Octane* standard to an Anticybersquatting Consumer Protection Act claim, which also contains an identical fee-shifting provision); *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1336 (Fed. Cir. 2017) (concluding "the Second Circuit would hold that, in light of Octane, the Lanham Act should have the same standard for recovering attorney's fees as the Patent Act."). The Second Circuit has yet to reach this issue.
>
> The totality of the circumstances, including the demonstrated bad faith of the non-prevailing party, easily justifies a fee award under that standard, too. This case indeed stands out from the others. For the reasons reviewed above, the underlying violations here of the Lanham Act were blatant, and BOT and Aoki then brought and pursued this case in bad faith with the admitted ulterior goal of driving up BI's legal expenditures, all the while engaging in further violative conduct. See, e.g.,

Feldman Tr. at 5, 7. The factor noted by Octane of objective unreasonable conduct also supports a fee award here. So, too, does the factor of deterrence. Indeed, given the broader pattern of BOT's conduct as exposed by the related litigations before this Court and the arbitral panel that heard evidence of BOT's breaches of the licensing agreement governing the Hawaii restaurant, the need to deter BOT from further excesses is compelling. *See, e.g., Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 245 (S.D.N.Y. 2016), *reconsideration denied*, No. 15-CV-6192 (DLC), 2017 WL 2875642 (S.D.N.Y. July 6, 2017) (deterrence prong weighed in favor of finding exceptionality in part in light of "the number of substantially similar lawsuits filed within a short time frame … part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation when faced with even frivolous patent lawsuits."); see *Benihana Inc. v. Benihana of Tokyo, LLC*, 2017 WL 6551198 (S.D.N.Y. 2017) (awarding fees to BI after finding BOT in civil contempt for failure to comply with Hawaii injunction). The *Octane* factor of compensation also supports such an award. As developed further in the ensuing section, BI was required to expend significant resources investigating BOT's breaches, and defending against claims brought by BOT and bringing its own counterclaims against BOT and Aoki. *See VIDIVIXI, LLC*, 2016 WL 4367972, at *4 (awarding attorneys' fees under Octane where "Lanham Act claims were objectively unreasonable [and] motivated by a competitive ploy"); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (awarding attorneys' fees under *Octane*, in patent case, in part where defendants engaged in "unreasonable litigation tactics that have wasted the Court's time and have required plaintiffs to expend significant resources").

For all these reasons, this case qualifies as an "exceptional case" within the meaning of the Octane standard. BI is entitled to an award of reasonable attorneys' fees and costs.

Therefore, upon the facts and the decisions of this Court, and in accordance with *Benihana,* this is an exceptional case warranting directing Plaintiffs and Plaintiffs' counsels to reimburse of the Tri-State/Guardian Parties expenses, costs, and attorneys' fees.

## POINT II.    Plaintiffs' Counsels Conduct of this Action violates New York Rules of Professional Conduct

Rule 3.1 of the New York Rules of Professional Conduct provides in relevant part:

(a) A lawyer shall not bring or defend a proceeding, or assert or controvert an

issue therein, unless there is a basis in law and fact for doing so that is not frivolous. …

(b) A lawyer's conduct is "frivolous" for purposes of this Rule if:

(1) the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;

(2) the conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely to harass or maliciously injure another; or

(3) the lawyer knowingly asserts material factual statements that are false.

Rule 3.3 provides that:
(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(f) In appearing as a lawyer before a tribunal, a lawyer shall not:

(3) intentionally or habitually violate any established rule of procedure or of evidence;

The conduct of Plaintiffs' counsels show that these rules were flouted. Counsel proceeded to present the false allegations in the SAC which were sworn to as factual and not upon information and belief. They and Plaintiffs continued put them forward even after it was clear that Plaintiffs never had any evidence to support these accusations. Further, they asserted a cause of action - the right of Plaintiffs to enforce a monopoly upon their scheme, when previous courts had held that Plaintiffs had no such property right. Counsel have repeatedly argued both before the Court ruled on the motions for summary judgment and after that the Tri-State and Guardian Parties violated the law by performing repair services on GDRI equipment installed in schools.

-20-

**POINT III.** The Tri-state and Guardian Parties Are Entitled to the Award of Costs, Expenses, and Attorneys' Fees under 28 U.S.C. § 1927 and the Inherent Powers of the Court

28 U.S.C. **§ 1927** provides that:

> Any attorney … in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute gives the Court the power the sanction an attorney who multiplies proceedings. In this lawsuit, however, counsels conduct was intertwined with the conduct of Plaintiffs in the offering as fact false representation and the maintenance of a lawsuit based on pure fiction all for the clear purpose of driving out its competitors.

The United Supreme Court has ruled that where the entire course of conduct throughout the lawsuit evidenced by bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address. In circumstances such as these in which all of a litigant's conduct is deemed sanctionable, requiring a court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991)

As previously indicated, we incorporate by reference Total Gym's Brief in support of its motion for attorneys' fees.  In particular, we refer to Total Gym's Brief's section on "Standard of Review for Attorneys Fees" and Argument (**Exhibit D**, 19-31) which is incorporated by reference.

## V. CONCLUSION

For the foregoing reasons and the arguments set forth herein, the Tri-State Parties and the Guardian Parties request that an Order be issued by this Court:

(a)      Tri-State and Guardian Parties are entitled to the award of costs and attorneys' fees against Plaintiffs pursuant to 17 U.S.C. § 505, 15 U.S.C. §1117, and 35 U.S.C. § 285; and

(b)      Plaintiffs and Plaintiffs' attorneys have acted in bad faith by the commencement and maintenance of this suit; and

(c)      that in view of the Court's holding of bad faith that Tri-State and Guardian Parties are entitled to the award of attorneys' fees, costs, and expenses against Plaintiffs and their attorneys in accordance with the inherent power of this Court; and

(d)      Tri-State and Guardian Parties are entitled to the award of costs, expense, and attorneys' fees against Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927; and

(e)      this matter is to be set down for an accounting of costs, expense, and attorneys' fees due the Tri-State and Guardian Parties.

That the above requested Order be issued against Plaintiffs and Plaintiffs' counsels Katherine Daniels, Esq., and FordHarrison LLP., together with such other and further relief as the Court deems just and proper.

Dated: New York, New York       Yours, etc.
      June 7, 2019              **FURGANG & ADWAR, L.L.P.**

By:/s/ Philip Furgang
Philip Furgang (PF-5654)
Attorneys for the Tri-State and Guardian Parties
515 Madison Avenue, Suite 6W
New York, NY 10022
212-725-1818

-23-