# I. INTRODUCTION

This brief is made on behalf of Defendants Tri-State Folding Partitions, Inc. ("Tri-State") and Peter Mucciolo ("Mucciolo") (jointly referred to as the "Tri-State Parties") and Qpala Enterprises, Inc. (dba Guardian Gym Equipment) ("Guardian") and James Petriello ("Petriello) (jointly referred to as the "Guardian Parties") (the Tri-State Parties and Guardian Parties are jointly referred to as the "Tri-State and Guardian Parties" or "Tri-State/Guardian" or "Tri-State and Guardian").[1]

During all times set forth in Plaintiffs' motion the Tri-State and Guardian Parties have been represented by attorneys Philip Furgang and Beth Silberstein[2] of Furgang & Adwar, LLP. GDRI and SPS have been and are represented by attorneys Eric Su of Crowell & Moring LLP and Katherine J. Daniels.

Defendant Carl Thurnau is also the subject of Plaintiffs' motion. Defendant Thurnau is represented by attorney Jonathan Siegel of the Office of the Attorney General of New York.[3]

---

[1] Qpala Enterprises, Inc., has been incorrectly named herein as Qapala Enterprises, Inc. There is no such entity as Guardian Gym Equipment. Guardian Gym Equipment is the trade name of Qpala Enterprises, Inc. Plaintiffs have declined to amend their caption.

[2] Robert Spinak has been substituted for Ms. Silberstein.

[3] The detailed identification of the parties and their respective attorneys is made necessary because Plaintiffs' "Memorandum of Law in Support of Plaintiffs' Motion For Sanction" (ECF 814 "GDRI Memo") is a highly confusing hodgepodge comprised of misidentifications, erroneous allegations, admissions of the violation of at least one court order, violations of 'the law of the case,' and is replete with unsubstantiated and blatantly false allegations.
   Take for example, the Notice of Motion (ECF 813) which states that Plaintiffs seek sanctions against Defendants Guardian, Tri-State, and Thurnau. It is only at page 3 of their Memo that Plaintiffs state that by Guardian and Tri-State Plaintiffs mean the Tri-State and Guardian Parties. The Notice of Motion also states that Plaintiffs are seeking sanctions pursuant to Fed. R. Civ. P 11 and 37. The GDRI Memo adds that they are seeking relief pursuant to the Court's "inherent powers" (ECF 814 GDRI Memo at 1). Thereafter, Plaintiffs fail to provide any facts or decisional law in support of this Court's inherent powers. In fact, "inherent powers of the court" is never referred to again. We can only conclude that having announced their intention of seeking relief under the Court's inherent powers, that Plaintiffs abandoned that claim. (Continued on page 2)

This brief is submitted in opposition to Plaintiffs' motion for sanctions.

For the reasons set forth below, Plaintiffs' motion for sanctions must be denied.

## II. NOTICE OF INCORPORATION BY REFERENCE

The Tri-State and Guardian Parties herewith incorporate by reference "Defendant Carl T. Thurnau's Memorandum of Law in Opposition to Plaintiffs' Motion for Sanctions" (ECF 817 "Thurnau Memo").

## III.  PRIOR PROCEEDINGS RELEVANT TO THE MOTION

The instant action is a further attempt by Plaintiffs to use the courts (state and federal) to secure a monopoly where none is permitted as a matter of law.  To this end Plaintiffs continued their quest for a monopoly in this action by spuriously claiming that Tri-State/Guardian had committed patent, trademark, and copyright infringement, acts of unfair competition, and engaged in a conspiracy to drive Plaintiffs out of business (*see,* the SAC[4] ECF 91).  By the Order dated

---

Footnote 3 continued: As indicated, Plaintiffs' Notice of Motion identifies Tri-State, Guardian, Thurnau as those against whom it is seeking relief.  It is not until more than halfway through their Memo that we learn that they are also seeking sanctions against attorneys when it states "Guardian and Thurnau and their counsel should be sanctioned," *Id.,* at 14.  There are two problems with this statement.  First, as noted there are two attorneys (of Furgang & Adwar, LLP) representing the Guardian Parties and a different attorney (of the Office of the Attorney General) representing Thurnau. Second, the penultimate paragraph of the Memo states "The Attorney General's Office, which represented Carl Thurnau, is equally at fault and should be jointly and severally liable for the sanctions." (*Id.,* at 24.  Equally at fault with who?

The GDRI Memo also makes allegations against "counsel for Tri-State and Guardian" *Id.,* at  9, 16.  As noted, there are two attorneys representing Tri-State/Guardian but neither one is specifically identified.  Plaintiffs repeatedly refer to "counsel for Guardian and Thurnau," *Id.,* at 17, 19, 20, and 22. However, as shown above there are different attorneys representing each of these parties.  The Memo also makes representations as to a step taken by"counsel for Thurnau and ESBOCES." (*Id.*, at 9).   As may be noted from the Court's docket in this action, each of these two parties are represented by different attorneys.

[4] SAC refers to Plaintiffs' Second Amended Complaint (ECF 91)

September 12, 2016, as amended on September 16[5] (ECF 224), Judge Koeltl dismissed the counts against Tri-State/Guardian for conspiracy.

Judge Koeltl also dismissed the count for patent infringement without prejudice. The frivolity of Plaintiffs' count for patent infringement was revealed when Plaintiffs chose not to replead the patent count, notwithstanding that their patent rights for acts committed before its expiration in 2011, were not to fully expire for over a year.[6]

Judge Koeltl issued a Revised Civil Scheduling Order on June 15, 2017 (ECF 335) which directed that all discovery was to close on September 29, 2017.

After the close of discovery all Defendants made motions for summary judgment. On September 19, 2018, Judge Koeltl issued an Opinion and Order (ECF 685) dismissing all claims by Plaintiffs against the Tri-State and Guardian Parties.

On September 27, 2018, Plaintiffs made a motion for reconsideration (ECF 687) of Judge Koeltl's Opinion and Order (ECF 685).

On October 30, 2018, Judge Koeltl issued a Memorandum Opinion and Order (ECF 711) which denied Plaintiffs' motion for reconsideration, as well as yet another request for reconsideration that they made in their first motion.

## IV. STATEMENT OF THE FACTS

As also discussed in the Thurnau Memo (ECF 817), Plaintiffs have in three separate law suits attempted to obtain a monopoly. The first was brought in state court in March 2011.

---

[5] And discussed in the Thurnau Brief at 2.

[6] A patent owner may sue for infringement occurring during the patent term for a period of six years from the act of infringement. 35 U.S.C. § 286.

Plaintiffs, in that case, brought an Article 78 proceeding against the NYCDOE in which they alleged that N.Y. Educ. Law § 409–f and Reg. § 155.25 required that their Safe Path System safety devices were to be maintained in accordance with the manufacturer's instructions by, and only by, an SPS certified maintenance technician. SAC (ECF 91 at ¶ 141). Plaintiffs' claims were dismissed for want of standing. *Gym Door Repairs, Inc. v. New York City Dep't of Educ.*, 112 A.D.3d 1198, 977 N.Y.S.2d 478, 480 (2013).

Plaintiffs' second suit was brought in 2012 in federal district court pursuant to 42 U.S.C. § 1983. Judge Koeltl held that this Court is bound by the late Judge Sweet's decision in that action. Judge Sweet held:

> [U]nder New York law, DOE may only award contracts to the lowest responsible bidder. GML § 103, Educ. Law §§ 2556(10), 2556(10-a). In the face of these well-established norms and laws regarding the awarding of government contracts, ***the mere fact that Plaintiffs unilaterally inserted language in their own maintenance instructions that expressly preclude anyone other than Plaintiffs from performing the maintenance***, see Compl. ¶ 3 8, **cannot have the effect of requiring Defendants to enter into a sole-source relationship with Plaintiffs.** Accordingly, the language in the Regulation requiring that "[a]ll equipment must be maintained in accordance with the manufacturer's instructions" must be understood as mandating conformity with the methods and procedures prescribed by the manufacturer, rather than commanding that the manufacturer be vested with the power to determine vendor selection. See *Dairymen's League Coop. Ass'n v. Brannan*, 173 F.2d 57, 66 (2d Cir. 1949) (holding that "when alternative interpretations [of an administrative regulation] are possible, the more reasonable of the two is to be chosen … ") Decision and Order at 13-14 (ECF at 13-14).

### A. Plaintiffs' Allegations of Misuse of the EDS #17 Bid

Plaintiffs make much of the alleged requirements and activities of the parties under EDS Bid #17. This subject was extensively argued by the parties in the motions for summary judgment. We respectfully refer the Court to the facts as set forth in the Thurnau Memo (ECF 817) at 3-10

-4-

and Judge Koeltl's Decision and Order (ECF 685 at 38 and footnote 10) which show that Plaintiffs' and their attorneys' representations are wholly false.

### B.  The 'Evidence' Submitted by Plaintiffs Is Inadmissible

Plaintiffs base their motion on their 'new' Exhibits 20-23, 28, 29 (ECF 815-31 to 34, 39, 40). These documents are inadmissible because they: (1) were obtained by Plaintiffs in contempt of a court order; (2) are hearsay; (3) are being used to charge Tri-State Guardian with acts associated with claims not plead; (4) were not subject to Plaintiffs' production demands; and (5) the Tri-State/Guardian parties have fully produced.

### (1) The Produced Documents Are Were Obtained in Contempt of a Court Order

Plaintiffs admit that the documents were secured by a FOIL request which was made on June 1, 2018 (ECF 814, GDRI Memo at 9).  However, by Order of Judge Koeltl, discovery closed *eight months before on September 29, 2017.*  Plaintiffs made no motion to reopen discovery.  Instead, they cavalierly ignored the Court's order. Further, it is noteworthy that Plaintiffs did not use a subpoena to make this request which would have required them serving a copy of the subpoena on the Tri-State/Guardian Parties.  The untimeliness of the request in violation of the Court's discovery order renders this evidence inadmissable

This is not the first time this has occurred.  It is, in fact, Plaintiffs' modus operandi. For example, Magistrate-Judge Peck found Ms. Daniels had "lied to the court"  (ECF 374 Sept. 5, 2017, Transcript of Hearing of Aug. 23, 2017 at 16-17.)  Later, when Plaintiffs filed objections to Judge Peck's rulings, Judge Koeltl held a hearing on these objections and, in considering Plaintiffs' counsel, Ms. Daniels', conduct, found that she had acted deceptively and misrepresented facts. (ECF 497, Dec. 18, 2017, Transcript of Hearing of Nov. 27, 2017, at 7, 8).  This Court's

Decision and Order (ECF 685 at 64) shows that Plaintiffs filed papers with the Court after the Court expressly ordered that no additional papers be filed. Plaintiffs' counsel's behavior was and, in this instance, are clear violations of Rule 3.3 of the NY Rules of Professional Conduct.[7]

### (2) Plaintiffs Submissions Are Inadmissible Because They Are Hearsay.

Plaintiffs submit their Exhibits through the affirmation of Ms. Daniels. Ms. Daniels, however, has no personal knowledge of the documents, their contents, or their existence, nor does she submit them with personal knowledge. Therefore, the documents are all hearsay and are inadmissible.

### (3) Plaintiffs Use the Exhibits to Charge Defendants with Acts Not Plead

Plaintiffs assert that Exhibits 20-23, 28, 29 are essential to establish that the Tri-State/Guardian parties were active members of a conspiracy. This is a nonsensical assertion in that there are no allegations or counts set forth in the pleading (SAC ECF 91) that the Tri-State/Guardian parties were part of any conspiracy. Second, even if such a pleading did exist, Judge Koeltl dismissed any claim of conspiracy against the Tri-State and Guardian Parties in the Order of September 16, 2016 (ECF 224).

Even if it is construed that magically Plaintiffs SAC had alleged that the Tri-State/Guardian parties were part of a conspiracy, Plaintiffs failed to comply with the requirements set out by this Court to prove such wrongful acts. There is no evidence whatsoever that the Tri-State/Guardian

---

[7] (a) A lawyer shall not knowingly:
    (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
    (2) fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
    (3) offer or use evidence that the lawyer knows to be false....

parties had possession of the newly produced exhibits. Plaintiffs, however, think that the mere existence of documents in the possession of a third party is evidence that the Tri-State/Guardian parties must have had those documents and withheld them. However, Plaintiffs have provided no evidence of such withholding or even that the Tri-State and/or Guardian Parties had the specific documents in the first place, let alone whether these were even documents which were required to be produced…which they were not.

Also, as held by Judge Koeltl, in order to allege conspiracy, Plaintiffs must have evidence of:

> (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). Under New York law, in order to be liable for acting in concert with a primary tortfeasor under a theory of either conspiracy or aiding and abetting, the defendant must know of the wrongful nature of the primary actor's conduct. *Pittman by Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998). "It is essential that each defendant charged with acting in concert have acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort." *Rastelli v. Goodyear Tire & Rubber Co.*, 591 N.E.2d 222, 224 (N.Y. 1992); see also *Gym Door I*, 206 F. Supp.3d at 913-14. Decision and Order (ECF 685 at 42-43)

Plaintiffs fail here as they failed in the motion for summary judgment to provide evidence of any of the required factors set forth in the Decision and Order (ECF 685 at 42-43). Having lost the motion for summary judgment, their motion for reconsideration, and then their attempted second motion for reconsideration, they fail here yet again. Plaintiffs are, once again, trying to reargue the case. Enough is enough.

### **(4) Tri-State/Guardian Did Not Violate Any of Plaintiffs' Production Demands.**

Plaintiffs claim that Tri-State/Guardian did not comply with Plaintiffs' production demands. This is clearly false for two reasons: first, Plaintiffs and their attorneys conveniently omit that they stipulated to narrow the scope of their discovery requests. In a letter dated February 15, 2017 (**Exhibit A**) Ms. Daniels stipulated on behalf of Plaintiffs that:

> Plaintiffs have agreed to narrow the scope of each demand to written or recorded communications and document relevant to the allegations in the pleadings or likely to lead to the discovery of information relevant to the allegations in the pleadings.

The thrust of the complaint (ECF 91) are the alleged wrongful activities conducted by the Tri-State Parties and/or the Guardian Parties with reference to Plaintiffs' Safe Path safety device. However, Exhibits 20-23, 28, 29 make no reference whatsoever to the Safe Path systems. In view of the stipulation (which Plaintiffs and their attorneys conveniently failed to provide the Court), Tri-State/Guardian were under no obligation to produce any of the newly produced exhibits. As has been previously represented to the Court, the Tri-State/Guardian parties produced everything they possessed in accordance with the demands served upon them.

### (5) Plaintiffs' Exhibits Are Evidence of Nothing

Most egregious is that none of this so-called "evidence" (i.e., Exhibits 20-23, 28, 29) supports any of Plaintiffs and their counsel's false representations and is inadmissible hearsay. For example, Plaintiffs and their counsel cite their Exhibits 28, 29 as evidence supporting their false allegation that:

> In some cases, Tri-State and Guardian expressly represent to their customers that they have conducted preventative maintenance on SAFE PATH. See, e.g., Daniels Decl. Ech. 28, 29. GDRI Memo (ECF 814 at 4).

However, the Exhibits 28 and 29 say nothing of the kind and Plaintiffs offer no statement by anyone with knowledge as to why Plaintiffs are making a clearly concocted argument. Exhibit

28 is an exchange of what may be an e-mail between a "Jamie" and a "James Heubel." It is a discussion of curtains which has nothing to do with this action. And Exhibit 29 shows only that Defendant Tri-State installed a new control box having nothing to do with Plaintiffs' safety system. Neither document supports Plaintiffs' contention that "In some cases, Tri-State and Guardian expressly represent to their customers that they have conducted preventative maintenance on SAFE PATH." No where in these documents is any such representation. (We stress here that these documents are precluded because they were secured by Plaintiffs in contempt of this Court's Order and are hearsay.)

Most significantly, the existence of Plaintiffs' irrelevant exhibits in the possession of a third party does not establish in any way that the Tri-State/Guardian parties had these exhibits. There is no evidence that these exhibits were ever received. Plaintiffs use this faux evidence to support their bizarre conspiracy theory. However. there is absolutely no evidence this. Plaintiffs' strange accusations that Tri-State/Guardian ever were engaged in any conspiracies or withheld anything from Plaintiffs is without evidence whatever because it never happened.

Plaintiffs allege that the Guardian Parties withheld the exhibits from the discovery process. *Id.*, at 10. Petriello, Plaintiffs allege, withheld documents and acknowledged that Bid #17 did not cover safety device inspections was so that Petriello could "defend the higher price he was charging the district for inspections, not to end the practice of misusing the bid." This is a flat false representation and, frankly, makes no sense whatsoever. Not only is there no evidence that the Guardian Parties ever had Exhibit 21 as alleged, and cited pages 4-6 do not support any of the allegations.

Page 11 of Plaintiffs' Memo begins in midsentence and that sentence fragment cites to Exhibits 22 and 23. It is impossible to respond because it says nothing. Plaintiffs then state:

> Petriello and Thurnau both know that safety device repairs are not covered by EDS Bid #17 either. These documents were obviously responsive to Plaintiffs' demands and clearly relevant because they support Plaintiffs claim that the Defendants are conspiring to use cooperative bids to circumvent to normal bidding process for SAFE PATH preventative maintenance and repair. *Id.*

These exhibits, as the others are inadmissible because they were obtained by Plaintiffs in contempt of this Court's Order which closed discovery more than eight months before Plaintiffs admit they requested them. They have no evidence of what Defendant Petriello knew or did not know. Further, because the exhibits were allegedly produced from a non-party, they do not establish that the Guardian Parties ever had the documents. Tri-State/Guardian represented to the Court that they had produced all documents according to Plaintiffs' document requests and they did. A party cannot produce what it does not have.

In footnote 8 Plaintiffs allege that Defendant Petriello withheld Exhibit 24 concerning a bypass switch. The document does not refer to any Safe Path product and was not required to be produced. Plaintiffs have no evidence and can have no evidence to the contrary. Plaintiffs again have absolutely no evidence supporting this ridiculous accusation. Further, as may be seen Exhibit 24, it has nothing whatever to do with this litigation.

As this Court held:

> The plaintiffs' bald assertions that the use of this bid was "illegal" cannot create a genuine dispute of material fact in the face of assertions by Tri-State and Guardian that they have never made false representations to any school districts about their authority to maintain or repair Safe Path Systems. Mucciolo Aff. ¶ 5 (Docket No. 536-14); Petriello Aff. ¶ 5 (Docket No. 536-15). (Decision and Order ECF 685 at 38, ft. nt. 10.)

Plaintiffs also assert "Removing the partitions in New Rochelle was costly and has not been popular with users of the gymnasiums who find the walk-draw curtains to be inadequate. Daniels Decl. Ex. 28." *Id.*, at 12.  That is ludicrous. Exhibit 28 provides no such support and Plaintiffs have no such evidence.

Plaintiffs assert that they and they alone have the exclusive right to perform maintenance on the Safe Path systems installed in schools.  They further insist that Tri-State/Guardian hid the fact that they were performing maintenance and that this is improper.  However, Judge Koeltl held in his Decision and Order that the Plaintiffs':

> argument rests on the flawed premise that Regulation 155.25 requires that Safe Path Systems can only be maintained by the plaintiffs or their authorized technicians. As discussed above, that interpretation is incorrect.  (ECF 685 at 28)

The Court also held that:

> The plaintiffs argue that, but for the illegal bids by their competitors to perform maintenance and repair work on Safe Path Systems, the districts would have followed Regulation 155.25 and awarded the job to the plaintiffs or a certified Safe Path dealer. But this argument again relies on the incorrect assumption that the plaintiffs are entitled to all contracts for maintaining the Safe Path Systems. That is incorrect. The schools were not required to use the plaintiffs or a Safe Path authorized vendor -- they were free to choose other vendors.  (Decision and Order, ECF 685 at 39)

In making this motion, Plaintiffs did not afford Tri-State Guardian the 21 day "Safe Harbor" that is mandated by the Fed. R. Civ. P.

### C. Plaintiffs Made False Allegations of Misconduct by Attorneys for Tri-State/Guardian

At pages 7-8 of the GDRI Memo it is alleged that an attorney for Tri-State/Guardian conspired to mislead the Court on various aspects of Bid #17.  We respectfully refer the Court to the Thurnau Brief (ECF 617) at 3-5 for an explanation of the Court's and Defendants' position with respect to Bid #17.  None of Plaintiffs' allegations in this regard are supported by any

-11-

evidence. It is all a sham and a rearguing of the Court's Decision and Order (ECF 685) as discussed more fully in the Facts, above.

Finally, it should be noted that each of Plaintiffs' arguments supporting its motion were made before the Court during the motion for summary judgment and was rejected. The doctrine of "law of the case" bars reconsideration of these arguments here.

## V. ARGUMENT

### POINT I. PLAINTIFFS' MOTION FOR SANCTIONS UNDER RULE 11 MUST BE DENIED

Plaintiffs' Motion for Sanctions under Rule 11 must be denied. We respectfully incorporate by reference the argument forth by Defendant Thurnau in ECF 817 at 11, (Thurnau Memo) at Point II. In addition, pursuant to Fed. R. Civ. P. 11(d) this motion expressly does not apply to motions made under Rules 26 and 37. Like Defendant Thurnau, Tri-State/Guardian was never allowed the 21 day safe harbor provided in Rule 11. Thus, Plaintiffs' motion for sanctions under Rule 11.

### POINT II. PLAINTIFFS RULE 37 MOTION IS MERITLESS AND MUST BE DENIED

Plaintiffs' motion under Rule 37 fails for several reasons. Plaintiffs cannot carry their "burden of showing that [Tri-State/Guardian] failed timely to disclose information required by Rule 26 ... [by] establish[ing] (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (*quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

No admissible evidence has been provided that shows that Tri-State/Guardian failed to produce, nor that the so-called missing evidence is relevant, in any event. Accordingly, the motion under Rule 37 must be dismissed.

### POINT III.    PLAINTIFFS ARE IN CONTEMPT OF COURT.

Plaintiffs do not explain why they waited over eight months the after the close of discovery by this Court in its Order to make is FOIL request. Nor do they explain why they did not make a motion to reopen discovery.

As held in *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004):

> A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995). It need not be established that the violation was willful. *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir.1984)

As show above in the Facts, Plaintiffs have no evidence that the Tri-State and/or Guardian Parties had any of the evidence they claim should have been produced and, facially, none of the documents appear to have anything to do with the subject of this litigation, namely the Safe Path safety system. Thus, Plaintiffs are in contempt of this Court's order which closed discovery over eight months before. Thus, Plaintiffs' 'new' exhibits are inadmissible.

### POINT IV.    PLAINTIFFS ARE BOUND BY THE LAW OF THE CASE AND CANNOT REARGUE THE DECISION AND ORDER BY JUDGE KOELTL

Plaintiffs' motion is over and over reargues the Tri-State/Guardian and the other defendants motions for summary judgment. The alleged new exhibits, even if admissible, add nothing. Even

if these inadmissible exhibits were accepted, they not only fail to support Plaintiffs' position, in some cases they directly contradict what the exhibits plainly state. Take, for example, Plaintiffs' allegation on page 7 of its Memo that: "Although there was never any genuine dispute as to whether EDS Bid 17 covers safety devices, the Defendants and their counsel led the Court to believe that there was." There is no evidence to support this allegation.[8] The Court is respectfully referred to the Court's Decision and Order (ECF 685) where all of Plaintiffs' arguments raised here were ruled upon by Judge Koeltl.

The United States Supreme Court held in *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984) that:

> As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See 1B J. Moore & T. Currier ... , ¶ 0.404 (1980).

In *In re AMR Corp.*, 567 B.R. 247, 254 (Bankr. S.D.N.Y. 2017), the court held that:

> Claims dismissed in a prior court decision are barred by the law of the case doctrine. That doctrine provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); see also De Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v.*

---

[8]Footnote 5 at the end of the sentence is irrelevant. It merely recites what the record shows: that Plaintiffs lost their motion for a preliminary injunction. Plaintiffs do not advise the Court that their motion was brought more than a year after the commencement of the action and that Plaintiffs failed to provide the Court with any rational why such extraordinary relief was proper that far into this litigation.

-14-

*United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (internal citations and quotation marks omitted). It "operates to create efficiency, finality, and obedience within the judicial system." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1363 (S.D. Fla. 2005); see also *Liani v. Baker*, 2010 WL 2653392, at *11 (E.D.N.Y. June 28, 2010) ("Law of the case is a doctrine of judicial efficiency that allows a court to avoid time-consuming relitigation of issues already decided. It is not a substantive limit on the power of the court, however, and every court retains the authority to reconsider its prior non-final rulings.") (internal citations and quotations omitted)

Moreover as held by the court in *Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc.,* 974 F. Supp. 214, 218 (S.D.N.Y. 1997) "[a]lthough the doctrine does not restrict a court's authority to revisit a previously decided issue, 'courts should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *(*citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988)).(quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983).

Therefore, this third of Plaintiffs' attempts to reargue the Court's Decision and Order (ECF 685) must be denied once more.

### POINT V     PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE ANY FAILURE TO DISCLOSE THAT MAY HAVE OCCURRED WAS HARMLESS

Tri-State/Guardian herewith incorporate by reference Section D of the Thurnau Memo beginning at 14, ¶ D through 18.

### VI. CONCLUSION

For the foregoing reasons, the Tri-State and Guardian Parties respectfully request that the Court deny Plaintiffs' motion for sanctions, and grant such other and further relief as the Court deems just and Proper.

| | |
|---|---|
| Dated: New York, New York<br>August 7, 2019 | Respectfully submitted,<br>FURGANG & ADWAR, L.L.P.<br>Attorneys for the Tri-State and<br>Guardian Parties<br>By: <u>/s/ Philip Furgang</u><br>Philip Furgang<br>515 Madison Avenue, Suite 6W<br>New York, NY 10022<br>Tel. (212) 725-1818 |