**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
GYM DOOR REPAIRS, INC., et al.,           :
:
                               Plaintiffs,    :    15-CV-4244 (JGK) (OTW)
:
           -against-                              :    **MEMORANDUM OPINION & ORDER**
:
YOUNG EQUIPMENT SALES, INC., et al.,      :
:
                              Defendants.   :
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

The Rule 37 sanctions motion now before the Court concerns documents that a non-party obtained via a Freedom of Information Law ("FOIL") request to non-party New Rochelle City School District ("New Rochelle").[1] Plaintiffs Gym Door Repairs, Inc. and Safepath Systems LLC (collectively "Plaintiffs") assert that Defendants Qpala Enterprises, Inc.[2] d/b/a Guardian Gym Equipment and James Petriello (collectively "Guardian Defendants"), Tri-State Folding Partitions, Inc. and Peter Mucciolo (collectively "Tri-State Defendants"), and Carl Thurnau (all collectively "Defendants")[3] should have produced these New Rochelle documents to Plaintiffs

---

[1] Plaintiffs also allege that they received documents from Lindenhurst Unified School District, and Oppenheim-Ephratah-St. Johnsville School District ("OESJ") via FOIL requests, but limit their sanctions argument to the New Rochelle documents. In any event, the Lindenhurst and OESJ documents are similar in nature to the New Rochelle ones.

[2] Defense counsel clarified that the correct spelling is "Qpala," and not "Qapala" as initially named in the complaint. (ECF 858 at 2 n. 1).

[3] Plaintiffs do not clearly identify the Defendants who are the subject of the sanctions motion. Although the notice of motion states that Plaintiffs are moving for sanctions against "Guardian, Tri-State and Carl T. Thurnau," Plaintiffs do not define "Guardian" and "Tri-State;" there is no party named "Guardian" or "Tri-State." Because Defendants adopted the understanding found in Plaintiffs' memorandum of law that "Tri-State" refers to Defendants Tri-State Folding Partitions, Inc. and Peter Mucciolo and "Guardian" refers to Defendants Qpala Enterprises, Inc. and James Petriello, the Court will follow such designations for purposes of this motion. There were other named defendants

in discovery in this matter. As a result, Plaintiffs request relief in the form of *full* reimbursement of their legal fees and costs expended in this litigation—spanning almost six years—under Federal Rule of Civil Procedure 37. For the following reasons, Plaintiffs' Rule 37 motion for sanctions, ECF 813, is DENIED.

I.     **Background**

The Court assumes the parties' familiarity with the background facts of this case, as further laid out in detail in the accompanying Report & Recommendation concerning Plaintiffs' motion for sanctions under Rule 11, and only provides a brief background here as context for this Rule 37 motion. (*See* ECF 859). After discovery closed on September 29, 2017, non-party Mary Nash[4] sent a FOIL request to New Rochelle on June 1, 2018, seeking, *inter alia*, records and purchase orders relating to New Rochelle's "electronically operated folding partitions." (ECF 815-30). Plaintiffs received New Rochelle's production from Ms. Nash on April 29, 2019, which included purchase orders, invoices, and email correspondence involving Defendants. (ECF 814 at 13). Plaintiffs now argue that the FOIL records[5] are relevant to their now-dismissed conspiracy claim because the documents show that Defendant Thurnau, New Rochelle's Director of Facilities, allowed New Rochelle to hire the Guardian and Tri-State Defendants

---

in this matter, but only the Guardian Defendants, Tri-State Defendants, and Defendant Thurnau are the targets of the instant sanctions motion.

[4] Ms. Nash is the mother of the president of Plaintiff Safepath Systems LLC. (ECF 830 at 7).

[5] Plaintiffs fail to identify which of the 38 exhibits are the subject of the sanctions motion. Rather than attempt to guess, the Court will consider Exhibits 20-23 and 29-30, the exhibits specifically referenced by Plaintiffs as received pursuant to FOIL requests, as the subjects of the sanctions motion. (*See* ECF 815-31 through 815-35, 815-40 through 815-41).

2

based on EDS Bid Package #17[6] despite knowing that EDS Bid Package #17 did not apply to maintenance of "safety device[s]" such as Plaintiffs' Safe Path System. (*Id*. at 14.) Plaintiffs argue that this improper hiring of the Guardian and Tri-State Defendants shows that "Defendants [were] conspiring to use cooperative bids to circumvent to [sic] normal bidding process" and "to keep Plaintiffs out of the schools." (ECF 814 at 15, 18). Defendant Thurnau argues that the FOIL documents were outside the scope of his agreed-upon production and that nothing in Plaintiffs' FOIL documents alters the conclusion reached by Judge Koeltl in his decision granting summary judgment to Defendants. (ECF 817 at 15-8, 22). The Guardian and Tri-State Defendants join in the same arguments. (ECF 820).

## II. Discussion

As an initial matter, Plaintiffs' attempts to relitigate Judge Koeltl's September 19, 2018 summary judgment decision are not well-taken.[7] Judge Koeltl already denied Plaintiffs' motion for reconsideration of that decision more than a year ago, ECF 711; Plaintiffs cannot use a sanctions motion as a third bite at the apple. Rather than cabin their argument to whether sanctions are appropriate for Defendants' alleged failure to produce the cited FOIL documents, Plaintiffs spend the majority of their sanctions briefing arguing the merits of their tortious interference and civil conspiracy claims. Similarly, Plaintiffs spend part of their brief arguing that New Rochelle's failure to schedule inspections was not in compliance with state standards and that replacing Plaintiffs' electric partitions with manual partitions was not good policy, both

---

[6] EDS Bid Package #17 refers to a "cooperative bid administered by Clarkstown Central School District and Educational Data Services" to award contracts for maintenance work on electric partitions. (ECF 814 at 9).

[7] For further explanation of the summary judgment briefing and decision, see the accompanying Report & Recommendation, § II.B.a. (ECF 859).

issues irrelevant to the sanctions motion. (ECF 814 at 15-17). Plaintiffs submitted 51 exhibits to the sanctions motion, totaling 350 pages, many of which are unrelated to the recent FOIL production. (ECF 815). On reply, Plaintiffs submitted another four exhibits on the importance of Plaintiffs' Safe Path system for electric partitions. (ECF 831). Despite the sheer volume of paper submitted by Plaintiffs, Plaintiffs have failed to show why Defendants should be sanctioned under Rule 37.

### A. Legal Standard

Plaintiffs seek sanctions under Rule 37(c)(1) for Defendants' failure to produce documents. (ECF 814 at 19).[8] To determine whether to grant sanctions under Rule 37 for failure to produce, the Second Circuit employs a three factor test: (1) whether the party with control of the evidence "had an obligation to timely produce it," (2) whether that party had a "culpable state of mind," and (3) whether the withheld documents are "relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *See In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (internal quotations omitted). Whether to impose sanctions, however, is "within the trial court's discretion." *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007). If sanctions are warranted, the Court may award "payment of the reasonable expenses, including

---

[8] Although Plaintiffs cite both Rule 37(b) and Rule 37(c)(1), Rule 37(c)(1) appears to be the only applicable subsection. (*See* ECF 814 at 19, 26). Plaintiffs do not invoke Rule 37(a) as they are not claiming that Defendants' non-production was a violation of their initial disclosure obligations or that Plaintiffs prevailed on a motion to compel. *See* Fed. R. Civ. P. 37(a)(3)-(5). Indeed, Plaintiffs did not file a motion to compel. Nor can Plaintiffs invoke 37(b) for "failure to comply with a court order" because Plaintiffs never sought a court order on production and do not identify any Court order that ostensibly was violated. *See Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) ("The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed."). Nor do Plaintiffs claim that Defendants' discovery responses were so deficient as to be a total failure to respond under 37(d), that they failed to preserve electronically stored information under 37(e), or that they failed to participate in developing a Rule 26(f) report under 37(f).

4

attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). The Court has "broad discretion" to fashion the appropriate remedy for non-production of evidence. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

Sanctions are not available if the failure to produce was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A failure is substantially justified if the movant "could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Henrietta D. v. Giuliani*, No. 95-CV-0641 (SJ), 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001). A failure is harmless if there is an "absence of prejudice to the [movant]." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012). The party with the alleged failure to produce bears the burden of showing either substantial justification or harmlessness. *Kunstler*, 242 F.R.D. at 265.

**B. Analysis**

Although almost all of the FOIL records were created after Plaintiffs' Requests for Production were issued, Plaintiffs argue that Defendants violated Rule 37(c)(1) by failing to supplement their production as required by Rule 26(e). (ECF 814 at 19). Under Rule 26(e), a party must supplement its disclosures when it learns that its previous response was incomplete and the information has not been otherwise disclosed to the requesting party in the interim. Fed. R. Civ. P. 26(e)(1)(A). Plaintiffs argue that the New Rochelle documents fell within the scope of Plaintiffs' discovery requests seeking "all documents" relating to EDS Bid Package #17, "all price quotes, purchase orders, invoices and certified payroll records" for safety systems, and "all communications" that "relate to Carl T. Thurnau." (ECF 814 at 8, 21).

5

Even assuming that the six documents should have been produced by Defendants in discovery,[9] the non-production was ultimately harmless to Plaintiffs.[10] Plaintiffs argue that the new documents "provide probative evidence of the conspiracy to use cooperative bids to cut Plaintiffs out of the competitive bidding process." (*Id*. at 22). Tellingly, Plaintiffs fail to cite to any of the FOIL documents but instead attach and cite documents previously produced in discovery to re-argue the merits of their claims. (*See* ECF 815). Plaintiffs already raised this argument—unsuccessfully—in their opposition to Defendants' summary judgment motion, arguing that there was "ample evidence" that Defendants "used EDS Bid No. 17 illegally to perform maintenance and repair work on safety systems." (ECF 579 at 44). Judge Koeltl rejected this line of reasoning, finding that Plaintiffs' attempts to link evidence of improper use of EDS Bid Package #17 to an actual conspiracy agreement was "nothing more than

---

[9] It is questionable whether Plaintiffs have even sufficiently established that Defendant Thurnau was in possession, custody, or control of the New Rochelle documents such that he had an obligation to produce. Plaintiffs only make the bald assertion that the New Rochelle documents "were clearly within the control of Guardian and Thurnau." (ECF 814 at 18). Defendant Thurnau argues that there was no duty to disclose the documents because (1) Defendant Thurnau was not in personal control of the New Rochelle documents and (2) Defendant Thurnau had only agreed to produce a more limited scope of documents, to which Plaintiffs failed to object. (ECF 817 at 16-18). Although the document request to Defendant Thurnau may have been in his individual capacity, Defendant Thurnau admits that he is employed by New Rochelle. (ECF 817 at 17). The question then is whether Defendant Thurnau's employment with New Rochelle gave him control of New Rochelle's purchase orders and invoices. *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011) (describing the test as whether the respondent has the "legal right, authority, or practical ability" to obtain the documents "upon demand"). Neither side has adequately briefed this issue, but regardless, this determination is unnecessary for resolution of this motion. Although the Guardian and Tri-State Defendants also argue that there is no evidence they had possession of the documents, because they issued the purchase orders, it would be reasonable to infer that they possessed copies of those documents. (*See* ECF 820 at 6-7).

[10] Nor can Plaintiffs point to any loss of money or time that would merit the award of attorney's fees in any amount, let alone the approximately $800,000 in fees for the entire litigation. Plaintiffs never raised this discovery issue with the Court prior to the sanctions motion, and as Plaintiffs acknowledge, the FOIL requests were made by a non-party. (ECF 830 at 4).

conjecture."[11] (ECF 685 at 44-45). Here, the FOIL records still only show, at best, an incorrect use of EDS Bid Package #17, not an agreement to hurt Plaintiffs.

Even if Plaintiffs' FOIL documents showed what Plaintiffs claim, namely that Defendants' knowing misapplication of EDS Bid Package #17 constituted evidence of a conspiracy, this would have no effect on Judge Koeltl's dispositive holding dismissing Plaintiffs' claims for "lack of any evidence of any damages." (ECF 685 at 25). In his summary judgment decision, Judge Koeltl precluded the introduction by Plaintiffs of any damages evidence as a sanction for Plaintiffs' failure to comply with their initial disclosure obligations under Rule 26.[12] (*Id*. at 24). Therefore, even if Plaintiffs could show through the FOIL documents that Defendants engaged in a conspiracy, such evidence would not have changed the outcome of the summary judgment decision. Accordingly, Plaintiffs' motion for Rule 37 sanctions is DENIED.

### C. Conclusion

For the foregoing reasons, Plaintiffs' request for sanctions under Federal Rule of Civil Procedure 37, ECF 813, is DENIED. Because Plaintiffs' motion also includes a request for sanctions under Rule 11, which is before Judge Koeltl, this decision does not close ECF 813.

**SO ORDERED.**

Dated: January 28, 2020  
New York, New York

*s/ Ona T. Wang*  
**Ona T. Wang**  
United States Magistrate Judge

---

[11] Judge Koeltl also pointed out that incorrectly using EDS Bid Package #17 was different from showing that Defendants were acting "illegally." (ECF 685 at 38).

[12] Judge Koeltl separately found that Plaintiffs were not entitled to damages because Plaintiffs' claim of injury hinged on their "flawed interpretation of Regulation 155.25." (*Id*. at 16). Because Judge Koeltl held that Regulation §155.25 did not entitle Plaintiffs to a monopoly on maintenance of Safe Path Systems, Plaintiffs could not claim injury by school districts permitting other contractors to work on Safe Path Systems. (*Id*. at 16-17).