**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                            :

GYM DOOR REPAIRS, INC., et al.,          :

                             Plaintiffs,     :          15-CV-4244 (JGK) (OTW)

                                            :

              -against-          :          **REPORT & RECOMMENDATION**

                                            :

TOTAL GYM REPAIRS, et al.,           :

                                            :

                          Defendants.    :
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable JOHN G. KOELTL, United States District Judge:**

## I.       Introduction

The action is before me for a Report and Recommendation on motions for attorneys'

fees and costs. On June 10, 2020, Judge Koeltl directed the Clerk of Court to enter judgment

dismissing all claims and counterclaims with prejudice. (ECF 889). Judge Koeltl further ordered

that "[i]f any party seeks to make a claim for costs or attorney's fees, counsel should follow

Federal Rule of Civil Procedure 54." (ECF 889). Defendants Qpala Enterprises, Inc. (sued herein

as Qpala Enterprises[1] and Guardian Gym Equipment) and James Petriello (collectively, the

"Guardian Parties") and Defendant Total Gym Repairs ("Total Gym") both move for fees and

costs. (ECF 896, 899). Defendant Carl T. Thurnau additionally moves for recovery of costs. (ECF

907). For the following reasons, I recommend that:

- Total Gym: Total Gym's motion for attorneys' fees (ECF 896) be granted in part and

  denied in part, awarding a reduced amount of **$91,810.00**. Plaintiffs' appeal of the Clerk

---

[1] Plaintiffs misspelled Qpala's name in the complaint. (ECF 858 at 2 n.1).

of Court's Taxation of Costs (ECF 951) be denied. I further recommend that the Taxation of Costs be modified so that costs of Stephen J. Cole's deposition ($1,059.05 for the certified transcript and $116.40 for exhibits) are recoverable. The amount of costs awarded to Total Gym is to be calculated by the Clerk of Court.

- Guardian Parties. The Guardian Parties' motion for attorneys' fees be denied (ECF 899), and that their motion appealing the Clerk of Court's Taxation of Costs (ECF 963) be granted in part and denied in part insofar that the Taxation of Costs be modified so that deposition transcript costs, to be calculated by the Clerk of Court, may be recovered (to the extent provided in ECF 921-3).

- Thurnau: Plaintiffs' appeal of the Clerk of Court's Taxation of Costs (ECF 951) be denied.

## II.  Background

### a.  Factual History

Familiarity with this case, which has been pending for six years, and already has almost a thousand docket entries, is assumed. Briefly, Plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safepath Systems LLC ("SPS") – owned and founded by Stephen F.[2] and Kathleen Cole – install, service, and repair electric folding doors and partitions for use in school gymnasiums throughout the state of New York. Second Amended Complaint ("SAC") (ECF 91) ¶¶ 34, 45.[3] One of Plaintiffs' products is their patented "Safe Path System," which uses an "infrared barrier" to detect when a person may be approaching the electric partition and to stop

---

[2] There are two Stephen Coles mentioned in this Report and Recommendation. Stephen F. Cole is the owner and founder of Plaintiffs, and Stephen J. Cole is his son.

[3] Plaintiffs later filed a "First Supplemental and Third Amended Complaint" on November 5, 2016, but that only added allegations against defendant Eastern Suffolk BOCES, who is not a party to the instant motion. (ECF 276).

operation of the partition until the person has moved to a safe distance away from the partition. SAC ¶ 36. The Safe Path System's guidelines state that Safe Path Systems should be inspected at least once a year and should only be serviced or repaired by a "Safe Path-certified" technician. SAC ¶ 41.

New York Education Law § 409-f requires all New York schools to install safety devices on electrically-operated partitions. SAC ¶¶ 25, 45. Regulation § 155.25 is the implementing regulation for Education Law § 409, and sets forth requirements for the construction, maintenance, and operation of safety devices on electrically operated partition doors.[4] 8 NYCRR § 155.25. Throughout this litigation, Plaintiffs have argued that only they or their authorized technicians can perform maintenance on the Safe Path Systems.

Plaintiffs allege that Defendant Carl Thurnau, then-director of the New York State Education Department ("Education Department"), in retaliation for concerns raised by Plaintiffs with the Education Department, changed the official interpretation of Regulation § 155.25 to permit maintenance of partition safety devices, such as the Safe Path System, by any "competent" technician, as opposed to limiting the work to technicians approved by the device's manufacturer. SAC ¶¶ 53-54. Plaintiffs argued that school districts had previously read the regulation to require Safe Path Systems to be serviced only by Plaintiffs' approved technicians. SAC ¶ 54. As a result of this new interpretation, school districts began hiring outside contractors, such as the Guardian Parties and Total Gym, to service their Safe Path

---

[4] Regulation § 155.25 states: "All equipment must be maintained in accordance with the manufacturer's instructions, including the manufacturer's recommended service interval, and records of such maintenance shall be permanently retained at the district or private school." Regulation 155.25(d)(4).

Systems. SAC ¶ 55. Plaintiffs assert that as a result of this change, they have lost much of their business of servicing Safe Path Systems to third parties. SAC ¶¶ 203-04.

Plaintiffs claim that Defendants like the Guardian Parties, as part of their bid process, allegedly produced unauthorized copies of Safe Path System materials and put their own logos on them. SAC ¶¶ 109, 123. Plaintiffs also allege that a former employee, Mario Ramatar, who then went to work for Total Gym, solicited Plaintiffs' clients and "made false representations to [Plaintiffs'] clients that Total Gym [ ] is authorized to perform" maintenance on the Safe Path System. SAC ¶ 114.

Plaintiffs further claim that their patent on the Safe Path System requires that only Plaintiffs and their licensees have the authority to inspect and service Safe Path Systems, and consequently, the Defendants' work on Safe Path Systems is an infringement of that patent. SAC ¶ 116.

### b.    Procedural History

#### 1.    Prior Litigation

Plaintiffs filed suit in New York Supreme Court in March 2011 arguing that Education Law § 409-f and Regulation § 155.25 required that Safe Path Systems only be serviced by technicians approved by Plaintiffs, but the suit was dismissed for lack of standing. SAC ¶ 141; *Gym Door Repairs, Inc. v. N.Y.C. Dep't of Educ.*, 112 A.D.3d 1198, 977 N.Y.S.2d 478, 479-80 (3d Dep't 2013) (affirming lower court's dismissal). The Appellate Division, Third Department held that Plaintiffs lacked standing because they "[we]re essentially asserting a general challenge to respondents' administration of the relevant statute and regulation" and because "their asserted injuries [we]re too speculative and conjectural to satisfy the injury-in-fact

requirement." *Id.* The Third Department further found that "the purpose of the law [§ 409-f] was to protect primarily students and not individuals paid to work specifically on the safety devices [*i.e.* Plaintiffs]." *Id.* (citations omitted).

In October 2012, Plaintiffs also sued the New York City Department of Education and state officials,[5] alleging violations of their due process rights and First Amendment retaliation. *Gym Door Repairs, Inc. v. N.Y.C. Dep't of Educ.*, No. 12-CV-7387 (PKC) (S.D.N.Y.) (the "DOE case"). Plaintiffs argued that the combined effect of Education Law § 409-f, Regulation § 155.25, and their manufacturer's instructions gave them a property interest in installing and maintaining electrically operated partition doors in New York City schools, and defendants had deprived Plaintiffs of that property interest. Judge Sweet[6] dismissed the due process claims (affirmed on appeal) on the grounds that Regulation § 155.25 did not confer on the Plaintiffs the right to maintain all Safe Path Systems and therefore that they held no property interest with which defendants interfered. *Safepath Systems LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 855 (2d Cir. 2014).[7]

### 2. The Instant Action

In June 2015, after the Second Circuit affirmed the denial of Plaintiff's due process claims in the DOE case, Plaintiffs sued their competitors in this action, asserting claims of patent infringement, copyright infringement, trademark infringement, and tortious interference with

---

[5] Defendant Thurnau was not a defendant in that action.

[6] The action was reassigned to Judge Castel after Judge Sweet's passing.

[7] The Second Circuit vacated and remanded the dismissal of the First Amendment retaliation claim that Plaintiffs suffered adverse action for complaining of, and making public, the defendants' alleged failure to comply with regulatory mandates. That claim is still pending.

5

business relationships. (ECF 1). Subsequent amendments added a civil conspiracy claim and additional defendant. (ECF 91, 276). In all, Plaintiff sued nineteen defendants.

   a.   *Motion to Dismiss*

In an Opinion and Order dated September 9, 2016, Judge Koeltl dismissed Defendants Dennis Schwandtner, New York State School Facilities Association, School Facilities Management Institute, Nassau County BOCES, New York City Department of Education, Richard Young, and Brian Burke. *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 917 (S.D.N.Y. 2016) ("*Gym Door MTD*"). Also in that Opinion and Order, Judge Koeltl granted dismissal of, *inter alia*: (1) the patent infringement claims against all defendants; and (2) the copyright infringement claim against Total Gym, but denied dismissal of, *inter alia*: (1) the copyright infringement claim against the Guardian Parties and (2) the Lanham Act claims against the Guardian Parties and Total Gym. *See id.*

   b.   *Summary Judgment & Resolution of the Action*

On September 19, 2018, Judge Koeltl granted all the remaining Defendants' motions for summary judgment.[8] *See Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 331 F. Supp. 3d 221 (S.D.N.Y. 2018) ("*Gym Door MSJ*"). In doing so, Judge Koeltl found that Plaintiffs had no viable claim to damages, and even if they did, all evidence would need to be excluded because of Plaintiffs' discovery violations.[9] *See id.* at 238-39 (Plaintiffs "failure to comply with their

---

[8] All Defendants moved for summary judgment on all outstanding claims except for the Young Defendants (Young Equipment Sales, Inc. and YES Services and Repair Corporation), who did not move for summary judgment on the claim of copyright infringement against them.

[9] By way of example, Plaintiffs' Initial Disclosures, served on November 11, 2016, "did not provide any background of methodology" nor document citations for their damages estimates. *See Gym Door MSJ*, 331 F. Supp. 3d at 237. Plaintiffs' Second Amended Initial Disclosures again failed to include any details and calculations for their damages, as well an explanation for their revised damages. *See id.* Plaintiffs' Third Amended Initial Disclosures were struck by Judge Koeltl. *See id.* "The plaintiffs' failure to produce any detail regarding their methodology for computing

disclosure requirements with respect to damages calculations and supporting evidence under Rule 26(a) was *egregious*.") (emphasis added).

On May 20, 2020, all remaining claims settled between the parties and the action was resolved. (ECF 841). The motions for fees and costs followed.

c.   *Other Motions*

To recount the various discovery motions in this case would waste judicial resources. My predecessor, the Hon. Andrew J. Peck, spent years deciding and mediating disputes that were largely frivolous. Even after the summary judgment decision, Plaintiffs continued to litigate the action against certain Defendants by filing unsuccessful motions for discovery sanctions. (ECF 859, 860, 876 (decision by Judge Koeltl adopting my recommendation (ECF 859) that Plaintiff's Rule 11 motion be denied and affirming my order (ECF 860) that Plaintiff's Rule 37 motion be denied)).

## III.   Attorneys' Fees

Total Gym and the Guardian Parties argue that their Rule 54 motions for attorneys' fees are justified under multiple theories: 15 U.S.C. § 1117 (Lanham Act, trademark infringement), 35 U.S.C. § 285 (patent infringement), 17 U.S.C. § 505 (copyright infringement), 28 U.S.C. § 1927 (attorney misconduct), and New York State Judiciary Law § 487(1).

### a.   "Exceptional" Cases for Trademark, Copyright, and Patent Infringement Cases

The prevailing party in trademark, copyright, and patent infringement cases may receive an award of attorneys' fees and costs at the District Court's discretion. *See, e.g.*, *Benihana of*

---

damages prevented the defendants from obtaining discovery regarding the alleged damages and has hindered the defendants' ability to prepare a defense to the plaintiffs' claim for damages." *Id.* at 238.

*Tokyo, LLC v. Benihana, Inc.*, No. 14-CV-224 (PAE), 2018 WL 3574864, at *5 (S.D.N.Y. July 25, 2018) (awarding reasonable fees to defendant in Lanham Act case). A "prevailing party" in a fee-shifting statute is "one who has favorably effected a 'material alternation of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannan Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)). Total Gym and the Guardian Parties are the prevailing parties in this action.

The fee-shifting provisions of all three statutes – 15 U.S.C. § 1117, 35 U.S.C. § 285, 17 U.S.C. § 505 – award fees to the prevailing party in "exceptional cases," and the Supreme Court has interpreted the term "exceptional case" under the relevant provision of the Patent Act, 35 U.S.C. § 285. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014). An exceptional case "is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* Relevant factors to this determination include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Under this standard, a district court determines the exceptional nature of a case on a case by-case basis, "considering the totality of the circumstances." *Id.* at 554. The *Octane Fitness*/*Fogerty* criteria also apply to determining whether a case is exceptional under the Lanham Act for trademark infringement claims and 35 U.S.C. § 285 for patent infringement claims. *See Kirtsaeng v. John Wiley & Sons, Inc.*,

8

136 S. Ct. 1979 (2016) (citing *Fogerty*, 510 U.S. at 519); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530-31 (2d Cir. 2018) (applying factors to Lanham act claims).

### 1. Frivolousness & Objective Unreasonableness

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001). That a court ultimately disagreed with a plaintiff's position in the underlying litigation is not enough: "the question 'is not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively unreasonable.'" *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2017 WL 3393850 at *2 (S.D.N.Y. Aug. 4, 2017) (examining the standard under the Copyright Act). Although these two factors are not necessarily coextensive, these factors overlap considerably. *See id.* at *4.

"The grant of a motion to dismiss does not in itself render a claim unreasonable; rather, 'only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable.'" *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 573 (S.D.N.Y. 2011) (discussing unreasonableness with respect to a Copyright Act action) (quoting *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008)); *Canal+ Imagine Uk Ltd. Lutvak*, 792 F. Supp. 2d 675, 682 (S.D.N.Y. 2011) ("[T]he courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable.").

### 2. Motivation

"[A] party is improperly motivated where it asserts claims 'not because of [their] inherent merit,' but rather because it seeks to 'knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain.'" *Janik v. SMG Media, Inc.*, No. 16-CV-7308 (JGK) (AJP), 2018 WL 345111, at *13 (S.D.N.Y. Jan. 10, 2018) (quoting *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015), *aff'd*, 645 F. App'x 86 (2d Cir. 2016)). Improper motivation can be inferred from the complaint and record. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).

### 3. Deterrence

The final *Fogerty* factor relates to the need to compensate defendants and to deter opportunistic plaintiffs especially against objectively unreasonable claims. *See Fogerty*, 510 U.S. at 529; *Muller v. Twentieth Century Fox Film Corp.*, No. 08-CV-2550 (DC), 2011 WL 3678712, at *3 (S.D.N.Y. Aug. 22, 2011). "[T]here is an interest in disincentivizing behavior that either violates [the statute] or exploits it for objectively baseless litigation." *Jovani*, 820 F. Supp. 2d at 574 (discussing deterrence with regard to copyright claims).

### b. 15 U.S.C. § 1117, Lanham Act Claims

I discuss award of fees and costs under the Lanham Act first because the trademark claims against the Guardian Parties and Total Gym survived the longest in the litigation; Judge Koeltl dismissed these claims at summary judgment. Thus, a determination that Defendants are

entitled to fees and costs under the Lanham Act covers most of Total Gym's and the Guardian Parties' fees and costs.

Both Total Gym and the Guardian Parties seek fees under Section 15 of the Lanham Act, 15 U.S.C. § 1117, for defending against Plaintiffs' trademark claims, which alleged both trademark infringement and contributory infringement.[10]

The essence of Plaintiffs' claims is that Defendants somehow infringed Plaintiffs' trademarks by placing Defendants' logoed stickers on the Safe Path system, in the course of Defendants' maintenance and repair of those systems, and that the stickers somehow caused confusion with the source of the Safe Path System. The question here is whether the prolonged, protracted defense against these trademark claims make this an "exceptional case" under the *Octane Fitness/Fogerty* factors.

### 1.    Motivation

The Plaintiffs' motivation, to limit competition in the New York electrically operated gym door partition market, colors all the other *Octane Fitness/Fogerty* factors. Before the inception of this action, Plaintiffs previously filed two lawsuits in federal and state court "regarding generally the same underlying issues at issue in this case." *Gym Door MSJ*, 331 F. Supp. 3d at 233. In these cases, Plaintiffs sought to enforce their rights under Regulation § 155.25, arguing that they had an exclusive right to maintain and service the Safe Path System; both federal and

---

[10] "The elements of a trademark infringement claim under the Lanham Act are: (1) that the plaintiff holds a valid mark entitled to protection; (2) that the defendant used the mark; (3) in commerce; (4) in connection with the sale or advertising of goods or services; (5) without plaintiff's consent; and (6) that the defendant's use of a similar mark is likely to cause confusion." *Gym Door MTD*, 206 F. Supp. 3d at 900. "Contributory liability for trademark infringement can arise when 'a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows is engaging in trademark infringement.'" *Id.* at 901 (citing *Sly Magazine, LLC v. Weider Publications LLC*, 241 F.R.D. 527, 530 (S.D.N.Y. 2007)).

state courts rejected Plaintiffs' interpretation. Going into this action, Plaintiffs' legal theories were clearly erroneous, yet they chose to file a *third* suit premised on the same flawed theories. *See Gym Door MSJ*, 311 F. Supp. 3d at 232 ("Relying on their disputed interpretation [of Regulation § 155.25], the plaintiffs claim that the defendants in this case have – in various ways – interfered with the plaintiffs' rights under the Regulation to maintain and service the Safe Path Systems and have infringed on the plaintiffs' copyrights relating to the Safe Path System."). It is difficult to believe that Plaintiffs had any reasonable basis to believe that their dragging *nineteen different actors* in this action, their third concerning Regulation § 155.25, to enforce these rights would be any more successful than their prior two lawsuits. The only possible motivation is anti-competitive behavior. Plaintiffs' briefing in this motion even concedes this point: "[Plaintiffs] are owned and controlled by the same two individuals, Stephen F. and Kathleen Cole, who over the years have fought fiercely to protect their brand and the quality of their products and services from competitors and members of the education establishment who seek misappropriate [sic] and/or genericize [sic] them." (ECF 911 at 4 n.5).

Moreover, Judge Koeltl found that Plaintiffs failed to show that they suffered any injury from Defendants' actions (again, the trademark claims did not arise from Defendants' maintenance or repair of the Safe Path System, but rather from Defendants' application of stickers to the Safe Path System). There was no showing of confusion. *E.g. Gym Door MSJ*, 331 F. Supp. 3d at 250-51. Judge Koeltl further found that because Plaintiffs' claimed damages "wildly vacillated over the course of this litigation," it was "further evidence that the Plaintiffs have not set forth a reliable theory of damages." *Id.* at 236. The damages started at $60,000,000 at the onset of the litigation, before being reduced to $4,000,000, and then finally

to $500,000 by Plaintiffs' own expert. *Id.* Plaintiffs' improper motivations are also evidenced by their discovery conduct, which was so "egregious" that Judge Koeltl found that preclusion of any evidence related to damages was warranted. *Gym Door MSJ*, 331 F. Supp. 3d at 238-39 ("While evidence of damages is plainly important, in this case the plaintiffs' evidence of damages has already been independently precluded because of the plaintiffs' numerous discovery abuses found by [Judge Peck], which this Court affirmed."). Even if preclusion were not warranted, Judge Koeltl found that Plaintiffs "failed to present any evidence from which a reasonable jury could find that they suffered any damages from any of the claims they have asserted against the defendants." *Gym Door MSJ*, 331 F. Supp. 3d at 235. Accordingly, I find that there was an improper motivation in bringing this lawsuit.

### 2.    Frivolousness & Objective Unreasonableness

Against the backdrop of Plaintiffs' improper motivation, their legally and factually unsupported trademark claims are frivolous and objectively unreasonable.

Plaintiffs' allegations survived the motion to dismiss by the Guardian Parties by alleging that the Guardian Parties made unauthorized copies of Plaintiffs' materials. 206 F. Supp. 3d at 896. However, the claim was ultimately frivolous and unreasonable. First, the crux of the argument against the Guardian Parties was that the placement of a Guardian sticker infringed Safe Path trademarks on the Safe Path Systems, causing confusion in the marketplace as to the source of the Safe Path System. *See id.* Not only was there no evidence in support of that claim, but Plaintiffs also themselves acknowledged that the Guardian stickers were meant to promote

13

Guardian's maintenance and repair services.[11] *Id.* at 251. Judge Koeltl noted "[i]ndeed, school districts that hired [Guardian] to service or maintain a Safe Path System would know who they hired and similarly would know that the companies had not installed the Safe Path System initially. The plaintiffs have presented no evidence to the contrary." *Id*. Further, Judge Koeltl found there was a legally insufficient basis for the trademark claim "because [SPS] has engaged in naked licensing of" its trademark to GDRI. SPS, which owns the trademark registrations, neither monitors nor has the resources to monitor the use of its trademarks by GDRI, and, therefore, any claim against any defendant would be untenable. *Id.* Underlying this is that SPS selectively approved its trademarks being freely used by certain (related) companies as long as those companies were not its competitors. Thus, Plaintiffs' trademark claims against the Guardian Parties were both frivolous and objectively unreasonable.

Similarly, Judge Koeltl also dismissed at summary judgment Plaintiffs' direct trademark claims against Total Gym, claims that are similar to those against the Guardian Parties. Plaintiffs alleged that Total Gym directly infringed Plaintiffs' trademarks by: (1) "using a confusingly similar logo to GDRI's; (2) affixing Total Gym Repairs stickers on the Safe Path Systems in an attempt to confuse customers regarding the origin of the system; and (3) representing to schools that it was authorized to install and repair Safe Path System." *Gym Door MSJ*, 331 F. Supp. 3d at 252. The first two claims failed for similar reasons as they failed against the Guardian Parties: there was no evidentiary support. The third claim, which retracks Plaintiffs' two prior failed Regulation § 155.25 lawsuits, that only Plaintiffs had the right to repair the Safe

---

[11] This is not so different from a car dealer affixing its decals on cars it sells and/or repairs. Car manufacturers do not argue this infringes on their trademarks.

Path System, is in essence a claim that any bid submitted by a competitor to repair the Safe Path system could be a trademark violation. *Id.* Plaintiffs' trademark claims are an attempt to dress up their unfair competition claims. Although these claims survived a motion to dismiss, they were ultimately speculative, anti-competitive claims that could not be supported by evidence. In light of such an untenable legal position and the lack of any evidentiary support, I also find that Plaintiffs' trademark claims against Total Gym were both frivolous and objectively unreasonable.

### 3.    Deterrence & Compensation

Here, an award of fees would beneficially deter meritless lawsuits that use trademark law in an effort to undermine competitors. Under the circumstance of this case, and "to advance considerations of compensation and deterrence," Total Gym and the Guardian Parties should be compensated for their years-long defense of a baseless suit brought with an anti-competitive motivation. *Fogerty*, 510 U.S. at 533 n.19; *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) (awarding fees to deter future baseless lawsuits like the one at issue).

Accordingly, because the *Octane Fitness/Fogerty* factors are met, I find that Total Gym and the Guardian Parties are entitled to fees in defending against Plaintiffs' trademark claims.

### c.    35 U.S.C. § 285, Patent Claims[12]

The next basis on which Total Gym and the Guardian Parties seek recovery of fees is under 35 U.S.C. § 285, relating to Plaintiffs' patent infringement claims. Having discussed the

---

[12] The analysis here and for the following section, regarding copyright claims, is relevant only to the extent Judge Koeltl disagrees with my analysis of the *Octane Fitness/Fogerty* factors with regard to the trademark claims, because the fees associated with defending against the patent and copyright claims are incorporated in defending against the trademark claims.

factors at length with regard to the trademark claims, the same findings for deterrence and improper motivation also apply to the patent infringement claims, which were dismissed on a motion to dismiss.

As for frivolousness and unreasonableness, I also find that these factors are met. Plaintiffs, who alleged both direct and induced patent infringement, fulfilled only one aspect of pleading a patent infringement claim: that they held a valid patent. The founders of Plaintiff Gym Door Repairs, Inc. held the '030 patent to the Safe Path System, which expired on October 17, 2011.

The patent infringement claim was clearly frivolous and objectively unreasonable as to Total Gym, which did not exist until *two years* after the '030 patent expired. *See Gym Door MTD*, 206 F. Supp. 3d at 891. The most basic diligence by Plaintiffs would have uncovered that fact before bringing suit, and its discovery should have led to a voluntary dismissal.

Plaintiff alleged that the Guardian Parties violated the '030 patent by repairing the patented Safe Path system, *i.e.* that because their competitors repaired Plaintiffs' invention, there was infringement. *See Gym Door MTD*, 205 F. Supp. 3d at 892 ("[T]he only relevant allegation in the SAC is that various defendants repaired the patented systems and that other defendants induced those repairs."). Judge Koeltl dismissed this claim because this theory of patent infringement was clearly barred under the affirmative defense of permissible repair. *See Gym Door MTD*, 205 F. Supp. 3d at 890 (quoting *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1101-02 (Fed. Cir. 2001)). Under this theory, it is the "lawful right of the owner to repair his property" by the "[m]ere replacement of individual unpatented parts;" otherwise even basic maintenance would require going back to the manufacturer. *See Jazz Photo*, 264

16

F.3d at 1103 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 346 (1961)).[13] Given that Plaintiffs' allegations rested on allegations that "schools contacted or serviced by various defendants purchased the Safe Path Systems . . . and that those products were then repaired by the alleged direct infringers at the behest of the alleged inducing infringers," Judge Koeltl found that the "longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Id.* at 891 (quoting *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008)); *see also Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 447-48 (S.D.N.Y. 2014) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent." (citations omitted)). Plaintiffs' patent allegations were an attempt to revive the failed legal theory that only they had the right to repair the Safe Path Systems. Thus, Plaintiffs' patent claims are frivolous and unreasonable, and I find that Total Gym and the Guardian Parties are entitled to fees in defending against Plaintiffs' trademark claims.

### d.      17 U.S.C. § 505, Copyright Claims

The last statutory basis under which the Guardian Parties and Total Gym seek fees is 17 U.S.C. § 505, relating to defending against Plaintiffs' copyright claims.[14] Plaintiffs alleged that Defendants engaged in direct copyright infringement by using Plaintiffs' "Manufacturer Materials" to either prepare bid materials or conduct repairs on the Safe Path system. SAC ¶¶ 162-64, 166. The copyright claim against Total Gym was dismissed on a motion to dismiss,

---

[13] An example given in *Jazz Photo*, illustrating the doctrine, was replacing the cutting-knives in a patented planing machine (permissible) versus making or renewing the whole machine (impermissible). *Id.*

[14] A claim for copyright infringement requires a plaintiff to present evidence that "(1) the defendant has actually copied the plaintiffs' work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiffs." *Gym Door MSJ*, 331 F. Supp. 2d at 247 (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010)).

and the copyright claim against the Guardian Parties was dismissed on a motion for summary judgment.

The same findings for improper motivation and deterrence discussed earlier also apply herein. *See supra*; *Jovani*, 536 F. Supp. 2d at 444.

As for frivolousness and unreasonableness, I also find that these factors are met. The claims against Total Gym and the Guardian Parties must be read in light of the broader backdrop of Plaintiffs' anti-competitive behavior.

There was no factual basis to support Plaintiffs' conclusory allegations against Total Gym, only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Gym Door MTD*, 206 F. Supp. 3d at 895.

Although the claim against the Guardian Parties survived a motion to dismiss, Judge Koeltl found that Plaintiffs failed to present any evidence of copyright infringement. Under Plaintiffs' theory, if someone consulted and copied a Safe Path manual to repair the Safe Path system, then that person could be liable for copyright infringement. In dismissing the claim, Judge Koeltl found that Plaintiffs failed to present any evidence of copying, only conjectural claims that the Guardian parties "must have" copied Plaintiffs' materials to perform maintenance services on the Safe Path Systems. *Gym Door MSJ*, 331 F. Supp. 3d at 249. Further, "[i]t is plainly fair use to make a single copy of a one-page form provided by another party to keep as a business record." *Id.* These meritless claims coupled with Plaintiffs' anti-competitive motivations support a finding that Plaintiffs' claims were frivolous and unreasonable.

e.      **28 U.S.C. § 1927**

Total Gym and the Guardian Parties also seek fees under 28 U.S.C. § 1927, which

provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct." *See also Ransmeier v. Mariani*,

718 F.3d 64, 68 (2d Cir. 2013).

Section 1927 is a ground under which a Court can sanction an attorney and award fees

to the prevailing party on the basis of attorney misconduct. *Oliveri v. Thompson*, 803 F.2d 1265,

1273 (2d Cir. 1986) ("[A]wards under § 1927 are made only against attorneys or other persons

authorized to practice before the courts."); *see also United States v. Int'l Bhd. Of Teamsters*, 948

F.2d 1338, 1345 (2d Cir. 1991) ("By its terms, § 1927 looks to unreasonable and vexatious

multiplications of proceedings; and it imposes an obligation *on attorneys* through the entire

litigation to avoid dilatory tactics." (emphasis added)). Here, neither Total Gym nor the

Guardian Parties makes a proper motion under § 1927 nor a sufficient showing of attorney bad

faith. They use § 1927 as an alternative (and redundant) basis to obtain fees. Judge Koeltl's June

10, 2020 order was specific that Defendants could move for fees under Rule 54, not that parties

could move for sanctions. Accordingly, relief is denied on that basis. In any event, recovery

under Section 1927 would be duplicative and unnecessary because I recommend recovery

under Rule 54 – 15 U.S.C. § 1117, 35 U.S.C. § 285, and 17 U.S.C. § 505.

f.      **New York State Judiciary Law § 487**

The Guardian Parties seek fees under New York State Judiciary Law § 487 (incorrectly

cited in their brief as § 498). Section 487 provides in relevant part that an attorney who "[i]s

19

guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action." The statute "thus permits a civil action to be maintained by any party who is injured by an attorney's intentional deceit or collusion in New York on a court or on any party to litigation, and it provides for treble damages." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).

By the statute's plain language, a party can only recover fees under § 487 by bringing a suit with a cause of action for such, which the Guardian Parties never did. *See, e.g.*, *Amalfitano*, 533 F.3d at 119 (underlying action brought a cause of action under § 487); *Ray v. Watnick*, 182 F. Supp. 3d 23, 25 (S.D.N.Y. 2016) (same). Accordingly, any recovery under § 487 is denied.

## IV.    Amount of Fees

Once the Court determines that a case is "exceptional" so that fees and costs can be awarded to the prevailing party, the next step is determining the amount of fees. The Court's award of fees must be reasonable and within the Court's discretion; the "statutory provision is permissive, not prescriptive." *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 129 (S.D.N.Y. 2019).

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted). The total fee award is calculated by multiplying this presumptively reasonable fee by the "reasonable number of hours expended" to determine the

appropriate award. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 141 (2d Cir. 2007). The starting point for determining the presumptive reasonable fee is the "lodestar" amount, which is "'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, No. 11-CV-3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The party seeking fees must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Assn'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1982). "[A]s to any fees that are recoverable under federal law, Second Circuit law is clear that except in unusual circumstances a lack of contemporaneous records prevents a fee award." *Serin v. Northern Leasing Systems, Inc.*, No. 06-CV-1625 (JSG), 2011 WL 1467560, at *5 (S.D.N.Y. Apr. 19, 2011) (reducing requested hours because of the lack of contemporaneous records.).

**a.    Total Gym**

Total Gym seeks $119,587.50 in fees for 478.35 hours of work. Total Gym's counsel billed at an hourly rate of $250. I find that the rate is within the range of reasonable rates in this District. *See, e.g. Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (GHW), 2020 WL 2836718, at *5 (S.D.N.Y. June 1, 2020) (approving partner rates of $375, associate rates of $300, and paralegal rates of $150); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (approving partner rates of $675); *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases awarding $400 to $735 per hour for partners).

21

Had Plaintiffs even done the most cursory examination of Total Gym's requested fees, they could have made any number of arguments to reduce Total Gym's fees. Instead, Plaintiffs' opposition brief reargues the merits of their claims that were dismissed in 2016 and 2018. (ECF 901). Other than unspecified suggestions, Plaintiffs do not identify any categories, amounts, or billing entries that warrant reduction.

Total Gym's bills clearly merit some reduction, however. First, the invoices show that Total Gym billed for $114,762.50 in fees, not the requested $119,587.50 in fees, or a 5% discrepancy. (ECF 898).

| ECF 898-28 Page | Fees | Expenses |
|---|---|---|
| 14 | 15,450.00 | 19.60 |
| 17 | 3,225.00 | 8.75 |
| 20 | 825.00 | 5.50 |
| 22 | 1,925.00 | 0.00 |
| 25 | 2,075.00 | 0.00 |
| 30 | 3,025.00 | 0.00 |
| 32 | 3,337.50 | 18.50 |
| 33 | 125.00 | 0.00 |
| 36 | 950.00 | 20.00 |
| 40 | 2,950.00 | 0.00 |
| 43 | 12,875.00 | 55.25 |
| 48 | 20,775.00 | 4,648.52 |
| 52 | 4,575.00 | 9,945.59 |
| 54 | 2,325.00 | 35.00 |
| 60 | 18,200.00 | 5.50 |
| 63 | 5,750.00 | 0.00 |
| 64 | 0.00 | 1,337.40 |
| 65 | 750.00 | 712.95 |
| 68 | 2,200.00 | 722.50 |
| 69 | 0.00 | 703.72 |
| 70 | 300.00 | 710.76 |
| 72 | 0.00 | 2,184.30 |
| 74 | 1,225.00 | 782.71 |

| ECF 898-28 | | |
|---|---|---|
| Page | Fees | Expenses |
| 75 | 125.00 | 762.79 |
| 77 | 1,125.00 | 819.67 |
| 81 | 9,775.00 | 791.12 |
| 83 | 50.00 | 0.00 |
| 84 | 450.00 | 0.00 |
| 86 | 50.00 | 0.00 |
| 89 | 325.00 | 0.00 |
| SUM | 114,762.50 | 24,290.13 |

Second, starting from ECF 898-28 page 70, Total Gym seeks recovery of fees after the trademark claims were dismissed, including recovery of fees on the instant motion, or "fees on fees." Those fees total $13,425.00, or 12% of the corrected-total fee ($114,762.50) application.

Third, there are entries that reflect time that is for purely administrative work. *See Lilly v. City of New York*, 934 F.3d 222, 233-34 (2d Cir. 2019) (affirming district court's denial of fee award of clerical tasks). For instance, on February 19, 2016, counsel charged $375.00 for 1.5 hours of work for "[p]reparation of correspondence to the Court enclosing a courtesy copy" and "[a]ppearance at the Southern District of New York to submit a courtesy copy." (ECF 898-28 at 12). A reasonable paying client would not pay $250 per hour to prepare courtesy copies and submit the same in person. The Court need not scrutinize each entry, however, but has "discretion to simply apply a reasonable percentage reduction as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). I recommend that Total Gym's fee application be reduced by 20% to account for the calculation error (~5%), fees incurred after the summary judgment decision (~12%), and clerical time. *See Capital Records, Inc. v. MP3tunes, LLC*, No. 07-CV-9931, 2015 WL 7271565, at *5 (S.D.N.Y. Nov. 12, 2015) ("It is common practice in this Circuit to reduce a fee award by an across-the-board

23

percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate."). The amount of fees to Total Gym is therefore reduced from $114,762.50 to **$91,810.00.** *See, e.g.*, *Alicea v. City of New York*, 272 F. Supp. 3d 603, 612-13 (S.D.N.Y. 2017) (applying 50% reduction to amount of requested fees); *MB Financial Bank, N.A. v. 56 Walker, LLC*, No. 11-CV-5538 (JGK), 2011 WL 6338808, at *4 (S.D.N.Y. 2011) (applying 40% reduction of amount of requested fees).

   b.    **Guardian Parties**

The Guardian Parties seek $639,140.73, which were "presently estimated." (ECF 903 ¶ 9.d). The Guardian Parties do not attach any billing records nor account for the number of hours they worked. Their attorney, Phillip Furgang, even stated that "I provide an estimate and leave for a court-ordered accounting the final determination." (ECF 903 ¶ 9). It is not the role of the Courts to provide an accounting; the role of the court is to determine the lodestar after reviewing the documented contemporaneous time records submitted by the party. *See Carey*, 711 F.2d at 1158; *Serin*, 2011 WL 1467560 at *5. Because the Guardian Parties fail to submit any contemporaneous records and do not argue any circumstances for the lack of any records, I recommend denying their request for fees. The Guardian Parties' counsel, from the onset of the litigation, has been aware that the claims brought allowed fees and costs to the prevailing party, and the briefest examination of the caselaw would reveal that in successful fee applications, the party submitted contemporaneous time records. Further, had the Guardian

24

Parties reviewed the fee application of their co-defendant, Total Gym, they would have seen time records submitted, and perhaps wondered if they should have done the same.[15]

### V.    Bill of Costs

Rule 54 provides that "[u]nless a federal statute, these rules, or court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Construing this provision, the Supreme Court has held that the term 'costs' includes only the specific items in 28 U.S.C. 1920." *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001), *abrogated on other grounds by Bruce v. Samuels*, 577 U.S. 82 (2016). Pursuant to § 1920, the Court, or the Clerk of Court, may tax as costs the following:

> (1) [f]ees of the clerk and marshal; (2) *[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case*; (3) [f]ees and disbursements for printing and witnesses; (4) [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees . . . ; [and] (6) [c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

(emphasis added).

Local Civil Rule 54.1 further outlines the costs taxable in the district and controls to the extent that it addresses a particular cost. *See Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 70 (S.D.N.Y. 2015).

If the Clerk of Court taxes costs against a non-prevailing party, that party has seven days to appeal the Clerk's decision to the Court. Fed. R. Civ. P. 54(d)(1). "A district court reviews the clerk's taxation of costs by exercising its own discretion to decide the cost question [it]self."

---

[15] Even if the Guardian Parties had submitted time records, the amount sought, $639,140.73, plainly would have warranted significant reductions.

*Ramos*, 2019 WL 3254964 at *2. Defendants Thurnau, Total Gym, and the Guardian Parties filed three separate motions for recovery of costs. Unsurprisingly, given the parties' inability to cooperate on any motion, Plaintiffs opposed the costs, and there were multiple appeals from both the Guardian Parties and Plaintiffs on the Clerk's Taxations of Costs.

### a.    Transcripts

All three groups of Defendants seek costs of transcripts for depositions and court conferences, and I will discuss this category as it applies to all three Defendant groups. Relevant here, Local Civil Rule 54.1(c)(2) provides the following:

> Unless otherwise ordered by the Court, *the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety.* Costs for depositions are also taxable if they were used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion. *Costs for depositions taken solely for discovery are not taxable.*

(emphases added). Although Local Rule 54.1 refers only to the recovery of costs related to deposition transcripts actually used during dispositive motion practice or trial, "courts in this District have repeatedly construed the local rules as authorizing a court to tax the costs of a deposition transcript if, at the time the deposition was taken, the deponent's testimony appeared to be reasonably necessary to the litigation." *Ramos v. City of New York*, No. 15-CV-6085 (ER), 2019 WL 3254964, at *2 (S.D.N.Y. July 21, 2019) (quoting *Endo Pharm. Inc v. Amneal Pharm., LLC*, No. 12-CV-8115 (JPO), 2019 WL 2417386, at *5 (S.D.N.Y. July 10, 2019) (internal quotation marked omitted) (collecting cases))).

There were twenty-four depositions in this action. Fourteen of the twenty-four depositions were noticed by Plaintiffs. Of the remaining ten, nine of the witnesses were disclosed by Plaintiffs in their second amended initial disclosures as individuals "likely to have

26

discoverable information that plaintiffs may use to support its claims in this action and defend against counterclaim." (ECF 908 ¶ 9, 908-5). The final witness was Stephen J. Cole, the son of Plaintiffs' founders. Stephen J. Cole was the custodian of record of thousands for documents (audio recordings) produced by Plaintiffs and also provided relevant testimony on Plaintiffs' purported injuries and damages, testifying to the Safe Path certification process and Plaintiffs' bids for repair work, which Plaintiffs claimed to have lost due to a conspiracy by Defendants. (ECF 908 ¶¶ 8-10).

These depositions were "reasonably necessary to the litigation" at the time the deposition were taken. *See Ramos*, 2019 WL 3254964 at *2; *Faberware Licensing Co. LLC v. Meyer Marketing Co., Ltd.*, No. 09-CV-2570 (HB), 2009 WL 5173787, at *5 (S.D.N.Y. Dec. 30, 2009) (deposition transcripts are "reasonably necessary" if "at the time the deposition as taken, it was reasonably expected that the transcript would be used for trial preparation" (quoting *United States Media Corp. v. Edde Entm't, Inc.*, No. 94-CV-4849 (MHD), 1999 U.S. Dist. LEXIS 10605, at *29 (S.D.N.Y. July 14, 1999))). Given the original purported scope of the case – Plaintiffs were claiming $60 million in damages and noticed almost two-thirds of the depositions to prosecute their case – copies of those transcripts of plaintiff-noticed depositions are reasonably necessary for Defendants' defense. Similarly, of the nine witnesses disclosed by Plaintiffs, those depositions were also reasonably necessary for the defense. Lastly, Stephen J. Cole's deposition was also reasonably necessary given the relevance of his testimony to Plaintiffs' claimed damages and the Safe Path "certification" system. Most of these transcripts were cited in Defendants' summary judgment motions, which were ultimately successful in dismissing Plaintiffs' claims. *See, e.g.*, ECF 908-7 (depositions cited in Thurnau's motion).

The Defendants also seek reimbursement for the costs of court conference transcripts. My predecessor, Judge Peck, held seven discovery conferences in this action, and he directed the parties to order the transcripts of each discovery conference and that parties should alternate paying for the costs. (ECF 908 ¶ 5.b.). These transcripts were clearly authorized and ordered, and recovery is allowed under Local Rule 54.1(c)(1).[16]

### b.      Thurnau

The State of New York, on behalf of Defendant Thurnau, moves for recovery of costs in the litigation, originally seeking to recover $27,791.12, reflecting deposition and court conference transcripts.[17] (ECF 907 at 2). As an alternative, Thurnau also offered a calculation of the costs of only the deposition transcripts cited in his summary judgment motion, $20.912.67. (ECF 907 ¶ 14). Plaintiffs objected to the costs, arguing that the court conference transcripts were not authorized by the court, the deposition transcripts were excessive, and surcharges associated with the deposition transcripts were not recoverable. (ECF 928). Plaintiffs argued that costs should be reduced to $2,126.25. (ECF 928 at 5).

Pursuant to Rule 54(d)(1), as a prevailing party, Thurnau is entitled to costs; all claims were dismissed against him. *See Gym Door MTD*, 206 F. Supp. 3d at 919 (dismissing patent, copyright, and trademark claims against Thurnau as well as all claims against Thurnau in his

---

[16] Thurnau and Total Gym move for recovery of certain court transcripts.

[17] Thurnau, who was then a state official with the New York State Education Department, is represented by the New York Attorney General pursuant to N.Y. Public Officers Law § 17. The taxpayers of the State of New York covered the costs associated with the litigation. (ECF 908 ¶ 4).

official capacity); *Gym Door MSJ*, 311 F. Supp. 3d at 255 (dismissing tortious interference and civil conspiracy claims against Thurnau).

The Taxation of Costs issued by the Clerk of Court ultimately reduced Thurnau's costs to $20,569.17, reflecting recovery only for deposition transcripts cited in the summary judgment motion, transcript costs and not any associated fees such as shipping and handling, and page costs at $1.50 per page. (ECF 949). Plaintiffs appealed, arguing that the depositions were unnecessary and unnecessarily long, and that Defendants should have split the costs between themselves. For the reasons stated earlier, those arguments are rejected and the time for them long passed. If Plaintiffs wanted to reduce the number of depositions and defendants, they could have (1) not brought this action, (2) sued fewer defendants, and/or (3) noticed fewer depositions. Additionally, the depositions of Stephen F. and Kathleen Cole, which spanned multiple days, were not overly long, given that the Coles are the owners, who directed the lawsuit, of Plaintiffs, and Plaintiffs' Rule 30(b)(6) witnesses. (ECF 402-6). Further, Plaintiffs cited Ms. Cole's deposition in their summary judgment motion and declined to end her deposition early. (ECF 407 at 19:10; 615-1; 615-2). Plaintiffs had been even warned by Judge Koeltl that the number of claims and defendants in the case was excessive and unwarranted. (ECF 219 (Aug. 1, 2016 Tr. 175:16-176-10); ECF 376 (June 14, 2017 Tr. 24:16); ECF 497 (Nov. 27, 2017 Tr. 21:9)). Given the numerous allegations by Plaintiffs and their troublesome discovery positions and tactics, the length of the depositions is particularly warranted. Further, Plaintiffs cite no authority that all the defendants were required to split the costs of the deposition transcripts. If anything, caselaw allows defendants to each recover transcript costs, especially when they have different counsel and are defending against different theories of liability. *See United*

*States v. Huron Consulting Grp., Inc.*, No. 09-CV-1800 (JSR), 2015 WL 539672, at *2 (S.D.N.Y. Feb. 3, 2015), *aff'd sub nom. Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433 (2d Cir. 2016) (awarding each defendant costs of deposition costs).

Accordingly, I recommend rejecting the Plaintiffs' appeal of the Clerk of Court's Taxation of Costs.

### c.    Total Gym

Total Gym moves for costs in the amount of $15,230.27. (ECF 909, 917). That amount reflects $14,526.75 in transcript costs, $683.52 in printing costs, and $20.00 for docket fees under 28 U.S.C. § 1923. (ECF 917-2). After Plaintiffs objected (ECF 939), repeating similar arguments as those against Thurnau, the Clerk of Court reduced the amount to $12,184.43. (ECF 950). These reductions included: (1) removing all of the requested printing costs, which are not recoverable under Local Rule 54.1(c)(5) (the "cost of copies used for the convenience of counsel or the Court are not taxable"); (2) a reduction in deposition transcripts costs so that only the transcript fees, and not any additional charges, were recoverable; (3) and a denial of costs associated with Stephen J. Cole's deposition. (ECF 950).

Plaintiffs again appealed, repeating the same arguments as those in their opposition to Defendant Thurnau's Taxation of Costs. For the same reasons stated above, I agree with the assessment of the Clerk of Court other than recommending modification of the Taxation of Costs so that costs for Stephen J. Cole's deposition be awarded for the same reasons it is awarded to Defendant Thurnau.[18]

---

[18] The Clerk of Court presumably did not tax the costs of Stephen J. Cole's deposition because it was not cited in Defendant's motion for summary judgment. However, because at the time that deposition was taken, it was "reasonably necessary" for the defense of the case, I find that it should be awarded. *See supra.*

30

> ### d.    The Guardian Parties

The Guardian Parties, who filed their motion last, requested $31,150.63, reflecting costs associated with meals, parking, and deposition costs. (ECF 947 (*see* ECF 924 for order granting an extension to the bill of costs filing due to the Guardian Parties' computer issues)). Unlike their co-defendants, the Guardian Parties did not explain why the transcript costs were reasonably necessary. For that reason and because the other costs are not recoverable, the Clerk of Court denied all recovery: "No explanation of what depositions were used for motion for summary judgment. Parking tolls, mileage and meals not allowable under Local Rule 54.1." (ECF 962). The Guardian Parties appealed and argued that the deposition costs were "reasonably necessary," and refer to their co-defendants' motions, and that the transportation costs associated with the depositions should be recovered. (ECF 963, 965, 966). I agree with the Clerk of Court that parking, mileage, and tolls are not recoverable under Local Rule 54.1. The question of whether the Guardian Parties are entitled to any recovery of costs for depositions is a close one, given their repeated failures to comply with the basic procedures, *e.g.* submitting invoices for recovery of fees. However, because their co-defendants are entitled to recovery of deposition transcript costs, the Guardian Parties are also entitled to recovery of transcript costs only and only to the extent they provided invoices in ECF 921-3. Accordingly, I recommend modifying the Clerk of Court's Taxation of Costs.

## VI.    Conclusion

For the following reasons, I recommend that:

- Total Gym: Total Gym's motion for attorneys' fees (ECF 896) be granted in part and denied in part, awarding a reduced amount of **$91,810.00**. Plaintiffs' appeal of the Clerk

of Court's Taxation of Costs (ECF 951) be denied. I further recommend that the Taxation of Costs be modified so that costs of Stephen J. Cole's deposition ($1,059.05 for the certified transcript and $116.40 for exhibits) are recoverable. The amount of costs awarded to Total Gym is to be calculated by the Clerk of Court.

- Guardian Parties. The Guardian Parties' motion for attorneys' fees be denied (ECF 899), and that their motion appealing the Clerk of Court's Taxation of Costs (ECF 963) be granted in part and denied in part insofar that the Taxation of Costs be modified so that deposition transcript costs, to be calculated by the Clerk of Court, may be recovered (to the extent provided in ECF 921-3).

- Thurnau: Plaintiffs' appeal of the Clerk of Court's Taxation of Costs (ECF 951) be denied.

This Report and Recommendation would resolve all remaining open motions (ECF 896, 899, 923, 951, and 963).

## VII. Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable John G. Koeltl, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,


*s/ Ona T. Wang*

Dated: February 22, 2021                                **Ona T. Wang**
       New York, New York                     United States Magistrate Judge